**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| FCC (INDIANA), LLC, | ) | |
| Plaintiff, | ) | Case No. 1:22-cv-20 |
| | ) | |
| v. | ) | Hon. |
| | ) | |
| PACE INDUSTRIES, LLC, | ) | |
| Defendant. | ) | |

**COMPLAINT FOR SPECIFIC PERFORMANCE,**
**INJUNCTIVE RELIEF, AND MONEY DAMAGES**

Plaintiff, FCC (Indiana), LLC ("FCC"), through its counsel, Brooks Wilkins Sharkey & Turco PLLC and Mitchell Litigation & Advocacy, complains as follows against Defendant Pace Industries, LLC ("Pace"):

1.      FCC is an Indiana limited liability company. FCC's sole member is FCC (North America), Inc., which is an Indiana corporation with its principal place of business in Portland, Indiana.

2.      Pace is a Delaware limited liability company. FCC's counsel confirmed with Pace's counsel by email exchange before filing this Complaint that, none of Pace's members are citizens of Indiana.

3.      This Court therefore has subject matter jurisdiction under 28 U.S.C. § 1332 because all parties are diverse from one another and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.      This Court has personal jurisdiction over Pace because: (a) Pace regularly conducts business in Indiana, including contracting for, and performing under, the contract at issue in this action; and (b) Pace consented to jurisdiction in Indiana. **Ex. 4**,[1] Terms, § 22(H).

---

[1] For the sake of brevity, all referenced Exhibits are those attached with corresponding Exhibit numbers to FCC's Brief in Support of Motion for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue, or, In The Alternative, An Expedited Preliminary Injunction Hearing.

5.      Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district. Venue is additionally proper in this Court under 28 U.S.C. § 1391 because Pace is subject to personal jurisdiction in this District.

## GENERAL ALLEGATIONS

**Pace supplies FCC with time-sensitive components for clutches for Ford and GM vehicles**

6.      FCC incorporates its preceding allegations by reference.

7.      Pace supplies FCC with five specially-manufactured automotive housings (the "Housings"). Pace's Housings are generally sub-components for FCC's automatic transmission clutches it supplies to OEM automobile manufacturers General Motors, LLC and Ford Motor Company.

8.      The Housings are unique, custom made, and not available on the open market. Pace is FCC's only supplier for the Housings. In fact, FCC specifically selected, tested, and validated Pace based on its unique ability to service FCC's requirements for the Housings. It would take FCC at least 18 months to locate and validate an alternate supplier for the Housings.

9.      The Housings are key inputs for FCC's automatic transmission clutches (the "Transmission Clutches"), which are safety-critical inputs into consumer vehicles. Because the Transmission Clutches are safety-critical, they are heavily tested and meticulously designed, so the Housings, which are an essential input into the Transmission Clutches, are specially designed and manufactured to meet GM and Ford's specific and stringent engineering and durability requirements and specifications.

10.      Indeed, each of the Housings must meet demanding specifications imposed by GM and Ford before they can be incorporated into the FCC-supplied Transmission Clutches. In particular, the Housings must be specifically qualified, validated, and approved by GM and Ford themselves prior to being incorporated into the Transmission Clutches.

11.      FCC and the Housings must also go through Ford and GM's rigorous Production Part Approval Process ("PPAP"), which involves further lengthy and extensive testing and

evaluation, and is required to change suppliers for any Housings incorporated by FCC into the Transmission Clutches, including Pace. The PPAP approvals take longer to obtain for safety-critical component inputs, like the Housings.

12.    Pace and the Housings have passed all testing and are fully approved by GM and Ford. Pace is FCC's only supplier for the Housings, and, importantly, is FCC's only supplier with the necessary approvals from GM and Ford to supply the Housings.

13.    GM and Ford implement FCC's Transmission Clutches, inclusive of the Housings, into certain of their various vehicle production programs (the "Vehicle Programs"). Those Vehicle Programs produce among the world's highest visibility and best-selling vehicles, including the Cadillac CT5, Chevrolet Camaro V6, Ford Bronco, Ford Explorer and Lincoln Aviator (the "Vehicles").

14.    The Transmission Clutches are highly-engineered components requiring extensive testing and validation. Among other things, obtaining supplier and part approvals from GM and Ford for alternative sources for the Housings is a substantial process requiring significant time and resources.

15.    As a result, it would take FCC at least 18 months to obtain, test, and validate alternate sources of supply for the Housings, and would further be subject to GM and Ford's strict validation, testing, safety and approval requirements.

16.    FCC is the only supplier of the Transmission Clutches to GM and Ford for the Vehicles, which means any interruption in the supply of Housings would necessarily interrupt production of the Vehicles.

17.    FCC cannot make the Transmission Clutches it is obligated to ship to Ford and GM without the Housings from Pace. GM and Ford cannot make the Vehicles without the Transmission Clutches supplied by FCC.

**The Supply Chain**

18.    Pace is obligated to supply FCC with its requirements for the Housings. Pace fills FCC's releases and makes bi-weekly shipments of the Housings to FCC's plant in Portland,

Indiana (the "FCC Plant"). FCC then immediately incorporates the Housings into the Transmission Clutches and prepares the Transmission Clutches for shipment to GM and Ford.

19.     FCC ships the Transmission Clutches on a daily, just-in-time basis to GM and Ford plants located in Silao, Mexico (GM) and Livonia, Michigan (Ford). Upon arriving at the GM and Ford plants, the Transmission Clutches are implemented into the Vehicles almost immediately on the Ford and GM assembly lines.

20.     Ford and GM then ship the completed Vehicles to Ford and GM dealerships for sale to consumers.

21.     The following graphic visually represents the supply chain relevant to this dispute:



22.     FCC, GM and Ford all rely on Pace to perform its delivery obligations to ensure that each, in turn, can timely perform their respective obligations to customers and consumers.

23.     Put simply, FCC cannot make the Transmission Clutches it is obligated to ship GM and Ford without the Housings, and GM and Ford cannot make the Vehicles without the Transmission Clutches. Without Pace, the supply chain to produce the Vehicles crumbles.

**Pace's irrefutable supply obligation**

24.     Pace's manufacture and FCC's purchase of the Housings are governed by FCC Purchase Order No. FIN028816 dated March 12, 2021[2] (the "Purchase Order"). **Ex. 2**. The Purchase Order includes by attachment and reference FCC's Standard Terms and Conditions (the

---

[2] From November 27, 2018 until Purchase Order No. FIN028816 was issued, FCC and Pace performed under Purchase Order FCCL018267. *See* **Ex. 3**, Original Purchase Order. In March 2021, FCC converted to a new version of its ERP software, Plex. As a result, the applicable Purchase Order number changed. All other aspects remained the same, however.

"Terms"). **Ex. 4**. The Purchase Order and Terms are collectively referred to herein as the "Supply Agreement."

25.     Prior to entering the Supply Agreement on November 27, 2018, Pace and FCC both signed a letter of intent detailing their understanding of the forthcoming Supply Agreement. *See* **Ex.** 5, April 20, 2016 Letter of Intent signed by Pace. In the Letter of Intent, both parties recognized the long-term nature of the Supply Agreement by projecting volumes of the Housings out through 2023. *Id.*

26.     The Supply Agreement makes clear that it "is a requirements contract whereby FCC agrees to purchase, and [Pace] agrees to supply, 100% of FCC's requirements of the [Housings][.]" *Id.*, § 2. The Supply Agreement further confirms that "[a]ll prices are firm[,] [and] FCC will not be obligated to pay any additional charges whatsoever[.]" *Id.*, § 7(A).

27.     FCC communicates its requirements for the Housings to Pace through (usually monthly) releases on documents referencing the Purchase Order number expressly. *See, e.g.*, **Ex. 6**, FCC Releases to Pace under the Supply Agreement for April through February 2022 (expressly noting FCC's required quantity and required date for the Housings in the specified period).

28.     The Supply Agreement requires Pace to supply the Housings for the life of the Vehicle Programs, including service parts. *See* **Ex. 4**, § 8(D) ("[Pace] expressly agrees to provide [the Housings] . . . for the life of the applicable vehicle or other original equipment manufacturer program . . . for which the [Housings] are required, including any service part requirements[.]").

29.     The Supply Agreements further make clear that "[t]ime is of the essence . . . [and that] [Pace] is liable for all direct, incidental and consequential damages, losses, costs and expenses incurred by FCC and resulting from [Pace]'s failure to . . . comply with the shipping and delivery . . . requirements of FCC and this [Supply] Agreement." *Id.*, § 3(A).

30.     Pace accepted the Supply Agreement when it manufactured and shipped the Housings pursuant to their terms. *Id.*, § 1.

**Pace demands extra-contractual price increase and
refuses to ship the Housings unless FCC capitulates**

31.    In November 2021, after performing under the Supply Agreement for years, Pace suddenly began demanding an extra-contractual price increase for the Housings. In December 2021, after FCC continuously rejected Pace's demands, Pace began threatening to withhold shipment of the Housings if FCC did not capitulate. Pace did this because it knows the devastating impact that would have on not only FCC, but every business in the supply chain for the applicable Vehicle Programs.

32.    According to Pace, the Supply Agreement is no longer as profitable as it would like, so it did not intend to continue performing its obligations unless FCC agreed to pay more than the Supply Agreement provides.

33.    For example, on November 10, 2021, Pace announced to FCC that it was "currently manufacturing the[] [P]arts at a loss and cannot continue production without the proposed price increases[.]" **Ex. 7**, Nov. 10, 2021 Pace email. Despite recognizing that "this is quite a significant increase," Pace nonetheless admitted that the purported need for a price increase was because of its own "*quoting error* as well as the increased cost of labor[.]" *Id*. (emphasis added).

34.    In that same email, Pace demanded that "final pricing negotiations close[] by 11/30/21." *Id*. Pace's demands surprised FCC, as the parties had been operating under the fixed-price Supply Agreement since 2018, and the Supply Agreement continued through the duration of the GM and Ford Vehicle Programs. This is in addition to Pace suddenly referencing, for the first time ever, a purported "quoting error," which Pace alleges took place "when this program was originally quoted"—seven years ago, in 2015. *See id*.

35.    Pace then provided FCC a presentation detailing its demands. *See* **Ex. 8**, Nov. 17, 2021, FCC Pricing Review. That document made clear that Pace was demanding approximately a $13.65 price increase for the CDF Housings and $6.95 on the E Housings.

36.    FCC estimates that it will purchase approximately 550,000 of each Part from Pace this year. Accordingly, Pace is demanding an approximate $11,330,000 price increase *on an annual basis*.

37.     As established, Pace's obligations under the Supply Agreement extend through the life of the GM and Ford Vehicle Programs, which are currently projected to continue through at least 2028.

38.     As a result, Pace's improper price increase demand easily exceeds $79,310,000 over the life of the Supply Agreement.

39.     After receiving these demands, FCC immediately engaged Pace to discuss it, determine what was driving it after years of performance under the Supply Agreement, remind Pace of its firm Supply Agreement obligations, and ensure that Pace was continuing to ship the Housings pursuant to those firm obligations.

40.     Then, at a meeting between FCC and Pace on December 3, 2021, Pace reiterated its price increase demand, but this time took it a step further. Pace indicated that it would cease shipping FCC the Housings beginning January 1, 2022 if FCC did not yield to its price increase demand. Pace made it a point, however, to tell FCC that if it paid the demand, it would receive the Housings. FCC rejected Pace's demand.

41.     Then, also on December 3, 2021, FCC, through counsel, further rejected Pace's demand, reminding Pace that the Supply Agreement "is a requirements contract that requires Pace to ship to [FCC] per releases to be specified by FCC[.]" **Ex. 9**, Dec. 3, 2021 FCC Ltr. to Pace. FCC also pointed to Terms and Conditions § 7, reminding Pace that prices under the Supply Agreement are firm, and that it is not entitled to any price increase. *See id*. As a result, FCC demanded that Pace provide adequate assurances of continued performance under UCC § 2-609. *Id*.

42.     Pace responded to FCC's request for adequate assurance of performance on December 10, 2021, asking FCC to "[p]lease accept this email response as assurance that Pace Industries will perform the FCC Order referenced above, copy of which is attached hereto." **Ex. 10**, Dec. 10, 2021 Pace email to FCC. The "FCC order referenced above" was the Purchase Order, but the attachment was the recent release issued under the Purchase Order for shipments in November and December (*see* **Ex. 6**).

43.     Given the ambiguity of Pace's response, to be sure that Pace was indeed providing assurances that it would continue to perform its obligations under the Supply Agreement for the duration of the appliable Vehicle Programs, FCC replied the next business day, December 13, 2021, reminding Pace that the Supply Agreement makes clear that its duration is for the life of the applicable GM and Ford Vehicle Program. **Ex. 10**, December 13, 2021 FCC email to Pace.

44.     In that same email, FCC also referred Pace to the Letter of Intent that Pace signed (**Ex. 5**) indicating that Pace understood that its supply obligations under the Supply Agreement were long term, and in no way was over in November of 2021. (**Ex. 10**). FCC concluded by demanding that Pace provide clarification to its purported assurances of performance, and reminding Pace that failure to do so constitutes a repudiation of the Supply Agreement under UCC § 2-610. *Id.*

45.     Pace responded by email the next day, December 14, 2021, stating that the parties were "engaged in discussions toward a commercial resolution" and requested an "accommodation beyond [the] deadline" to respond to the renewed demand for assurances. *Id.* Dec. 14, 2021 Pace email to FCC.

46.     That same day, FCC responded letting Pace know that those commercial discussions were not productive, and again reiterated its demand for assurances that Pace would continue to perform its obligations under the Supply Agreement for the duration of the Vehicle Programs. *Id.*, Dec. 14, 2021 FCC email to Pace.

47.     Pace responded later that day asserting that "[t]he contracts with their language defines the scope of Pace's obligations," and that Pace would temporarily continue shipping the Housings purportedly "under a reservation of rights" so, among other things, "supply is not interrupted during the holidays." *Id.*, Dec. 14, 2021 Pace email to FCC.

48.     Then, on December 28, 2021, Pace, through counsel, sent a letter to FCC. Among other things, Pace stated that "supply to FCC will continue through January 27th" and then purported to "reserve[] all rights with respect to any purchase orders for delivery after January 27, 2022." **Ex. 11**, December 28, 2021 Pace letter to FCC.

49.     Pace had now firmly threatened to stop shipping the Housings under the Supply Agreement starting January 27, 2022 unless FCC paid its extra-contractual demand.

50.     Thereafter, FCC engaged Pace for several days to attempt reaching Pace's commitment to continue shipping the Housings pursuant to its obligations under the Supply Agreement. After several back-and-forth discussions, Pace confirmed in a January 7, 2022 email to FCC that the parties were "at an impasse" and that the email was Pace's "last attempt at a commercial solution." **Ex. 12**, Jan. 7, 2022 Pace email to FCC.

51.     On January 7, 2022, FCC issued Pace its releases detailing its requirements and firm delivery dates for the Housings under the Supply Agreement for February 2022. **Ex. 13**, FCC February 2022 Releases under the Purchase Order.

52.     This was no different than every other release issued under the Supply Agreement since November of 2018.

53.     But Pace nonetheless followed through on its threat. On January 10, 2022, Pace emailed FCC confirming that it was abandoning the Supply Agreement stating that it "hereby rejects all obligations of the Purchase Order received on January 7, 2022[.]" Pace went on to state that its "last date for carrier pickup of Housings will be on January 27, 2022. Please plan accordingly." **Ex. 14**, Jan. 10, 2021 Pace email to FCC.

54.     Put differently, Pace rejected all of FCC's requirements of the Housings after January 27, just as it had said it would do.

55.     Pace has made clear that the only way it will continue shipping FCC the Housings under the Supply Agreement after January 27, 2022, is if FCC pays its demanded ransom. FCC merely requests that Pace do what it already agreed to do, and what it has done for years: ship the Housings at the prices, quantity and duration set forth in the Supply Agreement.

56.     As detailed above, Pace has an obligation to supply the Housings for the duration of the Vehicle Programs, and not until January 27, 2022. FCC has no other source of supply for the Housings it requires to produce the Transmission Clutches it is obligated to ship to GM and Ford.. Without the Transmission Clutches, Ford and GM are unable to produce the Vehicles.

57.     FCC is therefore left with no option but to seek this Court's emergency intervention to ensure continued supply of the Housings and to avoid shutting down FCC, GM and Ford's production lines and the Vehicle Programs. FCC has in good faith attempted to avoid seeking the Court's emergency intervention by, among other things, engaging Pace in good faith to obtain the relief sought. Pace has continued to refuse shipment of the Housings absent FCC making the demanded ransom payment.

58.     Because the supply chain for the Housings, the Transmission Clutches, and the Vehicles run on a just-in-time basis, FCC does not have a "bank" of Housings to remedy Pace's breaches of the Supply Agreement.

59.     Instead, FCC's production lines will shut down on February 2, 2022, absent continued shipments of the Housings from Pace.

**The Consequences of Pace's decision to abandon the Supply Agreement**

60.     If Pace follows through on its threat to not ship FCC the Housings starting January 27, 2022, FCC estimates its production lines will shut down on February 2, 2022. As a result, FCC will no longer be able to ship GM and Ford the Transmission Clutches beginning February 7, 2022.

61.     FCC estimates that Ford would shut down its production lines for the Vehicles on February 10, 2022, and that GM would shut down its production lines for the Vehicles on February 14, 2022—causing irreparable and catastrophic damage to ensue up and down the supply chain.

62.     FCC ships the Transmission Clutches to GM and Ford daily and operates on a just-in-time basis, like nearly all automotive suppliers. Pace honoring its contractual supply obligations is critical to FCC, GM and Ford's manufacturing operations.

63.     Even when supply is turned back on and FCC obtains the Housings, FCC requires at least 24 hours to incorporate the Housings into the Transmission Clutches and effectuate delivery to GM and Ford.

64.     Because Pace is FCC's only supplier of the Housings, and because of the extensive validation and testing that FCC, GM and Ford require prior to approval to manufacture the Housings for production on the Vehicle Programs, even if FCC identifies an alternative source for

the Housings required to avoid a shutdown, that supplier will not be able to produce the Housings before shutdowns occur.

65.     The Housings must meet demanding specifications and validation before they can be used in the manufacture of the Transmission Clutches for the Vehicles. Numerous complex and lengthy tests must be run to qualify the Housings for use in safety-critical Vehicle parts, like Transmission Clutches.

66.     A shutdown of FCC, GM and Ford production operations will result in millions of dollars of damages *per day, per OEM*.

67.     Shutting down production lines for the Vehicles at issue would send shockwaves up and down the supply chain. Many other automotive suppliers, ranging from large Tier One Fortune 100 corporations to smaller "mom and pop" suppliers in the supply chain for the Vehicles, rely on the Vehicle Programs for their livelihood, and would be immediately adversely impacted because production of the Vehicles will be halted.

68.     Further, Pace agreed in the Supply Agreement that delivery time is of the essence. **Ex. 4**, § 3(A). Time is of the essence because of the great harm that production shutdowns cause automotive supply chains. But Pace is now attempting to use the distinct market conditions, such as just-in-time inventory and the importance of supply continuity, and to improperly extort an increased price from FCC.

69.     Pace can avoid causing this catastrophic damage by simply performing its obligations under the Supply Agreement, just as it has done for many years.

70.     If Pace is allowed to continue to refuse to supply FCC with the Housings, FCC will be unable to obtain the Housings from an alternative source in a timely basis to avoid an interruption of production.

71.     Production shutdowns will result in a production stoppage and the idling of thousands of employees of FCC, GM, Ford, and the countless companies in the supply chain that manufacture and assemble other inputs for the Housings, the Transmission Clutches and the Vehicles.

72.     Such plant shutdowns will also cause FCC to suffer an irreparable loss of customer relations and goodwill. Shutting down its customers' production operations for the Vehicles will destroy FCC's reputation with its customers and other companies in the automotive industry. In addition, GM and Ford will similarly suffer a loss of customer relations and goodwill because of their inability to deliver the Vehicles ordered by consumers.

73.     Pace presumably knows that FCC cannot substitute an alternate new supplier in time to avoid irreparable harm caused by shutting down the Vehicle Programs, and appears to be using that leverage to hold the Housings "hostage" to coerce FCC into paying to its extra-contractual price increase demand, which FCC estimates totals $11,330,000 annually.

74.     FCC cannot obtain sufficient production volumes of and requisite engineering and safety approvals for substitute Housings from a new supplier for at least 18 months.

75.     FCC has complied in good faith with all of its known contractual obligations to Pace.

## COUNT I – BREACH OF CONTRACT / SPECIFIC PERFORMANCE

76.     FCC incorporates its preceding allegations by reference.

77.     The Supply Agreement is a valid and binding contract, and requires Pace to fulfill FCC's requirements for the Housings at the prices in the Supply Agreement for the life of the vehicle programs for which the Housings are supplied.

78.     FCC has satisfied all of its contractual obligations to Pace under the Supply Agreement.

79.     Pace, in flagrant violation of its contractual obligations, is refusing to supply FCC with its requirements for the Housings.

80.     Pace materially breached the Supply Agreement by refusing to continue performance after January 27, 2022.

81.     Pace also materially breached the Supply Agreement by failing to respond to FCC's demand for adequate assurances by providing FCC written assurances of performance under the Supply Agreement.

12

82.    FCC requests that this Court order Pace to continue supplying the Housings pursuant to the Supply Agreement at the contractually-specified prices for the duration of the applicable vehicle programs.

83.    If Pace does not perform its obligations under the Supply Agreement, FCC will be forced to incur significant costs and damages. Those will include, among other things, the costs associated with obtaining a new supplier for the Housings, any costs associated with FCC or any of its customers shutting down production operations, and loss of goodwill and reputation.

84.    FCC is entitled to specific performance because the Housings are unique goods. Ind. Code § 26-1-2-716.

85.    FCC is also entitled to recover from Pace the difference between the cost of cover and the Supply Agreement's prices over the duration of the applicable vehicle programs, the costs incurred with respect to resourcing and all other compensatory, incidental and consequential damages occasioned by Pace's breach and allowed by law (Ind. Code § 26-1-2-711 and 712(2)) and the Supply Agreement.

86.    FCC is also entitled to recover from Pace FCC's actual attorneys' fees and costs per Section 3(E) of the T&C (providing that Pace will "reimburse [FCC] for all actual attorney's fees (including the cost of in-house counsel) in any action arising out of this Purchase Order, unless [Pace] is the prevailing party.").

## COUNT II – DECLARATORY JUDGMENT

87.    FCC incorporates its preceding allegations by reference.

88.    The parties dispute their respective rights under the Supply Agreement.

89.    An actual controversy exists between the parties regarding their respective rights under the Supply Agreement sufficient to warrant the Court declaring the rights of the parties.

90.    FCC is entitled to a declaration that it has not materially breached, and is not currently breaching, any provision of the Supply Agreement.

91.    FCC is entitled to a declaration that Pace is obligated to perform all of its obligations and commitments to FCC under the terms of the Supply Agreement, including the obligation to provide FCC with its requirements of the Housings consistent with FCC's Terms and Conditions and for the duration of the applicable vehicle programs.

92.    An actual controversy now exists between FCC and Pace as to whether or not there has been a material breach, and it is within the jurisdiction of this Court, under Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202 to render a declaratory judgment as to the parties' respective rights.

93.    FCC is entitled to an order requiring Pace to specifically perform the Supply Agreement and provide it with its requirements of the Housings.

## COUNT III – REPUDIATION OF REQUIREMENTS CONTRACT

94.    FCC incorporates its preceding allegations by reference.

95.    Pace's failure to provide assurances of performance and written communication that it will satisfy FCC's requirements for the Housings under the Supply Agreement, and its failure to perform its contractual obligations constitutes a blatant, unreasonable and bad faith repudiation of the Supply Agreement.

96.    Pace's failure to provide assurances of performance and to perform its contractual obligations substantially impairs the value of the Supply Agreement to FCC. Consequently, Pace repudiated the Supply Agreement under Ind. Code § 26-1-2-610 and the common law.

97.    FCC is entitled to recover from Pace the difference between the cost of cover and the Supply Agreement prices over the duration of the applicable vehicle programs, the costs incurred with resourcing and all other compensatory, incidental and consequential damages occasioned by Pace's repudiation and allowed by law (Ind. Code § 26-1-2-711 and 712(2)) and the Supply Agreement, including FCC's actual attorney fees and costs, under Section 3(E) of the T&C.

## PRAYER FOR RELIEF

**WHEREFORE**, FCC requests that this Court order as follows:

A.      Specific performance under Ind. Code § 26-1-2-716;

B.      Declaratory relief under 28 U.S.C. §§2201 and 2202 and Fed. R. Civ. P. 57 that Pace has anticipatorily and in bad faith repudiated its obligations under the Supply Agreement;

C.      Temporary, preliminary and permanent mandatory injunctive relief, under Fed. R. Civ. P. 65, requiring Pace to supply FCC with necessary quantities of the Housings to satisfy FCC's requirements under the Supply Agreement throughout the duration of the applicable vehicle programs or, at minimum, until such time as FCC needs to resource to an alternate supplier(s);

D.      In addition, or in the alternative, an award of money damages in favor of FCC sufficient to compensate it for all forms of economic loss, including without limitation, direct damages, coverage damages, incidental damages, consequential damages, lost profits, lost goodwill and other costs incident to having to locate and secure alternate materials and sources of supply;

E.      An award of actual legal fees and other costs arising out of Pace's failure to perform under the Supply Agreement; and

F.      All such other relief as this Court may deem just, equitable or appropriate under the circumstances.

Respectfully submitted,

/s/ Matthew E. Wilkins
Daniel N. Sharkey
Matthew E. Wilkins
Christopher R. Struble (admission forthcoming)
BROOKS WILKINS SHARKEY & TURCO PLLC
401 S. Old Woodward Avenue, Suite 400
Birmingham, Michigan 48009
248 971-1800; wilkins@bwst-law.com

Kevin Mitchell
Mitchell Litigation & Advocacy
111 W. Berry St. Suite 211
Fort Wayne, Indiana 46802
260-444-6563; kevin@mitchelllitigation.com

Dated: January 14, 2022                    *Attorneys for Plaintiff FCC (Indiana), LLC*

# EXHIBIT 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| FCC (INDIANA), LLC, | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | Hon. |
| | ) | |
| PACE INDUSTRIES, LLC, | ) | |
| Defendant. | ) | |

## DECLARATION OF JASON PHILLIPS

Per 28 U.S.C. § 1746, I, Jason Phillips, declare under penalty of perjury that the following is true and correct to the best of my knowledge, memory, and belief:

1.    I am the Senior Manager of Housings Control and Purchasing for FCC (Indiana), LLC ("FCC").

2.    I have worked at FCC since 1991.

3.    I, and those who work with me, are responsible for FCC's commercial and purchasing relationship with Pace Industries, LLC ("Pace").

**Pace supplies FCC with time-sensitive components for clutches for Ford and GM vehicles**

4.    Pace supplies FCC with five specially-manufactured automotive housings (the "Housings"). Pace's Housings are generally sub-components for FCC's automatic transmission clutches that it supplies to two OEM automobile manufacturers, General Motors, LLC and Ford Motor Company.

5.    The Housings are unique, custom made, and not available on the open market. Pace is FCC's only supplier for the Housings. In fact, FCC specifically selected, tested, and validated Pace based on its unique ability to service FCC's requirements for the Housings. It would take FCC at least 18 months to locate and validate an alternate supplier for the Housings.

6.    The Housings are key inputs for FCC's automatic transmission clutches (the "Transmission Clutches"), which are safety-critical inputs into consumer vehicles. Because the

1

Transmission Clutches are safety-critical, they are heavily tested and meticulously designed, so the Housings, which are an essential input into the Transmission Clutches, are specially designed and manufactured to meet GM and Ford's specific and stringent engineering and durability requirements and specifications.

7.      Indeed, each of the Housings must meet demanding specifications imposed by GM and Ford before they can be incorporated into the FCC-supplied Transmission Clutches. In particular, the Housings must be specifically qualified, validated, and approved by GM and Ford themselves prior to being incorporated into the Transmission Clutches.

8.      FCC and the Housings must also go through Ford and GM's rigorous Production Part Approval Process ("PPAP"), which involves further lengthy and extensive testing and evaluation, and is required to change suppliers for any Housings incorporated by FCC into the Transmission Clutches, including Pace. The PPAP approvals take longer to obtain for safety-critical component inputs, like the Housings.

9.      Pace and the Housings have passed all testing and are fully approved by GM and Ford. Pace is FCC's only supplier for the Housings, and, importantly, is FCC's only supplier with the necessary approvals from GM and Ford to supply the Housings.

10.      GM and Ford implement FCC's Transmission Clutches, inclusive of the Housings, into certain of their various vehicle production programs (the "Vehicle Programs"). Those Vehicle Programs produce among the world's highest visibility and best-selling vehicles, including the Cadillac CT5, Chevrolet Camaro V6, Ford Bronco, Ford Explorer and Lincoln Aviator (the "Vehicles").

11.      The Transmission Clutches are highly-engineered components requiring extensive testing and validation. Among other things, obtaining supplier and part approvals from GM and Ford for alternative sources for the Housings is a substantial process requiring significant time and resources.

2

12.     As a result, it would take FCC at least 18 months to obtain, test, and validate alternate sources of supply for the Housings, and would further be subject to GM and Ford's strict validation, testing, safety and approval requirements.

13.     FCC is the only supplier of the Transmission Clutches to GM and Ford for the Vehicles, which means any interruption in the supply of Housings would necessarily interrupt production of the Vehicles.

14.     FCC cannot make the Transmission Clutches it is obligated to ship to Ford and GM without the Housings from Pace. GM and Ford cannot make the Vehicles without the Transmission Clutches supplied by FCC.

**The Supply Chain**

15.     Pace is obligated to supply FCC with its requirements for the Housings. Pace fills FCC's releases and makes bi-weekly shipments of the Housings to FCC's plant in Portland, Indiana (the "FCC Plant"). FCC then immediately incorporates the Housings into the Transmission Clutches that it manufactures for GM and Ford.

16.     FCC ships the Transmission Clutches on a daily, just-in-time basis to GM and Ford plants in Silao, Mexico (GM) and Livonia, Michigan (Ford). Upon arriving, GM and Ford incorporate the Transmission Clutches into the Vehicles almost immediately upon on their assembly lines.

17.     Ford and GM then ship the completed Vehicles to Ford and GM dealerships for sale to consumers.

18.     The following graphic visually represents the supply chain:



19.     FCC, GM, and Ford all rely on Pace to perform its delivery obligations to ensure that each, in turn, can timely perform their respective obligations to customers and consumers.

20.     Put simply, FCC cannot make the Transmission Clutches that it is obligated to ship to GM and Ford without the Housings, and GM and Ford cannot make the Vehicles without the Transmission Clutches. Without Pace, the supply chain to produce the Vehicles crumbles.

### Pace's long-term, fixed-price supply obligation

21.      Pace's manufacture and FCC's purchase of the Housings are governed by FCC Purchase Order No. FIN028816[1] (the "Purchase Order"). **Ex. 2**.[2] The Purchase Order includes by attachment and reference FCC's Standard Terms and Conditions (the "Terms"). **Ex. 4**. The Purchase Order and Terms are collectively referred to as the "Supply Agreement."

22.     Before entering into the Supply Agreement, Pace and FCC signed a letter of intent detailing their understanding of the forthcoming Supply Agreement. *See* **Ex. 5**, April 20, 2016 Letter of Intent signed by Pace. In the Letter of Intent, both parties recognized the long-term nature of the Supply Agreement by projecting volumes of the Housings out through 2023. *Id.*

23.     The Supply Agreement "is a requirements contract whereby FCC agrees to purchase, and [Pace] agrees to supply, 100% of FCC's requirements of the [Housings][.]" *Id.*, § 2. The Supply Agreement states that "[a]ll prices are firm[,] [and] FCC will not be obligated to pay any additional charges whatsoever[.]" *Id.*, § 7(A).

24.     FCC communicates its requirements for the Housings to Pace through (usually monthly) releases on documents expressly referencing the Purchase Order number. *See, e.g.*, **Ex.**

---

[1] From November 27, 2018 until Purchase Order No. FIN028816 was issued on March 12, 2021, FCC and Pace performed under a previous Purchase Order, No. FCCL018267. *See* **Ex. 3**, Original Purchase Order.  In March 2021, FCC converted to a new version of its Enterprise Resource Planning software, Plex. As a result, the applicable Purchase Order number changed, but all other aspects remained the same.

[2] For sake of brevity, all Exhibits referenced herein are those attached with corresponding Exhibit numbers to FCC's Brief in Support of Motion for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue, or, In The Alternative, An Expedited Preliminary Injunction Hearing.

**6**, FCC Releases to Pace under the Supply Agreement for April through February 2022 (expressly noting FCC's required quantity and required date for the Housings in the specified period).

25.    The Supply Agreement requires Pace to supply the Housings for the life of the Vehicle Programs, including service parts. *See* **Ex. 4**, § 8(D) ("[Pace] expressly agrees to provide [the Housings] . . . for the life of the applicable vehicle or other original equipment manufacturer program . . . for which the [Housings] are required, including any service part requirements[.]").

26.    The Supply Agreement further makes clear that "[t]ime is of the essence . . . [and that] [Pace] is liable for all direct, incidental and consequential damages, losses, costs and expenses incurred by FCC and resulting from [Pace]'s failure to . . . comply with the shipping and delivery . . . requirements of FCC and this [Supply] Agreement." *Id.*, § 3(A).

27.    By manufactured and shipping the Housings pursuant to its terms, Pace accepted the Supply Agreement. *Id.*, § 1.

### Pace demands extra-contractual price increase and refuses to ship the Housings unless FCC capitulates

28.    In November 2021, after performing under the Supply Agreement for years, Pace suddenly began demanding an extra-contractual price increase for the Housings. In December 2021, after FCC continuously rejected Pace's demands, Pace began threatening to withhold shipment of the Housings if FCC did not capitulate. Pace did this because it knows the devastating impact that would have on not only FCC, but every business in the supply chain for the applicable Vehicle Programs.

29.    According to Pace, the Supply Agreement is no longer as profitable as it would like, so it now refuses to continue performing its obligations unless FCC agrees to pay more than the Supply Agreement provides.

30.    For example, on November 10, 2021, Pace announced to FCC that it was "currently manufacturing the[] [P]arts at a loss and cannot continue production without the proposed price increases[.]" **Ex. 7**, Nov. 10, 2021 Pace email. Despite recognizing that "this is quite a significant increase," Pace nonetheless admitted that the purported need for a price

5

increase was because of its own "*quoting error* as well as the increased cost of labor[.]" *Id.* (emphasis added).

31.     In that same email, Pace demanded that "final pricing negotiations close[] by 11/30/21." *Id.* Pace's demands surprised FCC, as the parties had been operating under the fixed-price Supply Agreement since 2018, and the Supply Agreement continued through the duration of the GM and Ford Vehicle Programs. This is in addition to Pace suddenly referencing, for the first time ever, a purported "quoting error," which Pace alleges took place "when this program was originally quoted"—seven years earlier, in 2015. *See id.*

32.     Pace then provided FCC a presentation detailing its demands. *See* **Ex. 8**, Nov. 17, 2021, FCC Pricing Review. That document made clear that Pace was demanding approximately a $13.65 price increase for the CDF Housings and $6.95 on the E Housings.

33.     FCC estimates that it will purchase approximately 550,000 of each of the Housings from Pace this year. Accordingly, Pace's demand equates to an approximate $11,330,000 price increase *on an annual basis*.

34.     As detailed above, Pace's obligations under the Supply Agreement extend through the life of the GM and Ford Vehicle Programs, which are currently projected to continue through at least 2028.

35.     As a result, Pace's improper price increase demand easily exceeds $79,310,000 over the life of the Supply Agreement.

36.     After receiving these demands, FCC immediately engaged Pace to discuss it, determine what was driving it after years of performance under the Supply Agreement, remind Pace of its firm Supply Agreement obligations, and ensure that Pace was continuing to ship the Housings pursuant to those firm obligations.

37.     Then, at a meeting on December 3, 2021, Pace reiterated its price increase demand, but this time indicated that it would cease shipping FCC the Housings beginning January 1, 2022 if FCC did not yield to its price increase demand. FCC rejected Pace's demand.

38.     Then, also on December 3, 2021, FCC, through its counsel, further rejected Pace's demand, reminding Pace that the Supply Agreement "is a requirements contract that requires Pace to ship to [FCC] per releases to be specified by FCC[.]" **Ex. 9**, Dec. 3, 2021 FCC Ltr. to Pace. FCC also pointed to Terms and Conditions § 7, reminding Pace that prices under the Supply Agreement are firm, and that it is not entitled to any price increase. *See id*. As a result, FCC demanded that Pace provide adequate assurances of continued performance under Uniform Commercial Code § 2-609. *Id*.

39.     Pace responded to FCC's request for adequate assurance of performance on December 10, 2021, asking FCC to "[p]lease accept this email response as assurance that Pace Industries will perform the FCC Order referenced above, copy of which is attached hereto." **Ex. 10**, Dec. 10, 2021 Pace email to FCC. The "FCC order referenced above" was the Purchase Order, but the attachment was the recent release issued under the Purchase Order for shipments in November and December (*see* **Ex. 6**).

40.     Based on the ambiguity of Pace's response, to be sure that Pace was indeed providing assurances that it would continue to perform its obligations under the Supply Agreement for the duration of the appliable Vehicle Programs, FCC replied the next business day, Monday December 13, 2021, reminding Pace that the Supply Agreement makes clear that its duration is for the life of the applicable GM and Ford Vehicle Programs. **Ex. 10**, December 13, 2021 FCC email to Pace.

41.     In that same email, FCC also referred Pace to the Letter of Intent that Pace signed (**Ex. 5**) indicating that Pace understood that its supply obligations under the Supply Agreement were long term, and in no way was over in November of 2021. **(Ex. 10)**. FCC concluded by demanding that Pace provide clarification to its purported assurances of performance, and reminding Pace that failure to do so constitutes a repudiation of the Supply Agreement under UCC § 2-610. *Id*.

42.     Pace responded by email the next day, stating that the parties were "engaged in discussions toward a commercial resolution" and requested an "accommodation beyond [the] deadline" to respond to the renewed demand for assurances. *Id.* Dec. 14, 2021 Pace email to FCC.

43.     That same day, FCC responded letting Pace know that those commercial discussions were not productive, and again reiterated its demand for assurances that Pace would continue to perform its obligations under the Supply Agreement for the duration of the Vehicle Programs. *Id.*, Dec. 14, 2021 FCC email to Pace.

44.     Pace responded later that day asserting that "[t]he contracts with their language defines the scope of Pace's obligations," and that Pace would temporarily continue shipping the Housings purportedly "under a reservation of rights" so, among other things, "supply is not interrupted during the holidays." *Id.*, Dec. 14, 2021 Pace email to FCC.

45.     Then, on December 28, Pace, through counsel, sent a letter to FCC. Among other things, Pace stated that "supply to FCC will continue through January 27th" and then purported to "reserve[] all rights with respect to any purchase orders for delivery after January 27, 2022." **Ex. 11**, December 28, 2021 Pace letter to FCC.

46.     Pace had now firmly threatened to stop shipping the Housings under the Supply Agreement starting January 27, 2022 unless FCC paid its extra-contractual demand.

47.     Thereafter, FCC engaged Pace for several days to attempt reaching Pace's commitment to continue shipping the Housings pursuant to its obligations under the Supply Agreement. After several back-and-forth discussions, Pace confirmed in a January 7, 2022 email to FCC that the parties were "at an impasse" and that the email was Pace's "last attempt at a commercial solution." **Ex. 12**, Jan. 7, 2022 Pace email to FCC.

48.     On January 7, 2022, FCC issued Pace its releases detailing its requirements and firm delivery dates for the Housings under the Supply Agreement for February 2022. **Ex. 13**, FCC February 2022 Releases under the Purchase Order.

49.     This was no different than every other release issued under the Supply Agreement since November of 2018.

8

50.    But Pace nonetheless followed through on its threat. On January 10, 2022, Pace emailed FCC confirming that it was abandoning the Supply Agreement stating that it "hereby rejects all obligations of the Purchase Order received on January 7, 2022[.]" Pace went on to state that its "last date for carrier pickup of Housings will be on January 27, 2022. Please plan accordingly." **Ex. 14**, Jan. 10, 2022 Pace email to FCC.

51.    Put differently, Pace rejected all of FCC's requirements of the Housings after January 27, just as it had said it would do.

52.    Pace has made clear that the only way it will continue shipping FCC the Housings under the Supply Agreement after January 27, 2022, is if FCC pays its demanded ransom. FCC merely requests that Pace do what it already agreed to do, and what it has done for years: ship the Housings at the prices, quantity and duration set forth in the Supply Agreement.

53.    As detailed above, Pace has an obligation to supply the Housings for the duration of the Vehicle Programs, and not until January 27, 2022. FCC has no other source of supply for the Housings it requires to produce the Transmission Clutches it is obligated to ship to GM and Ford. Without the Transmission Clutches, Ford and GM are unable to produce the Vehicles.

54.    FCC is therefore seeking this Court's emergency intervention to ensure continued supply of the Housings and to avoid shutting down FCC, GM and Ford's production lines and the Vehicle Programs. FCC has in good faith attempted to avoid seeking the Court's emergency intervention by, among other things, engaging Pace in good faith to obtain the relief sought. Pace has continued to refuse shipment of the Housings absent FCC making the demanded ransom payment.

55.    Because the supply chain for the Housings, the Transmission Clutches, and the Vehicles run on a just-in-time basis, FCC does not have a "bank" of Housings to remedy Pace's breaches of the Supply Agreement.

56.    Instead, FCC's production lines will shut down on February 2, 2022, absent continued shipments of the Housings from Pace.

**The Consequences of Pace's decision to abandon the Supply Agreement**

9

57.     If Pace follows through on its threat to not ship FCC the Housings starting January 27, 2022, FCC estimates its production lines will shut down on February 2, 2022. As a result, FCC will no longer be able to ship GM and Ford the Transmission Clutches beginning February 7, 2022.

58.     FCC estimates that Ford would shut down its production lines for the Vehicles on February 10, 2022, and that GM would shut down its production lines for the Vehicles on February 14, 2022—causing irreparable and catastrophic damage to ensue up and down the supply chain.

59.     FCC ships the Transmission Clutches to GM and Ford daily and operates on a just-in-time basis, like nearly all automotive suppliers. Pace honoring its contractual supply obligations is critical to FCC, GM and Ford's manufacturing operations.

60.     Even when supply is turned back on and FCC obtains the Housings, FCC requires at least 24 hours to incorporate the Housings into the Transmission Clutches and effectuate delivery to GM and Ford.

61.     Because Pace is FCC's only supplier of the Housings, and because of the extensive validation and testing that FCC, GM and Ford require prior to approval to manufacture the Housings for production on the Vehicle Programs, even if FCC identifies an alternative source for the Housings required to avoid a shutdown, that supplier will not be able to produce the Housings before shutdowns occur.

62.     The Housings must meet demanding specifications and validation before they can be used in the manufacture of the Transmission Clutches for the Vehicles. Numerous complex and lengthy tests must be run to qualify the Housings for use in safety-critical Vehicle parts, like Transmission Clutches.

63.     A shutdown of FCC, GM, and Ford production operations will result in millions of dollars of damages *per day, per OEM*.

64.     Shutting down production lines for the Vehicles at issue would also have repercussions down the supply chain. Many other automotive suppliers, ranging from large Tier One Fortune 100 corporations to smaller "mom and pop" suppliers in the supply chain for the

Vehicles, rely on the Vehicle Programs for their livelihood, and would be immediately adversely impacted because production of the Vehicles will be halted.

65.    Further, Pace agreed in the Supply Agreement that delivery time is of the essence. **Ex. 4**, § 3(A). Time is of the essence because of the great harm that production shutdowns cause automotive supply chains. But Pace is now attempting to use the distinct market conditions, such as just-in-time inventory and the importance of supply continuity, to improperly extort an increased price from FCC.

66.    Pace can avoid causing this catastrophic damage by simply performing its obligations under the Supply Agreement, just as it has done for many years.

67.    If Pace is allowed to continue to refuse to supply FCC with the Housings, FCC will be unable to obtain the Housings from an alternative source in a timely basis to avoid an interruption of production.

68.    Production shutdowns will result in a production stoppage and the idling of thousands of employees of FCC, GM, Ford, and the countless companies in the supply chain that manufacture and assemble other inputs for the Housings, the Transmission Clutches and the Vehicles.

69.    Such plant shutdowns will also cause FCC to suffer an irreparable loss of customer relations and goodwill. Shutting down its customers' production operations for the Vehicles will destroy FCC's reputation with its customers and other companies in the automotive industry. In addition, GM and Ford will similarly suffer a loss of customer relations and goodwill because of their inability to deliver the Vehicles ordered by consumers.

70.    Pace presumably knows that FCC cannot substitute an alternate new supplier in time to avoid irreparable harm caused by shutting down the Vehicle Programs, and appears to be using that leverage to hold the Housings "hostage" to coerce FCC into paying to its extra-contractual price increase demand, which FCC estimates totals $11,330,000 annually.

71.    FCC cannot obtain sufficient production volumes of and requisite engineering and safety approvals for substitute Housings from a new supplier for at least 18 months.

11

72.     FCC has complied in good faith with all of its known contractual obligations to Pace.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, memory, and belief. Executed on January 14, 2022.

1-14-2022

Jason Phillips
Purchasing Manager
FCC (Indiana), LLC

# EXHIBIT 2



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

| Supplier | Pace Industries<br>Pace Division<br>Harrison Division<br>513 Hwy 62/65 Bypass N<br>Harrison, AR 72601<br>Phone: 870-741-8255<br>Fax: 870-741-4998 | PO No | FIN028816 |
|---|---|---|---|
| | | PO Date | 3/12/2021 |
| | | Due Date | |
| | | Purchase Order Revision | |
| | | PO Revision Date | |
| Attention | Geanetta  Moore<br>870-741-8255 Ext 1300 | Issued By | VanNote, Erica<br>260-726-8023  Ext: 1046<br>Fax: 260-726-7782<br>evannote@e-fcci.com |
| Ship To | FCC (Indiana), LLC<br>555 Industrial Park Rd<br>Portland, IN 47371<br>Phone: (260) 726-8023 | Carrier | TJ EXPRESS SERVICE, LLC |
| | | Via | Ground |
| | | Payment Terms | Net 30 |
| Bill To | FCC (Indiana), LLC<br>555 Industrial Park Rd<br>Portland, IN 47371 | FOB | Origin |
| | | Freight Terms | Collect |
| | | Note | |

| | | | | | | | Items | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1:1 | 24044264 | 001 | | | | E CYLINDER | Firm | 4/6/2021 | 0 pc | | |
| 1:2 | | | | | | | Firm | 4/15/2021 | 0 pc | | |
| 1:3 | | | | | | | Firm | 4/20/2021 | 700 pc | | |
| | | | | | | | | **Sub Total** | **700 pc** | | |
| 2:1 | 24044267 | 002 | | | | CDF HOUSING | Firm | 4/6/2021 | 0 pc | | |
| 2:2 | | | | | | | Firm | 4/15/2021 | 810 pc | | |
| 2:3 | | | | | | | Firm | 4/22/2021 | 810 pc | | |
| 2:4 | | | | | | | Firm | 4/29/2021 | 405 pc | | |
| | | | | | | | | **Sub Total** | **2,025 pc** | | |
| 3:1 | L1MP-7P182-AC | 210201 | | | | HT CDF HOUSING | Firm | 4/6/2021 | 0 pc | | |
| 3:2 | | | | | | | Firm | 4/8/2021 | 0 pc | | |
| 3:3 | | | | | | | Firm | 4/13/2021 | 2,970 pc | | |
| 3:4 | | | | | | | Firm | 4/15/2021 | 1,350 pc | | |
| 3:5 | | | | | | | Firm | 4/20/2021 | 1,350 pc | | |
| 3:6 | | | | | | | Firm | 4/22/2021 | 1,080 pc | | |
| 3:7 | | | | | | | Firm | 4/27/2021 | 945 pc | | |
| 3:8 | | | | | | | Firm | 4/29/2021 | 945 pc | | |
| | | | | | | | | **Sub Total** | **8,640 pc** | | |
| 4:1 | LP5P-7A360-BB | 20200302 | | | | E CYLINDER | Firm | 4/1/2021 | 3,500 pc | | |
| 4:2 | | | | | | | Firm | 4/6/2021 | 0 pc | | |

VanNote, Erica



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4:3 | | | | | | | Firm | 4/8/2021 | 0 pc | | |
| 4:4 | | | | | | | Firm | 4/13/2021 | 4,550 pc | | |
| 4:5 | | | | | | | Firm | 4/15/2021 | 4,200 pc | | |
| 4:6 | | | | | | | Firm | 4/20/2021 | 3,500 pc | | |
| 4:7 | | | | | | | Firm | 4/22/2021 | 3,500 pc | | |
| 4:8 | | | | | | | Firm | 4/27/2021 | 3,150 pc | | |
| 4:9 | | | | | | | Firm | 4/29/2021 | 3,150 pc | | |
| | | | | | | | | **Sub Total** | **25,550 pc** | | |
| | | | | | | | | | | | |
| 5:1 | LP5P-7P182-BC | 210201 | | | | CDF Housing | Firm | 4/1/2021 | 2,970 pc | | |
| 5:2 | | | | | | | Firm | 4/6/2021 | 0 pc | | |
| 5:3 | | | | | | | Firm | 4/8/2021 | 0 pc | | |
| 5:4 | | | | | | | Firm | 4/13/2021 | 0 pc | | |
| 5:5 | | | | | | | Firm | 4/15/2021 | 2,700 pc | | |
| 5:6 | | | | | | | Firm | 4/20/2021 | 3,510 pc | | |
| 5:7 | | | | | | | Firm | 4/22/2021 | 3,105 pc | | |
| 5:8 | | | | | | | Firm | 4/27/2021 | 3,510 pc | | |
| 5:9 | | | | | | | Firm | 4/29/2021 | 3,510 pc | | |
| | | | | | | | | **Sub Total** | **19,305 pc** | | |
| | | | | | | | | | **Grand Total** | | |

| Notes |
|---|

VanNote, Erica

# EXHIBIT 3



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Supplier | Pace Industries | PO No | FCCI018267 |
|---|---|---|---|
| | Pace Division | PO Date | 11/27/2018 |
| | Harrison Division | Due Date | |
| | 513 Hwy 62/65 Bypass N | Purchase Order Revision | |
| | Harrison, AR 72601 | PO Revision Date | |
| Attention | Geanetta Moore | Issued By | VanNote, Erica |
| | 870-741-8255 Ext 1300 | | 260-726-8023  Ext: 1046 |
| Ship To | FCC (Indiana), LLC | | Fax: 260-726-7782 |
| | 555 Industrial Park Rd | | evannote@e-fcci.com |
| | Portland, IN 47371 | | |
| | Phone: (260) 726-8023 | Via | Ground |
| Bill To | FCC (Indiana), LLC | Payment Terms | Net 30 |
| | 555 Industrial Park Rd | FOB | Origin |
| | Portland, IN 47371 | Freight Terms | Collect |
| | | Note | |

## Items

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 :7 | 24044264 | 001 | | | | E CYLINDER | Received | 2/25/2021 | 350 pc | 350 pc | | |
| 1 :1 | | | | | | | Received | 3/4/2021 | 700 pc | 700 pc | | |
| 1 :2 | | | | | | | Received | 3/9/2021 | 700 pc | 700 pc | | |
| 1 :3 | | | | | | | Received | 3/11/2021 | 350 pc | 350 pc | | |
| 1 :4 | | | | | | | Received | 3/16/2021 | 700 pc | 700 pc | | |
| 1 :5 | | | | | | | Received | 3/23/2021 | 700 pc | 700 pc | | |
| 1 :6 | | | | | | | Received | 3/30/2021 | 700 pc | 700 pc | | |
| | | | | | | | | **Sub Total** | **4,200 pc** | **4,200 pc** | | |
| 2 :1 | 24044267 | 002 | | | | CDF HOUSING | Received | 3/4/2021 | 405 pc | 405 pc | | |
| 2 :2 | | | | | | | Received | 3/9/2021 | 675 pc | 675 pc | | |
| 2 :3 | | | | | | | Received | 3/16/2021 | 810 pc | 810 pc | | |
| 2 :4 | | | | | | | Received | 3/23/2021 | 810 pc | 810 pc | | |
| 2 :5 | | | | | | | Received | 3/30/2021 | 405 pc | 405 pc | | |
| | | | | | | | | **Sub Total** | **3,105 pc** | **3,105 pc** | | |



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 :10 | L1MP-7P182-AC | 20210324 | | | | HT CDF HOUSING | Received | 2/25/2021 | 2,025  pc | 2,025  pc | | |
| 3 :1 | | | | | | | Received | 3/2/2021 | 1,080  pc | 1,080  pc | | |
| 3 :2 | | | | | | | Received | 3/4/2021 | 1,620  pc | 1,620  pc | | |
| 3 :3 | | | | | | | Received | 3/9/2021 | 810  pc | 810  pc | | |
| 3 :4 | | | | | | | Received | 3/11/2021 | 810  pc | 810  pc | | |
| 3 :5 | | | | | | | Received | 3/16/2021 | 810  pc | 810  pc | | |
| 3 :6 | | | | | | | Received | 3/18/2021 | 810  pc | 810  pc | | |
| 3 :7 | | | | | | | Received | 3/23/2021 | 810  pc | 810  pc | | |
| 3 :8 | | | | | | | Received | 3/25/2021 | 810  pc | 810  pc | | |
| 3 :9 | | | | | | | Received | 3/30/2021 | 810  pc | 810  pc | | |
| | | | | | | | | **Sub Total** | **10,395  pc** | **10,395 pc** | | |
| 4 :10 | LP5P-7A360-BB | 20200302 | | | | E CYLINDER | Received | 2/25/2021 | 3,320  pc | 3,320  pc | | |
| 4 :1 | | | | | | | Received | 3/2/2021 | 3,680  pc | 3,680  pc | | |
| 4 :2 | | | | | | | Received | 3/4/2021 | 2,100  pc | 2,100  pc | | |
| 4 :3 | | | | | | | Received | 3/9/2021 | 2,800  pc | 2,800  pc | | |
| 4 :4 | | | | | | | Received | 3/11/2021 | 2,800  pc | 2,800  pc | | |
| 4 :5 | | | | | | | Received | 3/16/2021 | 3,020  pc | 3,020  pc | | |
| 4 :6 | | | | | | | Received | 3/18/2021 | 3,150  pc | 3,150  pc | | |
| 4 :7 | | | | | | | Received | 3/23/2021 | 3,500  pc | 3,500  pc | | |
| 4 :8 | | | | | | | Received | 3/25/2021 | 3,500  pc | 3,500  pc | | |
| 4 :9 | | | | | | | Received | 3/30/2021 | 3,500  pc | 3,530  pc | | |
| | | | | | | | | **Sub Total** | **31,370  pc** | **31,400 pc** | | |

F.C.C. **FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 :10 | LP5P-7P182-BC | 20210324 | | | | CDF Housing | Received | 2/25/2021 | 2,835 pc | 2,835 pc | | |
| 5 :1 | | | | | | | Cancelled | 3/2/2021 | 0 pc | 0 pc | | |
| 5 :2 | | | | | | | Received | 3/4/2021 | 1,485 pc | 1,485 pc | | |
| 5 :3 | | | | | | | Received | 3/9/2021 | 2,835 pc | 2,835 pc | | |
| 5 :4 | | | | | | | Received | 3/11/2021 | 2,835 pc | 2,835 pc | | |
| 5 :5 | | | | | | | Received | 3/16/2021 | 2,430 pc | 2,430 pc | | |
| 5 :6 | | | | | | | Received | 3/18/2021 | 2,430 pc | 2,430 pc | | |
| 5 :7 | | | | | | | Received | 3/23/2021 | 2,970 pc | 2,970 pc | | |
| 5 :8 | | | | | | | Received | 3/25/2021 | 2,970 pc | 2,970 pc | | |
| 5 :9 | | | | | | | Received | 3/30/2021 | 2,970 pc | 2,970 pc | | |
| | | | | | | | | **Sub Total** | **23,760 pc** | **23,760 pc** | | |
| 6 :1 | LP5P-7A360-BB | 20190812 | | | | E CYLINDER STACK CHANGE | Cancelled | 12/3/2020 | 0 pc | 0 pc | | |
| 6 :2 | | | | | | | Received | 12/8/2020 | 3,850 pc | 3,850 pc | | |
| 6 :3 | | | | | | | Received | 12/10/2020 | 4,550 pc | 4,550 pc | | |
| 6 :4 | | | | | | | Received | 12/15/2020 | 4,200 pc | 4,200 pc | | |
| 6 :5 | | | | | | | Received | 12/17/2020 | 4,200 pc | 4,200 pc | | |
| 6 :6 | | | | | | | Received | 12/22/2020 | 5,250 pc | 5,250 pc | | |
| 6 :7 | | | | | | | Received | 1/5/2021 | 3,150 pc | 3,150 pc | | |
| 6 :8 | | | | | | | Received | 1/7/2021 | 4,200 pc | 4,200 pc | | |
| 6 :9 | | | | | | | Received | 1/12/2021 | 4,180 pc | 4,180 pc | | |
| 6 :10 | | | | | | | Received | 1/14/2021 | 3,610 pc | 3,610 pc | | |
| 6 :11 | | | | | | | Received | 1/19/2021 | 2,800 pc | 2,800 pc | | |
| 6 :12 | | | | | | | Received | 1/21/2021 | 2,800 pc | 2,800 pc | | |
| 6 :13 | | | | | | | Received | 1/26/2021 | 2,800 pc | 2,800 pc | | |
| 6 :14 | | | | | | | Received | 1/28/2021 | 5,170 pc | 5,170 pc | | |
| 6 :15 | | | | | | | Received | 2/2/2021 | 4,900 pc | 4,900 pc | | |
| 6 :16 | | | | | | | Received | 2/4/2021 | 5,250 pc | 5,250 pc | | |
| 6 :17 | | | | | | | Received | 2/9/2021 | 3,500 pc | 3,500 pc | | |
| 6 :18 | | | | | | | Received | 2/11/2021 | 3,449 pc | 3,449 pc | | |
| 6 :19 | | | | | | | Received | 2/16/2021 | 2,100 pc | 2,100 pc | | |
| 6 :20 | | | | | | | Received | 2/18/2021 | 3,500 pc | 3,500 pc | | |

FCC (Indiana)
FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6 :21 | | | | | | | Received | 2/23/2021 | 3,500 pc | 3,500 pc | | |
| 6 :22 | | | | | | | Received | 2/25/2021 | 180 pc | 180 pc | | |
| 6 :32 | | | | | | | Cancelled | 2/25/2021 | 0 pc | 0 pc | | |
| 6 :23 | | | | | | | Cancelled | 3/2/2021 | 0 pc | 0 pc | | |
| 6 :24 | | | | | | | Cancelled | 3/4/2021 | 0 pc | 0 pc | | |
| 6 :25 | | | | | | | Cancelled | 3/9/2021 | 0 pc | 0 pc | | |
| 6 :26 | | | | | | | Cancelled | 3/11/2021 | 0 pc | 0 pc | | |
| 6 :27 | | | | | | | Cancelled | 3/16/2021 | 0 pc | 0 pc | | |
| 6 :28 | | | | | | | Cancelled | 3/18/2021 | 0 pc | 0 pc | | |
| 6 :29 | | | | | | | Cancelled | 3/23/2021 | 0 pc | 0 pc | | |
| 6 :30 | | | | | | | Cancelled | 3/25/2021 | 0 pc | 0 pc | | |
| 6 :31 | | | | | | | Cancelled | 3/30/2021 | 0 pc | 0 pc | | |
| | | | | | | | | **Sub Total** | **77,139 pc** | **77,139 pc** | | |
| | | | | | | | | | | | | |
| 7 :1 | 24296258 | 003 | | | | E CYLINDER N+3 Data Required | Cancelled | 5/2/2019 | 0 pc | 0 pc | | |
| 7 :2 | | | | | | N+3 Data Required | Cancelled | 5/16/2019 | 0 pc | 0 pc | | |
| 7 :3 | | | | | | GP12 Data Required; GM TOOL TO BE USED, 6pieces to be sent as soon as ready can be sent REGULAR TRUCK/ UPS/FedEX | Received | 5/16/2019 | 1,750 pc | 1,750 pc | | |
| 7 :4 | | | | | | | Received | 6/17/2019 | 671 pc | 671 pc | | |
| 7 :6 | | | | | | | Cancelled | 6/18/2019 | 0 pc | 0 pc | | |
| 7 :5 | | | | | | | Received | 6/27/2019 | 700 pc | 700 pc | | |
| 7 :7 | | | | | | | Cancelled | 6/27/2019 | 0 pc | 0 pc | | |
| 7 :8 | | | | | | | Received | 7/11/2019 | 350 pc | 350 pc | | |
| 7 :9 | | | | | | | Received | 7/18/2019 | 700 pc | 700 pc | | |
| 7 :10 | | | | | | | Received | 7/23/2019 | 350 pc | 350 pc | | |
| 7 :11 | | | | | | | Received | 7/25/2019 | 350 pc | 350 pc | | |
| 7 :12 | | | | | | | Received | 8/1/2019 | 350 pc | 350 pc | | |
| 7 :13 | | | | | | | Received | 8/8/2019 | 700 pc | 700 pc | | |
| 7 :14 | | | | | | | Received | 8/15/2019 | 350 pc | 350 pc | | |
| 7 :15 | | | | | | | Received | 8/22/2019 | 350 pc | 350 pc | | |
| 7 :17 | | | | | | | Received | 8/27/2019 | 700 pc | 700 pc | | |
| 7 :16 | | | | | | | Received | 8/29/2019 | 700 pc | 700 pc | | |

F.C.C. FCC (Indiana)

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7 :18 | | | | | | | Received | 9/3/2019 | 350 pc | 350 pc | | |
| 7 :19 | | | | | | | Received | 9/10/2019 | 700 pc | 700 pc | | |
| 7 :20 | | | | | | | Received | 9/17/2019 | 700 pc | 700 pc | | |
| 7 :21 | | | | | | | Received | 9/24/2019 | 350 pc | 350 pc | | |
| 7 :22 | | | | | | | Received | 10/1/2019 | 700 pc | 700 pc | | |
| 7 :23 | | | | | | | Received | 10/8/2019 | 700 pc | 700 pc | | |
| 7 :24 | | | | | | | Received | 10/15/2019 | 350 pc | 350 pc | | |
| 7 :25 | | | | | | | Received | 10/31/2019 | 88 pc | 88 pc | | |
| 7 :27 | | | | | | | Cancelled | 11/26/2019 | 0 pc | 0 pc | | |
| 7 :26 | | | | | | | Cancelled | 12/3/2019 | 0 pc | 0 pc | | |
| 7 :31 | | | | | | | Received | 1/2/2020 | 1,050 pc | 1,050 pc | | |
| 7 :28 | | | | | | | Received | 1/9/2020 | 700 pc | 700 pc | | |
| 7 :29 | | | | | | | Received | 1/16/2020 | 1,160 pc | 1,160 pc | | |
| 7 :30 | | | | | | | Received | 1/23/2020 | 1,400 pc | 1,400 pc | | |
| 7 :32 | | | | | | | Received | 1/30/2020 | 1,050 pc | 1,050 pc | | |
| 7 :35 | | | | | | | Received | 2/11/2020 | 700 pc | 700 pc | | |
| 7 :33 | | | | | | | Received | 2/18/2020 | 700 pc | 700 pc | | |
| 7 :34 | | | | | | | Received | 2/25/2020 | 700 pc | 700 pc | | |
| 7 :36 | | | | | | | Received | 3/3/2020 | 1,050 pc | 1,050 pc | | |
| 7 :37 | | | | | | | Cancelled | 3/10/2020 | 0 pc | 0 pc | | |
| 7 :38 | | | | | | | Cancelled | 3/17/2020 | 0 pc | 0 pc | | |
| 7 :39 | | | | | | | Received | 3/26/2020 | 110 pc | 110 pc | | |
| 7 :40 | | | | | | | Cancelled | 3/31/2020 | 0 pc | 0 pc | | |
| 7 :41 | | | | | | | Cancelled | 4/7/2020 | 0 pc | 0 pc | | |
| 7 :43 | | | | | | | Cancelled | 4/9/2020 | 0 pc | 0 pc | | |
| 7 :44 | | | | | | | Received | 4/30/2020 | 1,160 pc | 1,160 pc | | |
| 7 :46 | | | | | | | Cancelled | 5/12/2020 | 0 pc | 0 pc | | |
| 7 :47 | | | | | | | Cancelled | 5/14/2020 | 0 pc | 0 pc | | |
| 7 :45 | | | | | | | Received | 5/19/2020 | 1,050 pc | 1,050 pc | | |
| 7 :48 | | | | | | | Received | 5/21/2020 | 700 pc | 700 pc | | |
| 7 :49 | | | | | | | Received | 5/28/2020 | 970 pc | 970 pc | | |
| 7 :50 | | | | | | | Received | 6/2/2020 | 1,050 pc | 1,050 pc | | |
| 7 :51 | | | | | | | Received | 6/11/2020 | 1,050 pc | 1,050 pc | | |
| 7 :52 | | | | | | | Received | 6/18/2020 | 1,320 pc | 1,320 pc | | |
| 7 :53 | | | | | | | Received | 7/7/2020 | 1,050 pc | 1,050 pc | | |
| 7 :54 | | | | | | | Received | 7/9/2020 | 1,050 pc | 1,050 pc | | |
| 7 :55 | | | | | | | Received | 7/21/2020 | 700 pc | 700 pc | | |
| 7 :56 | | | | | | | Received | 7/23/2020 | 1,050 pc | 1,050 pc | | |
| 7 :57 | | | | | | | Received | 7/28/2020 | 700 pc | 700 pc | | |
| 7 :58 | | | | | | | Received | 8/6/2020 | 620 pc | 620 pc | | |

F.C.C. **FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7 :59 | | | | | | | Received | 8/13/2020 | 1,750 pc | 1,750 pc | | |
| 7 :60 | | | | | | | Cancelled | 8/18/2020 | 0 pc | 0 pc | | |
| 7 :61 | | | | | | | Received | 8/20/2020 | 700 pc | 700 pc | | |
| 7 :62 | | | | | | | Received | 8/27/2020 | 906 pc | 906 pc | | |
| 7 :63 | | | | | | | Cancelled | 9/1/2020 | 0 pc | 0 pc | | |
| 7 :64 | | | | | | | Cancelled | 9/3/2020 | 0 pc | 0 pc | | |
| 7 :65 | | | | | | | Cancelled | 9/10/2020 | 0 pc | 0 pc | | |
| 7 :66 | | | | | | | Cancelled | 9/17/2020 | 0 pc | 0 pc | | |
| 7 :67 | | | | | | | Cancelled | 9/24/2020 | 0 pc | 0 pc | | |
| 7 :68 | | | | | | | Cancelled | 9/29/2020 | 0 pc | 0 pc | | |
| | | | | | | | | Sub Total | 36,405 pc | 36,405 pc | | |
| 8 :1 | 24298222 | 002 | | | | CDF HOUSING | Received | 6/17/2019 | 405 pc | 405 pc | | |
| 8 :3 | | | | | | | Cancelled | 6/18/2019 | 0 pc | 0 pc | | |
| 8 :2 | | | | | | | Received | 6/23/2019 | 231 pc | 231 pc | | |
| 8 :4 | | | | | | | Received | 6/27/2019 | 405 pc | 405 pc | | |
| 8 :5 | | | | | | | Received | 7/11/2019 | 675 pc | 675 pc | | |
| 8 :6 | | | | | | | Received | 7/18/2019 | 405 pc | 405 pc | | |
| 8 :7 | | | | | | | Received | 7/23/2019 | 945 pc | 945 pc | | |
| 8 :8 | | | | | | | Received | 7/25/2019 | 135 pc | 135 pc | | |
| 8 :9 | | | | | | | Received | 8/1/2019 | 540 pc | 540 pc | | |
| 8 :10 | | | | | | | Received | 8/8/2019 | 675 pc | 675 pc | | |
| 8 :11 | | | | | | | Received | 8/15/2019 | 405 pc | 405 pc | | |
| 8 :12 | | | | | | | Received | 8/22/2019 | 405 pc | 405 pc | | |
| 8 :14 | | | | | | | Received | 8/27/2019 | 405 pc | 405 pc | | |
| 8 :13 | | | | | | | Received | 8/29/2019 | 540 pc | 540 pc | | |
| 8 :15 | | | | | | | Received | 9/3/2019 | 540 pc | 540 pc | | |
| 8 :16 | | | | | | | Received | 9/10/2019 | 540 pc | 540 pc | | |
| 8 :17 | | | | | | | Received | 9/17/2019 | 675 pc | 675 pc | | |
| 8 :18 | | | | | | | Received | 9/24/2019 | 540 pc | 540 pc | | |
| 8 :19 | | | | | | | Received | 10/1/2019 | 675 pc | 675 pc | | |
| 8 :20 | | | | | | | Received | 10/8/2019 | 405 pc | 405 pc | | |
| 8 :21 | | | | | | | Cancelled | 10/15/2019 | 0 pc | 0 pc | | |
| 8 :22 | | | | | | | Cancelled | 10/29/2019 | 0 pc | 0 pc | | |
| 8 :23 | | | | | | | Cancelled | 11/26/2019 | 0 pc | 0 pc | | |
| 8 :27 | | | | | | | Received | 1/2/2020 | 405 pc | 405 pc | | |
| 8 :24 | | | | | | | Received | 1/9/2020 | 675 pc | 675 pc | | |
| 8 :25 | | | | | | | Received | 1/16/2020 | 810 pc | 810 pc | | |
| 8 :26 | | | | | | | Received | 1/23/2020 | 1,215 pc | 1,215 pc | | |
| 8 :28 | | | | | | | Received | 1/30/2020 | 540 pc | 540 pc | | |



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8 :29 | | | | | | | Received | 2/11/2020 | 540 pc | 540 pc | | |
| 8 :30 | | | | | | | Received | 2/18/2020 | 540 pc | 540 pc | | |
| 8 :31 | | | | | | | Received | 2/25/2020 | 810 pc | 810 pc | | |
| 8 :32 | | | | | | | Received | 2/27/2020 | 270 pc | 270 pc | | |
| 8 :33 | | | | | | | Received | 3/3/2020 | 1,215 pc | 1,215 pc | | |
| 8 :34 | | | | | | | Received | 3/10/2020 | 1,080 pc | 1,080 pc | | |
| 8 :35 | | | | | | | Received | 3/17/2020 | 270 pc | 270 pc | | |
| 8 :36 | | | | | | | Cancelled | 3/26/2020 | 0 pc | 0 pc | | |
| 8 :37 | | | | | | | Cancelled | 3/31/2020 | 0 pc | 0 pc | | |
| 8 :38 | | | | | | | Cancelled | 4/2/2020 | 0 pc | 0 pc | | |
| 8 :43 | | | | | | | Cancelled | 4/7/2020 | 0 pc | 0 pc | | |
| 8 :39 | | | | | | | Cancelled | 4/9/2020 | 0 pc | 0 pc | | |
| 8 :40 | | | | | | | Received | 4/30/2020 | 945 pc | 945 pc | | |
| 8 :42 | | | | | | | Cancelled | 5/12/2020 | 0 pc | 0 pc | | |
| 8 :44 | | | | | | | Cancelled | 5/14/2020 | 0 pc | 0 pc | | |
| 8 :41 | | | | | | | Received | 5/19/2020 | 1,350 pc | 1,350 pc | | |
| 8 :45 | | | | | | | Received | 5/21/2020 | 945 pc | 945 pc | | |
| 8 :46 | | | | | | | Received | 5/28/2020 | 1,080 pc | 1,080 pc | | |
| 8 :47 | | | | | | | Received | 6/2/2020 | 945 pc | 945 pc | | |
| 8 :48 | | | | | | | Received | 6/11/2020 | 1,350 pc | 1,350 pc | | |
| 8 :49 | | | | | | | Received | 6/18/2020 | 1,350 pc | 1,350 pc | | |
| 8 :50 | | | | | | | Received | 6/25/2020 | 945 pc | 945 pc | | |
| 8 :51 | | | | | | | Received | 7/9/2020 | 1,080 pc | 1,080 pc | | |
| 8 :52 | | | | | | | Received | 7/16/2020 | 391 pc | 391 pc | | |
| 8 :53 | | | | | | | Received | 7/21/2020 | 1,350 pc | 1,350 pc | | |
| 8 :54 | | | | | | | Received | 7/23/2020 | 405 pc | 405 pc | | |
| 8 :55 | | | | | | | Received | 7/28/2020 | 675 pc | 675 pc | | |
| 8 :56 | | | | | | | Received | 8/6/2020 | 270 pc | 270 pc | | |
| 8 :57 | | | | | | | Received | 8/11/2020 | 135 pc | 135 pc | | |
| 8 :58 | | | | | | | Received | 8/13/2020 | 1,215 pc | 1,215 pc | | |
| 8 :59 | | | | | | | Received | 8/20/2020 | 1,350 pc | 1,350 pc | | |
| 8 :60 | | | | | | | Received | 8/27/2020 | 1,080 pc | 1,080 pc | | |
| 8 :61 | | | | | | | Received | 9/1/2020 | 270 pc | 270 pc | | |
| 8 :62 | | | | | | | Received | 9/3/2020 | 540 pc | 540 pc | | |
| 8 :63 | | | | | | | Received | 9/10/2020 | 675 pc | 675 pc | | |
| 8 :64 | | | | | | | Received | 9/17/2020 | 675 pc | 675 pc | | |
| 8 :65 | | | | | | | Received | 9/24/2020 | 1,620 pc | 1,620 pc | | |
| 8 :66 | | | | | | | Received | 9/29/2020 | 270 pc | 270 pc | | |
| 8 :68 | | | | | | | Received | 10/13/2020 | 540 pc | 540 pc | | |
| 8 :67 | | | | | | | Received | 10/15/2020 | 810 pc | 810 pc | | |



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8 :69 | | | | | | | Received | 10/20/2020 | 540 pc | 540 pc | | |
| 8 :70 | | | | | | | Received | 10/27/2020 | 270 pc | 270 pc | | |
| 8 :71 | | | | | | | Cancelled | 10/29/2020 | 0 pc | 0 pc | | |
| 8 :72 | | | | | | | Received | 11/3/2020 | 1,080 pc | 1,080 pc | | |
| 8 :73 | | | | | | | Received | 11/10/2020 | 1,080 pc | 1,080 pc | | |
| 8 :74 | | | | | | | Cancelled | 11/17/2020 | 0 pc | 0 pc | | |
| 8 :75 | | | | | | | Cancelled | 11/24/2020 | 0 pc | 0 pc | | |
| 8 :76 | | | | | | | Received | 12/1/2020 | 945 pc | 945 pc | | |
| 8 :78 | | | | | | | Received | 12/15/2020 | 1,215 pc | 1,215 pc | | |
| 8 :77 | | | | | | | Received | 12/17/2020 | 270 pc | 270 pc | | |
| 8 :79 | | | | | | | Received | 1/5/2021 | 1,755 pc | 1,755 pc | | |
| 8 :80 | | | | | | | Received | 1/12/2021 | 1,350 pc | 1,350 pc | | |
| 8 :81 | | | | | | | Cancelled | 1/19/2021 | 0 pc | 0 pc | | |
| 8 :82 | | | | | | | Received | 1/28/2021 | 405 pc | 405 pc | | |
| 8 :83 | | | | | | | Received | 2/4/2021 | 945 pc | 945 pc | | |
| 8 :84 | | | | | | | Received | 2/11/2021 | 1,080 pc | 1,080 pc | | |
| 8 :85 | | | | | | | Cancelled | 2/18/2021 | 0 pc | 0 pc | | |
| 8 :86 | | | | | | | Cancelled | 3/4/2021 | 0 pc | 0 pc | | |
| 8 :87 | | | | | | | Cancelled | 3/9/2021 | 0 pc | 0 pc | | |
| 8 :88 | | | | | | | Cancelled | 3/16/2021 | 0 pc | 0 pc | | |
| 8 :89 | | | | | | | Cancelled | 3/23/2021 | 0 pc | 0 pc | | |
| 8 :90 | | | | | | | Cancelled | 3/30/2021 | 0 pc | 0 pc | | |
| | | | | | | | | **Sub Total** | **51,112 pc** | **51,112 pc** | | |
| 9 :1 | L1MP-7P182-AC | 20190711 | | | | HT CDF HOUSING Event: Job 1 *10R60 Job 1 *Blue New Model Label required *Must be packaged in Mass production Packaging per PIF *MUST be produced with machines in Automatic (with loader) *Data Requirements: 1. 5 piece, 100% blueprint layout, with marked up | Received | 1/15/2019 | 1,620 pc | 1,620 pc | | |



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | blueprint. 2. 125 pcs ppk 3. Clean Check 4. Provide PSW Phase 3 if not already done so. | | | | | | |
| 9 :2 | | | | | | N+3 Data required | Received | 2/12/2019 | 2,025 pc | 2,025 pc | | |
| 9 :3 | | | | | | N+3 Data required | Received | 3/21/2019 | 2,025 pc | 2,025 pc | | |
| 9 :4 | | | | | | N+3 Data required | Received | 4/9/2019 | 810 pc | 810 pc | | |
| 9 :5 | | | | | | N+3 Data required | Received | 4/23/2019 | 810 pc | 810 pc | | |
| 9 :6 | | | | | | | Received | 5/2/2019 | 1,755 pc | 1,755 pc | | |
| 9 :10 | | | | | | | Received | 5/9/2019 | 810 pc | 810 pc | | |
| 9 :7 | | | | | | | Received | 5/16/2019 | 2,160 pc | 2,160 pc | | |
| 9 :8 | | | | | | | Received | 5/23/2019 | 1,620 pc | 1,620 pc | | |
| 9 :9 | | | | | | | Received | 5/30/2019 | 1,890 pc | 1,890 pc | | |
| 9 :11 | | | | | | | Received | 6/4/2019 | 1,890 pc | 1,890 pc | | |
| 9 :12 | | | | | | | Received | 6/6/2019 | 675 pc | 675 pc | | |
| 9 :13 | | | | | | | Received | 6/11/2019 | 810 pc | 810 pc | | |
| 9 :14 | | | | | | | Received | 6/13/2019 | 1,215 pc | 1,215 pc | | |
| 9 :15 | | | | | | | Received | 6/18/2019 | 3,105 pc | 3,105 pc | | |
| 9 :16 | | | | | | | Received | 6/20/2019 | 880 pc | 880 pc | | |
| 9 :17 | | | | | | | Received | 6/25/2019 | 1,755 pc | 1,755 pc | | |
| 9 :18 | | | | | | | Received | 6/27/2019 | 1,350 pc | 1,350 pc | | |
| 9 :19 | | | | | | | Received | 7/9/2019 | 1,485 pc | 1,485 pc | | |
| 9 :20 | | | | | | | Cancelled | 7/11/2019 | 0 pc | 0 pc | | |
| 9 :21 | | | | | | | Received | 7/16/2019 | 1,485 pc | 1,485 pc | | |
| 9 :22 | | | | | | | Received | 7/18/2019 | 1,350 pc | 1,350 pc | | |
| 9 :23 | | | | | | | Received | 7/23/2019 | 810 pc | 810 pc | | |
| 9 :24 | | | | | | | Received | 7/25/2019 | 1,080 pc | 1,080 pc | | |
| 9 :25 | | | | | | | Received | 7/30/2019 | 1,350 pc | 1,350 pc | | |
| 9 :26 | | | | | | | Received | 8/1/2019 | 405 pc | 405 pc | | |
| 9 :27 | | | | | | | Cancelled | 8/6/2019 | 0 pc | 0 pc | | |
| 9 :28 | | | | | | | Cancelled | 8/8/2019 | 0 pc | 0 pc | | |
| 9 :29 | | | | | | | Received | 8/13/2019 | 1,350 pc | 1,350 pc | | |
| 9 :30 | | | | | | | Received | 8/15/2019 | 1,350 pc | 1,350 pc | | |
| 9 :31 | | | | | | | Received | 8/20/2019 | 1,296 pc | 1,296 pc | | |
| 9 :32 | | | | | | | Received | 8/22/2019 | 1,350 pc | 1,350 pc | | |
| 9 :33 | | | | | | | Received | 8/27/2019 | 1,350 pc | 1,350 pc | | |



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9 :34 | | | | | | | Received | 8/29/2019 | 1,350 pc | 1,350 pc | | |
| 9 :35 | | | | | | | Received | 9/3/2019 | 1,485 pc | 1,485 pc | | |
| 9 :36 | | | | | | | Received | 9/5/2019 | 1,485 pc | 1,485 pc | | |
| 9 :37 | | | | | | | Received | 9/10/2019 | 1,485 pc | 1,485 pc | | |
| 9 :38 | | | | | | | Received | 9/12/2019 | 1,485 pc | 1,485 pc | | |
| 9 :39 | | | | | | | Received | 9/17/2019 | 1,485 pc | 1,485 pc | | |
| 9 :40 | | | | | | | Received | 9/19/2019 | 1,485 pc | 1,485 pc | | |
| 9 :41 | | | | | | | Received | 9/24/2019 | 1,350 pc | 1,350 pc | | |
| 9 :42 | | | | | | | Received | 9/26/2019 | 1,350 pc | 1,350 pc | | |
| 9 :43 | | | | | | | Received | 10/1/2019 | 1,350 pc | 1,350 pc | | |
| 9 :44 | | | | | | | Received | 10/3/2019 | 1,620 pc | 1,620 pc | | |
| 9 :45 | | | | | | | Received | 10/8/2019 | 1,620 pc | 1,620 pc | | |
| 9 :46 | | | | | | | Received | 10/10/2019 | 1,620 pc | 1,620 pc | | |
| 9 :47 | | | | | | | Received | 10/15/2019 | 1,620 pc | 1,620 pc | | |
| 9 :48 | | | | | | | Received | 10/17/2019 | 1,620 pc | 1,620 pc | | |
| 9 :49 | | | | | | | Received | 10/22/2019 | 1,620 pc | 1,620 pc | | |
| 9 :50 | | | | | | | Received | 10/24/2019 | 1,350 pc | 1,350 pc | | |
| 9 :51 | | | | | | | Received | 10/29/2019 | 1,755 pc | 1,755 pc | | |
| 9 :52 | | | | | | | Cancelled | 10/31/2019 | 0 pc | 0 pc | | |
| 9 :53 | | | | | | | Cancelled | 11/5/2019 | 0 pc | 0 pc | | |
| 9 :54 | | | | | | | Received | 11/7/2019 | 1,350 pc | 1,350 pc | | |
| 9 :55 | | | | | | | Received | 11/12/2019 | 1,485 pc | 1,485 pc | | |
| 9 :56 | | | | | | | Received | 11/19/2019 | 1,215 pc | 1,215 pc | | |
| 9 :57 | | | | | | | Received | 11/21/2019 | 1,350 pc | 1,350 pc | | |
| 9 :58 | | | | | | | Received | 11/26/2019 | 1,350 pc | 1,350 pc | | |
| 9 :59 | | | | | | | Received | 12/3/2019 | 1,365 pc | 1,365 pc | | |
| 9 :60 | | | | | | | Received | 12/5/2019 | 585 pc | 585 pc | | |
| 9 :61 | | | | | | | Cancelled | 12/10/2019 | 0 pc | 0 pc | | |
| 9 :62 | | | | | | | Cancelled | 12/12/2019 | 0 pc | 0 pc | | |
| 9 :63 | | | | | | | Cancelled | 12/17/2019 | 0 pc | 0 pc | | |
| 9 :64 | | | | | | | Received | 12/19/2019 | 1,080 pc | 1,080 pc | | |
| 9 :65 | | | | | | | Received | 1/2/2020 | 1,215 pc | 1,215 pc | | |
| 9 :66 | | | | | | | Received | 1/7/2020 | 1,215 pc | 1,215 pc | | |
| 9 :67 | | | | | | | Received | 1/9/2020 | 1,215 pc | 1,215 pc | | |
| 9 :68 | | | | | | | Received | 1/14/2020 | 1,065 pc | 1,065 pc | | |
| 9 :69 | | | | | | | Received | 1/16/2020 | 1,080 pc | 1,080 pc | | |
| 9 :70 | | | | | | | Received | 1/21/2020 | 675 pc | 675 pc | | |
| 9 :71 | | | | | | | Received | 1/23/2020 | 675 pc | 675 pc | | |
| 9 :72 | | | | | | | Received | 1/28/2020 | 810 pc | 810 pc | | |
| 9 :73 | | | | | | | Received | 1/30/2020 | 675 pc | 675 pc | | |

 FCC (Indiana)

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9 :81 | | | | | | | Received | 2/4/2020 | 540 pc | 540 pc | | |
| 9 :74 | | | | | | | Received | 2/6/2020 | 516 pc | 516 pc | | |
| 9 :75 | | | | | | | Received | 2/11/2020 | 270 pc | 270 pc | | |
| 9 :76 | | | | | | | Received | 2/13/2020 | 675 pc | 675 pc | | |
| 9 :77 | | | | | | | Received | 2/18/2020 | 675 pc | 675 pc | | |
| 9 :78 | | | | | | | Received | 2/20/2020 | 675 pc | 675 pc | | |
| 9 :79 | | | | | | | Received | 2/25/2020 | 675 pc | 675 pc | | |
| 9 :80 | | | | | | | Received | 2/27/2020 | 675 pc | 675 pc | | |
| 9 :82 | | | | | | | Received | 3/5/2020 | 1,215 pc | 1,215 pc | | |
| 9 :83 | | | | | | | Received | 3/10/2020 | 945 pc | 945 pc | | |
| 9 :84 | | | | | | | Received | 3/12/2020 | 945 pc | 945 pc | | |
| 9 :85 | | | | | | | Received | 3/17/2020 | 621 pc | 621 pc | | |
| 9 :86 | | | | | | | Received | 3/19/2020 | 405 pc | 405 pc | | |
| 9 :87 | | | | | | | Cancelled | 3/24/2020 | 0 pc | 0 pc | | |
| 9 :88 | | | | | | | Cancelled | 3/26/2020 | 0 pc | 0 pc | | |
| 9 :89 | | | | | | | Cancelled | 3/31/2020 | 0 pc | 0 pc | | |
| 9 :90 | | | | | | | Cancelled | 4/2/2020 | 0 pc | 0 pc | | |
| 9 :91 | | | | | | | Cancelled | 4/7/2020 | 0 pc | 0 pc | | |
| 9 :92 | | | | | | | Cancelled | 4/9/2020 | 0 pc | 0 pc | | |
| 9 :93 | | | | | | | Received | 4/30/2020 | 810 pc | 810 pc | | |
| 9 :94 | | | | | | | Cancelled | 5/7/2020 | 0 pc | 0 pc | | |
| 9 :95 | | | | | | | Cancelled | 5/12/2020 | 0 pc | 0 pc | | |
| 9 :96 | | | | | | | Cancelled | 5/14/2020 | 0 pc | 0 pc | | |
| 9 :97 | | | | | | | Cancelled | 5/19/2020 | 0 pc | 0 pc | | |
| 9 :98 | | | | | | | Received | 5/21/2020 | 1,485 pc | 1,485 pc | | |
| 9 :99 | | | | | | | Received | 5/28/2020 | 1,080 pc | 1,080 pc | | |
| 9 :100 | | | | | | | Received | 6/2/2020 | 810 pc | 810 pc | | |
| 9 :101 | | | | | | | Received | 6/4/2020 | 810 pc | 810 pc | | |
| 9 :102 | | | | | | | Received | 6/9/2020 | 810 pc | 810 pc | | |
| 9 :103 | | | | | | | Received | 6/11/2020 | 1,215 pc | 1,215 pc | | |
| 9 :104 | | | | | | | Received | 6/16/2020 | 1,080 pc | 1,080 pc | | |
| 9 :105 | | | | | | | Received | 6/18/2020 | 1,080 pc | 1,080 pc | | |
| 9 :106 | | | | | | | Received | 6/23/2020 | 1,080 pc | 1,080 pc | | |
| 9 :107 | | | | | | | Received | 6/25/2020 | 1,350 pc | 1,350 pc | | |
| 9 :108 | | | | | | | Received | 7/7/2020 | 1,080 pc | 1,080 pc | | |
| 9 :109 | | | | | | | Received | 7/9/2020 | 540 pc | 540 pc | | |
| 9 :110 | | | | | | | Received | 7/14/2020 | 675 pc | 675 pc | | |
| 9 :111 | | | | | | | Cancelled | 7/16/2020 | 0 pc | 0 pc | | |
| 9 :112 | | | | | | | Received | 7/21/2020 | 810 pc | 810 pc | | |
| 9 :113 | | | | | | | Received | 7/23/2020 | 1,890 pc | 1,890 pc | | |

**F.C.C. FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9 :114 | | | | | | | Received | 7/28/2020 | 540 pc | 540 pc | | |
| 9 :115 | | | | | | | Received | 7/30/2020 | 1,350 pc | 1,350 pc | | |
| 9 :116 | | | | | | | Received | 8/4/2020 | 1,620 pc | 1,620 pc | | |
| 9 :117 | | | | | | | Received | 8/6/2020 | 1,755 pc | 1,755 pc | | |
| 9 :118 | | | | | | | Received | 8/11/2020 | 2,160 pc | 2,160 pc | | |
| 9 :119 | | | | | | | Received | 8/13/2020 | 945 pc | 945 pc | | |
| 9 :131 | | | | | | REPLACEMENT PARTS BURR ISSUE | Received | 8/13/2020 | 1,485 pc | 1,485 pc | | |
| 9 :120 | | | | | | | Received | 8/18/2020 | 810 pc | 810 pc | | |
| 9 :121 | | | | | | | Received | 8/20/2020 | 810 pc | 810 pc | | |
| 9 :122 | | | | | | | Cancelled | 8/25/2020 | 0 pc | 0 pc | | |
| 9 :123 | | | | | | | Received | 8/27/2020 | 675 pc | 675 pc | | |
| 9 :124 | | | | | | | Received | 9/1/2020 | 540 pc | 540 pc | | |
| 9 :125 | | | | | | | Received | 9/3/2020 | 2,700 pc | 2,700 pc | | |
| 9 :126 | | | | | | | Received | 9/15/2020 | 2,160 pc | 2,160 pc | | |
| 9 :127 | | | | | | | Received | 9/17/2020 | 2,160 pc | 2,160 pc | | |
| 9 :128 | | | | | | | Received | 9/22/2020 | 810 pc | 810 pc | | |
| 9 :129 | | | | | | | Received | 9/24/2020 | 810 pc | 810 pc | | |
| 9 :130 | | | | | | | Received | 9/29/2020 | 1,080 pc | 1,080 pc | | |
| 9 :132 | | | | | | | Received | 10/1/2020 | 1,890 pc | 1,890 pc | | |
| 9 :133 | | | | | | | Received | 10/6/2020 | 1,620 pc | 1,620 pc | | |
| 9 :134 | | | | | | | Received | 10/8/2020 | 2,025 pc | 2,025 pc | | |
| 9 :135 | | | | | | | Received | 10/13/2020 | 1,755 pc | 1,755 pc | | |
| 9 :136 | | | | | | | Received | 10/15/2020 | 1,755 pc | 1,755 pc | | |
| 9 :137 | | | | | | | Received | 10/20/2020 | 1,215 pc | 1,215 pc | | |
| 9 :138 | | | | | | | Received | 10/22/2020 | 1,620 pc | 1,620 pc | | |
| 9 :139 | | | | | | | Received | 10/27/2020 | 405 pc | 405 pc | | |
| 9 :140 | | | | | | | Received | 10/29/2020 | 1,080 pc | 1,080 pc | | |
| 9 :141 | | | | | | | Received | 11/3/2020 | 1,485 pc | 1,485 pc | | |
| 9 :142 | | | | | | | Received | 11/5/2020 | 1,350 pc | 1,350 pc | | |
| 9 :143 | | | | | | | Received | 11/10/2020 | 1,080 pc | 1,080 pc | | |
| 9 :144 | | | | | | | Received | 11/12/2020 | 1,620 pc | 1,620 pc | | |
| 9 :145 | | | | | | | Received | 11/17/2020 | 1,485 pc | 1,485 pc | | |
| 9 :146 | | | | | | | Received | 11/19/2020 | 1,485 pc | 1,485 pc | | |
| 9 :147 | | | | | | | Received | 11/24/2020 | 1,485 pc | 1,485 pc | | |
| 9 :148 | | | | | | | Received | 12/1/2020 | 1,485 pc | 1,485 pc | | |
| 9 :149 | | | | | | | Received | 12/3/2020 | 1,485 pc | 1,485 pc | | |
| 9 :150 | | | | | | | Cancelled | 12/8/2020 | 0 pc | 0 pc | | |
| 9 :151 | | | | | | | Cancelled | 12/10/2020 | 0 pc | 0 pc | | |
| 9 :152 | | | | | | | Received | 12/15/2020 | 1,350 pc | 1,350 pc | | |

**F.C.C.** FCC (Indiana)

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9 :153 | | | | | | | Received | 12/17/2020 | 1,350 pc | 1,350 pc | | |
| 9 :154 | | | | | | | Received | 1/7/2021 | 2,295 pc | 2,295 pc | | |
| 9 :155 | | | | | | | Received | 1/14/2021 | 2,160 pc | 2,160 pc | | |
| 9 :156 | | | | | | | Cancelled | 1/21/2021 | 0 pc | 0 pc | | |
| 9 :157 | | | | | | | Received | 1/26/2021 | 1,485 pc | 1,485 pc | | |
| 9 :158 | | | | | | | Received | 2/2/2021 | 810 pc | 810 pc | | |
| 9 :159 | | | | | | | Received | 2/4/2021 | 810 pc | 810 pc | | |
| 9 :160 | | | | | | | Received | 2/9/2021 | 810 pc | 810 pc | | |
| 9 :165 | | | | | | | Received | 2/11/2021 | 810 pc | 810 pc | | |
| 9 :161 | | | | | | | Received | 2/16/2021 | 1,080 pc | 1,080 pc | | |
| 9 :162 | | | | | | | Received | 2/18/2021 | 1,350 pc | 1,350 pc | | |
| 9 :163 | | | | | | | Received | 2/23/2021 | 1,350 pc | 1,350 pc | | |
| 9 :164 | | | | | | | Cancelled | 2/25/2021 | 0 pc | 0 pc | | |
| 9 :166 | | | | | | | Cancelled | 3/2/2021 | 0 pc | 0 pc | | |
| 9 :167 | | | | | | | Cancelled | 3/4/2021 | 0 pc | 0 pc | | |
| 9 :168 | | | | | | | Cancelled | 3/9/2021 | 0 pc | 0 pc | | |
| 9 :169 | | | | | | | Cancelled | 3/11/2021 | 0 pc | 0 pc | | |
| 9 :170 | | | | | | | Cancelled | 3/16/2021 | 0 pc | 0 pc | | |
| 9 :171 | | | | | | | Cancelled | 3/18/2021 | 0 pc | 0 pc | | |
| 9 :172 | | | | | | | Cancelled | 3/23/2021 | 0 pc | 0 pc | | |
| 9 :173 | | | | | | | Cancelled | 3/25/2021 | 0 pc | 0 pc | | |
| 9 :174 | | | | | | | Cancelled | 3/30/2021 | 0 pc | 0 pc | | |
| | | | | | | | | **Sub Total** | **177,238 pc** | **177,238 pc** | | |
| 10 :1 | LP5P-7A360-BA | 20181031 | | | | E CYLINDER Event: Job 1 *10R60 Job 1 *Blue New Model Label required *Must be packaged in Mass production Packaging per PIF *MUST be produced with machines in Automatic (with loader) *Data Requirements: 1. 5 piece, 100% blueprint layout, with marked up | Received | 1/15/2019 | 2,455 pc | 2,455 pc | | |

**F.C.C.** FCC (Indiana)

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

# PURCHASE ORDER
# FCCI018267

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | blueprint. 2. 125 pcs ppk 3. Clean Check 4. Provide PSW Phase 3 if not already done so. | | | | | | |
| 10 :4 | | | | | | Cast Confirmation Run | Received | 2/1/2019 | 30 pc | 30 pc | | |
| 10 :2 | | | | | | N+3 Data required | Received | 2/12/2019 | 3,150 pc | 3,150 pc | | |
| 10 :3 | | | | | | N+3 Data required | Received | 3/21/2019 | 3,150 pc | 3,150 pc | | |
| 10 :5 | | | | | | N+3 Data required | Received | 4/9/2019 | 2,800 pc | 2,800 pc | | |
| 10 :6 | | | | | | N+3 Data required | Received | 4/23/2019 | 2,800 pc | 2,800 pc | | |
| 10 :7 | | | | | | | Received | 5/2/2019 | 1,050 pc | 1,050 pc | | |
| 10 :11 | | | | | | | Received | 5/9/2019 | 1,050 pc | 1,050 pc | | |
| 10 :8 | | | | | | | Received | 5/16/2019 | 4,200 pc | 4,200 pc | | |
| 10 :9 | | | | | | | Received | 5/23/2019 | 2,800 pc | 2,800 pc | | |
| 10 :10 | | | | | | | Received | 5/30/2019 | 3,500 pc | 3,500 pc | | |
| 10 :12 | | | | | | | Received | 6/4/2019 | 3,850 pc | 3,850 pc | | |
| 10 :13 | | | | | | | Received | 6/6/2019 | 1,425 pc | 1,425 pc | | |
| 10 :14 | | | | | | | Received | 6/11/2019 | 1,050 pc | 1,050 pc | | |
| 10 :20 | | | | | | | Received | 6/12/2019 | 1,400 pc | 1,400 pc | | |
| 10 :15 | | | | | | | Received | 6/13/2019 | 1,400 pc | 1,400 pc | | |
| 10 :21 | | | | | | | Received | 6/14/2019 | 1,400 pc | 1,400 pc | | |
| 10 :22 | | | | | | | Received | 6/16/2019 | 1,750 pc | 1,750 pc | | |
| 10 :16 | | | | | | | Received | 6/18/2019 | 3,240 pc | 3,240 pc | | |
| 10 :17 | | | | | | | Cancelled | 6/20/2019 | 0 pc | 0 pc | | |
| 10 :18 | | | | | | | Received | 6/25/2019 | 1,750 pc | 1,750 pc | | |
| 10 :19 | | | | | | | Received | 6/27/2019 | 4,200 pc | 4,200 pc | | |
| 10 :23 | | | | | | | Received | 7/9/2019 | 3,500 pc | 3,500 pc | | |
| 10 :24 | | | | | | | Received | 7/11/2019 | 3,850 pc | 3,850 pc | | |
| 10 :25 | | | | | | | Received | 7/16/2019 | 1,400 pc | 1,400 pc | | |
| 10 :26 | | | | | | | Received | 7/18/2019 | 2,100 pc | 2,100 pc | | |
| 10 :27 | | | | | | | Received | 7/23/2019 | 2,800 pc | 2,800 pc | | |
| 10 :28 | | | | | | | Received | 7/25/2019 | 2,800 pc | 2,800 pc | | |
| 10 :29 | | | | | | | Received | 7/30/2019 | 3,150 pc | 3,150 pc | | |
| 10 :30 | | | | | | | Received | 8/1/2019 | 1,050 pc | 1,050 pc | | |
| 10 :31 | | | | | | | Received | 8/6/2019 | 2,800 pc | 2,800 pc | | |

**F.C.C.** FCC (Indiana)

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 :32 | | | | | | | Received | 8/8/2019 | 2,800  pc | 2,800  pc | | |
| 10 :33 | | | | | | | Received | 8/13/2019 | 3,150  pc | 3,150  pc | | |
| 10 :34 | | | | | | Increased due to fall out. | Received | 8/15/2019 | 4,200  pc | 4,200  pc | | |
| 10 :35 | | | | | | | Received | 8/20/2019 | 3,525  pc | 3,525  pc | | |
| 10 :36 | | | | | | | Received | 8/22/2019 | 3,500  pc | 3,500  pc | | |
| 10 :37 | | | | | | | Received | 8/27/2019 | 3,500  pc | 3,500  pc | | |
| 10 :38 | | | | | | | Received | 8/29/2019 | 3,850  pc | 3,850  pc | | |
| 10 :39 | | | | | | | Received | 9/3/2019 | 3,850  pc | 3,850  pc | | |
| 10 :40 | | | | | | | Received | 9/5/2019 | 3,850  pc | 3,850  pc | | |
| 10 :41 | | | | | | | Received | 9/10/2019 | 3,850  pc | 3,850  pc | | |
| 10 :42 | | | | | | | Received | 9/12/2019 | 3,850  pc | 3,850  pc | | |
| 10 :43 | | | | | | | Received | 9/17/2019 | 3,850  pc | 3,850  pc | | |
| 10 :44 | | | | | | | Received | 9/19/2019 | 3,850  pc | 3,850  pc | | |
| 10 :45 | | | | | | | Received | 9/24/2019 | 3,850  pc | 3,850  pc | | |
| 10 :46 | | | | | | | Received | 9/26/2019 | 3,850  pc | 3,850  pc | | |
| 10 :47 | | | | | | | Received | 10/1/2019 | 3,850  pc | 3,850  pc | | |
| 10 :48 | | | | | | | Received | 10/3/2019 | 4,200  pc | 4,200  pc | | |
| 10 :49 | | | | | | | Received | 10/8/2019 | 4,200  pc | 4,200  pc | | |
| 10 :50 | | | | | | | Received | 10/10/2019 | 4,200  pc | 4,200  pc | | |
| 10 :51 | | | | | | | Received | 10/15/2019 | 4,200  pc | 4,200  pc | | |
| 10 :52 | | | | | | | Received | 10/17/2019 | 4,200  pc | 4,200  pc | | |
| 10 :53 | | | | | | | Received | 10/22/2019 | 4,200  pc | 4,200  pc | | |
| 10 :54 | | | | | | | Received | 10/24/2019 | 4,200  pc | 4,200  pc | | |
| 10 :55 | | | | | | | Received | 10/29/2019 | 3,850  pc | 3,850  pc | | |
| 10 :56 | | | | | | | Received | 10/31/2019 | 4,200  pc | 4,200  pc | | |
| 10 :57 | | | | | | | Received | 11/5/2019 | 2,274  pc | 2,274  pc | | |
| 10 :58 | | | | | | | Received | 11/7/2019 | 2,100  pc | 2,100  pc | | |
| 10 :59 | | | | | | | Received | 11/12/2019 | 4,200  pc | 4,200  pc | | |
| 10 :60 | | | | | | | Received | 11/14/2019 | 3,850  pc | 3,850  pc | | |
| 10 :61 | | | | | | | Received | 11/19/2019 | 3,850  pc | 3,850  pc | | |
| 10 :62 | | | | | | | Received | 11/21/2019 | 4,330  pc | 4,330  pc | | |
| 10 :63 | | | | | | | Received | 11/26/2019 | 3,850  pc | 3,850  pc | | |
| 10 :64 | | | | | | | Received | 12/3/2019 | 3,850  pc | 3,850  pc | | |
| 10 :65 | | | | | | | Received | 12/5/2019 | 3,850  pc | 3,850  pc | | |
| 10 :66 | | | | | | | Received | 12/10/2019 | 1,040  pc | 1,040  pc | | |
| 10 :67 | | | | | | | Cancelled | 12/12/2019 | 0  pc | 0  pc | | |
| 10 :68 | | | | | | | Received | 12/17/2019 | 1,750  pc | 1,750  pc | | |
| 10 :69 | | | | | | | Received | 12/19/2019 | 2,800  pc | 2,800  pc | | |
| 10 :70 | | | | | | | Received | 1/2/2020 | 3,850  pc | 3,850  pc | | |

 **FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 :71 | | | | | | | Received | 1/7/2020 | 3,500 pc | 3,500 pc | | |
| 10 :72 | | | | | | | Received | 1/9/2020 | 3,850 pc | 3,850 pc | | |
| 10 :73 | | | | | | | Received | 1/14/2020 | 3,850 pc | 3,850 pc | | |
| 10 :74 | | | | | | | Received | 1/16/2020 | 3,150 pc | 3,150 pc | | |
| 10 :75 | | | | | | | Received | 1/21/2020 | 3,500 pc | 3,500 pc | | |
| 10 :76 | | | | | | | Received | 1/23/2020 | 3,150 pc | 3,150 pc | | |
| 10 :77 | | | | | | | Received | 1/28/2020 | 3,850 pc | 3,850 pc | | |
| 10 :78 | | | | | | | Received | 1/30/2020 | 3,500 pc | 3,500 pc | | |
| 10 :79 | | | | | | | Received | 2/4/2020 | 3,720 pc | 3,720 pc | | |
| 10 :80 | | | | | | | Received | 2/6/2020 | 3,500 pc | 3,500 pc | | |
| 10 :81 | | | | | | | Received | 2/11/2020 | 3,500 pc | 3,500 pc | | |
| 10 :82 | | | | | | | Received | 2/13/2020 | 3,850 pc | 3,850 pc | | |
| 10 :83 | | | | | | | Received | 2/18/2020 | 2,920 pc | 2,920 pc | | |
| 10 :84 | | | | | | | Received | 2/20/2020 | 2,450 pc | 2,450 pc | | |
| 10 :85 | | | | | | | Received | 2/25/2020 | 2,450 pc | 2,450 pc | | |
| 10 :86 | | | | | | | Received | 2/27/2020 | 2,450 pc | 2,450 pc | | |
| 10 :87 | | | | | | | Received | 3/3/2020 | 2,450 pc | 2,450 pc | | |
| 10 :88 | | | | | | | Received | 3/5/2020 | 2,450 pc | 2,450 pc | | |
| 10 :89 | | | | | | | Received | 3/10/2020 | 3,150 pc | 3,150 pc | | |
| 10 :90 | | | | | | | Received | 3/12/2020 | 3,190 pc | 3,190 pc | | |
| 10 :91 | | | | | | | Received | 3/17/2020 | 3,850 pc | 3,850 pc | | |
| 10 :92 | | | | | | | Received | 3/19/2020 | 4,430 pc | 4,430 pc | | |
| 10 :93 | | | | | | | Cancelled | 3/24/2020 | 0 pc | 0 pc | | |
| 10 :94 | | | | | | | Cancelled | 3/26/2020 | 0 pc | 0 pc | | |
| 10 :95 | | | | | | | Cancelled | 3/31/2020 | 0 pc | 0 pc | | |
| 10 :96 | | | | | | | Cancelled | 4/2/2020 | 0 pc | 0 pc | | |
| 10 :97 | | | | | | | Cancelled | 4/7/2020 | 0 pc | 0 pc | | |
| 10 :98 | | | | | | | Cancelled | 4/9/2020 | 0 pc | 0 pc | | |
| 10 :99 | | | | | | | Cancelled | 4/14/2020 | 0 pc | 0 pc | | |
| 10 :100 | | | | | | | Received | 4/30/2020 | 3,500 pc | 3,500 pc | | |
| 10 :101 | | | | | | | Cancelled | 5/7/2020 | 0 pc | 0 pc | | |
| 10 :102 | | | | | | | Cancelled | 5/12/2020 | 0 pc | 0 pc | | |
| 10 :103 | | | | | | | Cancelled | 5/14/2020 | 0 pc | 0 pc | | |
| 10 :104 | | | | | | | Cancelled | 5/19/2020 | 0 pc | 0 pc | | |
| 10 :105 | | | | | | | Cancelled | 5/21/2020 | 0 pc | 0 pc | | |



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 :106 | | | | | | | Received | 5/28/2020 | 4,900 pc | 4,900 pc | | |
| 10 :107 | | | | | | | Received | 6/2/2020 | 3,590 pc | 3,590 pc | | |
| 10 :108 | | | | | | | Received | 6/4/2020 | 4,550 pc | 4,550 pc | | |
| 10 :109 | | | | | | | Received | 6/9/2020 | 3,500 pc | 3,500 pc | | |
| 10 :110 | | | | | | | Received | 6/11/2020 | 2,800 pc | 2,800 pc | | |
| 10 :111 | | | | | | | Received | 6/16/2020 | 3,510 pc | 3,510 pc | | |
| 10 :112 | | | | | | | Received | 6/18/2020 | 3,850 pc | 3,850 pc | | |
| 10 :113 | | | | | | | Received | 6/23/2020 | 700 pc | 700 pc | | |
| 10 :114 | | | | | | | Received | 6/25/2020 | 4,200 pc | 4,200 pc | | |
| 10 :115 | | | | | | | Received | 7/7/2020 | 4,200 pc | 4,200 pc | | |
| 10 :116 | | | | | | | Received | 7/9/2020 | 3,500 pc | 3,500 pc | | |
| 10 :117 | | | | | | | Received | 7/14/2020 | 3,500 pc | 3,500 pc | | |
| 10 :118 | | | | | | | Received | 7/16/2020 | 3,500 pc | 3,500 pc | | |
| 10 :119 | | | | | | | Received | 7/21/2020 | 3,500 pc | 3,500 pc | | |
| 10 :120 | | | | | | | Received | 7/23/2020 | 3,850 pc | 3,850 pc | | |
| 10 :121 | | | | | | | Received | 7/28/2020 | 3,500 pc | 3,500 pc | | |
| 10 :122 | | | | | | | Received | 7/30/2020 | 3,870 pc | 3,870 pc | | |
| 10 :123 | | | | | | | Received | 8/4/2020 | 4,900 pc | 4,900 pc | | |
| 10 :124 | | | | | | | Received | 8/6/2020 | 3,500 pc | 3,500 pc | | |
| 10 :125 | | | | | | | Received | 8/11/2020 | 4,550 pc | 4,550 pc | | |
| 10 :126 | | | | | | | Received | 8/13/2020 | 3,500 pc | 3,500 pc | | |
| 10 :127 | | | | | | | Received | 8/18/2020 | 4,590 pc | 4,590 pc | | |
| 10 :128 | | | | | | | Received | 8/20/2020 | 4,200 pc | 4,200 pc | | |

**F.C.C. FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 :129 | | | | | | | Received | 8/25/2020 | 2,870 pc | 2,870 pc | | |
| 10 :130 | | | | | | | Received | 8/27/2020 | 4,868 pc | 4,868 pc | | |
| 10 :131 | | | | | | | Cancelled | 9/1/2020 | 0 pc | 0 pc | | |
| 10 :139 | | | | | | | Received | 9/2/2020 | 270 pc | 270 pc | | |
| 10 :132 | | | | | | | Cancelled | 9/3/2020 | 0 pc | 0 pc | | |
| 10 :133 | | | | | | | Cancelled | 9/10/2020 | 0 pc | 0 pc | | |
| 10 :134 | | | | | | | Cancelled | 9/15/2020 | 0 pc | 0 pc | | |
| 10 :135 | | | | | | | Cancelled | 9/17/2020 | 0 pc | 0 pc | | |
| 10 :136 | | | | | | | Cancelled | 9/22/2020 | 0 pc | 0 pc | | |
| 10 :137 | | | | | | | Cancelled | 9/24/2020 | 0 pc | 0 pc | | |
| 10 :138 | | | | | | | Cancelled | 9/29/2020 | 0 pc | 0 pc | | |
| | | | | | | | | **Sub Total** | **380,597 pc** | **380,597 pc** | | |
| 11 :1 | LP5P-7P182-BC | 20180514 | | | | CDF HOUSING Event: Job 1 *10R60 Job 1 *Blue New Model Label required *Must be packaged in Mass production Packaging per PIF *MUST be produced with machines in Automatic (with loader) *Data Requirements: 1. 5 piece, 100% blueprint layout, with marked up blueprint. 2. 125 pcs ppk 3. Clean Check 4. Provide PSW | Received | 1/15/2019 | 838 pc | 838 pc | | |



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Phase 3 if not already done so. | | | | | | |
| 11 :2 | | | | | | N+3 Data required | Received | 2/12/2019 | 1,755 pc | 1,755 pc | | |
| 11 :3 | | | | | | N+3 Data required | Received | 3/21/2019 | 1,755 pc | 1,755 pc | | |
| 11 :4 | | | | | | N+3 Data required | Received | 4/9/2019 | 810 pc | 810 pc | | |
| 11 :5 | | | | | | N+3 Data required | Received | 4/23/2019 | 945 pc | 945 pc | | |
| 11 :6 | | | | | | | Received | 5/2/2019 | 1,080 pc | 945 pc | | |
| 11 :10 | | | | | | | Received | 5/9/2019 | 810 pc | 810 pc | | |
| 11 :7 | | | | | | | Received | 5/16/2019 | 2,342 pc | 2,342 pc | | |
| 11 :8 | | | | | | | Received | 5/23/2019 | 1,755 pc | 1,755 pc | | |
| 11 :9 | | | | | | | Received | 5/30/2019 | 2,160 pc | 2,160 pc | | |
| 11 :11 | | | | | | | Received | 6/4/2019 | 1,348 pc | 1,348 pc | | |
| 11 :12 | | | | | | | Cancelled | 6/6/2019 | 0 pc | 0 pc | | |
| 11 :13 | | | | | | | Received | 6/11/2019 | 1,350 pc | 1,350 pc | | |
| 11 :14 | | | | | | | Received | 6/13/2019 | 2,160 pc | 2,160 pc | | |
| 11 :15 | | | | | | | Cancelled | 6/18/2019 | 0 pc | 0 pc | | |
| 11 :16 | | | | | | | Received | 6/20/2019 | 2,855 pc | 2,855 pc | | |
| 11 :17 | | | | | | | Cancelled | 6/25/2019 | 0 pc | 0 pc | | |
| 11 :18 | | | | | | | Received | 6/27/2019 | 1,350 pc | 1,350 pc | | |
| 11 :19 | | | | | | | Received | 7/9/2019 | 2,430 pc | 2,430 pc | | |
| 11 :20 | | | | | | | Received | 7/11/2019 | 2,295 pc | 2,295 pc | | |
| 11 :21 | | | | | | | Received | 7/16/2019 | 2,160 pc | 2,160 pc | | |
| 11 :22 | | | | | | | Cancelled | 7/18/2019 | 0 pc | 0 pc | | |
| 11 :23 | | | | | | | Received | 7/23/2019 | 1,080 pc | 1,080 pc | | |
| 11 :24 | | | | | | | Received | 7/25/2019 | 1,080 pc | 1,080 pc | | |
| 11 :25 | | | | | | | Received | 7/30/2019 | 1,215 pc | 1,215 pc | | |
| 11 :26 | | | | | | | Received | 8/1/2019 | 1,350 pc | 1,350 pc | | |
| 11 :27 | | | | | | | Received | 8/6/2019 | 2,565 pc | 2,565 pc | | |
| 11 :28 | | | | | | | Received | 8/8/2019 | 2,700 pc | 2,700 pc | | |
| 11 :29 | | | | | | | Received | 8/13/2019 | 2,430 pc | 2,430 pc | | |
| 11 :30 | | | | | | | Received | 8/15/2019 | 2,160 pc | 2,160 pc | | |
| 11 :31 | | | | | | | Received | 8/20/2019 | 2,203 pc | 2,203 pc | | |
| 11 :32 | | | | | | | Received | 8/22/2019 | 2,160 pc | 2,160 pc | | |
| 11 :33 | | | | | | | Received | 8/27/2019 | 1,620 pc | 1,620 pc | | |
| 11 :34 | | | | | | | Received | 8/29/2019 | 1,620 pc | 1,620 pc | | |
| 11 :35 | | | | | | | Received | 9/3/2019 | 2,160 pc | 2,160 pc | | |
| 11 :36 | | | | | | | Received | 9/5/2019 | 2,160 pc | 2,160 pc | | |



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11 :37 | | | | | | | Received | 9/10/2019 | 2,160  pc | 2,160  pc | | |
| 11 :38 | | | | | | | Received | 9/12/2019 | 2,160  pc | 2,160  pc | | |
| 11 :39 | | | | | | | Received | 9/17/2019 | 2,160  pc | 2,160  pc | | |
| 11 :40 | | | | | | | Received | 9/19/2019 | 2,160  pc | 2,160  pc | | |
| 11 :41 | | | | | | | Received | 9/24/2019 | 2,160  pc | 2,160  pc | | |
| 11 :42 | | | | | | | Received | 9/26/2019 | 2,160  pc | 2,160  pc | | |
| 11 :43 | | | | | | | Received | 10/1/2019 | 2,430  pc | 2,430  pc | | |
| 11 :44 | | | | | | | Received | 10/3/2019 | 2,430  pc | 2,430  pc | | |
| 11 :45 | | | | | | | Received | 10/8/2019 | 2,430  pc | 2,430  pc | | |
| 11 :46 | | | | | | | Received | 10/10/2019 | 2,430  pc | 2,430  pc | | |
| 11 :47 | | | | | | | Received | 10/15/2019 | 2,430  pc | 2,430  pc | | |
| 11 :48 | | | | | | | Received | 10/17/2019 | 2,430  pc | 2,430  pc | | |
| 11 :49 | | | | | | | Received | 10/22/2019 | 2,430  pc | 2,430  pc | | |
| 11 :50 | | | | | | | Received | 10/24/2019 | 2,430  pc | 2,430  pc | | |
| 11 :51 | | | | | | | Received | 10/29/2019 | 2,700  pc | 2,700  pc | | |
| 11 :52 | | | | | | | Received | 10/31/2019 | 1,485  pc | 1,485  pc | | |
| 11 :53 | | | | | | | Cancelled | 11/5/2019 | 0  pc | 0  pc | | |
| 11 :54 | | | | | | | Received | 11/7/2019 | 1,180  pc | 1,180  pc | | |
| 11 :55 | | | | | | | Received | 11/12/2019 | 2,700  pc | 2,700  pc | | |
| 11 :56 | | | | | | | Received | 11/14/2019 | 2,700  pc | 2,700  pc | | |
| 11 :57 | | | | | | | Received | 11/19/2019 | 2,700  pc | 2,700  pc | | |
| 11 :58 | | | | | | | Received | 11/21/2019 | 2,700  pc | 2,700  pc | | |
| 11 :59 | | | | | | | Received | 11/26/2019 | 2,700  pc | 2,700  pc | | |
| 11 :60 | | | | | | | Received | 12/3/2019 | 2,700  pc | 2,700  pc | | |
| 11 :61 | | | | | | | Received | 12/5/2019 | 320  pc | 320  pc | | |
| 11 :62 | | | | | | | Cancelled | 12/10/2019 | 0  pc | 0  pc | | |
| 11 :63 | | | | | | | Cancelled | 12/12/2019 | 0  pc | 0  pc | | |
| 11 :64 | | | | | | | Received | 12/17/2019 | 2,700  pc | 2,700  pc | | |
| 11 :65 | | | | | | | Received | 12/19/2019 | 2,700  pc | 2,700  pc | | |
| 11 :66 | | | | | | | Received | 1/2/2020 | 2,700  pc | 2,700  pc | | |
| 11 :67 | | | | | | | Received | 1/7/2020 | 2,430  pc | 2,430  pc | | |
| 11 :68 | | | | | | | Received | 1/9/2020 | 2,700  pc | 2,700  pc | | |
| 11 :69 | | | | | | | Received | 1/14/2020 | 2,700  pc | 2,700  pc | | |
| 11 :70 | | | | | | | Received | 1/16/2020 | 2,700  pc | 2,700  pc | | |
| 11 :71 | | | | | | | Received | 1/21/2020 | 2,835  pc | 2,835  pc | | |
| 11 :72 | | | | | | | Received | 1/23/2020 | 2,700  pc | 2,700  pc | | |
| 11 :73 | | | | | | | Received | 1/28/2020 | 2,699  pc | 2,699  pc | | |
| 11 :74 | | | | | | | Received | 1/30/2020 | 3,105  pc | 3,105  pc | | |
| 11 :75 | | | | | | | Received | 2/4/2020 | 3,105  pc | 3,105  pc | | |
| 11 :76 | | | | | | | Received | 2/6/2020 | 3,105  pc | 3,105  pc | | |

VanNote, Erica

**F.C.C.** **FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11 :77 | | | | | | | Received | 2/11/2020 | 2,970  pc | 2,970  pc | | |
| 11 :78 | | | | | | | Received | 2/13/2020 | 3,105  pc | 3,105  pc | | |
| 11 :79 | | | | | | | Received | 2/18/2020 | 1,485  pc | 1,485  pc | | |
| 11 :80 | | | | | | | Received | 2/20/2020 | 3,105  pc | 3,105  pc | | |
| 11 :81 | | | | | | | Received | 2/25/2020 | 2,565  pc | 2,565  pc | | |
| 11 :82 | | | | | | | Received | 2/27/2020 | 2,700  pc | 2,700  pc | | |
| 11 :83 | | | | | | | Received | 3/3/2020 | 2,700  pc | 2,700  pc | | |
| 11 :84 | | | | | | | Received | 3/5/2020 | 2,685  pc | 2,685  pc | | |
| 11 :85 | | | | | | | Received | 3/10/2020 | 1,755  pc | 1,755  pc | | |
| 11 :86 | | | | | | | Received | 3/12/2020 | 3,000  pc | 3,000  pc | | |
| 11 :87 | | | | | | | Received | 3/17/2020 | 2,835  pc | 2,835  pc | | |
| 11 :88 | | | | | | | Received | 3/19/2020 | 3,510  pc | 3,510  pc | | |
| 11 :89 | | | | | | | Cancelled | 3/24/2020 | 0  pc | 0  pc | | |
| 11 :90 | | | | | | | Cancelled | 3/26/2020 | 0  pc | 0  pc | | |
| 11 :91 | | | | | | | Cancelled | 3/31/2020 | 0  pc | 0  pc | | |
| 11 :92 | | | | | | | Cancelled | 4/2/2020 | 0  pc | 0  pc | | |
| 11 :93 | | | | | | | Cancelled | 4/7/2020 | 0  pc | 0  pc | | |
| 11 :94 | | | | | | | Cancelled | 4/9/2020 | 0  pc | 0  pc | | |
| 11 :95 | | | | | | | Received | 4/30/2020 | 1,890  pc | 1,890  pc | | |
| 11 :96 | | | | | | | Cancelled | 5/7/2020 | 0  pc | 0  pc | | |
| 11 :97 | | | | | | | Cancelled | 5/12/2020 | 0  pc | 0  pc | | |
| 11 :98 | | | | | | | Cancelled | 5/14/2020 | 0  pc | 0  pc | | |
| 11 :99 | | | | | | | Cancelled | 5/19/2020 | 0  pc | 0  pc | | |
| 11 :100 | | | | | | | Received | 5/21/2020 | 2,160  pc | 2,160  pc | | |
| 11 :101 | | | | | | | Received | 5/28/2020 | 3,105  pc | 3,105  pc | | |
| 11 :102 | | | | | | | Received | 6/2/2020 | 3,510  pc | 3,510  pc | | |
| 11 :103 | | | | | | | Received | 6/4/2020 | 2,565  pc | 2,565  pc | | |
| 11 :104 | | | | | | | Received | 6/9/2020 | 2,700  pc | 2,700  pc | | |
| 11 :105 | | | | | | | Received | 6/11/2020 | 2,025  pc | 2,025  pc | | |
| 11 :106 | | | | | | | Received | 6/16/2020 | 2,025  pc | 2,025  pc | | |
| 11 :107 | | | | | | | Received | 6/18/2020 | 2,025  pc | 2,025  pc | | |
| 11 :108 | | | | | | | Received | 6/23/2020 | 2,025  pc | 2,025  pc | | |
| 11 :109 | | | | | | | Received | 6/25/2020 | 1,350  pc | 1,350  pc | | |

VanNote, Erica



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11 :110 | | | | | | | Received | 7/7/2020 | 2,025 pc | 2,025 pc | | |
| 11 :111 | | | | | | | Received | 7/9/2020 | 1,890 pc | 1,890 pc | | |
| 11 :112 | | | | | | | Received | 7/14/2020 | 5,329 pc | 5,329 pc | | |
| 11 :113 | | | | | | | Received | 7/16/2020 | 4,455 pc | 4,455 pc | | |
| 11 :114 | | | | | | | Received | 7/21/2020 | 2,835 pc | 2,835 pc | | |
| 11 :115 | | | | | | | Received | 7/23/2020 | 2,835 pc | 2,835 pc | | |
| 11 :116 | | | | | | | Received | 7/28/2020 | 2,970 pc | 2,970 pc | | |
| 11 :117 | | | | | | | Received | 7/30/2020 | 2,970 pc | 2,970 pc | | |
| 11 :118 | | | | | | | Received | 8/4/2020 | 3,510 pc | 3,510 pc | | |
| 11 :119 | | | | | | | Received | 8/6/2020 | 3,510 pc | 3,510 pc | | |
| 11 :120 | | | | | | | Received | 8/11/2020 | 2,970 pc | 2,970 pc | | |
| 11 :121 | | | | | | | Received | 8/13/2020 | 2,835 pc | 2,835 pc | | |
| 11 :122 | | | | | | | Received | 8/18/2020 | 2,700 pc | 2,700 pc | | |
| 11 :123 | | | | | | | Received | 8/20/2020 | 2,700 pc | 2,700 pc | | |
| 11 :124 | | | | | | | Received | 8/25/2020 | 3,375 pc | 3,375 pc | | |
| 11 :125 | | | | | | | Received | 8/27/2020 | 1,080 pc | 1,080 pc | | |
| 11 :126 | | | | | | | Received | 9/1/2020 | 3,375 pc | 3,375 pc | | |
| 11 :127 | | | | | | | Received | 9/3/2020 | 1,755 pc | 1,755 pc | | |
| 11 :128 | | | | | | | Received | 9/10/2020 | 4,185 pc | 4,185 pc | | |
| 11 :129 | | | | | | | Received | 9/15/2020 | 3,375 pc | 3,375 pc | | |
| 11 :130 | | | | | | | Received | 9/17/2020 | 2,700 pc | 2,700 pc | | |
| 11 :131 | | | | | | | Received | 9/22/2020 | 4,725 pc | 4,725 pc | | |
| 11 :132 | | | | | | | Received | 9/24/2020 | 2,295 pc | 2,295 pc | | |

VanNote, Erica



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11 :133 | | | | | | | Received | 9/29/2020 | 3,105 pc | 3,105 pc | | |
| 11 :134 | | | | | | | Received | 10/1/2020 | 3,105 pc | 3,105 pc | | |
| 11 :135 | | | | | | | Received | 10/6/2020 | 2,970 pc | 2,970 pc | | |
| 11 :136 | | | | | | | Received | 10/8/2020 | 3,105 pc | 3,105 pc | | |
| 11 :137 | | | | | | | Received | 10/13/2020 | 2,295 pc | 2,295 pc | | |
| 11 :138 | | | | | | | Received | 10/15/2020 | 2,430 pc | 2,430 pc | | |
| 11 :139 | | | | | | | Received | 10/20/2020 | 2,295 pc | 2,295 pc | | |
| 11 :140 | | | | | | | Received | 10/22/2020 | 2,295 pc | 2,295 pc | | |
| 11 :141 | | | | | | | Received | 10/27/2020 | 2,700 pc | 2,700 pc | | |
| 11 :142 | | | | | | | Received | 10/29/2020 | 2,565 pc | 2,565 pc | | |
| 11 :143 | | | | | | | Received | 11/3/2020 | 2,025 pc | 2,025 pc | | |
| 11 :144 | | | | | | | Received | 11/5/2020 | 2,565 pc | 2,565 pc | | |
| 11 :145 | | | | | | | Received | 11/10/2020 | 2,700 pc | 2,700 pc | | |
| 11 :146 | | | | | | | Received | 11/12/2020 | 3,240 pc | 3,240 pc | | |
| 11 :147 | | | | | | | Received | 11/17/2020 | 2,295 pc | 2,295 pc | | |
| 11 :148 | | | | | | | Received | 11/19/2020 | 2,835 pc | 2,835 pc | | |
| 11 :149 | | | | | | | Received | 11/24/2020 | 2,700 pc | 2,700 pc | | |
| 11 :150 | | | | | | | Received | 12/1/2020 | 2,025 pc | 2,025 pc | | |
| 11 :151 | | | | | | | Received | 12/3/2020 | 2,430 pc | 2,430 pc | | |
| 11 :152 | | | | | | | Received | 12/8/2020 | 4,725 pc | 4,725 pc | | |
| 11 :153 | | | | | | | Received | 12/10/2020 | 4,725 pc | 4,725 pc | | |
| 11 :154 | | | | | | | Received | 12/15/2020 | 2,160 pc | 2,160 pc | | |
| 11 :155 | | | | | | | Received | 12/17/2020 | 3,240 pc | 3,240 pc | | |

VanNote, Erica



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11 :156 | | | | | | | Received | 12/22/2020 | 4,320 pc | 4,320 pc | | |
| 11 :157 | | | | | | | Received | 1/5/2021 | 1,755 pc | 1,755 pc | | |
| 11 :158 | | | | | | | Received | 1/7/2021 | 2,700 pc | 2,700 pc | | |
| 11 :159 | | | | | | | Received | 1/12/2021 | 2,835 pc | 2,835 pc | | |
| 11 :160 | | | | | | | Received | 1/14/2021 | 2,430 pc | 2,430 pc | | |
| 11 :161 | | | | | | | Received | 1/19/2021 | 2,295 pc | 2,295 pc | | |
| 11 :162 | | | | | | | Received | 1/21/2021 | 2,295 pc | 2,295 pc | | |
| 11 :163 | | | | | | | Received | 1/26/2021 | 2,295 pc | 2,295 pc | | |
| 11 :164 | | | | | | | Received | 1/28/2021 | 2,295 pc | 2,295 pc | | |
| 11 :165 | | | | | | | Received | 2/2/2021 | 2,835 pc | 2,835 pc | | |
| 11 :166 | | | | | | | Received | 2/4/2021 | 2,835 pc | 2,835 pc | | |
| 11 :167 | | | | | | | Received | 2/9/2021 | 2,835 pc | 2,835 pc | | |
| 11 :168 | | | | | | | Received | 2/11/2021 | 2,835 pc | 2,835 pc | | |
| 11 :169 | | | | | | | Cancelled | 2/16/2021 | 0 pc | 0 pc | | |
| 11 :170 | | | | | | | Received | 2/18/2021 | 2,835 pc | 2,835 pc | | |
| 11 :171 | | | | | | | Received | 2/23/2021 | 2,835 pc | 2,835 pc | | |
| 11 :172 | | | | | | | Received | 2/25/2021 | 50 pc | 50 pc | | |
| 11 :182 | | | | | | | Cancelled | 2/25/2021 | 0 pc | 0 pc | | |
| 11 :173 | | | | | | | Cancelled | 3/2/2021 | 0 pc | 0 pc | | |
| 11 :174 | | | | | | | Cancelled | 3/4/2021 | 0 pc | 0 pc | | |
| 11 :175 | | | | | | | Cancelled | 3/9/2021 | 0 pc | 0 pc | | |
| 11 :176 | | | | | | | Cancelled | 3/11/2021 | 0 pc | 0 pc | | |
| 11 :177 | | | | | | | Cancelled | 3/16/2021 | 0 pc | 0 pc | | |

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**F.C.C.** FCC (Indiana)

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11 :178 | | | | | | | Cancelled | 3/18/2021 | 0 pc | 0 pc | | |
| 11 :179 | | | | | | | Cancelled | 3/23/2021 | 0 pc | 0 pc | | |
| 11 :180 | | | | | | | Cancelled | 3/25/2021 | 0 pc | 0 pc | | |
| 11 :181 | | | | | | | Cancelled | 3/30/2021 | 0 pc | 0 pc | | |
| | | | | | | | | **Sub Total** | **380,169 pc** | **380,034 pc** | | |
| 12 :1 | 24294757 | 002 | | | | CDF Housing N+3 Data Required | Cancelled | 5/2/2019 | 0 pc | 0 pc | | |
| 12 :2 | | | | | | N+3 Data Required | Cancelled | 5/16/2019 | 0 pc | 0 pc | | |
| 12 :3 | | | | | | GP12 Data Required; FORD TOOL TO BE USED; SINGLE DRILL HOLE PARTS; 5pieces to be sent as soon as ready UPS/FedEX | Received | 5/16/2019 | 1,652 pc | 1,652 pc | | |
| 12 :4 | | | | | | | Cancelled | 7/18/2019 | 0 pc | 0 pc | | |
| 12 :5 | | | | | | | Cancelled | 7/23/2019 | 0 pc | 0 pc | | |
| 12 :6 | | | | | | | Cancelled | 7/25/2019 | 0 pc | 0 pc | | |
| 12 :7 | | | | | | | Cancelled | 8/1/2019 | 0 pc | 0 pc | | |
| 12 :8 | | | | | | | Cancelled | 8/8/2019 | 0 pc | 0 pc | | |
| 12 :9 | | | | | | | Cancelled | 8/15/2019 | 0 pc | 0 pc | | |
| 12 :10 | | | | | | | Cancelled | 8/22/2019 | 0 pc | 0 pc | | |
| 12 :11 | | | | | | | Cancelled | 8/29/2019 | 0 pc | 0 pc | | |
| | | | | | | | | **Sub Total** | **1,652 pc** | **1,652 pc** | | |
| 13 :1 | LP5P-7A360-BB | 20190729 | | | | E CYLINDER PRE STACK CHANGE QC Request Prcoess Change | Received | 8/25/2020 | 350 pc | 350 pc | | |
| 13 :2 | | | | | | | Received | 9/1/2020 | 4,550 pc | 4,550 pc | | |
| 13 :3 | | | | | | | Received | 9/3/2020 | 4,550 pc | 4,550 pc | | |
| 13 :4 | | | | | | | Received | 9/10/2020 | 4,550 pc | 4,550 pc | | |
| 13 :5 | | | | | | | Received | 9/15/2020 | 3,850 pc | 3,850 pc | | |
| 13 :6 | | | | | | | Received | 9/17/2020 | 3,475 pc | 3,475 pc | | |

VanNote, Erica

 **FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 13 :7 | | | | | | | Received | 9/22/2020 | 4,200 pc | 4,200 pc | | |
| 13 :8 | | | | | | | Received | 9/24/2020 | 3,500 pc | 3,500 pc | | |
| 13 :9 | | | | | | | Received | 9/29/2020 | 4,900 pc | 4,900 pc | | |
| 13 :10 | | | | | | | Received | 10/1/2020 | 4,900 pc | 4,900 pc | | |
| 13 :11 | | | | | | | Received | 10/6/2020 | 5,250 pc | 5,250 pc | | |
| 13 :12 | | | | | | | Received | 10/8/2020 | 4,900 pc | 4,900 pc | | |
| 13 :13 | | | | | | | Received | 10/13/2020 | 4,900 pc | 4,900 pc | | |
| 13 :14 | | | | | | | Received | 10/15/2020 | 3,230 pc | 3,230 pc | | |
| 13 :15 | | | | | | | Received | 10/20/2020 | 3,850 pc | 3,850 pc | | |
| 13 :16 | | | | | | | Received | 10/22/2020 | 4,200 pc | 4,200 pc | | |
| 13 :17 | | | | | | | Received | 10/27/2020 | 5,250 pc | 5,250 pc | | |
| 13 :18 | | | | | | | Received | 10/29/2020 | 4,550 pc | 4,550 pc | | |
| 13 :19 | | | | | | | Received | 11/3/2020 | 3,250 pc | 3,250 pc | | |
| 13 :20 | | | | | | | Received | 11/5/2020 | 4,200 pc | 4,200 pc | | |
| 13 :21 | | | | | | | Received | 11/10/2020 | 3,270 pc | 3,270 pc | | |
| 13 :22 | | | | | | | Received | 11/12/2020 | 3,500 pc | 3,500 pc | | |
| 13 :23 | | | | | | | Received | 11/17/2020 | 3,500 pc | 3,500 pc | | |
| 13 :24 | | | | | | | Received | 11/19/2020 | 3,500 pc | 3,500 pc | | |
| 13 :25 | | | | | | | Received | 11/24/2020 | 4,690 pc | 4,690 pc | | |
| 13 :32 | | | | | | EXPEDITE ON PACE DUE TO INCORRECT SHIPPING 11/24 | Received | 11/30/2020 | 3,240 pc | 3,240 pc | | |
| 13 :26 | | | | | | | Received | 12/1/2020 | 2,440 pc | 6,380 pc | | |
| 13 :27 | | | | | | | Cancelled | 12/3/2020 | 0 pc | 0 pc | | |
| 13 :28 | | | | | | | Cancelled | 12/8/2020 | 0 pc | 0 pc | | |
| 13 :29 | | | | | | | Cancelled | 12/10/2020 | 0 pc | 0 pc | | |
| 13 :30 | | | | | | | Cancelled | 12/15/2020 | 0 pc | 0 pc | | |
| 13 :31 | | | | | | | Cancelled | 12/17/2020 | 0 pc | 0 pc | | |
| | | | | | | | | **Sub Total** | 106,545 pc | 110,485 pc | | |
| 14 :7 | 24041828 | 001 | | | | E CYLINDER PRE STACK CHANGE | Received | 8/27/2020 | 270 pc | 270 pc | | |
| 14 :1 | | | | | | | Received | 9/1/2020 | 350 pc | 350 pc | | |
| 14 :2 | | | | | | | Received | 9/3/2020 | 970 pc | 970 pc | | |
| 14 :3 | | | | | | | Received | 9/10/2020 | 1,050 pc | 1,050 pc | | |
| 14 :4 | | | | | | | Received | 9/17/2020 | 700 pc | 700 pc | | |
| 14 :5 | | | | | | | Received | 9/24/2020 | 700 pc | 700 pc | | |
| 14 :6 | | | | | | | Received | 9/29/2020 | 520 pc | 520 pc | | |

VanNote, Erica



**F.C.C.** **FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FCCI018267**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Received Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 14 :8 | | | | | | | Received | 10/6/2020 | 810 pc | 810 pc | | |
| 14 :9 | | | | | | | Received | 10/13/2020 | 1,400 pc | 1,400 pc | | |
| 14 :10 | | | | | | | Received | 10/20/2020 | 350 pc | 350 pc | | |
| 14 :11 | | | | | | | Received | 10/27/2020 | 380 pc | 380 pc | | |
| 14 :16 | | | | | | | Received | 10/29/2020 | 270 pc | 270 pc | | |
| 14 :12 | | | | | | | Received | 11/3/2020 | 1,050 pc | 1,050 pc | | |
| 14 :13 | | | | | | | Received | 11/10/2020 | 1,050 pc | 1,050 pc | | |
| 14 :14 | | | | | | | Cancelled | 11/17/2020 | 0 pc | 0 pc | | |
| 14 :15 | | | | | | | Received | 11/24/2020 | 380 pc | 380 pc | | |
| 14 :17 | | | | | | | Cancelled | 12/1/2020 | 0 pc | 0 pc | | |
| 14 :20 | | | | | | | Received | 12/1/2020 | 859 pc | 859 pc | | |
| 14 :18 | | | | | | | Cancelled | 12/8/2020 | 0 pc | 0 pc | | |
| 14 :19 | | | | | | | Cancelled | 12/15/2020 | 0 pc | 0 pc | | |
| | | | | | | | | **Sub Total** | **11,109 pc** | **11,109 pc** | | |
| 15 :1 | 24042083 | 001 | | | | E CYLINDER STACK CHANGE | Cancelled | 11/24/2020 | 0 pc | 0 pc | | |
| 15 :2 | | | | | | | Cancelled | 12/1/2020 | 0 pc | 0 pc | | |
| 15 :4 | | | | | | | Received | 12/15/2020 | 1,050 pc | 1,050 pc | | |
| 15 :3 | | | | | | | Received | 12/17/2020 | 700 pc | 700 pc | | |
| 15 :5 | | | | | | | Received | 1/5/2021 | 1,750 pc | 1,750 pc | | |
| 15 :6 | | | | | | | Received | 1/12/2021 | 1,110 pc | 1,110 pc | | |
| 15 :7 | | | | | | | Cancelled | 1/19/2021 | 0 pc | 0 pc | | |
| 15 :8 | | | | | | | Received | 1/26/2021 | 780 pc | 780 pc | | |
| 15 :9 | | | | | | | Received | 2/2/2021 | 350 pc | 350 pc | | |
| 15 :10 | | | | | | | Received | 2/4/2021 | 700 pc | 700 pc | | |
| 15 :11 | | | | | | | Received | 2/11/2021 | 566 pc | 566 pc | | |
| 15 :12 | | | | | | | Received | 2/18/2021 | 700 pc | 700 pc | | |
| 15 :13 | | | | | | | Received | 2/25/2021 | 190 pc | 190 pc | | |
| 15 :14 | | | | | | | Cancelled | 3/4/2021 | 0 pc | 0 pc | | |
| 15 :15 | | | | | | | Cancelled | 3/9/2021 | 0 pc | 0 pc | | |
| 15 :16 | | | | | | | Cancelled | 3/11/2021 | 0 pc | 0 pc | | |
| 15 :17 | | | | | | | Cancelled | 3/16/2021 | 0 pc | 0 pc | | |
| 15 :18 | | | | | | | Cancelled | 3/23/2021 | 0 pc | 0 pc | | |
| 15 :19 | | | | | | | Cancelled | 3/30/2021 | 0 pc | 0 pc | | |
| | | | | | | | | **Sub Total** | **7,896 pc** | **7,896 pc** | | |

**Grand Total** $

**Notes**

VanNote, Erica

# EXHIBIT 4

**F.C.C. FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

FCC STANDARD TERMS AND CONDITIONS

**Article 1. Application.** The terms and conditions set forth herein will govern (the "Terms") and supplement any long term agreements between FCC and Supplier (each a "**Long Term Agreement**") concerning FCC's purchase of goods ( "Components") or services ("Services") from Supplier and will apply to all individual purchase orders issued by FCC to Supplier for Components or Services (each, a "**Purchase Order**"). The Terms, Long Term Agreement(s) and Purchase Order(s) are collectively referred to as the "**Agreement(s)**"). If there is conflict between these Terms, the Long Term Agreement, or any applicable Purchase Order, the following order of precedence applies: (i) the Purchase Order; (ii) the Long Term Agreement; and (iii) these Terms. These Terms will be deemed accepted by Supplier upon either its written acceptance or upon commencement of any required work or service under the Agreement. Further, if Supplier does not refuse a Purchase Order in writing within three (3) days following Supplier's receipt of the Purchase Order, Supplier will be deemed to have accepted such Purchase Order. Supplier's acceptance will be limited to the express written terms of the Agreement. Any terms not defined in these Terms will have the meaning set forth in the applicable Long Term Agreement. Additional or different terms contained in any documentation provided by Supplier beyond those terms contained in these Terms or the Agreements are expressly rejected and will not be binding on FCC, nor will they become part of the Agreements absent an amendment agreed to and executed in writing by the parties.

**Article 2. Content, Formation and Amendment of Purchase Orders.** Unless otherwise stated on the Purchase Order, each Purchase Order is a requirements contract whereby FCC agrees to purchase, and Supplier agrees to supply, 100% of FCC's requirements of the Components or Services for the duration stated in Article 8(D). Each Purchase Order will specify, with respect to each Component and/or Services ordered, an order date, a description of the Component or Services, delivery date, delivery location, completion date, price, and other transaction terms; provided, however, that matters common to the Purchase Orders may be specified in advance upon consultation by FCC and Supplier. If requested by Supplier, FCC will provide a non-binding forecast of Components or Services expected to be ordered for the following ninety (90) days. If Supplier reasonably expects that it cannot meet the forecasted demand for Components or Services needed by FCC, Supplier will promptly inform FCC of that fact, and provide a timeline within which Supplier believes it can fulfill FCC's needs.

**Article 3. Delivery; Inspection; Remedies.**

A.   Delivery. Supplier will arrange all transportation for Components and will deliver Components to FCC DDP (Incoterms 2010) to the FCC facility designated on the applicable Purchase Order, unless FCC directs Supplier in writing to send them to a different destination prior to shipment of the Components. Time is of the essence. If Supplier fails to make timely delivery or fails to make progress so as to endanger timely and proper completion of Services or delivery of Components (including, but not limited to, Supplier fails, or is endanger of failing, to timely meet all PPAP, validation and run-at-rate requirements), Supplier will be in breach and FCC may terminate for cause. Supplier will notify FCC electronically at the time of shipment, in a format approved by FCC, of the Purchase Order number, the Components contained therein, the quantity and description of such Components, and the method of transportation used. If Supplier is unable to meet the delivery requirements set forth in the applicable Purchase Order, Supplier will immediately notify FCC, and deliver the Components as soon as possible. FCC reserves the right to reduce payment for Components or Services received after the scheduled delivery date, or, alternatively, to seek replacement Components or Services from a third party at Supplier's expense. Supplier is liable for all direct, incidental and consequential damages, losses, costs and expenses incurred by FCC and resulting from Supplier's failure to deliver conforming and non-defective Components or Services or to comply with the shipping and delivery or other requirements of FCC and this Agreement.

B.   Inspection. Supplier is responsible for appropriately packaging all Components to make sure that no damage to such Components occurs during the shipping process, and for performing all Services in accordance with the requirements set forth in the applicable Purchase Order and this Agreement. FCC will reject any Components damaged during the course of shipment, or Services that are not adequately performed. FCC and its customers will have the right to enter Supplier's facilities during normal business hours to inspect any and all Components, Supplier's facilities, and/or the machinery used to manufacture such Components upon forty-eight (48) hours' advance notice to Supplier. FCC also reserves the right to inspect Components upon receipt, and Services rendered, even if payment for such Components has already been received by Supplier. Payment for Components or Services does not constitute acceptance. Upon FCC's request, Supplier will promptly furnish any inspection documentation regarding the Components prepared by Supplier in the ordinary course of business prior to shipping, so that FCC can verify conformance of the Components with the Specifications (as defined in Article 4), as set forth in the applicable Agreements. FCC's failure to inspect Components or Services performed will not be deemed acceptance of defective Components or inadequate Services, nor a waiver of any of FCC's other rights or remedies under the Agreements arising from any defects, non-conformance or other breach by Supplier.

VanNote, Erica

**F.C.C.  FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

C.    Rejection. If FCC rejects Components or tender of delivery due to an excess quantity, Supplier will, at FCC's request and within such reasonable period of time as FCC specifies, remove such excess from FCC's facility at Supplier's expense and risk. If there is a shortage of delivered Components to FCC, Supplier will, within a reasonable period of time specified by FCC, deliver conforming Components to fill such shortage. If FCC rejects the Components delivered for any other reason, Supplier will, at FCC's request and within a reasonable period of time specified by FCC, remove such rejected Components from FCC's facility at Supplier's sole expense, and reimburse FCC for any payments FCC made for the rejected Components. If Services are not properly performed, the Services will be promptly re-performed to FCC's satisfaction, as determined in FCC's sole discretion. If Components or Services fail FCC's initial inspection but are useable, as determined in FCC's sole discretion, FCC may choose to accept the Components or Services at a reduced price to be determined in consultation with Supplier.

D.    Remedies. If Supplier breaches the Agreement in any way, FCC may take any or all of the following actions, without prejudiced to any other rights or remedies available to FCC by law:

i.    require Supplier to repair or replace such -or remedy the inadequate Service provided, and upon Supplier's failure or refusal to do so, repair, replace or remedy the same at Supplier's expense;
ii.    reject any shipment or delivery containing defective or nonconforming Components and return for credit or replacement at FCC's option (at Supplier's cost and risk); reject inadequate Services and withhold payment therefor; and/or;
iii.    cancel any outstanding Purchase Orders or shipments of Components or Services not yet delivered or performed hereunder with no further liability to FCC whatsoever.

E.    FCC Rights. If any Components furnished under any Purchase Order are, in whole or in part, defective or otherwise nonconforming with the applicable Specifications, FCC will, in addition to all other rights and remedies provided for by law or these Terms, have the right to recover any and all damages, losses or expenses which result or in any way arise from Supplier's breach. Supplier will reimburse FCC for all actual attorney's fees (including the cost of in-house counsel) in any action arising out of this Purchase Order, unless Supplier is the prevailing party. FCC will also have the right to require and direct Supplier to remove all nonconforming or defective Components from FCC's facility at Supplier's sole risk and expense. All rights and remedies of FCC, whether provided by these Terms or by law, will be nonexclusive and cumulative. Claims brought under the Agreements (or otherwise), may be brought by FCC at any time within the applicable statutes of limitations.

F.    Supplier's Rights. If FCC materially breaches any term of the Agreements, Supplier's exclusive remedy, and FCC's maximum liability, will not exceed the total of all required payments under this Agreement minus those actually made. In no event will FCC be liable to Supplier for lost profits, unabsorbed overhead, interest, product development or engineering costs, facilities and equipment costs or rental, unrecovered depreciation costs, general and administrative burden charges, business interruption, or incidental, consequential or punitive damages. Any action by Supplier arising out of or relating to this Agreement must be commenced by Supplier within one (1) year after the cause of action has accrued, or such cause of action will be deemed to have been waived.

**Article 4. Specifications.** All Components or Services will comply with specifications designated by FCC including any specifications of FCC's end customer (together, the "Specifications"). On the basis of its technology and experience, Supplier will examine specifications of the Components and Services or matters presented by FCC as requirementsand notify FCC of any matters that should be improved. If Supplier has questions or objections regarding any Component or Service Specifications, it will promptly notify FCC to consult regarding any such questions or concerns and resolve them.

**Article 5. Transfer of Ownership and Risk.** Notwithstanding any provision hereof to the contrary, title to, and risk of loss of the Components or Direct Delivery Components will remain with Supplier until the Components are delivered to, and unloaded at, FCC's facility. Supplier will indemnify and hold FCC harmless from and against any and all claims asserted against FCC on account of any personal injuries and or property damages caused by the Components, or by the transportation thereof, prior to the completion of unloading at FCC's facility.

**Article 6. Special Provision regarding Direct Delivery Components.**

A.    If any event occurs that causes Supplier to be unable to promptly deliver any of the ordered quantities of the Components that are to be directly delivered to a third party designated by FCC ("Direct Receiver") pursuant to FCC's instruction ("Direct Delivery Components") or if there is a likelihood of such an event, Supplier will immediately notify FCC and Direct Receiver of the reasons therefor and the planned delivery dates.

B.    If the results of the receiving inspection by the Direct Receiver show any shortfall or excess in quantity or non-conforming or defective Components, upon consultations between the Parties, Supplier will take necessary measures in accordance with Article 3.

**Article 7. Price; Payment.**

_____
VanNote, Erica


FCC (Indiana)

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

A. Price. Components or Services purchased under this Agreement will be priced as specified in the applicable Purchase Order. Unless otherwise provided herein, prices shown on a Purchase Order are deemed to include all taxes not expressly imposed by law on FCC, as the buyer of the Components or Services. All prices are firm. FCC will not be obligated to pay any additional charges whatsoever, including but not limited to charges for packing, rating, boxing, bracing, containers, insurance freight, shipping, transportation, delivery cartage fees, licenses, permits, tariffs, duties, inspections or any related or similar item or service. Supplier will promptly furnish an invoice for the Components or Services supplied, and FCC will not be liable for invoices issued by any party other than Supplier.

B. Payment. Payment for such Components or Services will be due not less than forty-five (45) days following the later of FCC's receipt of the invoice or receipt of the Components or Services provided. Payment will be made by wire in accordance with Supplier's wire instructions.

C. Setoff. FCC will have the right to set off any payment or other obligation owed by FCC to Supplier, in whole or in part, against any payment or other obligation owed by Supplier to FCC.

**Article 8. Tooling; Supplies.**

A. FCC-Owned Tooling. Supplier acknowledges that all tooling and equipment furnished or paid for by (or on behalf of) FCC for Supplier's use under the Agreements constitutes critical elements of the production and supply of the Components. To the extent that any tooling and/or equipment that has been, is, or will be furnished to Supplier by FCC, or paid for by or on behalf of FCC (FCC-Owned Tooling), Supplier agrees to adhere to the following guidelines:

i.   *Completion Date:* Commitment dates will be established for first off-tool samples after final drawings or tool designs are approved by FCC and Supplier. Dates will be based upon a mutually agreed lead time from mutually agreed upon final tooling Specifications.

ii.  *Breach of Commitment Date:* If no design changes have been initiated by FCC after final drawing and design approvals, and the Supplier misses the date committed to by Supplier for first off-tool samples, Supplier will be considered in breach.

iii. *Ownership, and Return:* Ownership of FCC-Owned Tooling remains with FCC at all times. Supplier is responsible for all repairs to FCC-Owned Tooling and agrees to maintain and keep FCC-Owned Tooling in reasonably good working order, less ordinary wear and tear. Supplier will also (i) prominently mark FCC-Owned Tooling as property of FCC; (ii) adequately insure FCC-Owned Tooling against loss and damage; (iii) use FCC-Owned Tooling only to produce Components and Services for FCC; (iv) refrain from commingling FCC-Owned Tooling with property of Supplier or with that of a third party and (v) determine and pay all property taxes relating to such FCC-Owned Tooling. Upon completion of work or demand by FCC for any reason, whichever happens first, Supplier will deliver the FCC-Owned Tooling to FCC or other location, as instructed by FCC.

B. Supplier-Owned Tooling. For tooling paid for by Supplier, Supplier agrees as follows:

i.   The initial tooling and equipment and all subsequent rebuilds will be the sole property of Supplier;

ii.  Supplier will assume all costs associated with equipment and tooling including modifications, maintenance, repair, storage and insurance;

iii. If any tooling or equipment is damaged, Supplier will pay all costs to repair or acquire new tooling and equipment and produce Components according to the original schedule;

iv.  Upon termination or expiration of the Agreements, FCC may request that Supplier either destroy the equipment or tooling or transfer ownership to FCC. As soon as practicable after receipt of such written request, Supplier will destroy the equipment and tooling or provide appropriate documentation evidencing transfer of ownership to FCC;

v.   Prior to the destruction of any equipment or tooling, Supplier will provide FCC with at least twenty (20) days' advance written notice of such destruction so that a representative of FCC may witness the destruction;

vi.  Supplier will submit photographs or other evidence of destruction of the equipment and tooling; and

vii. Supplier will not use such equipment or tooling for a third party without FCC's prior written consent.

C. Supplies. When necessary, upon consultation with Supplier, FCC may provide Supplier with materials, semi-finished goods, and components necessary for the manufacturing of the Components or providing Services ("Supplies"). FCC may have Supplies directly delivered to Supplier from a third party designated by FCC ("Designated Third Party"). Supplier may coordinate with the Designated Third Party on matters such as delivery dates and delivery places for such Supplies ("Direct Delivery Supplies"). Supplier will be responsible for performing an inspection upon receipt of Supplies and Direct Delivery Supplies to insure that the same are undamaged. FCC may provide guidance or instructions on inspection items, inspection methods, and other matters upon consultation with Supplier. Supplier will manage Supplies and Direct Delivery Supplies and will not use them for any purpose other than the use for which they were supplied, nor will Supplier assign or lease to a third party, provide as collateral, or otherwise dispose of, the Supplies. Supplier will, at its sole expense, provide a semi-annual inventory report to FCC of all such Supplies and Direct Delivery Supplies in Supplier's possession.

VanNote, Erica

FCC (Indiana)

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

*i. Defective Supplies.* If Supplier finds that Supplies or Direct Delivery Supplies are defective, Supplier will immediately notify FCC of such defect, and FCC will coordinate the removal and replacement of the defective Supplies or Direct Delivery Supplies. FCC or the Designated Third Party, as applicable, will cover the cost of removal and replacement. This will be Supplier's sole remedy for defective Supplies or Direct Delivery Supplies.

D. Duration. Supplier expressly agrees to provide Components or Services under the applicable Agreement for the life of the applicable vehicle or other original equipment manufacturer program (including model refreshes as determined by the applicable FCC customer) for which the Components or Services are required, including any Service Part requirements set forth in Article 8.E below. Both Buyer and Seller acknowledge the risk of the program production life being cancelled or extended by FCC's customer.

E.  Service (Aftermarket) Parts. For current and past models, along with all future models which use Components or Services, service (aftermarket) parts (each a "Service Part") will be ordered directly by FCC. Supplier must continue to provide Service Parts, at the last production price, for a minimum period of ten (10) years after the obsolescence of the model containing such Components or Services. From time to time during this ten-year period, FCC will issue an order for Service Parts. All orders for past models should be responded to with a lead time estimate not to exceed the timeframes contained in this provision. Service Parts for current models must be supplied within thirty (30) days of the order date. Service Parts for past models must be supplied within seventy-five (75) days of the order date. A copy of the order will be attached to each service part shipment.


**Article 9. Quality Guarantee.**

A.  The receiving FCC facility's Supplier Quality Manual is incorporated into the Agreement by reference and is an integral part of the Agreement. If Supplier does not have a copy of this Supplier Quality Manual, it is Supplier's responsibility to request a copy of it. Supplier will comply with the provisions of the Supplier Quality Manual in all respects. If there is any inconsistency between the applicable Agreement and the Supplier Quality Manual, the terms of the applicable Agreement will prevail with respect to any inconsistency in the commercial terms (e.g. pricing, costs and expenses, delivery terms) and the Supplier Quality Manual will prevail with respect to any inconsistency in the quality terms, other than terms set forth in Article 4.

B.  Maintenance of Quality Records. Supplier will retain all production, maintenance and service records relating to all tooling (including FCC-Owned Tooling and Supplier-Owned Tooling), manufacturing processes and any and all testing of Components for a period of at least thirty-six (36) months following the termination of this Agreement for any reason.

C. Traceability. Supplier must: (a) be able to trace all products, ingredients, and packaging components with respect to the Components and Services to the original source ("Trace-back"); and, (b) document destination, quantity, and product identifying characteristics (e.g., lot code, manufacture date, production run, etc.) for all outgoing shipments of Components ("Traceforward"). Source, shipment, methods, programs, policies, other traceability, and product accounting information must be readily available to FCC upon request. Supplier will provide details of its traceability program to FCC prior to first shipment under each Purchase Order. Supplier must be able to account for all finished Components, raw materials, packaging materials, and other items relevant to its processes that it received, stored, handled, processed, shipped, or sold. Supplier must be capable of effectively recalling all Components manufactured by Supplier and must make all recall documentation available to FCC.

D.Stop Work. If an inspection or audit conducted under Articles

3.B or 23 finds Components or Services to be defective, non-conforming or that such Components or Services fail to meet the standards set forth in the Quality Assurance Agreement, FCC may verbally issue a stop work order onsite ("Stop Work Order"). Such Stop Work Order will be confirmed in writing by FCC. Following issuance of a Stop Work Order, Supplier will immediately halt all production of Components or rendering of Services and will not resume the same until Supplier has demonstrated that any and all deficiencies identified in the Stop Work Order have been remedied to FCC's satisfaction, as determined in FCC's sole discretion.

**Article 10. Warranty.**

A. Authority. Supplier represents and warrants that it has the full power to enter into the Agreements and to perform its obligations under the Agreements.

B. Warranty for Products and Services. Supplier warrants to FCC that all Components or Services will conform to the Specifications, will be of merchantable quality, will be fit for the particular purpose intended, will be of good material and workmanship, are free and clear of all liens, claims and encumbrances and will be free from defects in design, material and workmanship for the Warranty Period (as defined below). In addition, for all Services, Supplier warrants that Services will be performed in a professional and workmanlike manner, consistent with all standards and specifications agreed on with FCC and otherwise consistent with industry standards. All warranties of Supplier extend to future performance of the Components or Services and are not modified, waived or discharged by delivery, inspection, tests, acceptance and payment. FCC's approval of any design, drawing, material, process or specifications will not relieve Seller of these warranties. Supplier waives any right to notice of breach. The Warranty Period is the longest of: four years from the date FCC accepts the Components or Services, the warranty period provided by applicable law, or the warranty period offered by FCC to its customer or by FCC or its customer to end-users for the products into which the Components or Services are incorporated. Supplier hereby agrees that all servicing, repairs and replacements of Components or Services not

VanNote, Erica



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

conforming to the foregoing warranty will be performed, at FCC's option, by Supplier, FCC, or a third party designated by FCC, and that Supplier will be solely responsible for all costs and expenses including costs and expenses for parts, labor, handling and other charges incurred by FCC, and any third party acting on request of FCC, in connection with this warranty. Service Parts furnished under Article 8.E will be subject to the same warranties as original Components and Services provided under the Agreements. The Warranty Period for a Service Part is the same as that for a production part.

**Article 11. Indemnification; Limitation of Liability**

A.    Indemnification. Supplier, together with Supplier's parent, guarantors, and shareholders, hereby agrees to indemnify and hold harmless FCC, its Customers, and as to each of those parties, their respective subsidiaries, shareholders, affiliates, directors, officers, principals, agents and employees, as now and hereafter constituted, from and against any and all loss, liability, damage (including any punitive or exemplary damages), cost and expense of every kind or character (including but not limited to legal fees and legal expenses) which any or all of them may incur, suffer or be required to pay by reason of any claim, suit, demand, proceeding or other action that may be brought against anyone or more of them arising from or related in any way to a breach by Supplier of this Agreement including the failure or alleged failure of a Component or Service to comply with any of the warranties, representations, covenants or agreements of Supplier contained in the Agreements, whether or not caused or occasioned by, or alleged to be caused or occasioned by, any act, omission, fault or negligence of Supplier or of anyone acting on Supplier's behalf or with its consent. In the event that any such claim, suit, demand, proceeding or other action is brought, Supplier covenants that upon notice from FCC in its own right or on behalf of its Customer, Supplier will defend such claim, suit, demand, proceeding or action (or, if applicable, Supplier will cause it to be defended by Supplier's insurer) at Supplier's sole cost and expense, and Supplier will keep FCC and its Customer, as applicable, fully advised of the continuing status of each such defense. At its option, FCC may participate in the defense of any such claim with its own counsel, at Supplier's expense. The provisions of this Article 11 will remain and continue in effect after the term of the applicable Agreement.

**Article 12. Insurance.** As of the date of the applicable Agreement, Supplier agrees that it will have obtained the following insurance coverage and that such coverage remains in effect for the duration of the Agreement and any warranty period. Upon request by FCC, Supplier will deliver a certificate or certificates of insurance evidencing such coverage.

A.    Commercial General Liability insurance, on an "occurrence" policy form, providing a minimum combined single limit of Four Million dollars ($4,000,000.) on Bodily Injury and Property Damage, including Personal Injury Liability, Blanket Contractual Liability, Contractor's Protective Liability, and Products and Completed Operations. This limit will apply per occurrence, and in the aggregate, for occurrences in or about the site and will name FCC as an additional Insured.

B.    Comprehensive Automobile Liability insurance providing a minimum limit of $1,000,000. (combined single limit) in Bodily Injury and Property Damage Liability covering owned, non-owned and hired automobiles. FCC will be listed as an additional Insured.

C.    Statutory Worker's Compensation Coverage including Employer's Liability coverage for minimum limits of $1,000,000 (if applicable).

D.    Umbrella/Excess Liability -In an amount of no less than Five Million dollars ($5,000,000).

All policies will be provided by insurance carriers having a minimum rating as published by A M. Best of A· Class XI or better. Such policies will (i) stipulate that they are providing primary coverage, (ii) with respect to the insurance covered in (A), name FCC as an additional insured, and (iii) state that coverage thereunder is not contingent upon participation or payment by or under, any other company or policy. A waiver of subrogation will be provided at FCC's request on the above policies. Supplier will pay all premiums and perform all acts necessary to maintain the policies required to be purchased in accordance with the applicable Agreement. Supplier will provide FCC with certificates of such policies upon request and each certificate must show the amount of coverage, number of policy, date of expiration and, if required above, name FCC as an additional insured.

**Article 13. Tangible and Intellectual Property.**

A. Tangible Property. FCC-Owned Tooling and all tools, dies, specifications, drawings, designs, or other property furnished or specifically paid for by FCC or its Customers in connection with the Agreements (collectively, "FCC Property") will: (a) be and remain the tangible and intellectual property of FCC; marked by Supplier as such and kept segregated by Supplier from other property; (b) be used only by Supplier and only in performance of the Agreements; (c) not be moved from Supplier's premises without FCC's prior written consent; (d) not be affixed to real property; (e) be kept free of all liens, claims, encumbrances and restrictions; (f) not be modified or altered by Supplier or any other person or entity, and (g) be maintained by Supplier in reasonably good working order, less ordinary wear and tear. Supplier will bear all risk of loss or damage to FCC Property until it is returned to FCC. Upon request, Supplier will deliver at FCC's expense all FCC Property in good condition, ordinary wear and tear excepted, to any location designated by FCC. Upon the request of FCC, Supplier will execute a bailment agreement in a format reasonably acceptable to FCC with respect to the FCC Property and hereby consents to the filing by FCC of one or more UCC Financing Statements covering the FCC Property. Supplier waives any legal or equitable rights or claims including, but not limited to, all statutory and equitable lien rights, in connection with FCC Property.

VanNote, Erica



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER
FIN028816**

B. Intellectual Property. All materials, discoveries, ideas, design rights and concepts developed by Supplier and that relate to the Components or Services will be owned by FCC and will be considered works made for hire by Supplier for FCC. FCC will own all United States and international copyrights, patent and other intellectual property rights in work product comprising, or relating to, such works. Provider agrees to assign, and upon creation of each such work automatically assigns, to FCC, its successors and assigns, ownership of all United States and international rights in such work, insofar as any ownership and rights in such work, by operation of law, are not automatically with FCC. From time to time upon FCC's request, Supplier and/or its personnel will confirm such assignment by execution and delivery of such assignments, confirmations or other written instruments as FCC may request. FCC, its successors and assigns, will have the right to obtain and hold in its or their own names all copyright registrations, patents, and other evidence of rights that may be available for such works.

**Article 14. Confidentiality.** Any trade secrets or other proprietary information of FCC, whether oral, visual or written, will constitute confidential information of FCC even if not marked as such ("Confidential Information"). In addition, Supplier will only use Confidential Information as needed to perform its obligations pursuant to the Agreements and will not disclose Confidential Information to a third party without prior written consent of an authorized officer of FCC, in each instance. For written deliverables provided by Supplier under the Agreements, Supplier will mark such deliverables including any interim or final status reports, updates, or presentations, exclusively as "FCC Confidential," or as otherwise requested by FCC, and will not mark, or jointly-mark, such deliverables as belonging to Supplier. Such deliverables are considered Confidential Information. Upon the termination or expiration of the Agreement, the Supplier will immediately cease use of the Confidential Information and, upon written request of FCC, will immediately return and provide to FCC the Confidential Information, including all copies. The terms and conditions of the Agreements will be deemed Confidential Information. Supplier will not use the FCC name or any FCC trademarks, trade names, service marks, or quote the opinion of any FCC employee in any marketing materials without first obtaining prior written consent of an FCC authorized officer.

**Article 15. Improvement; Review.** In order to improve matters such as unit prices, quality, function, and manufacturing methods of the Components, Supplier will actively develop new technology, propose improvements, provide information to FCC, and the like. To the extent necessary to achieve the purposes of the applicable Agreement, FCC may request Supplier to submit materials related to management of quality, manufacturing processes, and other matters, or may obtain Supplier's consent and conduct an examination of the actual condition of quality management and method of managing processes, and give instructions for improvement. If necessary in order to respond to a demand or an order from a government authority or a related organization, in order to comply with laws and regulations, or if necessary to realize the purposes of the applicable Agreement, FCC may request necessary examinations and provision of information by Supplier, and Supplier will actively cooperate with such request.

**Article 16. Competitiveness.** Supplier will, at all times, be competitive in price, quality, performance and fulfillment obligations. If, during the term of the Agreements, FCC receives from a manufacturer or supplier, other than an affiliate of FCC, an offer to supply Components or Services of comparable quality (in FCC's judgment) at a price lower than the price then-prevailing under the Agreements, FCC may notify Supplier in writing of the competitive offer and request that Supplier meet the competitive offer. Supplier will, within ten (10) days after Supplier's receipt of FCC's request, notify FCC in writing as to whether Supplier will adjust the then-prevailing price under the applicable Agreement to meet the competitive offer. If Supplier does not agree to meet the new price, or if Supplier does not respond to the written notice within the ten (10) day period, FCC may accept the competitive offer. If the competitive offer eliminates FCC's need to secure Components or Services from Supplier in any capacity, the applicable Agreements may be terminated for Cause under Section 17B.

**Article 17. Termination.**

A.  Termination for Convenience. FCC may terminate an Agreement for any reason, in whole or in part, upon thirty (30) days' written notice to Supplier. If such termination for convenience occurs, the Parties will remain obligated to fulfill their respective duties and responsibilities under the applicable Agreement that exist as of the date of termination.

B.  Termination for Cause. Either Party may immediately terminate the Agreement for cause if the other Party: becomes subject to revocation or suspension of business by a supervisory authority; dissolves, becomes insolvent, files for bankruptcy, or experiences a material degradation in its credit or financial conditions and fails to provide the other Party with adequate assurances after receiving a demand from the other party for the same; or merges with a third party or is subject to a change of control without first securing FCC's written consent at least thirty (30) days prior to the proposed date of such merger or change of control.

FCC also has the right to terminate the Agreement for cause and upon written notice to Supplier if: (a) FCC's agreement with its  Customer for which the Components or Services are purchased is terminated; or (b) if Supplier breaches the Agreement and FCC reasonably believes that such breach threatens to interrupt the production or operations of FCC or its Customer.  For all other breaches, FCC may terminate for cause if Supplier fails to cure within five (5) days after receiving notice from FCC.

Supplier may terminate the Agreement for cause if FCC: 1) has substantially breached the agreement and 2) fails to cure within forty-five (45) days after Supplier provides FCC with written notice of the alleged breach and demands that FCC cure.

**Article 18. Force Majeure.** Force majeure is any failure or delay by a Party in fulfilling or performing any term of the Agreements when and to the extent such failure or delay is caused by or results from acts or circumstances beyond the reasonable control of the Party unable to perform including, without limitation, acts of God, flood, fire, earthquake, explosion, governmental actions, war, invasion or hostilities (whether war is declared or not), terrorist threats or acts, riot, or other

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**F.C.C.** FCC (Indiana)

**PURCHASE ORDER**
**FIN028816**

civil unrest, national emergency, revolution, insurrection, epidemic, or restraints or delays affecting carriers or inability or power outage ("Force Majeure"). Neither Party will be liable for its failure or delay to perform due to a Force Majeure provided that, if Supplier is unable to perform due to a Force Majeure, FCC will have the right, without obligation or liability to Supplier, to purchase Components and Services from another source until Supplier is able to resume performance of its obligations hereunder.

**Article 19. Compliance with Laws and Regulations.**

A.    When performing the Agreements, Supplier will comply with related domestic and foreign laws and regulations. If Components or Services are subject to export or import laws or regulations, Supplier will inform FCC of the requirements thereunder and any obligations of the Parties to comply therewith.

B.    Supplier must properly mark all Components, or, as applicable, the packaging containing such Components, with the country of origin of all Components, and must provide to FCC and/or the importing customs broker, proper documentation regarding the country of origin, USMCA (or other applicable trade treaty), certificate of origin, and all other documentation required by any applicable laws or trade treaties.

**Article 20. Prohibition of Bribery; Illegal Activity; Foreign Corrupt Practices Act.**

A.    The Parties will comply with all applicable provisions prohibiting bribery in each country in which the Parties conduct business under the Agreements. The Parties may not directly or indirectly cause a third party to engage in tortious conduct, provide, promise to provide or offer to provide funds, benefits, or other advantages which are outside the normal course of business. Price discounts to FCC's customers based upon volume of goods sold will not be considered a violation of this Article. The Parties are further prohibited from improperly influencing public officials.

B.    Neither Party nor any of its officers is (i) part of or knowingly conducts business with organized crime groups or any other organizations or individuals which pursue economic benefit by using violence, force, or fraudulent means or (ii) any organization or individual which is on any sanction lists published by any international organization, government authority or any country's central bank.

C.    Supplier will comply with, and cause its agents, employees, and contractors to comply with, all applicable regulatory requirements, including but not limited to, government approvals, policies, laws, regulations and directives that apply to the work that Supplier is doing with FCC, as well as all applicable laws and directives regulating direct and indirect payments and gifts to government officials or others, such as the U.S. Foreign Corrupt Practices Act, the OECD Anti-Bribery Convention, and the UK Bribery Act 2010.

**Article 21. Records and Audit.** During the term and for at least 36 months following termination or expiration of the Agreements, Supplier will maintain complete and accurate records of the supply of its Components and Services and of the fees charged to FCC. FCC and its customers will have the right at any time, upon forty-eight (48) hours' advance written notice, to request an independent, third party audit of Supplier's compliance with the Agreements and/or inspect the premises within which Supplier manufactures or provides such Components and Services. Supplier will make all such reasonably requested records available to FCC's selected auditor during any such audit and will cooperate with FCC, its customers, its representatives and its auditors in the conduct of any audit. If it is determined that Supplier has overcharged (or undercredited) FCC, Supplier will credit FCC's account (or, at FCC's option, pay FCC directly) an amount equal to the overcharge. If an audit discloses that Supplier's overcharges (including undercredits) exceeded five percent (5%) of the charges during the period audited, Supplier will also reimburse FCC for the cost of the audit. In the event the results of the audit raise any issues, the Supplier will co-operate with FCC and rectify such issues promptly

**Article 22. Miscellaneous.**

A.    Amendment. The Agreements will not be amended without a written agreement duly executed by both Parties.

B.    Relationship of the Parties. The Parties agree and acknowledge that Supplier is an independent contractor and is not an agent or employee of FCC. Supplier is solely liable for payment of employment taxes or other similar taxes or payments in relation to its employees, and neither Supplier nor any of its employees is covered by FCC's worker's compensation or any other insurance of FCC. Supplier's parent and/or guarantors expressly agree to guaranty Supplier's performance under the Agreements.

C.    Consultation. With regard to matters not stipulated in the applicable Agreement or in case doubts on construction of the applicable Agreement arise, both Parties will first try to resolve through mutual consultation in good faith.

D.    Assignment. Supplier will not assign or subcontract any of its duties or obligations under the applicable Agreement without the prior written consent of FCC.

E.    Entire Agreement. This Agreement is a final expression and a complete and exclusive statement of the Agreement between the Parties respecting the subject matter hereof and supercedes all prior and contemporaneous agreements, representations and understandings of the Parties. No amendment to or modification of this Agreement will be valid or binding upon either Party unless it is made in writing and signed by a duly authorized representative of FCC.

VanNote, Erica

**F.C.C. FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

F.    Severability. The provisions of the Agreements will be deemed to be severable, and the invalidity of any provisions of the Agreements will not affect the validity of the remaining provisions of the Agreements.

G.    Survival. The obligations, representations, warranties, and covenants of Supplier under these terms and each Agreement that by their nature are intended or reasonably expected to survive the expiration or termination of the Agreement, includingArticles 8, 9, 10, 11, 12, 13, 14, and 22, will survive termination or expiration of the Agreements.

H.    Governing Law. Each Agreement will be governed by and construed in accordance with the laws of the state that the FCC entity issuing the Purchase Order is located, notwithstanding any state's conflicts of law provisions otherwise. The Parties expressly agree that any and all actions arising from or related to the Agreements or the Components or Services furnished by Supplier will be subject to the exclusive jurisdiction of the state and federal courts located in the state that the FCC entity issuing the Purchase Order is located. The Parties acknowledge that service of process may be made upon the Parties as provided by applicable law.

I.    Electronic Signatures. All notices, documents and communications which are communicated e1ectronically and signed by the Parties electronically will be deemed to have the same force and effect as all documents signed in hard copy.

(June 2019)

_____
VanNote, Erica

# EXHIBIT 5

# FCC North America

39209 Six Mile Road, Suite 210, Livonia, MI 48152
Phone: 734-855-4466 Fax: 734-855-4467

To: Pace Industries, LLC, Attn: Ben Woodruff                    Date:    April 20th, 2016

10R60 Prototype/Mass Production Letter of Intent

FCC North America is pleased to announce that Pace Industries, LLC ("Pace") has been sourced by FCC North America for the 10R60 project. We would like to thank you for all your efforts and support during our sourcing process. We look forward to the growth and business this will bring to all parties involved.

Two (2) Parts being sourced at this time for 10R60 Mass Production are:
1.   RFJR3P-7A360-AB Cylinder E Clutch under Pace quotation 15-142-02
2.   RFJR3P-7P182-AB Housing Triple Clutch under Pace quotation 15-143-03

Projected Annual 10R60 Volumes. Volumes are for planning purposes only.

|        | 2019    | 2020    | 2021    | 2022    | 2023    |  |  |
|--------|---------|---------|---------|---------|---------|--|--|
| 10R60  | 125,000 | 368,000 | 496,000 | 493,000 | 504,000 |  |  |

This Letter of Intent is Contingent on:
1.   Supplier returned signed confirmation of Acceptance of said Letter of Intent.
2.   Supplier meeting at FCC for project review.
3.   Mass Production Purchasing Agreement and mutually agreed upon Terms and Conditions to be signed by both parties.

FCC North America reserves right to withdraw this Letter of Intent, with 30 days written notice to Pace, if Pace cannot meet demands to manufacture parts, increase price other than quoted (without having approval 1st), or any other factor which hinders FCC North America supply of said parts. FCC agrees to provide Pace an additional 15 day cure period, from written notification delivery, ("Notification Term") to resolve such material breach or nonconformance.

FCC is looking forward to the future outlook for all parties involved. To be successful we must keep on track during this and all phases of production. Suppliers will be held to a high standard on all aspects during the 10R60 Project. Pace must meet FCC quality and performance standards on 10R60 project and any future business from FCC. Should Pace not meet the before mentioned standards, FCC must follow the previous Notification Term.

Again, FCC would like to congratulate you as being a part of the 10R60 project.

Best Regards,
Jordan Schwartz
FCC NA Purchasing


Pace Industries, LLC                                          FCC North America

_____                                        _____
 Benjamin Woodruff                                            Jordan Schwartz

 VP, Business Development/Auto Sales                          Purchasing  FCC-NA


Date    4-20-15                                    Date      4/20/15


Signed Acceptance confirmations should be e-mailed to:
jschwartz@fcc-na.com

# EXHIBIT 6

 **FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

# PURCHASE ORDER
## FIN028816

| Supplier | Pace Industries | PO No | FIN028816 |
|---|---|---|---|
| | Pace Division | PO Date | 3/12/2021 |
| | Harrison Division | Due Date | |
| | 513 Hwy 62/65 Bypass N | Purchase Order Revision | |
| | Harrison, AR 72601 | PO Revision Date | |
| | Phone: 870-741-8255 | | |
| | Fax: 870-741-4998 | Issued By | VanNote, Erica |
| Attention | Geanetta Moore | | 260-726-8023  Ext: 1046 |
| | 870-741-8255 Ext 1300 | | Fax: 260-726-7782 |
| Ship To | FCC (Indiana), LLC | | evannote@e-fcci.com |
| | 555 Industrial Park Rd | Carrier | TJ EXPRESS SERVICE, LLC |
| | Portland, IN 47371 | Via | Ground |
| | Phone: (260) 726-8023 | Payment Terms | Net 30 |
| Bill To | FCC (Indiana), LLC | FOB | Origin |
| | 555 Industrial Park Rd | Freight Terms | Collect |
| | Portland, IN 47371 | Note | |

## Items

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1:1 | 24044264 | 001 | | | | E CYLINDER | Firm | 4/6/2021 | 0 pc | | |
| 1:2 | | | | | | | Firm | 4/15/2021 | 0 pc | | |
| 1:3 | | | | | | | Firm | 4/20/2021 | 700 pc | | |
| | | | | | | | | **Sub Total** | **700 pc** | | |
| | | | | | | | | | | | |
| 2:1 | 24044267 | 002 | | | | CDF HOUSING | Firm | 4/6/2021 | 0 pc | | |
| 2:2 | | | | | | | Firm | 4/15/2021 | 810 pc | | |
| 2:3 | | | | | | | Firm | 4/22/2021 | 810 pc | | |
| 2:4 | | | | | | | Firm | 4/29/2021 | 405 pc | | |
| | | | | | | | | **Sub Total** | **2,025 pc** | | |
| | | | | | | | | | | | |
| 3:1 | L1MP-7P182-AC | 210201 | | | | HT CDF HOUSING | Firm | 4/6/2021 | 0 pc | | |
| 3:2 | | | | | | | Firm | 4/8/2021 | 0 pc | | |
| 3:3 | | | | | | | Firm | 4/13/2021 | 2,970 pc | | |
| 3:4 | | | | | | | Firm | 4/15/2021 | 1,350 pc | | |
| 3:5 | | | | | | | Firm | 4/20/2021 | 1,350 pc | | |
| 3:6 | | | | | | | Firm | 4/22/2021 | 1,080 pc | | |
| 3:7 | | | | | | | Firm | 4/27/2021 | 945 pc | | |
| 3:8 | | | | | | | Firm | 4/29/2021 | 945 pc | | |
| | | | | | | | | **Sub Total** | **8,640 pc** | | |
| | | | | | | | | | | | |
| 4:1 | LP5P-7A360-BB | 20200302 | | | | E CYLINDER | Firm | 4/1/2021 | 3,500 pc | | |
| 4:2 | | | | | | | Firm | 4/6/2021 | 0 pc | | |

VanNote, Erica



**FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

# PURCHASE ORDER
# FIN028816

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4:3 | | | | | | | Firm | 4/8/2021 | 0 pc | | |
| 4:4 | | | | | | | Firm | 4/13/2021 | 4,550 pc | | |
| 4:5 | | | | | | | Firm | 4/15/2021 | 4,200 pc | | |
| 4:6 | | | | | | | Firm | 4/20/2021 | 3,500 pc | | |
| 4:7 | | | | | | | Firm | 4/22/2021 | 3,500 pc | | |
| 4:8 | | | | | | | Firm | 4/27/2021 | 3,150 pc | | |
| 4:9 | | | | | | | Firm | 4/29/2021 | 3,150 pc | | |
| | | | | | | | | **Sub Total** | **25,550 pc** | | |
| | | | | | | | | | | | |
| 5:1 | LP5P-7P182-BC | 210201 | | | | CDF Housing | Firm | 4/1/2021 | 2,970 pc | | |
| 5:2 | | | | | | | Firm | 4/6/2021 | 0 pc | | |
| 5:3 | | | | | | | Firm | 4/8/2021 | 0 pc | | |
| 5:4 | | | | | | | Firm | 4/13/2021 | 0 pc | | |
| 5:5 | | | | | | | Firm | 4/15/2021 | 2,700 pc | | |
| 5:6 | | | | | | | Firm | 4/20/2021 | 3,510 pc | | |
| 5:7 | | | | | | | Firm | 4/22/2021 | 3,105 pc | | |
| 5:8 | | | | | | | Firm | 4/27/2021 | 3,510 pc | | |
| 5:9 | | | | | | | Firm | 4/29/2021 | 3,510 pc | | |
| | | | | | | | | **Sub Total** | **19,305 pc** | | |
| | | | | | | | | | | **Grand Total** | $ |

| Notes |
|---|

VanNote, Erica



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

| Supplier | Pace Industries<br>Pace Division<br>Harrison Division<br>513 Hwy 62/65 Bypass N<br>Harrison, AR 72601<br>Phone: 870-741-8255<br>Fax: 870-741-4998 |
|---|---|
| Attention | Geanetta  Moore<br>870-741-8255 Ext 1300 |
| Ship To | FCC (Indiana), LLC<br>555 Industrial Park Rd<br>Portland, IN 47371<br>Phone: (260) 726-8023 |
| Bill To | FCC (Indiana), LLC<br>555 Industrial Park Rd<br>Portland, IN 47371 |

| PO No | FIN028816 |
|---|---|
| PO Date | 3/12/2021 |
| Due Date | |
| Purchase Order Revision | |
| PO Revision Date | |
| Issued By | VanNote, Erica<br>260-726-8023  Ext: 1046<br>Fax: 260-726-7782<br>evannote@e-fcci.com |
| Carrier | TJ EXPRESS SERVICE, LLC |
| Via | Ground |
| Payment Terms | Net 30 |
| FOB | Origin |
| Freight Terms | Collect |
| Note | |

### Items

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1:3 | 24044264 | 001 | | | | E CYLINDER | Firm | 4/29/2021 | 700 pc | | |
| 1:4 | | | | | | | Firm | 5/6/2021 | 700 pc | | |
| 1:5 | | | | | | | Firm | 5/11/2021 | 700 pc | | |
| 1:6 | | | | | | | Firm | 5/13/2021 | 700 pc | | |
| 1:7 | | | | | | | Firm | 5/20/2021 | 1,050 pc | | |
| 1:8 | | | | | | | Firm | 5/25/2021 | 350 pc | | |
| | | | | | | | | **Sub Total** | **4,200  pc** | | |
| 2:2 | 24044267 | 002 | | | | CDF HOUSING | Firm | 4/20/2021 | 810 pc | | |
| 2:3 | | | | | | | Firm | 4/22/2021 | 810 pc | | |
| 2:4 | | | | | | | Firm | 4/29/2021 | 405 pc | | |
| 2:5 | | | | | | | Firm | 5/6/2021 | 1,080 pc | | |
| 2:6 | | | | | | | Firm | 5/13/2021 | 1,080 pc | | |
| 2:7 | | | | | | | Firm | 5/20/2021 | 1,080 pc | | |
| 2:8 | | | | | | | Firm | 5/27/2021 | 405 pc | | |
| | | | | | | | | **Sub Total** | **5,670  pc** | | |
| 3:4 | L1MP-7P182-AC | 210201 | | | | HT CDF HOUSING | Firm | 4/15/2021 | 2,160 pc | | |
| 3:5 | | | | | | | Firm | 4/20/2021 | 1,350 pc | | |
| 3:6 | | | | | | | Firm | 4/22/2021 | 1,215 pc | | |
| 3:7 | | | | | | | Firm | 4/27/2021 | 945 pc | | |
| 3:8 | | | | | | | Firm | 4/29/2021 | 1,890 pc | | |
| 3:9 | | | | | | | Firm | 5/4/2021 | 2,025 pc | | |

VanNote, Erica



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3:10 | | | | | | | Firm | 5/6/2021 | 2,025 pc | | |
| 3:11 | | | | | | | Firm | 5/11/2021 | 2,295 pc | | |
| 3:12 | | | | | | | Firm | 5/13/2021 | 1,620 pc | | |
| 3:13 | | | | | | | Firm | 5/18/2021 | 945 pc | | |
| 3:16 | | | | | | | Firm | 5/20/2021 | 405 pc | | |
| 3:14 | | | | | | | Firm | 5/25/2021 | 1,215 pc | | |
| 3:15 | | | | | | | Firm | 5/27/2021 | 1,215 pc | | |
| | | | | | | | | **Sub Total** | **19,305 pc** | | |
| | | | | | | | | | | | |
| 4:5 | LP5P-7A360-BB | 20200302 | | | | E CYLINDER | Firm | 4/15/2021 | 4,900 pc | | |
| 4:6 | | | | | | | Firm | 4/20/2021 | 4,200 pc | | |
| 4:7 | | | | | | | Firm | 4/22/2021 | 3,500 pc | | |
| 4:8 | | | | | | | Firm | 4/27/2021 | 5,250 pc | | |
| 4:9 | | | | | | | Firm | 4/29/2021 | 3,850 pc | | |
| 4:10 | | | | | | | Firm | 5/4/2021 | 6,650 pc | | |
| 4:11 | | | | | | | Firm | 5/6/2021 | 3,150 pc | | |
| 4:12 | | | | | | | Firm | 5/11/2021 | 4,550 pc | | |
| 4:13 | | | | | | | Firm | 5/13/2021 | 3,500 pc | | |
| 4:14 | | | | | | | Firm | 5/18/2021 | 4,900 pc | | |
| 4:15 | | | | | | | Firm | 5/20/2021 | 4,900 pc | | |
| 4:16 | | | | | | | Firm | 5/25/2021 | 4,550 pc | | |
| 4:17 | | | | | | | Firm | 5/27/2021 | 4,200 pc | | |
| | | | | | | | | **Sub Total** | **58,100 pc** | | |
| | | | | | | | | | | | |
| 5:5 | LP5P-7P182-BC | 210201 | | | | CDF Housing | Firm | 4/15/2021 | 2,025 pc | | |
| 5:6 | | | | | | | Firm | 4/20/2021 | 2,700 pc | | |
| 5:7 | | | | | | | Firm | 4/22/2021 | 3,105 pc | | |
| 5:8 | | | | | | | Firm | 4/27/2021 | 3,510 pc | | |
| 5:9 | | | | | | | Firm | 4/29/2021 | 2,700 pc | | |
| 5:10 | | | | | | | Firm | 5/4/2021 | 2,430 pc | | |
| 5:11 | | | | | | | Firm | 5/6/2021 | 2,430 pc | | |
| 5:12 | | | | | | | Firm | 5/11/2021 | 2,700 pc | | |
| 5:13 | | | | | | | Firm | 5/13/2021 | 2,700 pc | | |
| 5:14 | | | | | | | Firm | 5/18/2021 | 4,185 pc | | |
| 5:15 | | | | | | | Firm | 5/20/2021 | 3,240 pc | | |
| 5:16 | | | | | | | Firm | 5/25/2021 | 3,915 pc | | |
| 5:17 | | | | | | | Firm | 5/27/2021 | 3,780 pc | | |
| | | | | | | | | **Sub Total** | **39,420 pc** | | |
| | | | | | | | | | **Grand Total** | $ | 9 |

VanNote, Erica

FCC (Indiana) | FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

| Notes |
| --- |

VanNote, Erica



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

| Supplier | Pace Industries<br>Pace Division<br>Harrison Division<br>513 Hwy 62/65 Bypass N<br>Harrison, AR 72601<br>Phone: 870-741-8255<br>Fax: 870-741-4998 |
| --- | --- |
| Attention | Geanetta Moore<br>870-741-8255 Ext 1300 |
| Ship To | FCC (Indiana), LLC<br>555 Industrial Park Rd<br>Portland, IN 47371<br>Phone: (260) 726-8023 |
| Bill To | FCC (Indiana), LLC<br>555 Industrial Park Rd<br>Portland, IN 47371 |

| | |
| --- | --- |
| PO No | FIN028816 |
| PO Date | 3/12/2021 |
| Due Date | |
| Purchase Order Revision | |
| PO Revision Date | |
| Issued By | VanNote, Erica<br>260-726-8023  Ext: 1046<br>Fax: 260-726-7782<br>evannote@e-fcci.com |
| Carrier | TJ EXPRESS SERVICE, LLC |
| Via | Ground |
| Payment Terms | Net 30 |
| FOB | Origin |
| Freight Terms | Collect |
| Note | |

## Items

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1 :7 | 24044264 | 001 | | | | E CYLINDER | Firm | 5/18/2021 | 700 pc | | |
| 1 :9 | | | | | | | Firm | 6/3/2021 | 1,050 pc | | |
| 1 :10 | | | | | | | Firm | 6/17/2021 | 700 pc | | |
| | | | | | | | | **Sub Total** | **2,450 pc** | | |
| 2 :6 | 24044267 | 002 | | | | CDF HOUSING | Firm | 5/13/2021 | 540 pc | | |
| 2 :5 | | | | | | | Firm | 5/18/2021 | 1,620 pc | | |
| 2 :9 | | | | | | | Firm | 6/3/2021 | 810 pc | | |
| 2 :10 | | | | | | | Firm | 6/8/2021 | 405 pc | | |
| 2 :11 | | | | | | | Firm | 6/10/2021 | 810 pc | | |
| | | | | | | | | **Sub Total** | **4,185 pc** | | |
| 3 :12 | L1MP-7P182-AC | 210201 | | | | HT CDF HOUSING | Firm | 5/13/2021 | 1,890 pc | | |
| 3 :13 | | | | | | | Firm | 5/18/2021 | 2,430 pc | | |
| 3 :14 | | | | | | | Firm | 5/25/2021 | 1,215 pc | | |
| 3 :15 | | | | | | | Firm | 5/27/2021 | 1,350 pc | | |
| 3 :17 | | | | | | | Firm | 6/3/2021 | 2,430 pc | | |

_____
VanNote, Erica

 **FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

# PURCHASE ORDER
# FIN028816

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 :18 | | | | | | | Firm | 6/8/2021 | 1,890 pc | | |
| 3 :19 | | | | | | | Firm | 6/10/2021 | 1,755 pc | | |
| 3 :20 | | | | | | | Firm | 6/15/2021 | 4,320 pc | | |
| 3 :21 | | | | | | | Firm | 6/17/2021 | 405 pc | | |
| 3 :22 | | | | | | | Firm | 6/22/2021 | 3,240 pc | | |
| 3 :23 | | | | | | | Firm | 6/24/2021 | 2,160 pc | | |
| | | | | | | | | **Sub Total** | **23,085 pc** | | |
| 4 :13 | LP5P-7A360-BB | 20200302 | | | | E CYLINDER | Firm | 5/13/2021 | 3,500 pc | | |
| 4 :14 | | | | | | | Firm | 5/18/2021 | 3,500 pc | | |
| 4 :16 | | | | | | | Firm | 5/25/2021 | 3,500 pc | | |
| 4 :17 | | | | | | | Firm | 5/27/2021 | 3,500 pc | | |
| 4 :18 | | | | | | | Firm | 6/3/2021 | 5,600 pc | | |
| 4 :19 | | | | | | | Firm | 6/8/2021 | 5,250 pc | | |
| 4 :20 | | | | | | | Firm | 6/10/2021 | 4,900 pc | | |
| 4 :21 | | | | | | | Firm | 6/15/2021 | 5,250 pc | | |
| 4 :22 | | | | | | | Firm | 6/17/2021 | 5,250 pc | | |
| 4 :23 | | | | | | | Firm | 6/22/2021 | 4,550 pc | | |
| 4 :24 | | | | | | | Firm | 6/24/2021 | 3,850 pc | | |
| | | | | | | | | **Sub Total** | **48,650 pc** | | |
| 5 :13 | LP5P-7P182-BC | 210201 | | | | CDF Housing | Firm | 5/13/2021 | 2,700 pc | | |
| 5 :16 | | | | | | | Firm | 5/25/2021 | 4,185 pc | | |
| 5 :17 | | | | | | | Firm | 5/27/2021 | 4,050 pc | | |
| 5 :18 | | | | | | | Firm | 6/3/2021 | 1,080 pc | | |
| 5 :19 | | | | | | | Firm | 6/8/2021 | 2,565 pc | | |
| 5 :20 | | | | | | | Firm | 6/10/2021 | 2,430 pc | | |
| 5 :21 | | | | | | | Firm | 6/15/2021 | 675 pc | | |
| 5 :22 | | | | | | | Firm | 6/17/2021 | 4,320 pc | | |
| 5 :23 | | | | | | | Firm | 6/22/2021 | 2,025 pc | | |
| 5 :24 | | | | | | | Firm | 6/24/2021 | 3,375 pc | | |
| | | | | | | | | **Sub Total** | **27,405 pc** | | |

VanNote, Erica

**F.C.C. FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |
| | | | | | | | | | Grand Total | | $████████ |

| Notes |
|---|

VanNote, Erica

 **FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

# PURCHASE ORDER
# FIN028816

| Supplier | Pace Industries<br>Pace Division<br>Harrison Division<br>513 Hwy 62/65 Bypass N<br>Harrison, AR 72601 | PO No | FIN028816 |
|---|---|---|---|
| | | PO Date | 3/12/2021 |
| | | Due Date | |
| | | Purchase Order Revision | |
| Attention | Geanetta Moore<br>870-741-8255 Ext 1300 | PO Revision Date | |
| Ship To | FCC (Indiana), LLC<br>555 Industrial Park Rd<br>Portland, IN 47371<br>Phone: (260) 726-8023 | Issued By | VanNote, Erica<br>260-726-8023  Ext: 1046<br>Fax: 260-726-7782<br>evannote@e-fcci.com |
| | | Carrier | TJ EXPRESS SERVICE, LLC |
| Bill To | FCC (Indiana), LLC<br>555 Industrial Park Rd<br>Portland, IN 47371 | Via | Ground |
| | | Payment Terms | Net 30 |
| | | FOB | Origin |
| | | Freight Terms | Collect |
| | | Note | |

| Items | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
| 1 :11 | 24044264 | 001 | | | | E CYLINDER | Firm | 7/15/2021 | 1,050  pc | | |
| 1 :12 | | | | | | | Firm | 7/22/2021 | 1,050  pc | | |
| 1 :13 | | | | | | | Firm | 7/29/2021 | 350  pc | | |
| | | | | | | | | **Sub Total** | **2,450  pc** | | |
| 2 :11 | 24044267 | 002 | | | | CDF HOUSING | Firm | 7/22/2021 | 1,080  pc | | |
| 2 :12 | | | | | | | Firm | 7/29/2021 | 540  pc | | |
| | | | | | | | | **Sub Total** | **1,620  pc** | | |
| 3 :21 | L1MP-7P182-AC | 20210324 | | | | HT CDF HOUSING | Firm | 6/24/2021 | 945  pc | | |
| 3 :24 | | | | | | | Firm | 7/8/2021 | 2,565  pc | | |
| 3 :26 | | | | | | | Firm | 7/13/2021 | 1,080  pc | | |
| 3 :25 | | | | | | | Firm | 7/15/2021 | 2,700  pc | | |
| 3 :27 | | | | | | | Firm | 7/20/2021 | 540  pc | | |
| 3 :28 | | | | | | | Firm | 7/22/2021 | 810  pc | | |
| 3 :29 | | | | | | | Firm | 7/27/2021 | 2,160  pc | | |
| 3 :30 | | | | | | | Firm | 7/29/2021 | 1,755  pc | | |
| | | | | | | | | **Sub Total** | **12,555  pc** | | |

VanNote, Erica

**F.C.C.** FCC (Indiana)

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

# PURCHASE ORDER
# FIN028816

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 :24 | LP5P-7A360-BB | 20200302 | | | | E CYLINDER | Firm | 6/24/2021 | 5,170 pc | | |
| 4 :25 | | | | | | | Firm | 7/8/2021 | 3,850 pc | | |
| 4 :26 | | | | | | | Firm | 7/13/2021 | 4,200 pc | | |
| 4 :27 | | | | | | | Firm | 7/15/2021 | 3,850 pc | | |
| 4 :28 | | | | | | | Firm | 7/20/2021 | 4,900 pc | | |
| 4 :29 | | | | | | | Firm | 7/22/2021 | 4,200 pc | | |
| 4 :30 | | | | | | | Firm | 7/27/2021 | 4,550 pc | | |
| 4 :31 | | | | | | | Firm | 7/29/2021 | 4,550 pc | | |
| | | | | | | | | **Sub Total** | **35,270 pc** | | |
| 5 :24 | LP5P-7P182-BC | 20210324 | | | | CDF Housing | Firm | 6/24/2021 | 3,375 pc | | |
| 5 :25 | | | | | | | Firm | 7/8/2021 | 2,430 pc | | |
| 5 :26 | | | | | | | Firm | 7/13/2021 | 2,700 pc | | |
| 5 :27 | | | | | | | Firm | 7/15/2021 | 2,025 pc | | |
| 5 :28 | | | | | | | Firm | 7/20/2021 | 4,185 pc | | |
| 5 :29 | | | | | | | Firm | 7/22/2021 | 2,835 pc | | |
| 5 :30 | | | | | | | Firm | 7/27/2021 | 2,835 pc | | |
| 5 :31 | | | | | | | Firm | 7/29/2021 | 2,700 pc | | |
| | | | | | | | | **Sub Total** | **23,085 pc** | | |
| | | | | | | | | **Grand Total** | | | $ |

| Notes |
|---|

VanNote, Erica



**F.C.C. FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

| Supplier | Pace Industries<br>Pace Division<br>Harrison Division<br>513 Hwy 62/65 Bypass N<br>Harrison, AR 72601 | | PO No | FIN028816 |
|---|---|---|---|---|
| | | | PO Date | 3/12/2021 |
| | | | Due Date | |
| Attention | Geanetta  Moore<br>870-741-8255 Ext 1300 | | Purchase Order Revision | |
| | | | PO Revision Date | |
| Ship To | FCC (Indiana), LLC<br>555 Industrial Park Rd<br>Portland, IN 47371<br>Phone: (260) 726-8023 | | Issued By | VanNote, Erica<br>260-726-8023  Ext. 1046<br>Fax: 260-726-7782<br>evannote@e-fcci.com |
| Bill To | FCC (Indiana), LLC<br>555 Industrial Park Rd<br>Portland, IN 47371 | | Carrier | TJ EXPRESS SERVICE, LLC |
| | | | Via | Ground |
| | | | Payment Terms | Net 30 |
| | | | FOB | Origin |
| | | | Freight Terms | Collect |
| | | | Note | |

### Items

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 :13 | 24044264 | 001 | | | | E CYLINDER | Partial | 7/29/2021 | 350 pc | | |
| 1 :21 | | | | | | | Firm | 8/3/2021 | 700 pc | | |
| 1 :17 | | | | | | | Firm | 8/5/2021 | 1,050 pc | | |
| 1 :18 | | | | | | | Firm | 8/12/2021 | 1,050 pc | | |
| 1 :19 | | | | | | | Firm | 8/19/2021 | 1,050 pc | | |
| 1 :20 | | | | | | | Firm | 8/31/2021 | 700 pc | | |
| | | | | | | | | **Sub Total** | **4,900 pc** | | |
| 2 :12 | 24044267 | 002 | | | | CDF HOUSING | Firm | 7/29/2021 | 945 pc | | |
| 2 :18 | | | | | | | Firm | 8/3/2021 | 270 pc | | |
| 2 :14 | | | | | | | Firm | 8/5/2021 | 810 pc | | |
| 2 :15 | | | | | | | Firm | 8/12/2021 | 1,080 pc | | |
| 2 :16 | | | | | | | Firm | 8/19/2021 | 1,080 pc | | |
| 2 :17 | | | | | | | Firm | 8/31/2021 | 675 pc | | |

VanNote, Erica



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | **Sub Total** | **4,860  pc** | | $▉▉▉▉ |
| 3 :30 | L1MP-7P182-AC | 20210324 | | | | HT CDF HOUSING | Firm | 7/29/2021 | 405  pc | | ▉▉▉▉ |
| 3 :31 | | | | | | | Firm | 8/3/2021 | 1,620  pc | | ▉▉▉▉ |
| 3 :32 | | | | | | | Firm | 8/5/2021 | 1,080  pc | | ▉▉▉▉ |
| 3 :33 | | | | | | | Firm | 8/10/2021 | 2,565  pc | | ▉▉▉▉ |
| 3 :34 | | | | | | | Firm | 8/12/2021 | 1,755  pc | | ▉▉▉▉ |
| 3 :35 | | | | | | | Firm | 8/17/2021 | 1,350  pc | | ▉▉▉▉ |
| 3 :36 | | | | | | | Firm | 8/19/2021 | 675  pc | | ▉▉▉▉ |
| 3 :37 | | | | | | | Firm | 8/24/2021 | 3,375  pc | | ▉▉▉▉ |
| 3 :38 | | | | | | | Firm | 8/26/2021 | 945  pc | | ▉▉▉▉ |
| 3 :39 | | | | | | | Firm | 8/31/2021 | 810  pc | | ▉▉▉▉ |
| | | | | | | | | **Sub Total** | **14,580  pc** | | |
| 4 :31 | LP5P-7A360-BB | 20200302 | | | | E CYLINDER | Partial | 7/29/2021 | 4,300  pc | | ▉▉▉▉ |
| 4 :32 | | | | | | | Firm | 8/3/2021 | 3,150  pc | | ▉▉▉▉ |
| 4 :33 | | | | | | | Firm | 8/5/2021 | 3,150  pc | | ▉▉▉▉ |
| 4 :34 | | | | | | | Firm | 8/10/2021 | 3,150  pc | | ▉▉▉▉ |
| 4 :35 | | | | | | | Firm | 8/12/2021 | 4,200  pc | | ▉▉▉▉ |
| 4 :36 | | | | | | | Firm | 8/17/2021 | 4,900  pc | | ▉▉▉▉ |
| 4 :37 | | | | | | | Firm | 8/19/2021 | 4,900  pc | | ▉▉▉▉ |
| 4 :38 | | | | | | | Firm | 8/24/2021 | 4,900  pc | | ▉▉▉▉ |
| 4 :39 | | | | | | | Firm | 8/26/2021 | 4,200  pc | | ▉▉▉▉ |
| 4 :40 | | | | | | | Firm | 8/31/2021 | 4,900  pc | | ▉▉▉▉ |
| | | | | | | | | **Sub Total** | **41,750  pc** | | |

VanNote, Erica



**FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

# PURCHASE ORDER
## FIN028816

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 :31 | LP5P-7P182-BC | 20210324 | | | | CDF Housing | Firm | 7/29/2021 | 2,835  pc | | |
| 5 :32 | | | | | | | Firm | 8/3/2021 | 1,755  pc | | |
| 5 :33 | | | | | | | Firm | 8/5/2021 | 2,025  pc | | |
| 5 :34 | | | | | | | Firm | 8/10/2021 | 2,160  pc | | |
| 5 :35 | | | | | | | Firm | 8/12/2021 | 1,755  pc | | |
| 5 :36 | | | | | | | Firm | 8/17/2021 | 3,780  pc | | |
| 5 :37 | | | | | | | Firm | 8/19/2021 | 2,970  pc | | |
| 5 :38 | | | | | | | Firm | 8/24/2021 | 1,350  pc | | |
| 5 :39 | | | | | | | Firm | 8/26/2021 | 4,185  pc | | |
| 5 :40 | | | | | | | Firm | 8/31/2021 | 3,105  pc | | |
| | | | | | | | | **Sub Total** | **25,920  pc** | | |
| | | | | | | | | | **Grand Total** | $ | |

| Notes |
|---|

VanNote, Erica



**F.C.C. FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

# PURCHASE ORDER
# FIN028816

| Supplier | Pace Industries<br>Pace Division<br>Harrison Division<br>513 Hwy 62/65 Bypass N<br>Harrison, AR 72601 | PO No | FIN028816 |
|---|---|---|---|
| | | PO Date | 3/12/2021 |
| | | Due Date | |
| | | Purchase Order Revision | |
| Attention | Geanetta  Moore<br>870-741-8255 Ext 1300 | PO Revision Date | |
| Ship To | FCC (Indiana), LLC<br>555 Industrial Park Rd<br>Portland, IN 47371<br>Phone: (260) 726-8023 | Issued By | VanNote, Erica<br>260-726-8023  Ext: 1046<br>Fax: 260-726-7782<br>evannote@e-fcci.com |
| Bill To | FCC (Indiana), LLC<br>555 Industrial Park Rd<br>Portland, IN 47371 | Carrier | TJ EXPRESS SERVICE, LLC |
| | | Via | Ground |
| | | Payment Terms | Net 30 |
| | | FOB | Origin |
| | | Freight Terms | Collect |
| | | Note | |

## Items

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 :22 | 24044264 | 001 | | | | E CYLINDER | Firm | 8/31/2021 | 1,400  pc | | |
| 1 :23 | | | | | | | Firm | 9/2/2021 | 2,450  pc | | |
| 1 :24 | | | | | | | Firm | 9/9/2021 | 2,100  pc | | |
| 1 :25 | | | | | | | Firm | 9/16/2021 | 2,100  pc | | |
| 1 :26 | | | | | | | Firm | 9/23/2021 | 2,450  pc | | |
| 1 :27 | | | | | | | Firm | 9/30/2021 | 350  pc | | |
| | | | | | | | | **Sub Total** | **10,850  pc** | | |
| 2 :16 | 24044267 | 002 | | | | CDF HOUSING | Firm | 8/19/2021 | 1,080  pc | | |
| 2 :17 | | | | | | | Firm | 8/31/2021 | 810  pc | | |
| 2 :19 | | | | | | | Firm | 9/2/2021 | 2,295  pc | | |
| 2 :20 | | | | | | | Firm | 9/9/2021 | 2,565  pc | | |
| 2 :21 | | | | | | | Firm | 9/16/2021 | 2,565  pc | | |
| 2 :22 | | | | | | | Firm | 9/23/2021 | 2,430  pc | | |

VanNote, Erica

 **FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

# PURCHASE ORDER
# FIN028816

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 :23 | | | | | | | Firm | 9/30/2021 | 135  pc | | |
| | | | | | | | | **Sub Total** | **11,880  pc** | | |
| 3 :35 | L1MP-7P182-AC | 20210324 | | | | HT CDF HOUSING | Firm | 8/17/2021 | 1,350  pc | | |
| 3 :36 | | | | | | | Firm | 8/19/2021 | 675  pc | | |
| 3 :37 | | | | | | | Firm | 8/24/2021 | 3,375  pc | | |
| 3 :38 | | | | | | | Firm | 8/26/2021 | 945  pc | | |
| 3 :39 | | | | | | | Firm | 8/31/2021 | 810  pc | | |
| 3 :40 | | | | | | | Firm | 9/2/2021 | 405  pc | | |
| 3 :41 | | | | | | | Firm | 9/7/2021 | 2,835  pc | | |
| 3 :42 | | | | | | | Firm | 9/14/2021 | 2,430  pc | | |
| 3 :43 | | | | | | | Firm | 9/16/2021 | 270  pc | | |
| 3 :44 | | | | | | | Firm | 9/21/2021 | 2,295  pc | | |
| 3 :45 | | | | | | | Firm | 9/23/2021 | 2,565  pc | | |
| 3 :46 | | | | | | | Firm | 9/28/2021 | 1,215  pc | | |
| 3 :47 | | | | | | | Firm | 9/30/2021 | 945  pc | | |
| | | | | | | | | **Sub Total** | **20,115  pc** | | |
| 4 :36 | LP5P-7A360-BB | 20200302 | | | | E CYLINDER | Firm | 8/17/2021 | 3,500  pc | | |
| 4 :37 | | | | | | | Firm | 8/19/2021 | 3,500  pc | | |
| 4 :38 | | | | | | | Firm | 8/24/2021 | 4,200  pc | | |
| 4 :39 | | | | | | | Firm | 8/26/2021 | 4,900  pc | | |
| 4 :40 | | | | | | | Firm | 8/31/2021 | 4,200  pc | | |
| 4 :41 | | | | | | | Firm | 9/2/2021 | 4,900  pc | | |

VanNote, Erica



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 :42 | | | | | | | Firm | 9/7/2021 | 4,900 pc | | |
| 4 :43 | | | | | | | Firm | 9/9/2021 | 4,900 pc | | |
| 4 :44 | | | | | | | Firm | 9/14/2021 | 4,550 pc | | |
| 4 :45 | | | | | | | Firm | 9/16/2021 | 2,450 pc | | |
| 4 :46 | | | | | | | Firm | 9/21/2021 | 5,250 pc | | |
| 4 :47 | | | | | | | Firm | 9/23/2021 | 4,900 pc | | |
| 4 :48 | | | | | | | Firm | 9/28/2021 | 5,600 pc | | |
| 4 :49 | | | | | | | Firm | 9/30/2021 | 5,600 pc | | |
| | | | | | | | | **Sub Total** | 63,350 pc | | |
| 5 :36 | LP5P-7P182-BC | 20210324 | | | | CDF Housing | Firm | 8/17/2021 | 2,700 pc | | |
| 5 :37 | | | | | | | Firm | 8/19/2021 | 2,700 pc | | |
| 5 :38 | | | | | | | Firm | 8/24/2021 | 2,700 pc | | |
| 5 :39 | | | | | | | Firm | 8/26/2021 | 4,185 pc | | |
| 5 :40 | | | | | | | Firm | 8/31/2021 | 3,105 pc | | |
| 5 :41 | | | | | | | Firm | 9/2/2021 | 1,485 pc | | |
| 5 :42 | | | | | | | Firm | 9/7/2021 | 2,295 pc | | |
| 5 :43 | | | | | | | Firm | 9/9/2021 | 1,755 pc | | |
| 5 :44 | | | | | | | Firm | 9/14/2021 | 2,835 pc | | |
| 5 :45 | | | | | | | Firm | 9/16/2021 | 2,430 pc | | |
| 5 :46 | | | | | | | Firm | 9/21/2021 | 2,700 pc | | |
| 5 :47 | | | | | | | Firm | 9/23/2021 | 3,645 pc | | |
| 5 :48 | | | | | | | Firm | 9/28/2021 | 3,645 pc | | |
| 5 :49 | | | | | | | Firm | 9/30/2021 | 3,645 pc | | |

VanNote, Erica

**F.C.C. FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

# PURCHASE ORDER
# FIN028816

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Sub Total | 39,825  pc | | $ █████ |
| | | | | | | | | | | | |
| | | | | | | | | Grand Total | | | $ █████ |
| Notes | | | | | | | | | | | |

VanNote, Erica



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

# PURCHASE ORDER
## FIN028816

| Supplier | Pace Industries | PO No | FIN028816 |
|---|---|---|---|
| | Pace Division | PO Date | 3/12/2021 |
| | Harrison Division | Due Date | |
| | 513 Hwy 62/65 Bypass N | Purchase Order Revision | |
| | Harrison, AR 72601 | PO Revision Date | |
| Attention | Geanetta Moore | Issued By | VanNote, Erica |
| | 870-741-8255 Ext 1300 | | 260-726-8023  Ext: 1046 |
| Ship To | FCC (Indiana), LLC | | Fax: 260-726-7782 |
| | 555 Industrial Park Rd | | evannote@e-fcci.com |
| | Portland, IN 47371 | Carrier | TJ EXPRESS SERVICE, LLC |
| | Phone: (260) 726-8023 | Via | Ground |
| Bill To | FCC (Indiana), LLC | Payment Terms | Net 30 |
| | 555 Industrial Park Rd | FOB | Origin |
| | Portland, IN 47371 | Freight Terms | Collect |
| | | Note | |

## Items

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 :3 | 24044264 | 002 | | | | E CYLINDER | Firm | 9/30/2021 | 2,100  pc | | |
| 1 :5 | | | | | | | Firm | 10/7/2021 | 2,450  pc | | |
| 1 :6 | | | | | | | Firm | 10/14/2021 | 2,450  pc | | |
| 1 :7 | | | | | | | Firm | 10/21/2021 | 2,100  pc | | |
| 1 :8 | | | | | | | Firm | 10/26/2021 | 1,050  pc | | |
| 1 :9 | | | | | | | Firm | 10/28/2021 | 1,400  pc | | |
| | | | | | | | | **Sub Total** | **11,550  pc** | | |
| 2 :24 | 24044267 | 002 | | | | CDF HOUSING | Firm | 9/28/2021 | 540  pc | | |
| 2 :23 | | | | | | | Firm | 9/30/2021 | 1,350  pc | | |
| 2 :25 | | | | | | | Firm | 10/5/2021 | 1,350  pc | | |
| 2 :26 | | | | | | | Firm | 10/7/2021 | 1,080  pc | | |
| 2 :27 | | | | | | | Firm | 10/12/2021 | 1,350  pc | | |
| 2 :28 | | | | | | | Firm | 10/14/2021 | 1,080  pc | | |

VanNote, Erica



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

# PURCHASE ORDER
# FIN028816

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 :29 | | | | | | | Firm | 10/19/2021 | 1,350 pc | | |
| 2 :30 | | | | | | | Firm | 10/21/2021 | 945 pc | | |
| 2 :31 | | | | | | | Firm | 10/26/2021 | 1,350 pc | | |
| 2 :32 | | | | | | | Firm | 10/28/2021 | 1,215 pc | | |
| | | | | | | | | **Sub Total** | **11,610 pc** | | |
| 3 :46 | L1MP-7P182-AC | 20210324 | | | | HT CDF HOUSING | Firm | 9/28/2021 | 1,215 pc | | |
| 3 :47 | | | | | | | Firm | 9/30/2021 | 405 pc | | |
| 3 :48 | | | | | | | Firm | 10/5/2021 | 1,620 pc | | |
| 3 :49 | | | | | | | Firm | 10/7/2021 | 1,080 pc | | |
| 3 :50 | | | | | | | Firm | 10/12/2021 | 2,700 pc | | |
| 3 :51 | | | | | | | Firm | 10/14/2021 | 2,025 pc | | |
| 3 :52 | | | | | | | Firm | 10/19/2021 | 675 pc | | |
| 3 :53 | | | | | | | Firm | 10/26/2021 | 1,620 pc | | |
| 3 :54 | | | | | | | Firm | 10/28/2021 | 1,755 pc | | |
| | | | | | | | | **Sub Total** | **13,095 pc** | | |
| 4 :48 | LP5P-7A360-BB | 20200302 | | | | E CYLINDER | Firm | 9/28/2021 | 4,200 pc | | |
| 4 :49 | | | | | | | Firm | 9/30/2021 | 2,800 pc | | |
| 4 :50 | | | | | | | Firm | 10/5/2021 | 5,600 pc | | |
| 4 :51 | | | | | | | Firm | 10/7/2021 | 4,550 pc | | |
| 4 :52 | | | | | | | Firm | 10/12/2021 | 2,800 pc | | |
| 4 :53 | | | | | | | Firm | 10/14/2021 | 2,800 pc | | |
| 4 :54 | | | | | | | Firm | 10/19/2021 | 3,850 pc | | |

VanNote, Erica



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

# PURCHASE ORDER
# FIN028816

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 :55 | | | | | | | Firm | 10/21/2021 | 4,550  pc | | |
| 4 :56 | | | | | | | Firm | 10/26/2021 | 4,550  pc | | |
| 4 :57 | | | | | | | Firm | 10/28/2021 | 4,550  pc | | |
| | | | | | | | | **Sub Total** | **40,250  pc** | | |
| 5 :47 | LP5P-7P182-BC | 20210324 | | | | CDF Housing | Partial | 9/23/2021 | 1,215  pc | | |
| 5 :48 | | | | | | | Firm | 9/28/2021 | 3,645  pc | | |
| 5 :49 | | | | | | | Firm | 9/30/2021 | 3,645  pc | | |
| 5 :50 | | | | | | | Firm | 10/5/2021 | 1,890  pc | | |
| 5 :51 | | | | | | | Firm | 10/7/2021 | 2,160  pc | | |
| 5 :52 | | | | | | | Firm | 10/12/2021 | 1,890  pc | | |
| 5 :53 | | | | | | | Firm | 10/14/2021 | 1,890  pc | | |
| 5 :54 | | | | | | | Firm | 10/19/2021 | 3,510  pc | | |
| 5 :55 | | | | | | | Firm | 10/21/2021 | 3,510  pc | | |
| 5 :56 | | | | | | | Firm | 10/26/2021 | 1,890  pc | | |
| 5 :57 | | | | | | | Firm | 10/28/2021 | 1,755  pc | | |
| | | | | | | | | **Sub Total** | **27,000  pc** | | |

| | Grand Total | $ |
|---|---|---|

| Notes |
|---|

VanNote, Erica


**FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

# PURCHASE ORDER
# FIN028816

| Supplier | Pace Industries<br>Pace Division<br>Harrison Division<br>513 Hwy 62/65 Bypass N<br>Harrison, AR 72601 | PO No | FIN028816 |
|---|---|---|---|
| | | PO Date | 3/12/2021 |
| | | Due Date | |
| | | Purchase Order Revision | |
| Attention | Geanetta Moore<br>870-741-8255 Ext 1300 | PO Revision Date | |
| Ship To | FCC (Indiana), LLC<br>555 Industrial Park Rd<br>Portland, IN 47371<br>Phone: (260) 726-8023 | Issued By | VanNote, Erica<br>260-726-8023  Ext: 1046<br>Fax: 260-726-7782<br>evannote@e-fcci.com |
| Bill To | FCC (Indiana), LLC<br>555 Industrial Park Rd<br>Portland, IN 47371 | Carrier | TJ EXPRESS SERVICE, LLC |
| | | Via | Ground |
| | | Payment Terms | Net 30 |
| | | FOB | Origin |
| | | Freight Terms | Collect |
| | | Note | |

## Items

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 :6 | 24044264 | 002 | | | | E CYLINDER | Partial | 10/14/2021 | 2,100  pc | | |
| 1 :7 | | | | | | | Firm | 10/21/2021 | 2,100  pc | | |
| 1 :8 | | | | | | | Firm | 10/26/2021 | 1,050  pc | | |
| 1 :9 | | | | | | | Firm | 10/28/2021 | 2,100  pc | | |
| 1 :10 | | | | | | | Firm | 11/4/2021 | 2,450  pc | | |
| 1 :11 | | | | | | | Firm | 11/11/2021 | 2,100  pc | | |
| 1 :12 | | | | | | | Firm | 11/18/2021 | 2,100  pc | | |
| 1 :13 | | | | | | | Firm | 11/22/2021 | 3,150  pc | | |
| 1 :14 | | | | | | | Firm | 11/24/2021 | 1,050  pc | | |
| | | | | | | | | **Sub Total** | **18,200  pc** | | |
| 2 :27 | 24044267 | 002 | | | | CDF HOUSING | Partial | 10/12/2021 | 945  pc | | |
| 2 :28 | | | | | | | Firm | 10/14/2021 | 1,080  pc | | |
| 2 :29 | | | | | | | Firm | 10/19/2021 | 1,350  pc | | |

VanNote, Erica

 **FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 :30 | | | | | | | Firm | 10/21/2021 | 945 pc | | |
| 2 :31 | | | | | | | Firm | 10/26/2021 | 1,350 pc | | |
| 2 :32 | | | | | | | Firm | 10/28/2021 | 2,430 pc | | |
| 2 :33 | | | | | | | Firm | 11/4/2021 | 2,565 pc | | |
| 2 :34 | | | | | | | Firm | 11/11/2021 | 2,025 pc | | |
| 2 :35 | | | | | | | Firm | 11/18/2021 | 1,890 pc | | |
| 2 :36 | | | | | | | Firm | 11/22/2021 | 3,240 pc | | |
| 2 :37 | | | | | | | Firm | 11/24/2021 | 1,215 pc | | |
| | | | | | | | | **Sub Total** | **19,035 pc** | | |
| 3 :50 | L1MP-7P182-AC | 20210324 | | | | HT CDF HOUSING | Partial | 10/12/2021 | 1,755 pc | | |
| 3 :51 | | | | | | | Firm | 10/14/2021 | 2,025 pc | | |
| 3 :52 | | | | | | | Firm | 10/19/2021 | 675 pc | | |
| 3 :55 | | | | | | | Firm | 10/21/2021 | 945 pc | | |
| 3 :53 | | | | | | | Firm | 10/26/2021 | 810 pc | | |
| 3 :54 | | | | | | | Firm | 10/28/2021 | 2,565 pc | | |
| 3 :56 | | | | | | | Firm | 11/2/2021 | 2,430 pc | | |
| 3 :57 | | | | | | | Firm | 11/4/2021 | 675 pc | | |
| 3 :58 | | | | | | | Firm | 11/9/2021 | 1,080 pc | | |
| 3 :59 | | | | | | | Firm | 11/11/2021 | 2,700 pc | | |
| 3 :60 | | | | | | | Firm | 11/16/2021 | 675 pc | | |
| 3 :61 | | | | | | | Firm | 11/18/2021 | 2,970 pc | | |
| 3 :62 | | | | | | | Firm | 11/22/2021 | 540 pc | | |
| 3 :63 | | | | | | | Firm | 11/24/2021 | 540 pc | | |

VanNote, Erica

 **FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

# PURCHASE ORDER
# FIN028816

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 :64 | | | | | | | Firm | 11/30/2021 | 2,430 pc | | |
| | | | | | | | | **Sub Total** | **22,815 pc** | | |
| 4 :53 | LP5P-7A360-BB | 20200302 | | | | E CYLINDER | Firm | 10/14/2021 | 2,100 pc | | |
| 4 :54 | | | | | | | Firm | 10/19/2021 | 3,850 pc | | |
| 4 :55 | | | | | | | Firm | 10/21/2021 | 4,200 pc | | |
| 4 :56 | | | | | | | Firm | 10/26/2021 | 5,250 pc | | |
| 4 :57 | | | | | | | Firm | 10/28/2021 | 3,150 pc | | |
| 4 :58 | | | | | | | Firm | 11/2/2021 | 4,550 pc | | |
| 4 :59 | | | | | | | Firm | 11/4/2021 | 3,500 pc | | |
| 4 :60 | | | | | | | Firm | 11/9/2021 | 4,550 pc | | |
| 4 :61 | | | | | | | Firm | 11/11/2021 | 2,800 pc | | |
| 4 :62 | | | | | | | Firm | 11/16/2021 | 5,250 pc | | |
| 4 :63 | | | | | | | Firm | 11/18/2021 | 3,500 pc | | |
| 4 :64 | | | | | | | Firm | 11/22/2021 | 3,150 pc | | |
| 4 :65 | | | | | | | Firm | 11/24/2021 | 2,800 pc | | |
| 4 :66 | | | | | | | Firm | 11/30/2021 | 3,850 pc | | |
| | | | | | | | | **Sub Total** | **52,500 pc** | | |
| 5 :50 | LP5P-7P182-BC | 20210324 | | | | CDF Housing | Partial | 10/5/2021 | 270 pc | | |
| 5 :51 | | | | | | | Firm | 10/7/2021 | 2,160 pc | | |
| 5 :52 | | | | | | | Firm | 10/12/2021 | 1,890 pc | | |
| 5 :53 | | | | | | | Firm | 10/14/2021 | 1,890 pc | | |
| 5 :54 | | | | | | | Firm | 10/19/2021 | 3,510 pc | | |

VanNote, Erica

**FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 :55 | | | | | | | Firm | 10/21/2021 | 2,700 pc | | |
| 5 :56 | | | | | | | Firm | 10/26/2021 | 2,430 pc | | |
| 5 :57 | | | | | | | Firm | 10/28/2021 | 0 pc | | |
| 5 :58 | | | | | | | Firm | 11/2/2021 | 2,835 pc | | |
| 5 :59 | | | | | | | Firm | 11/4/2021 | 1,485 pc | | |
| 5 :60 | | | | | | | Firm | 11/9/2021 | 4,185 pc | | |
| 5 :61 | | | | | | | Firm | 11/11/2021 | 405 pc | | |
| 5 :62 | | | | | | | Firm | 11/16/2021 | 4,320 pc | | |
| 5 :63 | | | | | | | Firm | 11/22/2021 | 810 pc | | |
| 5 :64 | | | | | | | Firm | 11/24/2021 | 3,780 pc | | |
| 5 :65 | | | | | | | Firm | 11/30/2021 | 2,565 pc | | |
| | | | | | | | | **Sub Total** | **35,235 pc** | | |
| | | | | | | | | **Grand Total** | | | $ |

| Notes |
|---|

VanNote, Erica

**F.C.C.** FCC (Indiana)

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

FCC STANDARD TERMS AND CONDITIONS

**Article 1. Application.** The terms and conditions set forth herein will govern (the "Terms") and supplement any long term agreements between FCC and Supplier (each a "**Long Term Agreement**") concerning FCC's purchase of goods ( "Components") or services ("Services") from Supplier and will apply to all individual purchase orders issued by FCC to Supplier for Components or Services (each, a "**Purchase Order**"). The Terms, Long Term Agreement(s) and Purchase Order(s) are collectively referred to as the "**Agreement(s)**"). If there is conflict between these Terms, the Long Term Agreement, or any applicable Purchase Order, the following order of precedence applies: (i) the Purchase Order; (ii) the Long Term Agreement; and (iii) these Terms. These Terms will be deemed accepted by Supplier upon either its written acceptance or upon commencement of any required work or service under the Agreement. Further, if Supplier does not refuse a Purchase Order in writing within three (3) days following Supplier's receipt of the Purchase Order, Supplier will be deemed to have accepted such Purchase Order. Supplier's acceptance will be limited to the express written terms of the Agreement. Any terms not defined in these Terms will have the meaning set forth in the applicable Long Term Agreement. Additional or different terms contained in any documentation provided by Supplier beyond those terms contained in these Terms or the Agreements are expressly rejected and will not be binding on FCC, nor will they become part of the Agreements absent an amendment agreed to and executed in writing by the parties.

**Article 2. Content, Formation and Amendment of Purchase Orders.** Unless otherwise stated on the Purchase Order, each Purchase Order is a requirements contract whereby FCC agrees to purchase, and Supplier agrees to supply, 100% of FCC's requirements of the Components or Services for the duration stated in Article 8(D). Each Purchase Order will specify, with respect to each Component and/or Services ordered, an order date, a description of the Component or Services, delivery date, delivery location, completion date, price, and other transaction terms; provided, however, that matters common to the Purchase Orders may be specified in advance upon consultation by FCC and Supplier. If requested by Supplier, FCC will provide a non-binding forecast of Components or Services expected to be ordered for the following ninety (90) days. If Supplier reasonably expects that it cannot meet the forecasted demand for Components or Services needed by FCC, Supplier will promptly inform FCC of that fact, and provide a timeline within which Supplier believes it can fulfill FCC's needs.

**Article 3. Delivery; Inspection; Remedies.**

A.    Delivery. Supplier will arrange all transportation for Components and will deliver Components to FCC DDP (Incoterms 2010) to the FCC facility designated on the applicable Purchase Order, unless FCC directs Supplier in writing to send them to a different destination prior to shipment of the Components. Time is of the essence. If Supplier fails to make timely delivery or fails to make progress so as to endanger timely and proper completion of Services or delivery of Components (including, but not limited to, Supplier fails, or is endanger of failing, to timely meet all PPAP, validation and run-at-rate requirements), Supplier will be in breach and FCC may terminate for cause. Supplier will notify FCC electronically at the time of shipment, in a format approved by FCC, of the Purchase Order number, the Components contained therein, the quantity and description of such Components, and the method of transportation used. If Supplier is unable to meet the delivery requirements set forth in the applicable Purchase Order, Supplier will immediately notify FCC, and deliver the Components as soon as possible. FCC reserves the right to reduce payment for Components or Services received after the scheduled delivery date, or, alternatively, to seek replacement Components or Services from a third party at Supplier's expense. Supplier is liable for all direct, incidental and consequential damages, losses, costs and expenses incurred by FCC and resulting from Supplier's failure to deliver conforming and non-defective Components or Services or to comply with the shipping and delivery or other requirements of FCC and this Agreement.

B.    Inspection. Supplier is responsible for appropriately packaging all Components to make sure that no damage to such Components occurs during the shipping process, and for performing all Services in accordance with the requirements set forth in the applicable Purchase Order and this Agreement. FCC will reject any Components damaged during the course of shipment, or Services that are not adequately performed. FCC and its customers will have the right to enter Supplier's facilities during normal business hours to inspect any and all Components, Supplier's facilities, and/or the machinery used to manufacture such Components upon forty-eight (48) hours' advance notice to Supplier. FCC also reserves the right to inspect Components upon receipt, and Services rendered, even if payment for such Components has already been received by Supplier. Payment for Components or Services does not constitute acceptance. Upon FCC's request, Supplier will promptly furnish any inspection documentation regarding the Components prepared by Supplier in the ordinary course of business prior to shipping, so that FCC can verify conformance of the Components with the Specifications (as defined in Article 4), as set forth in the applicable Agreements. FCC's failure to inspect Components or Services performed will not be deemed acceptance of defective Components or inadequate Services, nor a waiver of any of FCC's other rights or remedies under the Agreements arising from any defects, non-conformance or other breach by Supplier.

VanNote, Erica

 FCC (Indiana)

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

C.   Rejection. If FCC rejects Components or tender of delivery due to an excess quantity, Supplier will, at FCC's request and within such reasonable period of time as FCC specifies, remove such excess from FCC's facility at Supplier's expense and risk. If there is a shortage of delivered Components to FCC, Supplier will, within a reasonable period of time specified by FCC, deliver conforming Components to fill such shortage. If FCC rejects the Components delivered for any other reason, Supplier will, at FCC's request and within a reasonable period of time specified by FCC, remove such rejected Components from FCC's facility at Supplier's sole expense, and reimburse FCC for any payments FCC made for the rejected Components. If Services are not properly performed, the Services will be promptly re-performed to FCC's satisfaction, as determined in FCC's sole discretion. If Components or Services fail FCC's initial inspection but are useable, as determined in FCC's sole discretion, FCC may choose to accept the Components or Services at a reduced price to be determined in consultation with Supplier.

D.   Remedies. If Supplier breaches the Agreement in any way, FCC may take any or all of the following actions, without prejudiced to any other rights or remedies available to FCC by law:

i.   require Supplier to repair or replace such -or remedy the inadequate Service provided, and upon Supplier's failure or refusal to do so, repair, replace or remedy the same at Supplier's expense;
ii.   reject any shipment or delivery containing defective or nonconforming Components and return for credit or replacement at FCC's option (at Supplier's cost and risk); reject inadequate Services and withhold payment therefor; and/or;
iii.   cancel any outstanding Purchase Orders or shipments of Components or Services not yet delivered or performed hereunder with no further liability to FCC whatsoever.

E.   FCC Rights. If any Components furnished under any Purchase Order are, in whole or in part, defective or otherwise nonconforming with the applicable Specifications, FCC will, in addition to all other rights and remedies provided for by law or these Terms, have the right to recover any and all damages, losses or expenses which result or in any way arise from Supplier's breach. Supplier will reimburse FCC for all actual attorney's fees (including the cost of in-house counsel) in any action arising out of this Purchase Order, unless Supplier is the prevailing party. FCC will also have the right to require and direct Supplier to remove all nonconforming or defective Components from FCC's facility at Supplier's sole risk and expense. All rights and remedies of FCC, whether provided by these Terms or by law, will be nonexclusive and cumulative. Claims brought under the Agreements (or otherwise), may be brought by FCC at any time within the applicable statutes of limitations.

F.   Supplier's Rights. If FCC materially breaches any term of the Agreements, Supplier's exclusive remedy, and FCC's maximum liability, will not exceed the total of all required payments under this Agreement minus those actually made. In no event will FCC be liable to Supplier for lost profits, unabsorbed overhead, interest, product development or engineering costs, facilities and equipment costs or rental, unrecovered depreciation costs, general and administrative burden charges, business interruption, or incidental, consequential or punitive damages. Any action by Supplier arising out of or relating to this Agreement must be commenced by Supplier within one (1) year after the cause of action has accrued, or such cause of action will be deemed to have been waived.

**Article 4. Specifications.** All Components or Services will comply with specifications designated by FCC including any specifications of FCC's end customer (together, the "Specifications"). On the basis of its technology and experience, Supplier will examine specifications of the Components and Services or matters presented by FCC as requirementsand notify FCC of any matters that should be improved. If Supplier has questions or objections regarding any Component or Service Specifications, it will promptly notify FCC to consult regarding any such questions or concerns and resolve them.

**Article 5. Transfer of Ownership and Risk.** Notwithstanding any provision hereof to the contrary, title to, and risk of loss of the Components or Direct Delivery Components will remain with Supplier until the Components are delivered to, and unloaded at, FCC's facility. Supplier will indemnify and hold FCC harmless from and against any and all claims asserted against FCC on account of any personal injuries and or property damages caused by the Components, or by the transportation thereof, prior to the completion of unloading at FCC's facility.

**Article 6. Special Provision regarding Direct Delivery Components.**

A.   If any event occurs that causes Supplier to be unable to promptly deliver any of the ordered quantities of the Components that are to be directly delivered to a third party designated by FCC ("Direct Receiver") pursuant to FCC's instruction ("Direct Delivery Components") or if there is a likelihood of such an event, Supplier will immediately notify FCC and Direct Receiver of the reasons therefor and the planned delivery dates.

B.   If the results of the receiving inspection by the Direct Receiver show any shortfall or excess in quantity or non-conforming or defective Components, upon consultations between the Parties, Supplier will take necessary measures in accordance with Article 3.

**Article 7. Price; Payment.**

VanNote, Erica

**F.C.C.** FCC (Indiana)

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER
FIN028816**

A.  Price. Components or Services purchased under this Agreement will be priced as specified in the applicable Purchase Order. Unless otherwise provided herein, prices shown on a Purchase Order are deemed to include all taxes not expressly imposed by law on FCC, as the buyer of the Components or Services. All prices are firm. FCC will not be obligated to pay any additional charges whatsoever, including but not limited to charges for packing, rating, boxing, bracing, containers, insurance freight, shipping, transportation, delivery cartage fees, licenses, permits, tariffs, duties, inspections or any related or similar item or service. Supplier will promptly furnish an invoice for the Components or Services supplied, and FCC will not be liable for invoices issued by any party other than Supplier.

B.  Payment. Payment for such Components or Services will be due not less than forty-five (45) days following the later of FCC's receipt of the invoice or receipt of the Components or Services provided. Payment will be made by wire in accordance with Supplier's wire instructions.

C.  Setoff. FCC will have the right to set off any payment or other obligation owed by FCC to Supplier, in whole or in part, against any payment or other obligation owed by Supplier to FCC.

**Article 8. Tooling; Supplies.**

A.  FCC-Owned Tooling. Supplier acknowledges that all tooling and equipment furnished or paid for by (or on behalf of) FCC for Supplier's use under the Agreements constitutes critical elements of the production and supply of the Components. To the extent that any tooling and/or equipment that has been, is, or will be furnished to Supplier by FCC, or paid for by or on behalf of FCC (FCC-Owned Tooling), Supplier agrees to adhere to the following guidelines:

i.   *Completion Date:* Commitment dates will be established for first off-tool samples after final drawings or tool designs are approved by FCC and Supplier. Dates will be based upon a mutually agreed lead time from mutually agreed upon final tooling Specifications.

ii.  *Breach of Commitment Date:* If no design changes have been initiated by FCC after final drawing and design approvals, and the Supplier misses the date committed to by Supplier for first off-tool samples, Supplier will be considered in breach.

iii. *Ownership, and Return:*Ownership of FCC-Owned Tooling remains with FCC at all times. Supplier is responsible for all repairs to FCC-Owned Tooling and agrees to maintain and keep FCC-Owned Tooling in reasonably good working order, less ordinary wear and tear. Supplier will also (i) prominently mark FCC-Owned Tooling as property of FCC; (ii) adequately insure FCC-Owned Tooling against loss and damage; (iii) use FCC-Owned Tooling only to produce Components and Services for FCC; (iv) refrain from commingling FCC-Owned Tooling with property of Supplier or with that of a third party and (v) determine and pay all property taxes relating to such FCC-Owned Tooling. Upon completion of work or demand by FCC for any reason, whichever happens first, Supplier will deliver the FCC-Owned Tooling to FCC or other location, as instructed by FCC.

B.  Supplier-Owned Tooling. For tooling paid for by Supplier, Supplier agrees as follows:

i.   The initial tooling and equipment and all subsequent rebuilds will be the sole property of Supplier;

ii.  Supplier will assume all costs associated with equipment and tooling including modifications, maintenance, repair, storage and insurance;

iii. If any tooling or equipment is damaged, Supplier will pay all costs to repair or acquire new tooling and equipment and produce Components according to the original schedule;

iv.  Upon termination or expiration of the Agreements, FCC may request that Supplier either destroy the equipment or tooling or transfer ownership to FCC. As soon as practicable after receipt of such written request, Supplier will destroy the equipment and tooling or provide appropriate documentation evidencing transfer of ownership to FCC;

v.   Prior to the destruction of any equipment or tooling, Supplier will provide FCC with at least twenty (20) days' advance written notice of such destruction so that a representative of FCC may witness the destruction;

vi.  Supplier will submit photographs or other evidence of destruction of the equipment and tooling; and

vii. Supplier will not use such equipment or tooling for a third party without FCC's prior written consent.

C.  Supplies. When necessary, upon consultation with Supplier, FCC may provide Supplier with materials, semi-finished goods, and components necessary for the manufacturing of the Components or providing Services ("Supplies"). FCC may have Supplies directly delivered to Supplier from a third party designated by FCC ("Designated Third Party"). Supplier may coordinate with the Designated Third Party on matters such as delivery dates and delivery places for such Supplies ("Direct Delivery Supplies"). Supplier will be responsible for performing an inspection upon receipt of Supplies and Direct Delivery Supplies to insure that the same are undamaged. FCC may provide guidance or instructions on inspection items, inspection methods, and other matters upon consultation with Supplier. Supplier will manage Supplies and Direct Delivery Supplies and will not use them for any purpose other than the use for which they were supplied, nor will Supplier assign or lease to a third party, provide as collateral, or otherwise dispose of, the Supplies. Supplier will, at its sole expense, provide a semi-annual inventory report to FCC of all such Supplies and Direct Delivery Supplies in Supplier's possession.

VanNote, Erica

**F.C.C.** FCC (Indiana)

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

i. *Defective Supplies*. If Supplier finds that Supplies or Direct Delivery Supplies are defective, Supplier will immediately notify FCC of such defect, and FCC will coordinate the removal and replacement of the defective Supplies or Direct Delivery Supplies. FCC or the Designated Third Party, as applicable, will cover the cost of removal and replacement. This will be Supplier's sole remedy for defective Supplies or Direct Delivery Supplies.

D. *Duration*. Supplier expressly agrees to provide Components or Services under the applicable Agreement for the life of the applicable vehicle or other original equipment manufacturer program (including model refreshes as determined by the applicable FCC customer) for which the Components or Services are required, including any Service Part requirements set forth in Article 8.E below. Both Buyer and Seller acknowledge the risk of the program production life being cancelled or extended by FCC's customer.

E.  *Service (Aftermarket) Parts*. For current and past models, along with all future models which use Components or Services, service (aftermarket) parts (each a "Service Part") will be ordered directly by FCC. Supplier must continue to provide Service Parts, at the last production price, for a minimum period often (10) years after the obsolescence of the model containing such Components or Services. From time to time during this ten-year period, FCC will issue an order for Service Parts. All orders for past models should be responded to with a lead time estimate not to exceed the timeframes contained in this provision. Service Parts for current models must be supplied within thirty (30) days of the order date. Service Parts for past models must be supplied within seventy-five (75) days of the order date. A copy of the order will be attached to each service part shipment.


**Article 9. Quality Guarantee.**

A.  The receiving FCC facility's Supplier Quality Manual is incorporated into the Agreement by reference and is an integral part of the Agreement. If Supplier does not have a copy of this Supplier Quality Manual, it is Supplier's responsibility to request a copy of it. Supplier will comply with the provisions of the Supplier Quality Manual in all respects. If there is any inconsistency between the applicable Agreement and the Supplier Quality Manual, the terms of the applicable Agreement will prevail with respect to any inconsistency in the commercial terms (e.g. pricing, costs and expenses, delivery terms) and the Supplier Quality Manual  will prevail with respect to any inconsistency in the quality terms, other than terms set forth in Article 4.

B.  Maintenance of Quality Records. Supplier will retain all production, maintenance and service records relating to all tooling (including FCC-Owned Tooling and Supplier-Owned Tooling), manufacturing processes and any and all testing of Components for a period of at least thirty-six (36) months following the termination of this Agreement for any reason.

C. *Traceability*. Supplier must: (a) be able to trace all products, ingredients, and packaging components with respect to the Components and Services to the original source ("Trace-back"); and, (b) document destination, quantity, and product identifying characteristics (e.g., lot code, manufacture date, production run, etc.) for all outgoing shipments of Components ("Traceforward"). Source, shipment, methods, programs, policies, other traceability, and product accounting information must be readily available to FCC upon request. Supplier will provide details of its traceability program to FCC prior to first shipment under each Purchase Order. Supplier must be able to account for all finished Components, raw materials, packaging materials, and other items relevant to its processes that it received, stored, handled, processed, shipped, or sold. Supplier must be capable of effectively recalling all Components manufactured by Supplier and must make all recall documentation available to FCC.

D.Stop Work. If an inspection or audit conducted under Articles

3.B or 23 finds Components or Services to be defective, non-conforming or that such Components or Services fail to meet the standards set forth in the Quality Assurance Agreement, FCC may verbally issue a stop work order onsite ("Stop Work Order"). Such Stop Work Order will be confirmed in writing by FCC. Following issuance of a Stop Work Order, Supplier will immediately halt all production of Components or rendering of Services and will not resume the same until Supplier has demonstrated that any and all deficiencies identified in the Stop Work Order have been remedied to FCC's satisfaction, as determined in FCC's sole discretion.

**Article 10. Warranty.**

A. Authority. Supplier represents and warrants that it has the full power to enter into the Agreements and to perform its obligations under the Agreements.

B. Warranty for Products and Services. Supplier warrants to FCC that all Components or Services will conform to the Specifications, will be of merchantable quality, will be fit for the particular purpose intended, will be of good material and workmanship, are free and clear of all liens, claims and encumbrances and will be free from defects in design, material and workmanship for the Warranty Period (as defined below). In addition, for all Services, Supplier warrants that Services will be performed in a professional and workmanlike manner, consistent with all standards and specifications agreed on with FCC and otherwise consistent with industry standards. All warranties of Supplier extend to future performance of the Components or Services and are not modified, waived or discharged by delivery, inspection, tests, acceptance and payment. FCC's approval of any design, drawing, material, process or specifications will not relieve Seller of these warranties. Supplier waives any right to notice of breach. The Warranty Period is the longest of: four years from the date FCC accepts the Components or Services, the warranty period provided by applicable law, or the warranty period offered by FCC to its customer or by FCC or its customer to end-users for the products into which the Components or Services are incorporated. Supplier hereby agrees that all servicing, repairs and replacements of Components or Services not

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**F.C.C.** FCC (Indiana)

**PURCHASE ORDER**
**FIN028816**

conforming to the foregoing warranty will be performed, at FCC's option, by Supplier, FCC, or a third party designated by FCC, and that Supplier will be solely responsible for all costs and expenses including costs and expenses for parts, labor, handling and other charges incurred by FCC, and any third party acting on request of FCC, in connection with this warranty. Service Parts furnished under Article 8.E will be subject to the same warranties as original Components and Services provided under the Agreements. The Warranty Period for a Service Part is the same as that for a production part.

**Article 11. Indemnification; Limitation of Liability**

A.    Indemnification. Supplier, together with Supplier's parent, guarantors, and shareholders, hereby agrees to indemnify and hold harmless FCC, its Customers, and as to each of those parties, their respective subsidiaries, shareholders, affiliates, directors, officers, principals, agents and employees, as now and hereafter constituted, from and against any and all loss, liability, damage (including any punitive or exemplary damages), cost and expense of every kind or character (including but not limited to legal fees and legal expenses) which any or all of them may incur, suffer or be required to pay by reason of any claim, suit, demand, proceeding or other action that may be brought against anyone or more of them arising from or related in any way to a breach by Supplier of this Agreement including the failure or alleged failure of a Component or Service to comply with any of the warranties, representations, covenants or agreements of Supplier contained in the Agreements, whether or not caused or occasioned by, or alleged to be caused or occasioned by, any act, omission, fault or negligence of Supplier or of anyone acting on Supplier's behalf or with its consent. In the event that any such claim, suit, demand, proceeding or other action is brought, Supplier covenants that upon notice from FCC in its own right or on behalf of its Customer, Supplier will defend such claim, suit, demand, proceeding or action (or, if applicable, Supplier will cause it to be defended by Supplier's insurer) at Supplier's sole cost and expense, and Supplier will keep FCC and its Customer, as applicable, fully advised of the continuing status of each such defense. At its option, FCC may participate in the defense of any such claim with its own counsel, at Supplier's expense. The provisions of this Article 11 will remain and continue in effect after the term of the applicable Agreement.

**Article 12. Insurance.** As of the date of the applicable Agreement, Supplier agrees that it will have obtained the following insurance coverage and that such coverage remains in effect for the duration of the Agreement and any warranty period. Upon request by FCC, Supplier will deliver a certificate or certificates of insurance evidencing such coverage.

A.    Commercial General Liability insurance, on an "occurrence" policy form, providing a minimum combined single limit of Four Million dollars ($4,000,000.) on Bodily Injury and Property Damage, including Personal Injury Liability, Blanket Contractual Liability, Contractor's Protective Liability, and Products and Completed Operations. This limit will apply per occurrence, and in the aggregate, for occurrences in or about the site and will name FCC as an additional Insured.

B.    Comprehensive Automobile Liability insurance providing a minimum limit of $1,000,000. (combined single limit) in Bodily Injury and Property Damage Liability covering owned, non-owned and hired automobiles. FCC will be listed as an additional Insured.

C.    Statutory Worker's Compensation Coverage including Employer's Liability coverage for minimum limits of $1,000,000 (if applicable).

D.    Umbrella/Excess Liability -In an amount of no less than Five Million dollars ($5,000,000).

All policies will be provided by insurance carriers having a minimum rating as published by A M. Best of A· Class XI or better. Such policies will (i) stipulate that they are providing primary coverage, (ii) with respect to the insurance covered in (A), name FCC as an additional insured, and (iii) state that coverage thereunder is not contingent upon participation or payment by or under, any other company or policy. A waiver of subrogation will be provided at FCC's request on the above policies. Supplier will pay all premiums and perform all acts necessary to maintain the policies required to be purchased in accordance with the applicable Agreement. Supplier will provide FCC with certificates of such policies upon request and each certificate must show the amount of coverage, number of policy, date of expiration and, if required above, name FCC as an additional insured.

**Article 13. Tangible and Intellectual Property.**

A. Tangible Property. FCC-Owned Tooling and all tools, dies, specifications, drawings, designs, or other property furnished or specifically paid for by FCC or its Customers in connection with the Agreements (collectively, "FCC Property") will: (a) be and remain the tangible and intellectual property of FCC; marked by Supplier as such and kept segregated by Supplier from other property; (b) be used only by Supplier and only in performance of the Agreements; (c) not be moved from Supplier's premises without FCC's prior written consent; (d) not be affixed to real property; (e) be kept free of all liens, claims, encumbrances and restrictions; (f) not be modified or altered by Supplier or any other person or entity, and (g) be maintained by Supplier in reasonably good working order, less ordinary wear and tear. Supplier will bear all risk of loss or damage to FCC Property until it is returned to FCC. Upon request, Supplier will deliver at FCC's expense all FCC Property in good condition, ordinary wear and tear excepted, to any location designated by FCC. Upon the request of FCC, Supplier will execute a bailment agreement in a format reasonably acceptable to FCC with respect to the FCC Property and hereby consents to the filing by FCC of one or more UCC Financing Statements covering the FCC Property. Supplier waives any legal or equitable rights or claims including, but not limited to, all statutory and equitable lien rights, in connection with FCC Property.

VanNote, Erica

**FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

B. Intellectual Property. All materials, discoveries, ideas, design rights and concepts developed by Supplier and that relate to the Components or Services will be owned by FCC and will be considered works made for hire by Supplier for FCC. FCC will own all United States and international copyrights, patent and other intellectual property rights in work product comprising, or relating to, such works. Provider agrees to assign, and upon creation of each such work automatically assigns, to FCC, its successors and assigns, ownership of all United States and international rights in such work, insofar as any ownership and rights in such work, by operation of law, are not automatically with FCC. From time to time upon FCC's request, Supplier and/or its personnel will confirm such assignment by execution and delivery of such assignments, confirmations or other written instruments as FCC may request. FCC, its successors and assigns, will have the right to obtain and hold in its or their own names all copyright registrations, patents, and other evidence of rights that may be available for such works.

**Article 14. Confidentiality.** Any trade secrets or other proprietary information of FCC, whether oral, visual or written, will constitute confidential information of FCC even if not marked as such ("Confidential Information"). In addition, Supplier will only use Confidential Information as needed to perform its obligations pursuant to the Agreements and will not disclose Confidential Information to a third party without prior written consent of an authorized officer of FCC, in each instance. For written deliverables provided by Supplier under the Agreements, Supplier will mark such deliverables including any interim or final status reports, updates, or presentations, exclusively as "FCC Confidential," or as otherwise requested by FCC, and will not mark, or jointly-mark, such deliverables as belonging to Supplier. Such deliverables are considered Confidential Information. Upon the termination or expiration of the Agreement, the Supplier will immediately cease use of the Confidential Information and, upon written request of FCC, will immediately return and provide to FCC the Confidential Information, including all copies. The terms and conditions of the Agreements will be deemed Confidential Information. Supplier will not use the FCC name or any FCC trademarks, trade names, service marks, or quote the opinion of any FCC employee in any marketing materials without first obtaining prior written consent of an FCC authorized officer.

**Article 15. Improvement; Review.** In order to improve matters such as unit prices, quality, function, and manufacturing methods of the Components, Supplier will actively develop new technology, propose improvements, provide information to FCC, and the like. To the extent necessary to achieve the purposes of the applicable Agreement, FCC may request Supplier to submit materials related to management of quality, manufacturing processes, and other matters, or may obtain Supplier's consent and conduct an examination of the actual condition of quality management and method of managing processes, and give instructions for improvement. If necessary in order to respond to a demand or an order from a government authority or a related organization, in order to comply with laws and regulations, or if necessary to realize the purposes of the applicable Agreement, FCC may request necessary examinations and provision of information by Supplier, and Supplier will actively cooperate with such request.

**Article 16. Competitiveness.** Supplier will, at all times, be competitive in price, quality, performance and fulfillment obligations.  If, during the term of the Agreements, FCC receives from a manufacturer or supplier, other than an affiliate of FCC, an offer to supply Components or Services of comparable quality (in FCC's judgment) at a price lower than the price then-prevailing under the Agreements, FCC may notify Supplier in writing of the competitive offer and request that Supplier meet the competitive offer. Supplier will, within ten (10) days after Supplier's receipt of FCC's request, notify FCC in writing as to whether Supplier will adjust the then-prevailing price under the applicable Agreement to meet the competitive offer. If Supplier does not agree to meet the new price, or if Supplier does not respond to the written notice within the ten (10) day period, FCC may accept the competitive offer. If the competitive offer eliminates FCC's need to secure Components or Services from Supplier in any capacity, the applicable Agreements may be terminated for Cause under Section 17B.

**Article 17. Termination.**

A.    Termination for Convenience. FCC may terminate an Agreement for any reason, in whole or in part, upon thirty (30) days' written notice to Supplier. If such termination for convenience occurs, the Parties will remain obligated to fulfill their respective duties and responsibilities under the applicable Agreement that exist as of the date of termination.

B.    Termination for Cause. Either Party may immediately terminate the Agreement for cause if the other Party: becomes subject to revocation or suspension of business by a supervisory authority; dissolves, becomes insolvent, files for bankruptcy, or experiences a material degradation in its credit or financial conditions and fails to provide the other Party with adequate assurances after receiving a demand from the other party for the same; or merges with a third party or is subject to a change of control without first securing FCC's written consent at least thirty (30) days prior to the proposed date of such merger or change of control.

FCC also has the right to terminate the Agreement for cause and upon written notice to Supplier if: (a) FCC's agreement with its  Customer for which the Components or Services are purchased is terminated; or (b) if Supplier breaches the Agreement and FCC reasonably believes that such breach threatens to interrupt the production or operations of FCC or its Customer.  For all other breaches, FCC may terminate for cause if Supplier fails to cure within five (5) days after receiving notice from FCC.

Supplier may terminate the Agreement for cause if FCC: 1) has substantially breached the agreement and 2) fails to cure within forty-five (45) days after Supplier provides FCC with written notice of the alleged breach and demands that FCC cure.

**Article 18. Force Majeure.** Force majeure is any failure or delay by a Party in fulfilling or performing any term of the Agreements when and to the extent such failure or delay is caused by or results from acts or circumstances beyond the reasonable control of the Party unable to perform including, without limitation, acts of God, flood, fire, earthquake, explosion, governmental actions, war, invasion or hostilities (whether war is declared or not), terrorist threats or acts, riot, or other

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

civil unrest, national emergency, revolution, insurrection, epidemic, or restraints or delays affecting carriers or inability or power outage ("Force Majeure"). Neither Party will be liable for its failure or delay to perform due to a Force Majeure provided that, if Supplier is unable to perform due to a Force Majeure, FCC will have the right, without obligation or liability to Supplier, to purchase Components and Services from another source until Supplier is able to resume performance of its obligations hereunder.

**Article 19. Compliance with Laws and Regulations.**

A.   When performing the Agreements, Supplier will comply with related domestic and foreign laws and regulations. If Components or Services are subject to export or import laws or regulations, Supplier will inform FCC of the requirements thereunder and any obligations of the Parties to comply therewith.

B.   Supplier must properly mark all Components, or, as applicable, the packaging containing such Components, with the country of origin of all Components, and must provide to FCC and/or the importing customs broker, proper documentation regarding the country of origin, USMCA (or other applicable trade treaty), certificate of origin, and all other documentation required by any applicable laws or trade treaties.

**Article 20. Prohibition of Bribery; Illegal Activity; Foreign Corrupt Practices Act.**

A.   The Parties will comply with all applicable provisions prohibiting bribery in each country in which the Parties conduct business under the Agreements. The Parties may not directly or indirectly cause a third party to engage in tortious conduct, provide, promise to provide or offer to provide funds, benefits, or other advantages which are outside the normal course of business. Price discounts to FCC's customers based upon volume of goods sold will not be considered a violation of this Article. The Parties are further prohibited from improperly influencing public officials.

B.   Neither Party nor any of its officers is (i) part of or knowingly conducts business with organized crime groups or any other organizations or individuals which pursue economic benefit by using violence, force, or fraudulent means or (ii) any organization or individual which is on any sanction lists published by any international organization, government authority or any country's central bank.

C.   Supplier will comply with, and cause its agents, employees, and contractors to comply with, all applicable regulatory requirements, including but not limited to, government approvals, policies, laws, regulations and directives that apply to the work that Supplier is doing with FCC, as well as all applicable laws and directives regulating direct and indirect payments and gifts to government officials or others, such as the U.S. Foreign Corrupt Practices Act, the OECD Anti-Bribery Convention, and the UK Bribery Act 2010.

**Article 21. Records and Audit.** During the term and for at least 36 months following termination or expiration of the Agreements, Supplier will maintain complete and accurate records of the supply of its Components and Services and of the fees charged to FCC. FCC and its customers will have the right at any time, upon forty-eight (48) hours' advance written notice, to request an independent, third party audit of Supplier's compliance with the Agreements and/or inspect the premises within which Supplier manufactures or provides such Components and Services. Supplier will make all such reasonably requested records available to FCC's selected auditor during any such audit and will cooperate with FCC, its customers, its representatives and its auditors in the conduct of any audit. If it is determined that Supplier has overcharged (or undercredited) FCC, Supplier will credit FCC's account (or, at FCC's option, pay FCC directly) an amount equal to the overcharge. If an audit discloses that Supplier's overcharges (including undercredits) exceeded five percent (5%) of the charges during the period audited, Supplier will also reimburse FCC for the cost of the audit. In the event the results of the audit raise any issues, the Supplier will co-operate with FCC and rectify such issues promptly

**Article 22. Miscellaneous.**

A.   Amendment. The Agreements will not be amended without a written agreement duly executed by both Parties.

B.   Relationship of the Parties. The Parties agree and acknowledge that Supplier is an independent contractor and is not an agent or employee of FCC. Supplier is solely liable for payment of employment taxes or other similar taxes or payments in relation to its employees, and neither Supplier nor any of its employees is covered by FCC's worker's compensation or any other insurance of FCC. Supplier's parent and/or guarantors expressly agree to guaranty Supplier's performance under the Agreements.

C.   Consultation. With regard to matters not stipulated in the applicable Agreement or in case doubts on construction of the applicable Agreement arise, both Parties will first try to resolve through mutual consultation in good faith.

D.   Assignment. Supplier will not assign or subcontract any of its duties or obligations under the applicable Agreement without the prior written consent of FCC.

E.   Entire Agreement. This Agreement is a final expression and a complete and exclusive statement of the Agreement between the Parties respecting the subject matter hereof and supercedes all prior and contemporaneous agreements, representations and understandings of the Parties. No amendment to or modification of this Agreement will be valid or binding upon either Party unless it is made in writing and signed by a duly authorized representative of FCC.

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**F.C.C.** FCC (Indiana)

**PURCHASE ORDER**
**FIN028816**

F.    Severability. The provisions of the Agreements will be deemed to be severable, and the invalidity of any provisions of the Agreements will not affect the validity of the remaining provisions of the Agreements.

G.    Survival. The obligations, representations, warranties, and covenants of Supplier under these terms and each Agreement that by their nature are intended or reasonably expected to survive the expiration or termination of the Agreement, includingArticles 8, 9, 10, 11, 12, 13, 14, and 22, will survive termination or expiration of the Agreements.

H.    Governing Law. Each Agreement will be governed by and construed in accordance with the laws of the state that the FCC entity issuing the Purchase Order is located, notwithstanding any state's conflicts of law provisions otherwise. The Parties expressly agree that any and all actions arising from or related to the Agreements or the Components or Services furnished by Supplier will be subject to the exclusive jurisdiction of the state and federal courts located in the state that the FCC entity issuing the Purchase Order is located. The Parties acknowledge that service of process may be made upon the Parties as provided by applicable law.

I.    Electronic Signatures. All notices, documents and communications which are communicated e1ectronically and signed by the Parties electronically will be deemed to have the same force and effect as all documents signed in hard copy.

(June 2019)

_____
VanNote, Erica

**F.C.C.** **FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

# PURCHASE ORDER
# FIN028816

| | | | |
|---|---|---|---|
| **Supplier** | Pace Industries<br>Pace Division<br>Harrison Division<br>513 Hwy 62/65 Bypass N<br>Harrison, AR 72601 | **PO No** | FIN028816 |
| | | **PO Date** | 3/12/2021 |
| | | **Due Date** | |
| **Attention** | Geanetta  Moore<br>870-741-8255 Ext 1300 | **Purchase Order Revision** | |
| | | **PO Revision Date** | |
| **Ship To** | FCC (Indiana), LLC<br>555 Industrial Park Rd<br>Portland, IN 47371<br>Phone: (260) 726-8023 | **Issued By** | VanNote, Erica<br>260-726-8023  Ext: 1046<br>Fax: 260-726-7782<br>evannote@e-fcci.com |
| **Bill To** | FCC (Indiana), LLC<br>555 Industrial Park Rd<br>Portland, IN 47371 | **Carrier** | TJ EXPRESS SERVICE, LLC |
| | | **Via** | Ground |
| | | **Payment Terms** | Net 30 |
| | | **FOB** | Origin |
| | | **Freight Terms** | Collect |
| | | **Note** | |

## Items

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 :12 | 24044264 | 002 | | | | E CYLINDER | Partial | 11/18/2021 | 1,050  pc | | |
| 1 :13 | | | | | | | Firm | 11/22/2021 | 2,450  pc | | |
| 1 :14 | | | | | | | Firm | 11/24/2021 | 1,050  pc | | |
| 1 :15 | | | | | | | Firm | 11/30/2021 | 700  pc | | |
| 1 :16 | | | | | | | Firm | 12/2/2021 | 2,100  pc | | |
| 1 :17 | | | | | | | Firm | 12/9/2021 | 2,100  pc | | |
| 1 :18 | | | | | | | Firm | 12/14/2021 | 350  pc | | |
| 1 :19 | | | | | | | Firm | 12/16/2021 | 2,100  pc | | |
| 1 :20 | | | | | | | Firm | 12/21/2021 | 700  pc | | |
| 1 :21 | | | | | | | Firm | 12/23/2021 | 700  pc | | |
| | | | | | | | | **Sub Total** | **13,300  pc** | | |
| 2 :33 | 24044267 | 002 | | | | CDF HOUSING | Partial | 11/4/2021 | 0  pc | | |
| 2 :34 | | | | | | | Firm | 11/11/2021 | 0  pc | | |

_____
VanNote, Erica

**F.C.C. FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 :35 | | | | | | | Firm | 11/18/2021 | 1,620  pc | | |
| 2 :36 | | | | | | | Firm | 11/22/2021 | 3,105  pc | | |
| 2 :37 | | | | | | | Firm | 11/24/2021 | 1,215  pc | | |
| 2 :39 | | | | | | | Firm | 11/30/2021 | 405  pc | | |
| 2 :40 | | | | | | | Firm | 12/2/2021 | 2,025  pc | | |
| 2 :41 | | | | | | | Firm | 12/7/2021 | 270  pc | | |
| 2 :42 | | | | | | | Firm | 12/9/2021 | 2,025  pc | | |
| 2 :43 | | | | | | | Firm | 12/14/2021 | 270  pc | | |
| 2 :44 | | | | | | | Firm | 12/16/2021 | 2,160  pc | | |
| 2 :45 | | | | | | | Firm | 12/21/2021 | 945  pc | | |
| 2 :46 | | | | | | | Firm | 12/23/2021 | 945  pc | | |
| | | | | | | | | **Sub Total** | **14,985  pc** | | |
| 3 :60 | L1MP-7P182-AC | 20210324 | | | | HT CDF HOUSING | Partial | 11/16/2021 | 405  pc | | |
| 3 :61 | | | | | | | Firm | 11/18/2021 | 2,970  pc | | |
| 3 :62 | | | | | | | Firm | 11/22/2021 | 1,485  pc | | |
| 3 :63 | | | | | | | Firm | 11/24/2021 | 540  pc | | |
| 3 :64 | | | | | | | Firm | 11/30/2021 | 2,430  pc | | |
| 3 :65 | | | | | | | Firm | 12/2/2021 | 2,565  pc | | |
| 3 :66 | | | | | | | Firm | 12/7/2021 | 3,510  pc | | |
| 3 :71 | | | | | | | Firm | 12/9/2021 | 405  pc | | |
| 3 :67 | | | | | | | Firm | 12/14/2021 | 2,970  pc | | |
| 3 :68 | | | | | | | Firm | 12/16/2021 | 1,755  pc | | |
| 3 :69 | | | | | | | Firm | 12/21/2021 | 1,080  pc | | |

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**F.C.C. FCC (Indiana)**

**PURCHASE ORDER**
**FIN028816**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 :70 | | | | | | | Firm | 12/23/2021 | 2,160 pc | | |
| | | | | | | | | **Sub Total** | **22,275 pc** | | |
| 4 :62 | LP5P-7A360-BB | 20200302 | | | | E CYLINDER | Partial | 11/16/2021 | 1,050 pc | | |
| 4 :63 | | | | | | | Firm | 11/18/2021 | 3,500 pc | | |
| 4 :64 | | | | | | | Firm | 11/22/2021 | 3,850 pc | | |
| 4 :65 | | | | | | | Firm | 11/24/2021 | 4,200 pc | | |
| 4 :66 | | | | | | | Firm | 11/30/2021 | 4,200 pc | | |
| 4 :67 | | | | | | | Firm | 12/2/2021 | 4,200 pc | | |
| 4 :68 | | | | | | | Firm | 12/7/2021 | 4,200 pc | | |
| 4 :69 | | | | | | | Firm | 12/9/2021 | 3,500 pc | | |
| 4 :70 | | | | | | | Firm | 12/14/2021 | 4,900 pc | | |
| 4 :71 | | | | | | | Firm | 12/16/2021 | 3,150 pc | | |
| 4 :72 | | | | | | | Firm | 12/21/2021 | 4,200 pc | | |
| 4 :73 | | | | | | | Firm | 12/23/2021 | 2,800 pc | | |
| | | | | | | | | **Sub Total** | **43,750 pc** | | |
| 5 :58 | LP5P-7P182-BC | 20210324 | | | | CDF Housing | Partial | 11/2/2021 | 540 pc | | |
| 5 :59 | | | | | | | Firm | 11/4/2021 | 1,485 pc | | |
| 5 :60 | | | | | | | Firm | 11/9/2021 | 2,025 pc | | |
| 5 :61 | | | | | | | Firm | 11/11/2021 | 2,160 pc | | |
| 5 :62 | | | | | | | Firm | 11/16/2021 | 2,970 pc | | |
| 5 :64 | | | | | | | Firm | 11/24/2021 | 2,700 pc | | |
| 5 :65 | | | | | | | Firm | 11/30/2021 | 2,295 pc | | |

VanNote, Erica

**FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 :66 | | | | | | | Firm | 12/7/2021 | 1,620  pc | | |
| 5 :67 | | | | | | | Firm | 12/9/2021 | 2,430  pc | | |
| 5 :68 | | | | | | | Firm | 12/14/2021 | 1,755  pc | | |
| 5 :69 | | | | | | | Firm | 12/16/2021 | 1,080  pc | | |
| 5 :70 | | | | | | | Firm | 12/21/2021 | 3,105  pc | | |
| 5 :71 | | | | | | | Firm | 12/23/2021 | 2,565  pc | | |
| | | | | | | | | **Sub Total** | **26,730  pc** | | |
| | | | | | | | | | **Grand Total** | | |

| Notes |
|---|

VanNote, Erica

**F.C.C.** FCC (Indiana)

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER
FIN028816**

FCC STANDARD TERMS AND CONDITIONS

**Article 1. Application.** The terms and conditions set forth herein will govern (the "Terms") and supplement any long term agreements between FCC and Supplier (each a "**Long Term Agreement**") concerning FCC's purchase of goods ( "Components") or services ("Services") from Supplier and will apply to all individual purchase orders issued by FCC to Supplier for Components or Services (each, a "**Purchase Order**"). The Terms, Long Term Agreement(s) and Purchase Order(s) are collectively referred to as the "**Agreement(s)**"). If there is conflict between these Terms, the Long Term Agreement, or any applicable Purchase Order, the following order of precedence applies: (i) the Purchase Order; (ii) the Long Term Agreement; and (iii) these Terms. These Terms will be deemed accepted by Supplier upon either its written acceptance or upon commencement of any required work or service under the Agreement. Further, if Supplier does not refuse a Purchase Order in writing within three (3) days following Supplier's receipt of the Purchase Order, Supplier will be deemed to have accepted such Purchase Order. Supplier's acceptance will be limited to the express written terms of the Agreement. Any terms not defined in these Terms will have the meaning set forth in the applicable Long Term Agreement. Additional or different terms contained in any documentation provided by Supplier beyond those terms contained in these Terms or the Agreements are expressly rejected and will not be binding on FCC, nor will they become part of the Agreements absent an amendment agreed to and executed in writing by the parties.

**Article 2. Content, Formation and Amendment of Purchase Orders.** Unless otherwise stated on the Purchase Order, each Purchase Order is a requirements contract whereby FCC agrees to purchase, and Supplier agrees to supply, 100% of FCC's requirements of the Components or Services for the duration stated in Article 8(D). Each Purchase Order will specify, with respect to each Component and/or Services ordered, an order date, a description of the Component or Services, delivery date, delivery location, completion date, price, and other transaction terms; provided, however, that matters common to the Purchase Orders may be specified in advance upon consultation by FCC and Supplier. If requested by Supplier, FCC will provide a non-binding forecast of Components or Services expected to be ordered for the following ninety (90) days. If Supplier reasonably expects that it cannot meet the forecasted demand for Components or Services needed by FCC, Supplier will promptly inform FCC of that fact, and provide a timeline within which Supplier believes it can fulfill FCC's needs.

**Article 3. Delivery; Inspection; Remedies.**

A.   Delivery. Supplier will arrange all transportation for Components and will deliver Components to FCC DDP (Incoterms 2010) to the FCC facility designated on the applicable Purchase Order, unless FCC directs Supplier in writing to send them to a different destination prior to shipment of the Components. Time is of the essence. If Supplier fails to make timely delivery or fails to make progress so as to endanger timely and proper completion of Services or delivery of Components (including, but not limited to, Supplier fails, or is endanger of failing, to timely meet all PPAP, validation and run-at-rate requirements), Supplier will be in breach and FCC may terminate for cause. Supplier will notify FCC electronically at the time of shipment, in a format approved by FCC, of the Purchase Order number, the Components contained therein, the quantity and description of such Components, and the method of transportation used. If Supplier is unable to meet the delivery requirements set forth in the applicable Purchase Order, Supplier will immediately notify FCC, and deliver the Components as soon as possible. FCC reserves the right to reduce payment for Components or Services received after the scheduled delivery date, or, alternatively, to seek replacement Components or Services from a third party at Supplier's expense. Supplier is liable for all direct, incidental and consequential damages, losses, costs and expenses incurred by FCC and resulting from Supplier's failure to deliver conforming and non-defective Components or Services or to comply with the shipping and delivery or other requirements of FCC and this Agreement.

B.   Inspection. Supplier is responsible for appropriately packaging all Components to make sure that no damage to such Components occurs during the shipping process, and for performing all Services in accordance with the requirements set forth in the applicable Purchase Order and this Agreement. FCC will reject any Components damaged during the course of shipment, or Services that are not adequately performed. FCC and its customers will have the right to enter Supplier's facilities during normal business hours to inspect any and all Components, Supplier's facilities, and/or the machinery used to manufacture such Components upon forty-eight (48) hours' advance notice to Supplier. FCC also reserves the right to inspect Components upon receipt, and Services rendered, even if payment for such Components has already been received by Supplier. Payment for Components or Services does not constitute acceptance. Upon FCC's request, Supplier will promptly furnish any inspection documentation regarding the Components prepared by Supplier in the ordinary course of business prior to shipping, so that FCC can verify conformance of the Components with the Specifications (as defined in Article 4), as set forth in the applicable Agreements. FCC's failure to inspect Components or Services performed will not be deemed acceptance of defective Components or inadequate Services, nor a waiver of any of FCC's other rights or remedies under the Agreements arising from any defects, non-conformance or other breach by Supplier.

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**FCC (Indiana)**

**PURCHASE ORDER**
**FIN028816**

C.    Rejection. If FCC rejects Components or tender of delivery due to an excess quantity, Supplier will, at FCC's request and within such reasonable period of time as FCC specifies, remove such excess from FCC's facility at Supplier's expense and risk. If there is a shortage of delivered Components to FCC, Supplier will, within a reasonable period of time specified by FCC, deliver conforming Components to fill such shortage. If FCC rejects the Components delivered for any other reason, Supplier will, at FCC's request and within a reasonable period of time specified by FCC, remove such rejected Components from FCC's facility at Supplier's sole expense, and reimburse FCC for any payments FCC made for the rejected Components. If Services are not properly performed, the Services will be promptly re-performed to FCC's satisfaction, as determined in FCC's sole discretion. If Components or Services fail FCC's initial inspection but are useable, as determined in FCC's sole discretion, FCC may choose to accept the Components or Services at a reduced price to be determined in consultation with Supplier.

D.    Remedies. If Supplier breaches the Agreement in any way, FCC may take any or all of the following actions, without prejudice to any other rights or remedies available to FCC by law:

i.    require Supplier to repair or replace such -or remedy the inadequate Service provided, and upon Supplier's failure or refusal to do so, repair, replace or remedy the same at Supplier's expense;
ii.    reject any shipment or delivery containing defective or nonconforming Components and return for credit or replacement at FCC's option (at Supplier's cost and risk); reject inadequate Services and withhold payment therefor; and/or;
iii.    cancel any outstanding Purchase Orders or shipments of Components or Services not yet delivered or performed hereunder with no further liability to FCC whatsoever.


E.    FCC Rights. If any Components furnished under any Purchase Order are, in whole or in part, defective or otherwise nonconforming with the applicable Specifications, FCC will, in addition to all other rights and remedies provided for by law or these Terms, have the right to recover any and all damages, losses or expenses which result or in any way arise from Supplier's breach. Supplier will reimburse FCC for all actual attorney's fees (including the cost of in-house counsel) in any action arising out of this Purchase Order, unless Supplier is the prevailing party. FCC will also have the right to require and direct Supplier to remove all nonconforming or defective Components from FCC's facility at Supplier's sole risk and expense. All rights and remedies of FCC, whether provided by these Terms or by law, will be nonexclusive and cumulative. Claims brought under the Agreements (or otherwise), may be brought by FCC at any time within the applicable statutes of limitations.

F.    Supplier's Rights. If FCC materially breaches any term of the Agreements, Supplier's exclusive remedy, and FCC's maximum liability, will not exceed the total of all required payments under this Agreement minus those actually made. In no event will FCC be liable to Supplier for lost profits, unabsorbed overhead, interest, product development or engineering costs, facilities and equipment costs or rental, unrecovered depreciation costs, general and administrative burden charges, business interruption, or incidental, consequential or punitive damages. Any action by Supplier arising out of or relating to this Agreement must be commenced by Supplier within one (1) year after the cause of action has accrued, or such cause of action will be deemed to have been waived.


**Article 4. Specifications.** All Components or Services will comply with specifications designated by FCC including any specifications of FCC's end customer (together, the "Specifications"). On the basis of its technology and experience, Supplier will examine specifications of the Components and Services or matters presented by FCC as requirementsand notify FCC of any matters that should be improved. If Supplier has questions or objections regarding any Component or Service Specifications, it will promptly notify FCC to consult regarding any such questions or concerns and resolve them.


**Article 5. Transfer of Ownership and Risk.** Notwithstanding any provision hereof to the contrary, title to, and risk of loss of the Components or Direct Delivery Components will remain with Supplier until the Components are delivered to, and unloaded at, FCC's facility. Supplier will indemnify and hold FCC harmless from and against any and all claims asserted against FCC on account of any personal injuries and or property damages caused by the Components, or by the transportation thereof, prior to the completion of unloading at FCC's facility.

**Article 6. Special Provision regarding Direct Delivery Components.**

A.    If any event occurs that causes Supplier to be unable to promptly deliver any of the ordered quantities of the Components that are to be directly delivered to a third party designated by FCC ("Direct Receiver") pursuant to FCC's instruction ("Direct Delivery Components") or if there is a likelihood of such an event, Supplier will immediately notify FCC and Direct Receiver of the reasons therefor and the planned delivery dates.

B.    If the results of the receiving inspection by the Direct Receiver show any shortfall or excess in quantity or non-conforming or defective Components, upon consultations between the Parties, Supplier will take necessary measures in accordance with Article 3.

**Article 7. Price; Payment.**

_____
VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

A. <u>Price</u>. Components or Services purchased under this Agreement will be priced as specified in the applicable Purchase Order. Unless otherwise provided herein, prices shown on a Purchase Order are deemed to include all taxes not expressly imposed by law on FCC, as the buyer of the Components or Services. All prices are firm. FCC will not be obligated to pay any additional charges whatsoever, including but not limited to charges for packing, rating, boxing, bracing, containers, insurance freight, shipping, transportation, delivery cartage fees, licenses, permits, tariffs, duties, inspections or any related or similar item or service. Supplier will promptly furnish an invoice for the Components or Services supplied, and FCC will not be liable for invoices issued by any party other than Supplier.

B. <u>Payment</u>. Payment for such Components or Services will be due not less than forty-five (45) days following the later of FCC's receipt of the invoice or receipt of the Components or Services provided. Payment will be made by wire in accordance with Supplier's wire instructions.

C. <u>Setoff</u>. FCC will have the right to set off any payment or other obligation owed by FCC to Supplier, in whole or in part, against any payment or other obligation owed by Supplier to FCC.

**Article 8. Tooling; Supplies.**

A. <u>FCC-Owned Tooling</u>. Supplier acknowledges that all tooling and equipment furnished or paid for by (or on behalf of) FCC for Supplier's use under the Agreements constitutes critical elements of the production and supply of the Components. To the extent that any tooling and/or equipment that has been, is, or will be furnished to Supplier by FCC, or paid for by or on behalf of FCC (FCC-Owned Tooling), Supplier agrees to adhere to the following guidelines:

i.  *Completion Date:* Commitment dates will be established for first off-tool samples after final drawings or tool designs are approved by FCC and Supplier. Dates will be based upon a mutually agreed lead time from mutually agreed upon final tooling Specifications.

ii. *Breach of Commitment Date:* If no design changes have been initiated by FCC after final drawing and design approvals, and the Supplier misses the date committed to by Supplier for first off-tool samples, Supplier will be considered in breach.

iii. *Ownership, and Return:* Ownership of FCC-Owned Tooling remains with FCC at all times. Supplier is responsible for all repairs to FCC-Owned Tooling and agrees to maintain and keep FCC-Owned Tooling in reasonably good working order, less ordinary wear and tear. Supplier will also (i) prominently mark FCC-Owned Tooling as property of FCC; (ii) adequately insure FCC-Owned Tooling against loss and damage; (iii) use FCC-Owned Tooling only to produce Components and Services for FCC; (iv) refrain from commingling FCC-Owned Tooling with property of Supplier or with that of a third party and (v) determine and pay all property taxes relating to such FCC-Owned Tooling. Upon completion of work or demand by FCC for any reason, whichever happens first, Supplier will deliver the FCC-Owned Tooling to FCC or other location, as instructed by FCC.

B. <u>Supplier-Owned Tooling</u>. For tooling paid for by Supplier, Supplier agrees as follows:

i.  The initial tooling and equipment and all subsequent rebuilds will be the sole property of Supplier;

ii. Supplier will assume all costs associated with equipment and tooling including modifications, maintenance, repair, storage and insurance;

iii. If any tooling or equipment is damaged, Supplier will pay all costs to repair or acquire new tooling and equipment and produce Components according to the original schedule;

iv. Upon termination or expiration of the Agreements, FCC may request that Supplier either destroy the equipment or tooling or transfer ownership to FCC. As soon as practicable after receipt of such written request, Supplier will destroy the equipment and tooling or provide appropriate documentation evidencing transfer of ownership to FCC;

v.  Prior to the destruction of any equipment or tooling, Supplier will provide FCC with at least twenty (20) days' advance written notice of such destruction so that a representative of FCC may witness the destruction;

vi. Supplier will submit photographs or other evidence of destruction of the equipment and tooling; and

vii. Supplier will not use such equipment or tooling for a third party without FCC's prior written consent.

C. <u>Supplies</u>. When necessary, upon consultation with Supplier, FCC may provide Supplier with materials, semi-finished goods, and components necessary for the manufacturing of the Components or providing Services ("Supplies"). FCC may have Supplies directly delivered to Supplier from a third party designated by FCC ("Designated Third Party"). Supplier may coordinate with the Designated Third Party on matters such as delivery dates and delivery places for such Supplies ("Direct Delivery Supplies"). Supplier will be responsible for performing an inspection upon receipt of Supplies and Direct Delivery Supplies to insure that the same are undamaged. FCC may provide guidance or instructions on inspection items, inspection methods, and other matters upon consultation with Supplier. Supplier will manage Supplies and Direct Delivery Supplies and will not use them for any purpose other than the use for which they were supplied, nor will Supplier assign or lease to a third party, provide as collateral, or otherwise dispose of, the Supplies. Supplier will, at its sole expense, provide a semi-annual inventory report to FCC of all such Supplies and Direct Delivery Supplies in Supplier's possession.

VanNote, Erica

**F.C.C.** FCC (Indiana)

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

i. *Defective Supplies.* If Supplier finds that Supplies or Direct Delivery Supplies are defective, Supplier will immediately notify FCC of such defect, and FCC will coordinate the removal and replacement of the defective Supplies or Direct Delivery Supplies. FCC or the Designated Third Party, as applicable, will cover the cost of removal and replacement. This will be Supplier's sole remedy for defective Supplies or Direct Delivery Supplies.

D.  *Duration.* Supplier expressly agrees to provide Components or Services under the applicable Agreement for the life of the applicable vehicle or other original equipment manufacturer program (including model refreshes as determined by the applicable FCC customer) for which the Components or Services are required, including any Service Part requirements set forth in Article 8.E below. Both Buyer and Seller acknowledge the risk of the program production life being cancelled or extended by FCC's customer.

E.  Service (Aftermarket) Parts. For current and past models, along with all future models which use Components or Services, service (aftermarket) parts (each a "Service Part") will be ordered directly by FCC. Supplier must continue to provide Service Parts, at the last production price, for a minimum period often (10) years after the obsolescence of the model containing such Components or Services. From time to time during this ten-year period, FCC will issue an order for Service Parts. All orders for past models should be responded to with a lead time estimate not to exceed the timeframes contained in this provision. Service Parts for current models must be supplied within thirty (30) days of the order date. Service Parts for past models must be supplied within seventy-five (75) days of the order date. A copy of the order will be attached to each service part shipment.

**Article 9. Quality Guarantee.**

A.  The receiving FCC facility's Supplier Quality Manual is incorporated into the Agreement by reference and is an integral part of the Agreement. If Supplier does not have a copy of this Supplier Quality Manual, it is Supplier's responsibility to request a copy of it. Supplier will comply with the provisions of the Supplier Quality Manual in all respects. If there is any inconsistency between the applicable Agreement and the Supplier Quality Manual, the terms of the applicable Agreement will prevail with respect to any inconsistency in the commercial terms (e.g. pricing, costs and expenses, delivery terms) and the Supplier Quality Manual will prevail with respect to any inconsistency in the quality terms, other than terms set forth in Article 4.

B.  Maintenance of Quality Records. Supplier will retain all production, maintenance and service records relating to all tooling (including FCC-Owned Tooling and Supplier-Owned Tooling), manufacturing processes and any and all testing of Components for a period of at least thirty-six (36) months following the termination of this Agreement for any reason.

C. Traceability. Supplier must: (a) be able to trace all products, ingredients, and packaging components with respect to the Components and Services to the original source ("Trace-back"); and, (b) document destination, quantity, and product identifying characteristics (e.g., lot code, manufacture date, production run, etc.) for all outgoing shipments of Components ("Traceforward"). Source, shipment, methods, programs, policies, other traceability, and product accounting information must be readily available to FCC upon request. Supplier will provide details of its traceability program to FCC prior to first shipment under each Purchase Order. Supplier must be able to account for all finished Components, raw materials, packaging materials, and other items relevant to its processes that it received, stored, handled, processed, shipped, or sold. Supplier must be capable of effectively recalling all Components manufactured by Supplier and must make all recall documentation available to FCC.

D.Stop Work. If an inspection or audit conducted under Articles

3.B or 23 finds Components or Services to be defective, non-conforming or that such Components or Services fail to meet the standards set forth in the Quality Assurance Agreement, FCC may verbally issue a stop work order onsite ("Stop Work Order"). Such Stop Work Order will be confirmed in writing by FCC. Following issuance of a Stop Work Order, Supplier will immediately halt all production of Components or rendering of Services and will not resume the same until Supplier has demonstrated that any and all deficiencies identified in the Stop Work Order have been remedied to FCC's satisfaction, as determined in FCC's sole discretion.

**Article 10. Warranty.**

A. Authority. Supplier represents and warrants that it has the full power to enter into the Agreements and to perform its obligations under the Agreements.

B. Warranty for Products and Services. Supplier warrants to FCC that all Components or Services will conform to the Specifications, will be of merchantable quality, will be fit for the particular purpose intended, will be of good material and workmanship, are free and clear of all liens, claims and encumbrances and will be free from defects in design, material and workmanship for the Warranty Period (as defined below). In addition, for all Services, Supplier warrants that Services will be performed in a professional and workmanlike manner, consistent with all standards and specifications agreed on with FCC and otherwise consistent with industry standards. All warranties of Supplier extend to future performance of the Components or Services and are not modified, waived or discharged by delivery, inspection, tests, acceptance and payment. FCC's approval of any design, drawing, material, process or specifications will not relieve Seller of these warranties. Supplier waives any right to notice of breach. The Warranty Period is the longest of: four years from the date FCC accepts the Components or Services, the warranty period provided by applicable law, or the warranty period offered by FCC to its customer or by FCC or its customer to end-users for the products into which the Components or Services are incorporated. Supplier hereby agrees that all servicing, repairs and replacements of Components or Services not

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**FCC (Indiana)**

**PURCHASE ORDER**
**FIN028816**

conforming to the foregoing warranty will be performed, at FCC's option, by Supplier, FCC, or a third party designated by FCC, and that Supplier will be solely responsible for all costs and expenses including costs and expenses for parts, labor, handling and other charges incurred by FCC, and any third party acting on request of FCC, in connection with this warranty. Service Parts furnished under Article 8.E will be subject to the same warranties as original Components and Services provided under the Agreements. The Warranty Period for a Service Part is the same as that for a production part.

**Article 11. Indemnification; Limitation of Liability**

A.    Indemnification. Supplier, together with Supplier's parent, guarantors, and shareholders, hereby agrees to indemnify and hold harmless FCC, its Customers, and as to each of those parties, their respective subsidiaries, shareholders, affiliates, directors, officers, principals, agents and employees, as now and hereafter constituted, from and against any and all loss, liability, damage (including any punitive or exemplary damages), cost and expense of every kind or character (including but not limited to legal fees and legal expenses) which any or all of them may incur, suffer or be required to pay by reason of any claim, suit, demand, proceeding or other action that may be brought against anyone or more of them arising from or related in any way to a breach by Supplier of this Agreement including the failure or alleged failure of a Component or Service to comply with any of the warranties, representations, covenants or agreements of Supplier contained in the Agreements, whether or not caused or occasioned by, or alleged to be caused or occasioned by, any act, omission, fault or negligence of Supplier or of anyone acting on Supplier's behalf or with its consent. In the event that any such claim, suit, demand, proceeding or other action is brought, Supplier covenants that upon notice from FCC in its own right or on behalf of its Customer, Supplier will defend such claim, suit, demand, proceeding or action (or, if applicable, Supplier will cause it to be defended by Supplier's insurer) at Supplier's sole cost and expense, and Supplier will keep FCC and its Customer, as applicable, fully advised of the continuing status of each such defense. At its option, FCC may participate in the defense of any such claim with its own counsel, at Supplier's expense. The provisions of this Article 11 will remain and continue in effect after the term of the applicable Agreement.

**Article 12. Insurance.** As of the date of the applicable Agreement, Supplier agrees that it will have obtained the following insurance coverage and that such coverage remains in effect for the duration of the Agreement and any warranty period. Upon request by FCC, Supplier will deliver a certificate or certificates of insurance evidencing such coverage.

A.    Commercial General Liability insurance, on an "occurrence" policy form, providing a minimum combined single limit of Four Million dollars ($4,000,000.) on Bodily Injury and Property Damage, including Personal Injury Liability, Blanket Contractual Liability, Contractor's Protective Liability, and Products and Completed Operations. This limit will apply per occurrence, and in the aggregate, for occurrences in or about the site and will name FCC as an additional Insured.

B.    Comprehensive Automobile Liability insurance providing a minimum limit of $1,000,000. (combined single limit) in Bodily Injury and Property Damage Liability covering owned, non-owned and hired automobiles. FCC will be listed as an additional Insured.

C.    Statutory Worker's Compensation Coverage including Employer's Liability coverage for minimum limits of $1,000,000 (if applicable).

D.    Umbrella/Excess Liability -In an amount of no less than Five Million dollars ($5,000,000).

All policies will be provided by insurance carriers having a minimum rating as published by A M. Best of A· Class XI or better. Such policies will (i) stipulate that they are providing primary coverage, (ii) with respect to the insurance covered in (A), name FCC as an additional insured, and (iii) state that coverage thereunder is not contingent upon participation or payment by or under, any other company or policy. A waiver of subrogation will be provided at FCC's request on the above policies. Supplier will pay all premiums and perform all acts necessary to maintain the policies required to be purchased in accordance with the applicable Agreement. Supplier will provide FCC with certificates of such policies upon request and each certificate must show the amount of coverage, number of policy, date of expiration and, if required above, name FCC as an additional insured.

**Article 13. Tangible and Intellectual Property.**

A. Tangible Property. FCC-Owned Tooling and all tools, dies, specifications, drawings, designs, or other property furnished or specifically paid for by FCC or its Customers in connection with the Agreements (collectively, "FCC Property") will: (a) be and remain the tangible and intellectual property of FCC; marked by Supplier as such and kept segregated by Supplier from other property; (b) be used only by Supplier and only in performance of the Agreements; (c) not be moved from Supplier's premises without FCC's prior written consent; (d) not be affixed to real property; (e) be kept free of all liens, claims, encumbrances and restrictions; (f) not be modified or altered by Supplier or any other person or entity, and (g) be maintained by Supplier in reasonably good working order, less ordinary wear and tear. Supplier will bear all risk of loss or damage to FCC Property until it is returned to FCC. Upon request, Supplier will deliver at FCC's expense all FCC Property in good condition, ordinary wear and tear excepted, to any location designated by FCC. Upon the request of FCC, Supplier will execute a bailment agreement in a format reasonably acceptable to FCC with respect to the FCC Property and hereby consents to the filing by FCC of one or more UCC Financing Statements covering the FCC Property. Supplier waives any legal or equitable rights or claims including, but not limited to, all statutory and equitable lien rights, in connection with FCC Property.

VanNote, Erica

**F.C.C.** FCC (Indiana)

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

B. Intellectual Property. All materials, discoveries, ideas, design rights and concepts developed by Supplier and that relate to the Components or Services will be owned by FCC and will be considered works made for hire by Supplier for FCC. FCC will own all United States and international copyrights, patent and other intellectual property rights in work product comprising, or relating to, such works. Provider agrees to assign, and upon creation of each such work automatically assigns, to FCC, its successors and assigns, ownership of all United States and international rights in such work, insofar as any ownership and rights in such work, by operation of law, are not automatically with FCC. From time to time upon FCC's request, Supplier and/or its personnel will confirm such assignment by execution and delivery of such assignments, confirmations or other written instruments as FCC may request. FCC, its successors and assigns, will have the right to obtain and hold in its or their own names all copyright registrations, patents, and other evidence of rights that may be available for such works.

**Article 14. Confidentiality.** Any trade secrets or other proprietary information of FCC, whether oral, visual or written, will constitute confidential information of FCC even if not marked as such ("Confidential Information"). In addition, Supplier will only use Confidential Information as needed to perform its obligations pursuant to the Agreements and will not disclose Confidential Information to a third party without prior written consent of an authorized officer of FCC, in each instance. For written deliverables provided by Supplier under the Agreements, Supplier will mark such deliverables including any interim or final status reports, updates, or presentations, exclusively as "FCC Confidential," or as otherwise requested by FCC, and will not mark, or jointly-mark, such deliverables as belonging to Supplier. Such deliverables are considered Confidential Information. Upon the termination or expiration of the Agreement, the Supplier will immediately cease use of the Confidential Information and, upon written request of FCC, will immediately return and provide to FCC the Confidential Information, including all copies. The terms and conditions of the Agreements will be deemed Confidential Information. Supplier will not use the FCC name or any FCC trademarks, trade names, service marks, or quote the opinion of any FCC employee in any marketing materials without first obtaining prior written consent of an FCC authorized officer.

**Article 15. Improvement; Review.** In order to improve matters such as unit prices, quality, function, and manufacturing methods of the Components, Supplier will actively develop new technology, propose improvements, provide information to FCC, and the like. To the extent necessary to achieve the purposes of the applicable Agreement, FCC may request Supplier to submit materials related to management of quality, manufacturing processes, and other matters, or may obtain Supplier's consent and conduct an examination of the actual condition of quality management and method of managing processes, and give instructions for improvement. If necessary in order to respond to a demand or an order from a government authority or a related organization, in order to comply with laws and regulations, or if necessary to realize the purposes of the applicable Agreement, FCC may request necessary examinations and provision of information by Supplier, and Supplier will actively cooperate with such request.

**Article 16. Competitiveness.** Supplier will, at all times, be competitive in price, quality, performance and fulfillment obligations.  If, during the term of the Agreements, FCC receives from a manufacturer or supplier, other than an affiliate of FCC, an offer to supply Components or Services of comparable quality (in FCC's judgment) at a price lower than the price then-prevailing under the Agreements, FCC may notify Supplier in writing of the competitive offer and request that Supplier meet the competitive offer. Supplier will, within ten (10) days after Supplier's receipt of FCC's request, notify FCC in writing as to whether Supplier will adjust the then-prevailing price under the applicable Agreement to meet the competitive offer. If Supplier does not agree to meet the new price, or if Supplier does not respond to the written notice within the ten (10) day period, FCC may accept the competitive offer. If the competitive offer eliminates FCC's need to secure Components or Services from Supplier in any capacity, the applicable Agreements may be terminated for Cause under Section 17B.

**Article 17. Termination.**

A.    Termination for Convenience. FCC may terminate an Agreement for any reason, in whole or in part, upon thirty (30) days' written notice to Supplier. If such termination for convenience occurs, the Parties will remain obligated to fulfill their respective duties and responsibilities under the applicable Agreement that exist as of the date of termination.

B.    Termination for Cause. Either Party may immediately terminate the Agreement for cause if the other Party: becomes subject to revocation or suspension of business by a supervisory authority; dissolves, becomes insolvent, files for bankruptcy, or experiences a material degradation in its credit or financial conditions and fails to provide the other Party with adequate assurances after receiving a demand from the other party for the same; or merges with a third party or is subject to a change of control without first securing FCC's written consent at least thirty (30) days prior to the proposed date of such merger or change of control.

FCC also has the right to terminate the Agreement for cause and upon written notice to Supplier if: (a) FCC's agreement with its  Customer for which the Components or Services are purchased is terminated; or (b) if Supplier breaches the Agreement and FCC reasonably believes that such breach threatens to interrupt the production or operations of FCC or its Customer.  For all other breaches, FCC may terminate for cause if Supplier fails to cure within five (5) days after receiving notice from FCC.

Supplier may terminate the Agreement for cause if FCC: 1) has substantially breached the agreement and 2) fails to cure within forty-five (45) days after Supplier provides FCC with written notice of the alleged breach and demands that FCC cure.

**Article 18. Force Majeure.** Force majeure is any failure or delay by a Party in fulfilling or performing any term of the Agreements when and to the extent such failure or delay is caused by or results from acts or circumstances beyond the reasonable control of the Party unable to perform including, without limitation, acts of God, flood, fire, earthquake, explosion, governmental actions, war, invasion or hostilities (whether war is declared or not), terrorist threats or acts, riot, or other

VanNote, Erica

**F.C.C.** FCC (Indiana)

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER
FIN028816**

civil unrest, national emergency, revolution, insurrection, epidemic, or restraints or delays affecting carriers or inability or power outage ("Force Majeure"). Neither Party will be liable for its failure or delay to perform due to a Force Majeure provided that, if Supplier is unable to perform due to a Force Majeure, FCC will have the right, without obligation or liability to Supplier, to purchase Components and Services from another source until Supplier is able to resume performance of its obligations hereunder.

**Article 19. Compliance with Laws and Regulations.**

A.   When performing the Agreements, Supplier will comply with related domestic and foreign laws and regulations. If Components or Services are subject to export or import laws or regulations, Supplier will inform FCC of the requirements thereunder and any obligations of the Parties to comply therewith.

B.   Supplier must properly mark all Components, or, as applicable, the packaging containing such Components, with the country of origin of all Components, and must provide to FCC and/or the importing customs broker, proper documentation regarding the country of origin, USMCA (or other applicable trade treaty), certificate of origin, and all other documentation required by any applicable laws or trade treaties.

**Article 20. Prohibition of Bribery; Illegal Activity; Foreign Corrupt Practices Act.**

A.   The Parties will comply with all applicable provisions prohibiting bribery in each country in which the Parties conduct business under the Agreements. The Parties may not directly or indirectly cause a third party to engage in tortious conduct, provide, promise to provide or offer to provide funds, benefits, or other advantages which are outside the normal course of business. Price discounts to FCC's customers based upon volume of goods sold will not be considered a violation of this Article. The Parties are further prohibited from improperly influencing public officials.

B.   Neither Party nor any of its officers is (i) part of or knowingly conducts business with organized crime groups or any other organizations or individuals which pursue economic benefit by using violence, force, or fraudulent means or (ii) any organization or individual which is on any sanction lists published by any international organization, government authority or any country's central bank.

C.   Supplier will comply with, and cause its agents, employees, and contractors to comply with, all applicable regulatory requirements, including but not limited to, government approvals, policies, laws, regulations and directives that apply to the work that Supplier is doing with FCC, as well as all applicable laws and directives regulating direct and indirect payments and gifts to government officials or others, such as the U.S. Foreign Corrupt Practices Act, the OECD Anti-Bribery Convention, and the UK Bribery Act 2010.

**Article 21. Records and Audit.** During the term and for at least 36 months following termination or expiration of the Agreements, Supplier will maintain complete and accurate records of the supply of its Components and Services and of the fees charged to FCC. FCC and its customers will have the right at any time, upon forty-eight (48) hours' advance written notice, to request an independent, third party audit of Supplier's compliance with the Agreements and/or inspect the premises within which Supplier manufactures or provides such Components and Services. Supplier will make all such reasonably requested records available to FCC's selected auditor during any such audit and will cooperate with FCC, its customers, its representatives and its auditors in the conduct of any audit. If it is determined that Supplier has overcharged (or undercredited) FCC, Supplier will credit FCC's account (or, at FCC's option, pay FCC directly) an amount equal to the overcharge. If an audit discloses that Supplier's overcharges (including undercredits) exceeded five percent (5%) of the charges during the period audited, Supplier will also reimburse FCC for the cost of the audit. In the event the results of the audit raise any issues, the Supplier will co-operate with FCC and rectify such issues promptly

**Article 22. Miscellaneous.**

A.   <u>Amendment</u>. The Agreements will not be amended without a written agreement duly executed by both Parties.

B.   <u>Relationship of the Parties</u>. The Parties agree and acknowledge that Supplier is an independent contractor and is not an agent or employee of FCC. Supplier is solely liable for payment of employment taxes or other similar taxes or payments in relation to its employees, and neither Supplier nor any of its employees is covered by FCC's worker's compensation or any other insurance of FCC. Supplier's parent and/or guarantors expressly agree to guaranty Supplier's performance under the Agreements.

C.   <u>Consultation</u>. With regard to matters not stipulated in the applicable Agreement or in case doubts on construction of the applicable Agreement arise, both Parties will first try to resolve through mutual consultation in good faith.

D.   <u>Assignment</u>. Supplier will not assign or subcontract any of its duties or obligations under the applicable Agreement without the prior written consent of FCC.

E.   <u>Entire Agreement</u>. This Agreement is a final expression and a complete and exclusive statement of the Agreement between the Parties respecting the subject matter hereof and supercedes all prior and contemporaneous agreements, representations and understandings of the Parties. No amendment to or modification of this Agreement will be valid or binding upon either Party unless it is made in writing and signed by a duly authorized representative of FCC.

VanNote, Erica

**F.C.C. FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

F.    <u>Severability</u>. The provisions of the Agreements will be deemed to be severable, and the invalidity of any provisions of the Agreements will not affect the validity of the remaining provisions of the Agreements.

G.    <u>Survival</u>. The obligations, representations, warranties, and covenants of Supplier under these terms and each Agreement that by their nature are intended or reasonably expected to survive the expiration or termination of the Agreement, includingArticles 8, 9, 10, 11, 12, 13, 14, and 22, will survive termination or expiration of the Agreements.

H.    <u>Governing Law</u>. Each Agreement will be governed by and construed in accordance with the laws of the state that the FCC entity issuing the Purchase Order is located, notwithstanding any state's conflicts of law provisions otherwise. The Parties expressly agree that any and all actions arising from or related to the Agreements or the Components or Services furnished by Supplier will be subject to the exclusive jurisdiction of the state and federal courts located in the state that the FCC entity issuing the Purchase Order is located. The Parties acknowledge that service of process may be made upon the Parties as provided by applicable law.

I.    <u>Electronic Signatures</u>. All notices, documents and communications which are communicated e1ectronically and signed by the Parties electronically will be deemed to have the same force and effect as all documents signed in hard copy.

(June 2019)

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**F.C.C.** FCC (Indiana)

# PURCHASE ORDER
# FIN028816

| Supplier | Pace Industries<br>Pace Division<br>Harrison Division<br>513 Hwy 62/65 Bypass N<br>Harrison, AR 72601 |
|---|---|
| Attention | Geanetta  Moore<br>870-741-8255 Ext 1300 |
| Ship To | FCC (Indiana), LLC<br>555 Industrial Park Rd<br>Portland, IN 47371<br>Phone: (260) 726-8023 |
| Bill To | FCC (Indiana), LLC<br>555 Industrial Park Rd<br>Portland, IN 47371 |

| | |
|---|---|
| PO No | FIN028816 |
| PO Date | 3/12/2021 |
| Due Date | |
| Purchase Order Revision | |
| PO Revision Date | |
| Issued By | VanNote, Erica<br>260-726-8023  Ext: 1046<br>Fax: 260-726-7782<br>evannote@e-fcci.com |
| Carrier | TJ EXPRESS SERVICE, LLC |
| Via | Ground |
| Payment Terms | Net 30 |
| FOB | Origin |
| Freight Terms | Collect |
| Note | |

## Items

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 :16 | 24044264 | 002 | | | | E CYLINDER | Partial | 12/2/2021 | 700 pc | | |
| 1 :17 | | | | | | | Firm | 12/9/2021 | 2,100 pc | | |
| 1 :18 | | | | | | | Firm | 12/14/2021 | 350 pc | | |
| 1 :19 | | | | | | | Firm | 12/16/2021 | 2,100 pc | | |
| 1 :20 | | | | | | | Firm | 12/21/2021 | 700 pc | | |
| 1 :21 | | | | | | | Firm | 12/23/2021 | 700 pc | | |
| 1 :22 | | | | | | | Firm | 1/4/2022 | 1,050 pc | | |
| 1 :23 | | | | | | | Firm | 1/6/2022 | 1,050 pc | | |
| 1 :24 | | | | | | | Firm | 1/11/2022 | 1,050 pc | | |
| 1 :25 | | | | | | | Firm | 1/13/2022 | 1,050 pc | | |
| 1 :26 | | | | | | | Firm | 1/18/2022 | 1,050 pc | | |
| 1 :27 | | | | | | | Firm | 1/20/2022 | 1,050 pc | | |
| 1 :28 | | | | | | | Firm | 1/25/2022 | 1,350 pc | | |

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**F.C.C.** FCC (Indiana)

# PURCHASE ORDER
# FIN028816

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 :29 | | | | | | | Firm | 1/27/2022 | 1,350 pc | | |
| | | | | | | | Sub Total | | **15,650** pc | | |
| 2 :40 | 24044267 | 002 | | | | CDF HOUSING | Partial | 12/2/2021 | 81 pc | | |
| 2 :41 | | | | | | | Firm | 12/7/2021 | 270 pc | | |
| 2 :42 | | | | | | | Firm | 12/9/2021 | 2,025 pc | | |
| 2 :43 | | | | | | | Firm | 12/14/2021 | 270 pc | | |
| 2 :44 | | | | | | | Firm | 12/16/2021 | 2,295 pc | | |
| 2 :45 | | | | | | | Firm | 12/21/2021 | 1,350 pc | | |
| 2 :46 | | | | | | | Firm | 12/23/2021 | 1,350 pc | | |
| 2 :47 | | | | | | | Firm | 1/4/2022 | 1,350 pc | | |
| 2 :48 | | | | | | | Firm | 1/6/2022 | 1,350 pc | | |
| 2 :49 | | | | | | | Firm | 1/11/2022 | 1,350 pc | | |
| 2 :50 | | | | | | | Firm | 1/13/2022 | 1,350 pc | | |
| 2 :51 | | | | | | | Firm | 1/18/2022 | 1,215 pc | | |
| 2 :52 | | | | | | | Firm | 1/20/2022 | 1,215 pc | | |
| 2 :53 | | | | | | | Firm | 1/25/2022 | 1,215 pc | | |
| 2 :54 | | | | | | | Firm | 1/27/2022 | 1,215 pc | | |
| | | | | | | | Sub Total | | **17,901** pc | | |
| 3 :66 | L1MP-7P182-AC | 20210324 | | | | HT CDF HOUSING | Partial | 12/7/2021 | 2,160 pc | | |
| 3 :71 | | | | | | | Firm | 12/9/2021 | 405 pc | | |
| 3 :67 | | | | | | | Firm | 12/14/2021 | 2,970 pc | | |
| 3 :68 | | | | | | | Firm | 12/16/2021 | 1,755 pc | | |

VanNote, Erica

**F.C.C.** **FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 :69 | | | | | | | Firm | 12/21/2021 | 1,080  pc | | |
| 3 :70 | | | | | | | Firm | 12/23/2021 | 2,160  pc | | |
| 3 :72 | | | | | | | Firm | 1/4/2022 | 2,430  pc | | |
| 3 :73 | | | | | | | Firm | 1/6/2022 | 1,350  pc | | |
| 3 :74 | | | | | | | Firm | 1/11/2022 | 1,350  pc | | |
| 3 :75 | | | | | | | Firm | 1/13/2022 | 1,350  pc | | |
| 3 :76 | | | | | | | Firm | 1/18/2022 | 2,430  pc | | |
| 3 :77 | | | | | | | Firm | 1/20/2022 | 1,350  pc | | |
| 3 :78 | | | | | | | Firm | 1/25/2022 | 1,350  pc | | |
| 3 :79 | | | | | | | Firm | 1/27/2022 | 1,350  pc | | |
| | | | | | | | | **Sub Total** | **23,490  pc** | | |
| 4 :70 | LP5P-7A360-BB | 20200302 | | | | E CYLINDER | Partial | 12/14/2021 | 3,500  pc | | |
| 4 :71 | | | | | | | Firm | 12/16/2021 | 3,150  pc | | |
| 4 :72 | | | | | | | Firm | 12/21/2021 | 4,200  pc | | |
| 4 :73 | | | | | | | Firm | 12/23/2021 | 2,800  pc | | |
| 4 :74 | | | | | | | Firm | 1/4/2022 | 4,200  pc | | |
| 4 :75 | | | | | | | Firm | 1/6/2022 | 4,200  pc | | |
| 4 :76 | | | | | | | Firm | 1/11/2022 | 4,200  pc | | |
| 4 :77 | | | | | | | Firm | 1/13/2022 | 4,200  pc | | |
| 4 :78 | | | | | | | Firm | 1/18/2022 | 4,200  pc | | |
| 4 :79 | | | | | | | Firm | 1/20/2022 | 4,200  pc | | |
| 4 :80 | | | | | | | Firm | 1/25/2022 | 4,200  pc | | |
| 4 :81 | | | | | | | Firm | 1/27/2022 | 4,200  pc | | |

VanNote, Erica

**FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | **Sub Total** | **47,250 pc** | | $█████ |
| 5 :64 | LP5P-7P182-BC | 20210324 | | | | CDF Housing | Partial | 11/24/2021 | 1,080 pc | █████ | |
| 5 :65 | | | | | | | Firm | 11/30/2021 | 2,295 pc | | |
| 5 :66 | | | | | | | Firm | 12/7/2021 | 1,620 pc | | |
| 5 :67 | | | | | | | Firm | 12/9/2021 | 2,430 pc | | |
| 5 :68 | | | | | | | Firm | 12/14/2021 | 1,755 pc | | |
| 5 :69 | | | | | | | Firm | 12/16/2021 | 1,080 pc | | |
| 5 :70 | | | | | | | Firm | 12/21/2021 | 1,080 pc | | |
| 5 :71 | | | | | | | Firm | 12/23/2021 | 1,080 pc | | |
| 5 :72 | | | | | | | Firm | 1/4/2022 | 1,350 pc | | |
| 5 :73 | | | | | | | Firm | 1/6/2022 | 1,350 pc | | |
| 5 :74 | | | | | | | Firm | 1/11/2022 | 1,350 pc | | |
| 5 :75 | | | | | | | Firm | 1/13/2022 | 1,350 pc | | |
| 5 :76 | | | | | | | Firm | 1/18/2022 | 1,350 pc | | |
| 5 :77 | | | | | | | Firm | 1/20/2022 | 1,350 pc | | |
| 5 :78 | | | | | | | Firm | 1/25/2022 | 2,295 pc | | |
| 5 :79 | | | | | | | Firm | 1/27/2022 | 1,350 pc | | |
| | | | | | | | | **Sub Total** | **24,165 pc** | | |
| | | | | | | | | **Grand Total** | | | $█████ |

| Notes |
|---|

VanNote, Erica

**F.C.C. FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER
FIN028816**

## FCC STANDARD TERMS AND CONDITIONS

**Article 1. Application.** The terms and conditions set forth herein will govern (the "Terms") and supplement any long term agreements between FCC and Supplier (each a "**Long Term Agreement**") concerning FCC's purchase of goods ( "Components") or services ("Services") from Supplier and will apply to all individual purchase orders issued by FCC to Supplier for Components or Services (each, a "**Purchase Order**"). The Terms, Long Term Agreement(s) and Purchase Order(s) are collectively referred to as the "**Agreement(s)**"). If there is conflict between these Terms, the Long Term Agreement, or any applicable Purchase Order, the following order of precedence applies: (i) the Purchase Order; (ii) the Long Term Agreement; and (iii) these Terms. These Terms will be deemed accepted by Supplier upon either its written acceptance or upon commencement of any required work or service under the Agreement. Further, if Supplier does not refuse a Purchase Order in writing within three (3) days following Supplier's receipt of the Purchase Order, Supplier will be deemed to have accepted such Purchase Order. Supplier's acceptance will be limited to the express written terms of the Agreement. Any terms not defined in these Terms will have the meaning set forth in the applicable Long Term Agreement. Additional or different terms contained in any documentation provided by Supplier beyond those terms contained in these Terms or the Agreements are expressly rejected and will not be binding on FCC, nor will they become part of the Agreements absent an amendment agreed to and executed in writing by the parties.

**Article 2. Content, Formation and Amendment of Purchase Orders.** Unless otherwise stated on the Purchase Order, each Purchase Order is a requirements contract whereby FCC agrees to purchase, and Supplier agrees to supply, 100% of FCC's requirements of the Components or Services for the duration stated in Article 8(D). Each Purchase Order will specify, with respect to each Component and/or Services ordered, an order date, a description of the Component or Services, delivery date, delivery location, completion date, price, and other transaction terms; provided, however, that matters common to the Purchase Orders may be specified in advance upon consultation by FCC and Supplier. If requested by Supplier, FCC will provide a non-binding forecast of Components or Services expected to be ordered for the following ninety (90) days. If Supplier reasonably expects that it cannot meet the forecasted demand for Components or Services needed by FCC, Supplier will promptly inform FCC of that fact, and provide a timeline within which Supplier believes it can fulfill FCC's needs.

**Article 3. Delivery; Inspection; Remedies.**

A.   Delivery. Supplier will arrange all transportation for Components and will deliver Components to FCC DDP (Incoterms 2010) to the FCC facility designated on the applicable Purchase Order, unless FCC directs Supplier in writing to send them to a different destination prior to shipment of the Components. Time is of the essence. If Supplier fails to make timely delivery or fails to make progress so as to endanger timely and proper completion of Services or delivery of Components (including, but not limited to, Supplier fails, or is endanger of failing, to timely meet all PPAP, validation and run-at-rate requirements), Supplier will be in breach and FCC may terminate for cause. Supplier will notify FCC electronically at the time of shipment, in a format approved by FCC, of the Purchase Order number, the Components contained therein, the quantity and description of such Components, and the method of transportation used. If Supplier is unable to meet the delivery requirements set forth in the applicable Purchase Order, Supplier will immediately notify FCC, and deliver the Components as soon as possible. FCC reserves the right to reduce payment for Components or Services received after the scheduled delivery date, or, alternatively, to seek replacement Components or Services from a third party at Supplier's expense. Supplier is liable for all direct, incidental and consequential damages, losses, costs and expenses incurred by FCC and resulting from Supplier's failure to deliver conforming and non-defective Components or Services or to comply with the shipping and delivery or other requirements of FCC and this Agreement.

B.   Inspection. Supplier is responsible for appropriately packaging all Components to make sure that no damage to such Components occurs during the shipping process, and for performing all Services in accordance with the requirements set forth in the applicable Purchase Order and this Agreement. FCC will reject any Components damaged during the course of shipment, or Services that are not adequately performed. FCC and its customers will have the right to enter Supplier's facilities during normal business hours to inspect any and all Components, Supplier's facilities, and/or the machinery used to manufacture such Components upon forty-eight (48) hours' advance notice to Supplier. FCC also reserves the right to inspect Components upon receipt, and Services rendered, even if payment for such Components has already been received by Supplier. Payment for Components or Services does not constitute acceptance. Upon FCC's request, Supplier will promptly furnish any inspection documentation regarding the Components prepared by Supplier in the ordinary course of business prior to shipping, so that FCC can verify conformance of the Components with the Specifications (as defined in Article 4), as set forth in the applicable Agreements. FCC's failure to inspect Components or Services performed will not be deemed acceptance of defective Components or inadequate Services, nor a waiver of any of FCC's other rights or remedies under the Agreements arising from any defects, non-conformance or other breach by Supplier.

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**FCC (Indiana)**

**PURCHASE ORDER**
**FIN028816**

C.    Rejection. If FCC rejects Components or tender of delivery due to an excess quantity, Supplier will, at FCC's request and within such reasonable period of time as FCC specifies, remove such excess from FCC's facility at Supplier's expense and risk. If there is a shortage of delivered Components to FCC, Supplier will, within a reasonable period of time specified by FCC, deliver conforming Components to fill such shortage. If FCC rejects the Components delivered for any other reason, Supplier will, at FCC's request and within a reasonable period of time specified by FCC, remove such rejected Components from FCC's facility at Supplier's sole expense, and reimburse FCC for any payments FCC made for the rejected Components. If Services are not properly performed, the Services will be promptly re-performed to FCC's satisfaction, as determined in FCC's sole discretion. If Components or Services fail FCC's initial inspection but are useable, as determined in FCC's sole discretion, FCC may choose to accept the Components or Services at a reduced price to be determined in consultation with Supplier.

D.    Remedies. If Supplier breaches the Agreement in any way, FCC may take any or all of the following actions, without prejudiced to any other rights or remedies available to FCC by law:

i.    require Supplier to repair or replace such -or remedy the inadequate Service provided, and upon Supplier's failure or refusal to do so, repair, replace or remedy the same at Supplier's expense;
ii.    reject any shipment or delivery containing defective or nonconforming Components and return for credit or replacement at FCC's option (at Supplier's cost and risk); reject inadequate Services and withhold payment therefor; and/or;
iii.    cancel any outstanding Purchase Orders or shipments of Components or Services not yet delivered or performed hereunder with no further liability to FCC whatsoever.


 E.    FCC Rights. If any Components furnished under any Purchase Order are, in whole or in part, defective or otherwise nonconforming with the applicable Specifications, FCC will, in addition to all other rights and remedies provided for by law or these Terms, have the right to recover any and all damages, losses or expenses which result or in any way arise from Supplier's breach. Supplier will reimburse FCC for all actual attorney's fees (including the cost of in-house counsel) in any action arising out of this Purchase Order, unless Supplier is the prevailing party. FCC will also have the right to require and direct Supplier to remove all nonconforming or defective Components from FCC's facility at Supplier's sole risk and expense. All rights and remedies of FCC, whether provided by these Terms or by law, will be nonexclusive and cumulative. Claims brought under the Agreements (or otherwise), may be brought by FCC at any time within the applicable statutes of limitations.

F.    Supplier's Rights. If FCC materially breaches any term of the Agreements, Supplier's exclusive remedy, and FCC's maximum liability, will not exceed the total of all required payments under this Agreement minus those actually made. In no event will FCC be liable to Supplier for lost profits, unabsorbed overhead, interest, product development or engineering costs, facilities and equipment costs or rental, unrecovered depreciation costs, general and administrative burden charges, business interruption, or incidental, consequential or punitive damages. Any action by Supplier arising out of or relating to this Agreement must be commenced by Supplier within one (1) year after the cause of action has accrued, or such cause of action will be deemed to have been waived.


**Article 4. Specifications.** All Components or Services will comply with specifications designated by FCC including any specifications of FCC's end customer (together, the "Specifications"). On the basis of its technology and experience, Supplier will examine specifications of the Components and Services or matters presented by FCC as requirementsand notify FCC of any matters that should be improved. If Supplier has questions or objections regarding any Component or Service Specifications, it will promptly notify FCC to consult regarding any such questions or concerns and resolve them.


**Article 5. Transfer of Ownership and Risk.** Notwithstanding any provision hereof to the contrary, title to, and risk of loss of the Components or Direct Delivery Components will remain with Supplier until the Components are delivered to, and unloaded at, FCC's facility. Supplier will indemnify and hold FCC harmless from and against any and all claims asserted against FCC on account of any personal injuries and or property damages caused by the Components, or by the transportation thereof, prior to the completion of unloading at FCC's facility.

**Article 6. Special Provision regarding Direct Delivery Components.**

A.    If any event occurs that causes Supplier to be unable to promptly deliver any of the ordered quantities of the Components that are to be directly delivered to a third party designated by FCC ("Direct Receiver") pursuant to FCC's instruction ("Direct Delivery Components") or if there is a likelihood of such an event, Supplier will immediately notify FCC and Direct Receiver of the reasons therefor and the planned delivery dates.

B.    If the results of the receiving inspection by the Direct Receiver show any shortfall or excess in quantity or non-conforming or defective Components, upon consultations between the Parties, Supplier will take necessary measures in accordance with Article 3.

**Article 7. Price; Payment.**

VanNote, Erica

**F.C.C.** FCC (Indiana)

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

A. <u>Price</u>. Components or Services purchased under this Agreement will be priced as specified in the applicable Purchase Order. Unless otherwise provided herein, prices shown on a Purchase Order are deemed to include all taxes not expressly imposed by law on FCC, as the buyer of the Components or Services. All prices are firm. FCC will not be obligated to pay any additional charges whatsoever, including but not limited to charges for packing, rating, boxing, bracing, containers, insurance freight, shipping, transportation, delivery cartage fees, licenses, permits, tariffs, duties, inspections or any related or similar item or service. Supplier will promptly furnish an invoice for the Components or Services supplied, and FCC will not be liable for invoices issued by any party other than Supplier.

B. <u>Payment</u>. Payment for such Components or Services will be due not less than forty-five (45) days following the later of FCC's receipt of the invoice or receipt of the Components or Services provided. Payment will be made by wire in accordance with Supplier's wire instructions.

C. <u>Setoff</u>. FCC will have the right to set off any payment or other obligation owed by FCC to Supplier, in whole or in part, against any payment or other obligation owed by Supplier to FCC.

**Article 8. Tooling; Supplies.**

A. <u>FCC-Owned Tooling</u>. Supplier acknowledges that all tooling and equipment furnished or paid for by (or on behalf of) FCC for Supplier's use under the Agreements constitutes critical elements of the production and supply of the Components. To the extent that any tooling and/or equipment that has been, is, or will be furnished to Supplier by FCC, or paid for by or on behalf of FCC (FCC-Owned Tooling), Supplier agrees to adhere to the following guidelines:

i.  *Completion Date:* Commitment dates will be established for first off-tool samples after final drawings or tool designs are approved by FCC and Supplier. Dates will be based upon a mutually agreed lead time from mutually agreed upon final tooling Specifications.

ii.  *Breach of Commitment Date:* If no design changes have been initiated by FCC after final drawing and design approvals, and the Supplier misses the date committed to by Supplier for first off-tool samples, Supplier will be considered in breach.

iii. *Ownership, and Return:*Ownership of FCC-Owned Tooling remains with FCC at all times. Supplier is responsible for all repairs to FCC-Owned Tooling and agrees to maintain and keep FCC-Owned Tooling in reasonably good working order, less ordinary wear and tear. Supplier will also (i) prominently mark FCC-Owned Tooling as property of FCC; (ii) adequately insure FCC-Owned Tooling against loss and damage; (iii) use FCC-Owned Tooling only to produce Components and Services for FCC; (iv) refrain from commingling FCC-Owned Tooling with property of Supplier or with that of a third party and (v) determine and pay all property taxes relating to such FCC-Owned Tooling. Upon completion of work or demand by FCC for any reason, whichever happens first, Supplier will deliver the FCC-Owned Tooling to FCC or other location, as instructed by FCC.

B. <u>Supplier-Owned Tooling</u>. For tooling paid for by Supplier, Supplier agrees as follows:

i.  The initial tooling and equipment and all subsequent rebuilds will be the sole property of Supplier;

ii.  Supplier will assume all costs associated with equipment and tooling including modifications, maintenance, repair, storage and insurance;

iii.If any tooling or equipment is damaged, Supplier will pay all costs to repair or acquire new tooling and equipment and produce Components according to the original schedule;

iv.  Upon termination or expiration of the Agreements, FCC may request that Supplier either destroy the equipment or tooling or transfer ownership to FCC. As soon as practicable after receipt of such written request, Supplier will destroy the equipment and tooling or provide appropriate documentation evidencing transfer of ownership to FCC;

v.  Prior to the destruction of any equipment or tooling, Supplier will provide FCC with at least twenty (20) days' advance written notice of such destruction so that a representative of FCC may witness the destruction;

vi.  Supplier will submit photographs or other evidence of destruction of the equipment and tooling; and

vii.Supplier will not use such equipment or tooling for a third party without FCC's prior written consent.

C. <u>Supplies</u>. When necessary, upon consultation with Supplier, FCC may provide Supplier with materials, semi-finished goods, and components necessary for the manufacturing of the Components or providing Services ("Supplies"). FCC may have Supplies directly delivered to Supplier from a third party designated by FCC ("Designated Third Party"). Supplier may coordinate with the Designated Third Party on matters such as delivery dates and delivery places for such Supplies ("Direct Delivery Supplies"). Supplier will be responsible for performing an inspection upon receipt of Supplies and Direct Delivery Supplies to insure that the same are undamaged. FCC may provide guidance or instructions on inspection items, inspection methods, and other matters upon consultation with Supplier. Supplier will manage Supplies and Direct Delivery Supplies and will not use them for any purpose other than the use for which they were supplied, nor will Supplier assign or lease to a third party, provide as collateral, or otherwise dispose of, the Supplies. Supplier will, at its sole expense, provide a semi-annual inventory report to FCC of all such Supplies and Direct Delivery Supplies in Supplier's possession.

_____
VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**F.C.C.** FCC (Indiana)

**PURCHASE ORDER**
**FIN028816**

i. *Defective Supplies.* If Supplier finds that Supplies or Direct Delivery Supplies are defective, Supplier will immediately notify FCC of such defect, and FCC will coordinate the removal and replacement of the defective Supplies or Direct Delivery Supplies. FCC or the Designated Third Party, as applicable, will cover the cost of removal and replacement. This will be Supplier's sole remedy for defective Supplies or Direct Delivery Supplies.

D.  Duration. Supplier expressly agrees to provide Components or Services under the applicable Agreement for the life of the applicable vehicle or other original equipment manufacturer program (including model refreshes as determined by the applicable FCC customer) for which the Components or Services are required, including any Service Part requirements set forth in Article 8.E below. Both Buyer and Seller acknowledge the risk of the program production life being cancelled or extended by FCC's customer.

E.  Service (Aftermarket) Parts. For current and past models, along with all future models which use Components or Services, service (aftermarket) parts (each a "Service Part") will be ordered directly by FCC. Supplier must continue to provide Service Parts, at the last production price, for a minimum period often (10) years after the obsolescence of the model containing such Components or Services. From time to time during this ten-year period, FCC will issue an order for Service Parts. All orders for past models should be responded to with a lead time estimate not to exceed the timeframes contained in this provision. Service Parts for current models must be supplied within thirty (30) days of the order date. Service Parts for past models must be supplied within seventy-five (75) days of the order date. A copy of the order will be attached to each service part shipment.

**Article 9. Quality Guarantee.**

A.  The receiving FCC facility's Supplier Quality Manual is incorporated into the Agreement by reference and is an integral part of the Agreement. If Supplier does not have a copy of this Supplier Quality Manual, it is Supplier's responsibility to request a copy of it. Supplier will comply with the provisions of the Supplier Quality Manual in all respects. If there is any inconsistency between the applicable Agreement and the Supplier Quality Manual, the terms of the applicable Agreement will prevail with respect to any inconsistency in the commercial terms (e.g. pricing, costs and expenses, delivery terms) and the Supplier Quality Manual will prevail with respect to any inconsistency in the quality terms, other than terms set forth in Article 4.

B.  Maintenance of Quality Records. Supplier will retain all production, maintenance and service records relating to all tooling (including FCC-Owned Tooling and Supplier-Owned Tooling), manufacturing processes and any and all testing of Components for a period of at least thirty-six (36) months following the termination of this Agreement for any reason.

C. Traceability. Supplier must: (a) be able to trace all products, ingredients, and packaging components with respect to the Components and Services to the original source ("Trace-back"); and, (b) document destination, quantity, and product identifying characteristics (e.g., lot code, manufacture date, production run, etc.) for all outgoing shipments of Components ("Traceforward"). Source, shipment, methods, programs, policies, other traceability, and product accounting information must be readily available to FCC upon request. Supplier will provide details of its traceability program to FCC prior to first shipment under each Purchase Order. Supplier must be able to account for all finished Components, raw materials, packaging materials, and other items relevant to its processes that it received, stored, handled, processed, shipped, or sold. Supplier must be capable of effectively recalling all Components manufactured by Supplier and must make all recall documentation available to FCC.

D.Stop Work. If an inspection or audit conducted under Articles

3.B or 23 finds Components or Services to be defective, non-conforming or that such Components or Services fail to meet the standards set forth in the Quality Assurance Agreement, FCC may verbally issue a stop work order onsite ("Stop Work Order"). Such Stop Work Order will be confirmed in writing by FCC. Following issuance of a Stop Work Order, Supplier will immediately halt all production of Components or rendering of Services and will not resume the same until Supplier has demonstrated that any and all deficiencies identified in the Stop Work Order have been remedied to FCC's satisfaction, as determined in FCC's sole discretion.

**Article 10. Warranty.**

A.  Authority. Supplier represents and warrants that it has the full power to enter into the Agreements and to perform its obligations under the Agreements.

B.  Warranty for Products and Services. Supplier warrants to FCC that all Components or Services will conform to the Specifications, will be of merchantable quality, will be fit for the particular purpose intended, will be of good material and workmanship, are free and clear of all liens, claims and encumbrances and will be free from defects in design, material and workmanship for the Warranty Period (as defined below). In addition, for all Services, Supplier warrants that Services will be performed in a professional and workmanlike manner, consistent with all standards and specifications agreed on with FCC and otherwise consistent with industry standards. All warranties of Supplier extend to future performance of the Components or Services and are not modified, waived or discharged by delivery, inspection, tests, acceptance and payment. FCC's approval of any design, drawing, material, process or specifications will not relieve Seller of these warranties. Supplier waives any right to notice of breach. The Warranty Period is the longest of: four years from the date FCC accepts the Components or Services, the warranty period provided by applicable law, or the warranty period offered by FCC to its customer or by FCC or its customer to end-users for the products into which the Components or Services are incorporated. Supplier hereby agrees that all servicing, repairs and replacements of Components or Services not

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**F.C.C.  FCC (Indiana)**

**PURCHASE ORDER**
**FIN028816**

conforming to the foregoing warranty will be performed, at FCC's option, by Supplier, FCC, or a third party designated by FCC, and that Supplier will be solely responsible for all costs and expenses including costs and expenses for parts, labor, handling and other charges incurred by FCC, and any third party acting on request of FCC, in connection with this warranty. Service Parts furnished under Article 8.E will be subject to the same warranties as original Components and Services provided under the Agreements. The Warranty Period for a Service Part is the same as that for a production part.

**Article 11. Indemnification; Limitation of Liability**

A.    <u>Indemnification</u>. Supplier, together with Supplier's parent, guarantors, and shareholders, hereby agrees to indemnify and hold harmless FCC, its Customers, and as to each of those parties, their respective subsidiaries, shareholders, affiliates, directors, officers, principals, agents and employees, as now and hereafter constituted, from and against any and all loss, liability, damage (including any punitive or exemplary damages), cost and expense of every kind or character (including but not limited to legal fees and legal expenses) which any or all of them may incur, suffer or be required to pay by reason of any claim, suit, demand, proceeding or other action that may be brought against anyone or more of them arising from or related in any way to a breach by Supplier of this Agreement including the failure or alleged failure of a Component or Service to comply with any of the warranties, representations, covenants or agreements of Supplier contained in the Agreements, whether or not caused or occasioned by, or alleged to be caused or occasioned by, any act, omission, fault or negligence of Supplier or of anyone acting on Supplier's behalf or with its consent. In the event that any such claim, suit, demand, proceeding or other action is brought, Supplier covenants that upon notice from FCC in its own right or on behalf of its Customer, Supplier will defend such claim, suit, demand, proceeding or action (or, if applicable, Supplier will cause it to be defended by Supplier's insurer) at Supplier's sole cost and expense, and Supplier will keep FCC and its Customer, as applicable, fully advised of the continuing status of each such defense. At its option, FCC may participate in the defense of any such claim with its own counsel, at Supplier's expense. The provisions of this Article 11 will remain and continue in effect after the term of the applicable Agreement.

**Article 12. Insurance.** As of the date of the applicable Agreement, Supplier agrees that it will have obtained the following insurance coverage and that such coverage remains in effect for the duration of the Agreement and any warranty period. Upon request by FCC, Supplier will deliver a certificate or certificates of insurance evidencing such coverage.

A.    Commercial General Liability insurance, on an "occurrence" policy form, providing a minimum combined single limit of Four Million dollars ($4,000,000.) on Bodily Injury and Property Damage, including Personal Injury Liability, Blanket Contractual Liability, Contractor's Protective Liability, and Products and Completed Operations. This limit will apply per occurrence, and in the aggregate, for occurrences in or about the site and will name FCC as an additional Insured.

B.    Comprehensive Automobile Liability insurance providing a minimum limit of $1,000,000. (combined single limit) in Bodily Injury and Property Damage Liability covering owned, non-owned and hired automobiles. FCC will be listed as an additional Insured.

C.    Statutory Worker's Compensation Coverage including Employer's Liability coverage for minimum limits of $1,000,000 (if applicable).

D.    Umbrella/Excess Liability -In an amount of no less than Five Million dollars ($5,000,000).

All policies will be provided by insurance carriers having a minimum rating as published by A M. Best of A· Class XI or better. Such policies will (i) stipulate that they are providing primary coverage, (ii) with respect to the insurance covered in (A), name FCC as an additional insured, and (iii) state that coverage thereunder is not contingent upon participation or payment by or under, any other company or policy. A waiver of subrogation will be provided at FCC's request on the above policies. Supplier will pay all premiums and perform all acts necessary to maintain the policies required to be purchased in accordance with the applicable Agreement. Supplier will provide FCC with certificates of such policies upon request and each certificate must show the amount of coverage, number of policy, date of expiration and, if required above, name FCC as an additional insured.

**Article 13. Tangible and Intellectual Property.**

A. <u>Tangible Property</u>. FCC-Owned Tooling and all tools, dies, specifications, drawings, designs, or other property furnished or specifically paid for by FCC or its Customers in connection with the Agreements (collectively, "FCC Property") will: (a) be and remain the tangible and intellectual property of FCC; marked by Supplier as such and kept segregated by Supplier from other property; (b) be used only by Supplier and only in performance of the Agreements; (c) not be moved from Supplier's premises without FCC's prior written consent; (d) not be affixed to real property; (e) be kept free of all liens, claims, encumbrances and restrictions; (f) not be modified or altered by Supplier or any other person or entity, and (g) be maintained by Supplier in reasonably good working order, less ordinary wear and tear. Supplier will bear all risk of loss or damage to FCC Property until it is returned to FCC. Upon request, Supplier will deliver at FCC's expense all FCC Property in good condition, ordinary wear and tear excepted, to any location designated by FCC. Upon the request of FCC, Supplier will execute a bailment agreement in a format reasonably acceptable to FCC with respect to the FCC Property and hereby consents to the filing by FCC of one or more UCC Financing Statements covering the FCC Property. Supplier waives any legal or equitable rights or claims including, but not limited to, all statutory and equitable lien rights, in connection with FCC Property.

VanNote, Erica

**FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

B. Intellectual Property. All materials, discoveries, ideas, design rights and concepts developed by Supplier and that relate to the Components or Services will be owned by FCC and will be considered works made for hire by Supplier for FCC. FCC will own all United States and international copyrights, patent and other intellectual property rights in work product comprising, or relating to, such works. Provider agrees to assign, and upon creation of each such work automatically assigns, to FCC, its successors and assigns, ownership of all United States and international rights in such work, insofar as any ownership and rights in such work, by operation of law, are not automatically with FCC. From time to time upon FCC's request, Supplier and/or its personnel will confirm such assignment by execution and delivery of such assignments, confirmations or other written instruments as FCC may request. FCC, its successors and assigns, will have the right to obtain and hold in its or their own names all copyright registrations, patents, and other evidence of rights that may be available for such works.

**Article 14. Confidentiality.** Any trade secrets or other proprietary information of FCC, whether oral, visual or written, will constitute confidential information of FCC even if not marked as such ("Confidential Information"). In addition, Supplier will only use Confidential Information as needed to perform its obligations pursuant to the Agreements and will not disclose Confidential Information to a third party without prior written consent of an authorized officer of FCC, in each instance. For written deliverables provided by Supplier under the Agreements, Supplier will mark such deliverables including any interim or final status reports, updates, or presentations, exclusively as "FCC Confidential," or as otherwise requested by FCC, and will not mark, or jointly-mark, such deliverables as belonging to Supplier. Such deliverables are considered Confidential Information. Upon the termination or expiration of the Agreement, the Supplier will immediately cease use of the Confidential Information and, upon written request of FCC, will immediately return and provide to FCC the Confidential Information, including all copies. The terms and conditions of the Agreements will be deemed Confidential Information. Supplier will not use the FCC name or any FCC trademarks, trade names, service marks, or quote the opinion of any FCC employee in any marketing materials without first obtaining prior written consent of an FCC authorized officer.

**Article 15. Improvement; Review.** In order to improve matters such as unit prices, quality, function, and manufacturing methods of the Components, Supplier will actively develop new technology, propose improvements, provide information to FCC, and the like. To the extent necessary to achieve the purposes of the applicable Agreement, FCC may request Supplier to submit materials related to management of quality, manufacturing processes, and other matters, or may obtain Supplier's consent and conduct an examination of the actual condition of quality management and method of managing processes, and give instructions for improvement. If necessary in order to respond to a demand or an order from a government authority or a related organization, in order to comply with laws and regulations, or if necessary to realize the purposes of the applicable Agreement, FCC may request necessary examinations and provision of information by Supplier, and Supplier will actively cooperate with such request.

**Article 16. Competitiveness.** Supplier will, at all times, be competitive in price, quality, performance and fulfillment obligations.  If, during the term of the Agreements, FCC receives from a manufacturer or supplier, other than an affiliate of FCC, an offer to supply Components or Services of comparable quality (in FCC's judgment) at a price lower than the price then-prevailing under the Agreements, FCC may notify Supplier in writing of the competitive offer and request that Supplier meet the competitive offer. Supplier will, within ten (10) days after Supplier's receipt of FCC's request, notify FCC in writing as to whether Supplier will adjust the then-prevailing price under the applicable Agreement to meet the competitive offer. If Supplier does not agree to meet the new price, or if Supplier does not respond to the written notice within the ten (10) day period, FCC may accept the competitive offer. If the competitive offer eliminates FCC's need to secure Components or Services from Supplier in any capacity, the applicable Agreements may be terminated for Cause under Section 17B.

**Article 17. Termination.**

A.    Termination for Convenience. FCC may terminate an Agreement for any reason, in whole or in part, upon thirty (30) days' written notice to Supplier. If such termination for convenience occurs, the Parties will remain obligated to fulfill their respective duties and responsibilities under the applicable Agreement that exist as of the date of termination.

B.    Termination for Cause. Either Party may immediately terminate the Agreement for cause if the other Party: becomes subject to revocation or suspension of business by a supervisory authority; dissolves, becomes insolvent, files for bankruptcy, or experiences a material degradation in its credit or financial conditions and fails to provide the other Party with adequate assurances after receiving a demand from the other party for the same; or merges with a third party or is subject to a change of control without first securing FCC's written consent at least thirty (30) days prior to the proposed date of such merger or change of control.

FCC also has the right to terminate the Agreement for cause and upon written notice to Supplier if: (a) FCC's agreement with its  Customer for which the Components or Services are purchased is terminated; or (b) if Supplier breaches the Agreement and FCC reasonably believes that such breach threatens to interrupt the production or operations of FCC or its Customer.  For all other breaches, FCC may terminate for cause if Supplier fails to cure within five (5) days after receiving notice from FCC.

Supplier may terminate the Agreement for cause if FCC: 1) has substantially breached the agreement and 2) fails to cure within forty-five (45) days after Supplier provides FCC with written notice of the alleged breach and demands that FCC cure.

**Article 18. Force Majeure.** Force majeure is any failure or delay by a Party in fulfilling or performing any term of the Agreements when and to the extent such failure or delay is caused by or results from acts or circumstances beyond the reasonable control of the Party unable to perform including, without limitation, acts of God, flood, fire, earthquake, explosion, governmental actions, war, invasion or hostilities (whether war is declared or not), terrorist threats or acts, riot, or other

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**FCC (Indiana)**

**PURCHASE ORDER**
**FIN028816**

civil unrest, national emergency, revolution, insurrection, epidemic, or restraints or delays affecting carriers or inability or power outage ("Force Majeure"). Neither Party will be liable for its failure or delay to perform due to a Force Majeure provided that, if Supplier is unable to perform due to a Force Majeure, FCC will have the right, without obligation or liability to Supplier, to purchase Components and Services from another source until Supplier is able to resume performance of its obligations hereunder.

**Article 19. Compliance with Laws and Regulations.**

A.   When performing the Agreements, Supplier will comply with related domestic and foreign laws and regulations. If Components or Services are subject to export or import laws or regulations, Supplier will inform FCC of the requirements thereunder and any obligations of the Parties to comply therewith.

B.   Supplier must properly mark all Components, or, as applicable, the packaging containing such Components, with the country of origin of all Components, and must provide to FCC and/or the importing customs broker, proper documentation regarding the country of origin, USMCA (or other applicable trade treaty), certificate of origin, and all other documentation required by any applicable laws or trade treaties.

**Article 20. Prohibition of Bribery; Illegal Activity; Foreign Corrupt Practices Act.**

A.   The Parties will comply with all applicable provisions prohibiting bribery in each country in which the Parties conduct business under the Agreements. The Parties may not directly or indirectly cause a third party to engage in tortious conduct, provide, promise to provide or offer to provide funds, benefits, or other advantages which are outside the normal course of business. Price discounts to FCC's customers based upon volume of goods sold will not be considered a violation of this Article. The Parties are further prohibited from improperly influencing public officials.

B.   Neither Party nor any of its officers are (i) part of or knowingly conducts business with organized crime groups or any other organizations or individuals which pursue economic benefit by using violence, force, or fraudulent means or (ii) any organization or individual which is on any sanction lists published by any international organization, government authority or any country's central bank.

C.   Supplier will comply with, and cause its agents, employees, and contractors to comply with, all applicable regulatory requirements, including but not limited to, government approvals, policies, laws, regulations and directives that apply to the work that Supplier is doing with FCC, as well as all applicable laws and directives regulating direct and indirect payments and gifts to government officials or others, such as the U.S. Foreign Corrupt Practices Act, the OECD Anti-Bribery Convention, and the UK Bribery Act 2010.

**Article 21. Records and Audit.** During the term and for at least 36 months following termination or expiration of the Agreements, Supplier will maintain complete and accurate records of the supply of its Components and Services and of the fees charged to FCC. FCC and its customers will have the right at any time, upon forty-eight (48) hours' advance written notice, to request an independent, third party audit of Supplier's compliance with the Agreements and/or inspect the premises within which Supplier manufactures or provides such Components and Services. Supplier will make all such reasonably requested records available to FCC's selected auditor during any such audit and will cooperate with FCC, its customers, its representatives and its auditors in the conduct of any audit. If it is determined that Supplier has overcharged (or undercredited) FCC, Supplier will credit FCC's account (or, at FCC's option, pay FCC directly) an amount equal to the overcharge. If an audit discloses that Supplier's overcharges (including undercredits) exceeded five percent (5%) of the charges during the period audited, Supplier will also reimburse FCC for the cost of the audit. In the event the results of the audit raise any issues, the Supplier will co-operate with FCC and rectify such issues promptly

**Article 22. Miscellaneous.**

A.   <u>Amendment</u>. The Agreements will not be amended without a written agreement duly executed by both Parties.

B.   <u>Relationship of the Parties</u>. The Parties agree and acknowledge that Supplier is an independent contractor and is not an agent or employee of FCC. Supplier is solely liable for payment of employment taxes or other similar taxes or payments in relation to its employees, and neither Supplier nor any of its employees is covered by FCC's worker's compensation or any other insurance of FCC. Supplier's parent and/or guarantors expressly agree to guaranty Supplier's performance under the Agreements.

C.   <u>Consultation</u>. With regard to matters not stipulated in the applicable Agreement or in case doubts on construction of the applicable Agreement arise, both Parties will first try to resolve through mutual consultation in good faith.

D.   <u>Assignment</u>. Supplier will not assign or subcontract any of its duties or obligations under the applicable Agreement without the prior written consent of FCC.

E.   <u>Entire Agreement</u>. This Agreement is a final expression and a complete and exclusive statement of the Agreement between the Parties respecting the subject matter hereof and supercedes all prior and contemporaneous agreements, representations and understandings of the Parties. No amendment to or modification of this Agreement will be valid or binding upon either Party unless it is made in writing and signed by a duly authorized representative of FCC.

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**FCC (Indiana)**

**PURCHASE ORDER**
**FIN028816**

F.    <u>Severability</u>. The provisions of the Agreements will be deemed to be severable, and the invalidity of any provisions of the Agreements will not affect the validity of the remaining provisions of the Agreements.

G.    <u>Survival</u>. The obligations, representations, warranties, and covenants of Supplier under these terms and each Agreement that by their nature are intended or reasonably expected to survive the expiration or termination of the Agreement, includingArticles 8, 9, 10, 11, 12, 13, 14, and 22, will survive termination or expiration of the Agreements.

H.    <u>Governing Law</u>. Each Agreement will be governed by and construed in accordance with the laws of the state that the FCC entity issuing the Purchase Order is located, notwithstanding any state's conflicts of law provisions otherwise. The Parties expressly agree that any and all actions arising from or related to the Agreements or the Components or Services furnished by Supplier will be subject to the exclusive jurisdiction of the state and federal courts located in the state that the FCC entity issuing the Purchase Order is located. The Parties acknowledge that service of process may be made upon the Parties as provided by applicable law.

I.    <u>Electronic Signatures</u>. All notices, documents and communications which are communicated e1ectronically and signed by the Parties electronically will be deemed to have the same force and effect as all documents signed in hard copy.

(June 2019)

_____
VanNote, Erica

**F.C.C. FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

# PURCHASE ORDER
# FIN028816

| Supplier | Pace Industries<br>Pace Division<br>Harrison Division<br>513 Hwy 62/65 Bypass N<br>Harrison, AR 72601 | PO No | FIN028816 |
|---|---|---|---|
| | | PO Date | 3/12/2021 |
| | | Due Date | |
| Attention | Geanetta  Moore<br>870-741-8255 Ext 1300 | Purchase Order Revision | |
| | | PO Revision Date | |
| Ship To | FCC (Indiana), LLC<br>555 Industrial Park Rd<br>Portland, IN 47371<br>Phone: (260) 726-8023 | Issued By | VanNote, Erica<br>260-726-8023  Ext: 1046<br>Fax: 260-726-7782<br>evannote@e-fcci.com |
| | | Carrier | TJ EXPRESS SERVICE, LLC |
| Bill To | FCC (Indiana), LLC<br>555 Industrial Park Rd<br>Portland, IN 47371 | Via | Ground |
| | | Payment Terms | Net 30 |
| | | FOB | Origin |
| | | Freight Terms | Collect |
| | | Note | |

## Items

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 :25 | 24044264 | 002 | | | | E CYLINDER | Partial | 1/13/2022 | 700  pc | | |
| 1 :26 | | | | | | | Firm | 1/18/2022 | 1,050  pc | | |
| 1 :27 | | | | | | | Firm | 1/20/2022 | 1,050  pc | | |
| 1 :28 | | | | | | | Firm | 1/25/2022 | 1,400  pc | | |
| 1 :29 | | | | | | | Firm | 1/27/2022 | 1,400  pc | | |
| 1 :30 | | | | | | | Firm | 2/1/2022 | 1,400  pc | | |
| 1 :31 | | | | | | | Firm | 2/3/2022 | 1,400  pc | | |
| 1 :32 | | | | | | | Firm | 2/7/2022 | 1,050  pc | | |
| 1 :33 | | | | | | | Firm | 2/8/2022 | 1,400  pc | | |
| 1 :34 | | | | | | | Firm | 2/10/2022 | 1,400  pc | | |
| 1 :35 | | | | | | | Firm | 2/15/2022 | 1,400  pc | | |
| 1 :36 | | | | | | | Firm | 2/17/2022 | 1,400  pc | | |
| 1 :37 | | | | | | | Firm | 2/21/2022 | 1,050  pc | | |
| 1 :38 | | | | | | | Firm | 2/22/2022 | 1,400  pc | | |
| 1 :39 | | | | | | | Firm | 2/24/2022 | 1,400  pc | | |
| | | | | | | | | **Sub Total** | **18,900  pc** | | |
| 2 :49 | 24044267 | 002 | | | | CDF HOUSING | Partial | 1/11/2022 | 810  pc | | |
| 2 :50 | | | | | | | Firm | 1/13/2022 | 1,215  pc | | |
| 2 :51 | | | | | | | Firm | 1/18/2022 | 1,215  pc | | |

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**F.C.C.** FCC (Indiana)

**PURCHASE ORDER**
**FIN028816**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 :52 | | | | | | | Firm | 1/20/2022 | 1,215 pc | | |
| 2 :53 | | | | | | | Firm | 1/25/2022 | 1,215 pc | | |
| 2 :54 | | | | | | | Firm | 1/27/2022 | 1,215 pc | | |
| 2 :55 | | | | | | | Firm | 2/1/2022 | 1,350 pc | | |
| 2 :56 | | | | | | | Firm | 2/3/2022 | 1,485 pc | | |
| 2 :57 | | | | | | | Firm | 2/7/2022 | 1,080 pc | | |
| 2 :58 | | | | | | | Firm | 2/8/2022 | 1,350 pc | | |
| 2 :59 | | | | | | | Firm | 2/10/2022 | 1,485 pc | | |
| 2 :60 | | | | | | | Firm | 2/15/2022 | 1,350 pc | | |
| 2 :61 | | | | | | | Firm | 2/17/2022 | 1,485 pc | | |
| 2 :62 | | | | | | | Firm | 2/21/2022 | 1,080 pc | | |
| 2 :63 | | | | | | | Firm | 2/22/2022 | 1,350 pc | | |
| 2 :64 | | | | | | | Firm | 2/24/2022 | 1,485 pc | | |
| | | | | | | | | **Sub Total** | **20,385 pc** | | |
| 3 :74 | L1MP-7P182-AC | 20210729 | | | | HT CDF HOUSING | Partial | 1/11/2022 | 1,620 pc | | |
| 3 :75 | | | | | | | Firm | 1/13/2022 | 1,890 pc | | |
| 3 :76 | | | | | | | Firm | 1/18/2022 | 1,890 pc | | |
| 3 :77 | | | | | | | Firm | 1/20/2022 | 1,890 pc | | |
| 3 :78 | | | | | | | Firm | 1/25/2022 | 1,890 pc | | |
| 3 :79 | | | | | | | Firm | 1/27/2022 | 1,755 pc | | |
| 3 :81 | | | | | | | Firm | 2/1/2022 | 2,025 pc | | |
| 3 :82 | | | | | | | Firm | 2/3/2022 | 2,025 pc | | |
| 3 :83 | | | | | | | Firm | 2/7/2022 | 1,080 pc | | |

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**F.C.C.** FCC (Indiana)

**PURCHASE ORDER**
**FIN028816**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 :84 | | | | | | | Firm | 2/8/2022 | 2,025  pc | | |
| 3 :85 | | | | | | | Firm | 2/10/2022 | 2,025  pc | | |
| 3 :86 | | | | | | | Firm | 2/15/2022 | 2,025  pc | | |
| 3 :87 | | | | | | | Firm | 2/17/2022 | 2,025  pc | | |
| 3 :88 | | | | | | | Firm | 2/21/2022 | 1,080  pc | | |
| 3 :89 | | | | | | | Firm | 2/22/2022 | 2,025  pc | | |
| 3 :90 | | | | | | | Firm | 2/24/2022 | 2,025  pc | | |
| | | | | | | | | **Sub Total** | **29,295  pc** | | |
| 4 :76 | LP5P-7A360-BB | 20200302 | | | | E CYLINDER | Partial | 1/11/2022 | 3,100  pc | | |
| 4 :77 | | | | | | | Firm | 1/13/2022 | 4,550  pc | | |
| 4 :78 | | | | | | | Firm | 1/18/2022 | 4,550  pc | | |
| 4 :79 | | | | | | | Firm | 1/20/2022 | 4,550  pc | | |
| 4 :80 | | | | | | | Firm | 1/25/2022 | 4,550  pc | | |
| 4 :81 | | | | | | | Firm | 1/27/2022 | 4,550  pc | | |
| 4 :82 | | | | | | | Firm | 2/1/2022 | 4,550  pc | | |
| 4 :83 | | | | | | | Firm | 2/3/2022 | 4,550  pc | | |
| 4 :84 | | | | | | | Firm | 2/7/2022 | 4,900  pc | | |
| 4 :85 | | | | | | | Firm | 2/8/2022 | 4,550  pc | | |
| 4 :86 | | | | | | | Firm | 2/10/2022 | 4,550  pc | | |
| 4 :87 | | | | | | | Firm | 2/15/2022 | 4,550  pc | | |
| 4 :88 | | | | | | | Firm | 2/17/2022 | 4,550  pc | | |
| 4 :89 | | | | | | | Firm | 2/21/2022 | 4,900  pc | | |
| 4 :90 | | | | | | | Firm | 2/22/2022 | 4,550  pc | | |
| 4 :91 | | | | | | | Firm | 2/24/2022 | 4,550  pc | | |
| | | | | | | | | **Sub Total** | **72,050  pc** | | |
| 5 :73 | LP5P-7P182-BC | 20210729 | | | | CDF Housing | Partial | 1/6/2022 | 2,160  pc | | |
| 5 :74 | | | | | | | Firm | 1/11/2022 | 2,295  pc | | |
| 5 :75 | | | | | | | Firm | 1/13/2022 | 2,295  pc | | |
| 5 :76 | | | | | | | Firm | 1/18/2022 | 2,295  pc | | |

VanNote, Erica



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 :77 | | | | | | | Firm | 1/20/2022 | 2,295  pc | | |
| 5 :78 | | | | | | | Firm | 1/25/2022 | 2,160  pc | | |
| 5 :79 | | | | | | | Firm | 1/27/2022 | 2,295  pc | | |
| 5 :80 | | | | | | | Firm | 2/1/2022 | 2,565  pc | | |
| 5 :81 | | | | | | | Firm | 2/3/2022 | 2,430  pc | | |
| 5 :82 | | | | | | | Firm | 2/7/2022 | 3,780  pc | | |
| 5 :83 | | | | | | | Firm | 2/8/2022 | 2,565  pc | | |
| 5 :84 | | | | | | | Firm | 2/10/2022 | 2,430  pc | | |
| 5 :85 | | | | | | | Firm | 2/15/2022 | 2,565  pc | | |
| 5 :86 | | | | | | | Firm | 2/17/2022 | 2,430  pc | | |
| 5 :87 | | | | | | | Firm | 2/21/2022 | 3,780  pc | | |
| 5 :88 | | | | | | | Firm | 2/22/2022 | 2,565  pc | | |
| 5 :89 | | | | | | | Firm | 2/24/2022 | 2,430  pc | | |
| | | | | | | | | **Sub Total** | **43,335  pc** | | |
| | | | | | | | | | **Grand Total** | $ | |

Notes

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER
FIN028816**

FCC STANDARD TERMS AND CONDITIONS

**Article 1. Application.** The terms and conditions set forth herein will govern (the "Terms") and supplement any long term agreements between FCC and Supplier (each a "**Long Term Agreement**") concerning FCC's purchase of goods ( "Components") or services ("Services") from Supplier and will apply to all individual purchase orders issued by FCC to Supplier for Components or Services (each, a "**Purchase Order**"). The Terms, Long Term Agreement(s) and Purchase Order(s) are collectively referred to as the "**Agreement(s)**"). If there is conflict between these Terms, the Long Term Agreement, or any applicable Purchase Order, the following order of precedence applies: (i) the Purchase Order; (ii) the Long Term Agreement; and (iii) these Terms. These Terms will be deemed accepted by Supplier upon either its written acceptance or upon commencement of any required work or service under the Agreement. Further, if Supplier does not refuse a Purchase Order in writing within three (3) days following Supplier's receipt of the Purchase Order, Supplier will be deemed to have accepted such Purchase Order. Supplier's acceptance will be limited to the express written terms of the Agreement. Any terms not defined in these Terms will have the meaning set forth in the applicable Long Term Agreement. Additional or different terms contained in any documentation provided by Supplier beyond those terms contained in these Terms or the Agreements are expressly rejected and will not be binding on FCC, nor will they become part of the Agreements absent an amendment agreed to and executed in writing by the parties.

**Article 2. Content, Formation and Amendment of Purchase Orders.** Unless otherwise stated on the Purchase Order, each Purchase Order is a requirements contract whereby FCC agrees to purchase, and Supplier agrees to supply, 100% of FCC's requirements of the Components or Services for the duration stated in Article 8(D). Each Purchase Order will specify, with respect to each Component and/or Services ordered, an order date, a description of the Component or Services, delivery date, delivery location, completion date, price, and other transaction terms; provided, however, that matters common to the Purchase Orders may be specified in advance upon consultation by FCC and Supplier. If requested by Supplier, FCC will provide a non-binding forecast of Components or Services expected to be ordered for the following ninety (90) days. If Supplier reasonably expects that it cannot meet the forecasted demand for Components or Services needed by FCC, Supplier will promptly inform FCC of that fact, and provide a timeline within which Supplier believes it can fulfill FCC's needs.

**Article 3. Delivery; Inspection; Remedies.**

A.   <u>Delivery</u>. Supplier will arrange all transportation for Components and will deliver Components to FCC DDP (Incoterms 2010) to the FCC facility designated on the applicable Purchase Order, unless FCC directs Supplier in writing to send them to a different destination prior to shipment of the Components. Time is of the essence. If Supplier fails to make timely delivery or fails to make progress so as to endanger timely and proper completion of Services or delivery of Components (including, but not limited to, Supplier fails, or is endanger of failing, to timely meet all PPAP, validation and run-at-rate requirements), Supplier will be in breach and FCC may terminate for cause. Supplier will notify FCC electronically at the time of shipment, in a format approved by FCC, of the Purchase Order number, the Components contained therein, the quantity and description of such Components, and the method of transportation used. If Supplier is unable to meet the delivery requirements set forth in the applicable Purchase Order, Supplier will immediately notify FCC, and deliver the Components as soon as possible. FCC reserves the right to reduce payment for Components or Services received after the scheduled delivery date, or, alternatively, to seek replacement Components or Services from a third party at Supplier's expense. Supplier is liable for all direct, incidental and consequential damages, losses, costs and expenses incurred by FCC and resulting from Supplier's failure to deliver conforming and non-defective Components or Services or to comply with the shipping and delivery or other requirements of FCC and this Agreement.

B.   <u>Inspection</u>. Supplier is responsible for appropriately packaging all Components to make sure that no damage to such Components occurs during the shipping process, and for performing all Services in accordance with the requirements set forth in the applicable Purchase Order and this Agreement. FCC will reject any Components damaged during the course of shipment, or Services that are not adequately performed. FCC and its customers will have the right to enter Supplier's facilities during normal business hours to inspect any and all Components, Supplier's facilities, and/or the machinery used to manufacture such Components upon forty-eight (48) hours' advance notice to Supplier. FCC also reserves the right to inspect Components upon receipt, and Services rendered, even if payment for such Components has already been received by Supplier. Payment for Components or Services does not constitute acceptance. Upon FCC's request, Supplier will promptly furnish any inspection documentation regarding the Components prepared by Supplier in the ordinary course of business prior to shipping, so that FCC can verify conformance of the Components with the Specifications (as defined in Article 4), as set forth in the applicable Agreements. FCC's failure to inspect Components or Services performed will not be deemed acceptance of defective Components or inadequate Services, nor a waiver of any of FCC's other rights or remedies under the Agreements arising from any defects, non-conformance or other breach by Supplier.

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**F.C.C.** FCC (Indiana)

**PURCHASE ORDER**
**FIN028816**

C.    Rejection. If FCC rejects Components or tender of delivery due to an excess quantity, Supplier will, at FCC's request and within such reasonable period of time as FCC specifies, remove such excess from FCC's facility at Supplier's expense and risk. If there is a shortage of delivered Components to FCC, Supplier will, within a reasonable period of time specified by FCC, deliver conforming Components to fill such shortage. If FCC rejects the Components delivered for any other reason, Supplier will, at FCC's request and within a reasonable period of time specified by FCC, remove such rejected Components from FCC's facility at Supplier's sole expense, and reimburse FCC for any payments FCC made for the rejected Components. If Services are not properly performed, the Services will be promptly re-performed to FCC's satisfaction, as determined in FCC's sole discretion. If Components or Services fail FCC's initial inspection but are useable, as determined in FCC's sole discretion, FCC may choose to accept the Components or Services at a reduced price to be determined in consultation with Supplier.

D.    Remedies. If Supplier breaches the Agreement in any way, FCC may take any or all of the following actions, without prejudiced to any other rights or remedies available to FCC by law:

i.    require Supplier to repair or replace such -or remedy the inadequate Service provided, and upon Supplier's failure or refusal to do so, repair, replace or remedy the same at Supplier's expense;
ii.    reject any shipment or delivery containing defective or nonconforming Components and return for credit or replacement at FCC's option (at Supplier's cost and risk); reject inadequate Services and withhold payment therefor; and/or;
iii.    cancel any outstanding Purchase Orders or shipments of Components or Services not yet delivered or performed hereunder with no further liability to FCC whatsoever.


E.    FCC Rights. If any Components furnished under any Purchase Order are, in whole or in part, defective or otherwise nonconforming with the applicable Specifications, FCC will, in addition to all other rights and remedies provided for by law or these Terms, have the right to recover any and all damages, losses or expenses which result or in any way arise from Supplier's breach. Supplier will reimburse FCC for all actual attorney's fees (including the cost of in-house counsel) in any action arising out of this Purchase Order, unless Supplier is the prevailing party. FCC will also have the right to require and direct Supplier to remove all nonconforming or defective Components from FCC's facility at Supplier's sole risk and expense. All rights and remedies of FCC, whether provided by these Terms or by law, will be nonexclusive and cumulative. Claims brought under the Agreements (or otherwise), may be brought by FCC at any time within the applicable statutes of limitations.

F.    Supplier's Rights. If FCC materially breaches any term of the Agreements, Supplier's exclusive remedy, and FCC's maximum liability, will not exceed the total of all required payments under this Agreement minus those actually made. In no event will FCC be liable to Supplier for lost profits, unabsorbed overhead, interest, product development or engineering costs, facilities and equipment costs or rental, unrecovered depreciation costs, general and administrative burden charges, business interruption, or incidental, consequential or punitive damages. Any action by Supplier arising out of or relating to this Agreement must be commenced by Supplier within one (1) year after the cause of action has accrued, or such cause of action will be deemed to have been waived.


**Article 4. Specifications.** All Components or Services will comply with specifications designated by FCC including any specifications of FCC's end customer (together, the "Specifications"). On the basis of its technology and experience, Supplier will examine specifications of the Components and Services or matters presented by FCC as requirementsand notify FCC of any matters that should be improved. If Supplier has questions or objections regarding any Component or Service Specifications, it will promptly notify FCC to consult regarding any such questions or concerns and resolve them.


**Article 5. Transfer of Ownership and Risk.** Notwithstanding any provision hereof to the contrary, title to, and risk of loss of the Components or Direct Delivery Components will remain with Supplier until the Components are delivered to, and unloaded at, FCC's facility. Supplier will indemnify and hold FCC harmless from and against any and all claims asserted against FCC on account of any personal injuries and or property damages caused by the Components, or by the transportation thereof, prior to the completion of unloading at FCC's facility.

**Article 6. Special Provision regarding Direct Delivery Components.**

A.    If any event occurs that causes Supplier to be unable to promptly deliver any of the ordered quantities of the Components that are to be directly delivered to a third party designated by FCC ("Direct Receiver") pursuant to FCC's instruction ("Direct Delivery Components") or if there is a likelihood of such an event, Supplier will immediately notify FCC and Direct Receiver of the reasons therefor and the planned delivery dates.

B.    If the results of the receiving inspection by the Direct Receiver show any shortfall or excess in quantity or non-conforming or defective Components, upon consultations between the Parties, Supplier will take necessary measures in accordance with Article 3.

**Article 7. Price; Payment.**

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**F.C.C.** FCC (Indiana)

**PURCHASE ORDER**
**FIN028816**

A. <u>Price</u>. Components or Services purchased under this Agreement will be priced as specified in the applicable Purchase Order. Unless otherwise provided herein, prices shown on a Purchase Order are deemed to include all taxes not expressly imposed by law on FCC, as the buyer of the Components or Services. All prices are firm. FCC will not be obligated to pay any additional charges whatsoever, including but not limited to charges for packing, rating, boxing, bracing, containers, insurance freight, shipping, transportation, delivery cartage fees, licenses, permits, tariffs, duties, inspections or any related or similar item or service. Supplier will promptly furnish an invoice for the Components or Services supplied, and FCC will not be liable for invoices issued by any party other than Supplier.

B. <u>Payment</u>. Payment for such Components or Services will be due not less than forty-five (45) days following the later of FCC's receipt of the invoice or receipt of the Components or Services provided. Payment will be made by wire in accordance with Supplier's wire instructions.

C. <u>Setoff</u>. FCC will have the right to set off any payment or other obligation owed by FCC to Supplier, in whole or in part, against any payment or other obligation owed by Supplier to FCC.

**Article 8. Tooling; Supplies.**

A. <u>FCC-Owned Tooling</u>. Supplier acknowledges that all tooling and equipment furnished or paid for by (or on behalf of) FCC for Supplier's use under the Agreements constitutes critical elements of the production and supply of the Components. To the extent that any tooling and/or equipment that has been, is, or will be furnished to Supplier by FCC, or paid for by or on behalf of FCC (FCC-Owned Tooling), Supplier agrees to adhere to the following guidelines:

i.    *Completion Date:* Commitment dates will be established for first off-tool samples after final drawings or tool designs are approved by FCC and Supplier. Dates will be based upon a mutually agreed lead time from mutually agreed upon final tooling Specifications.

ii.   *Breach of Commitment Date:* If no design changes have been initiated by FCC after final drawing and design approvals, and the Supplier misses the date committed to by Supplier for first off-tool samples, Supplier will be considered in breach.

iii. *Ownership, and Return:*Ownership of FCC-Owned Tooling remains with FCC at all times. Supplier is responsible for all repairs to FCC-Owned Tooling and agrees to maintain and keep FCC-Owned Tooling in reasonably good working order, less ordinary wear and tear. Supplier will also (i) prominently mark FCC-Owned Tooling as property of FCC; (ii) adequately insure FCC-Owned Tooling against loss and damage; (iii) use FCC-Owned Tooling only to produce Components and Services for FCC; (iv) refrain from commingling FCC-Owned Tooling with property of Supplier or with that of a third party and (v) determine and pay all property taxes relating to such FCC-Owned Tooling. Upon completion of work or demand by FCC for any reason, whichever happens first, Supplier will deliver the FCC-Owned Tooling to FCC or other location, as instructed by FCC.

B. <u>Supplier-Owned Tooling</u>. For tooling paid for by Supplier, Supplier agrees as follows:

i.    The initial tooling and equipment and all subsequent rebuilds will be the sole property of Supplier;

ii.   Supplier will assume all costs associated with equipment and tooling including modifications, maintenance, repair, storage and insurance;

iii.If any tooling or equipment is damaged, Supplier will pay all costs to repair or acquire new tooling and equipment and produce Components according to the original schedule;

iv.   Upon termination or expiration of the Agreements, FCC may request that Supplier either destroy the equipment or tooling or transfer ownership to FCC. As soon as practicable after receipt of such written request, Supplier will destroy the equipment and tooling or provide appropriate documentation evidencing transfer of ownership to FCC;

v.    Prior to the destruction of any equipment or tooling, Supplier will provide FCC with at least twenty (20) days' advance written notice of such destruction so that a representative of FCC may witness the destruction;

vi.  Supplier will submit photographs or other evidence of destruction of the equipment and tooling; and

vii.Supplier will not use such equipment or tooling for a third party without FCC's prior written consent.

C. <u>Supplies</u>. When necessary, upon consultation with Supplier, FCC may provide Supplier with materials, semi-finished goods, and components necessary for the manufacturing of the Components or providing Services ("Supplies"). FCC may have Supplies directly delivered to Supplier from a third party designated by FCC ("Designated Third Party"). Supplier may coordinate with the Designated Third Party on matters such as delivery dates and delivery places for such Supplies ("Direct Delivery Supplies"). Supplier will be responsible for performing an inspection upon receipt of Supplies and Direct Delivery Supplies to insure that the same are undamaged. FCC may provide guidance or instructions on inspection items, inspection methods, and other matters upon consultation with Supplier. Supplier will manage Supplies and Direct Delivery Supplies and will not use them for any purpose other than the use for which they were supplied, nor will Supplier assign or lease to a third party, provide as collateral, or otherwise dispose of, the Supplies. Supplier will, at its sole expense, provide a semi-annual inventory report to FCC of all such Supplies and Direct Delivery Supplies in Supplier's possession.

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**FCC (Indiana)**

**PURCHASE ORDER**
**FIN028816**

*i. Defective Supplies.* If Supplier finds that Supplies or Direct Delivery Supplies are defective, Supplier will immediately notify FCC of such defect, and FCC will coordinate the removal and replacement of the defective Supplies or Direct Delivery Supplies. FCC or the Designated Third Party, as applicable, will cover the cost of removal and replacement. This will be Supplier's sole remedy for defective Supplies or Direct Delivery Supplies.

D.  Duration. Supplier expressly agrees to provide Components or Services under the applicable Agreement for the life of the applicable vehicle or other original equipment manufacturer program (including model refreshes as determined by the applicable FCC customer) for which the Components or Services are required, including any Service Part requirements set forth in Article 8.E below. Both Buyer and Seller acknowledge the risk of the program production life being cancelled or extended by FCC's customer.

E.  Service (Aftermarket) Parts. For current and past models, along with all future models which use Components or Services, service (aftermarket) parts (each a "Service Part") will be ordered directly by FCC. Supplier must continue to provide Service Parts, at the last production price, for a minimum period often (10) years after the obsolescence of the model containing such Components or Services. From time to time during this ten-year period, FCC will issue an order for Service Parts. All orders for past models should be responded to with a lead time estimate not to exceed the timeframes contained in this provision. Service Parts for current models must be supplied within thirty (30) days of the order date. Service Parts for past models must be supplied within seventy-five (75) days of the order date. A copy of the order will be attached to each service part shipment.


**Article 9. Quality Guarantee.**

A.  The receiving FCC facility's Supplier Quality Manual is incorporated into the Agreement by reference and is an integral part of the Agreement. If Supplier does not have a copy of this Supplier Quality Manual, it is Supplier's responsibility to request a copy of it. Supplier will comply with the provisions of the Supplier Quality Manual in all respects. If there is any inconsistency between the applicable Agreement and the Supplier Quality Manual, the terms of the applicable Agreement will prevail with respect to any inconsistency in the commercial terms (e.g. pricing, costs and expenses, delivery terms) and the Supplier Quality Manual will prevail with respect to any inconsistency in the quality terms, other than terms set forth in Article 4.

B.  Maintenance of Quality Records. Supplier will retain all production, maintenance and service records relating to all tooling (including FCC-Owned Tooling and Supplier-Owned Tooling), manufacturing processes and any and all testing of Components for a period of at least thirty-six (36) months following the termination of this Agreement for any reason.

C. Traceability. Supplier must: (a) be able to trace all products, ingredients, and packaging components with respect to the Components and Services to the original source ("Trace-back"); and, (b) document destination, quantity, and product identifying characteristics (e.g., lot code, manufacture date, production run, etc.) for all outgoing shipments of Components ("Traceforward"). Source, shipment, methods, programs, policies, other traceability, and product accounting information must be readily available to FCC upon request. Supplier will provide details of its traceability program to FCC prior to first shipment under each Purchase Order. Supplier must be able to account for all finished Components, raw materials, packaging materials, and other items relevant to its processes that it received, stored, handled, processed, shipped, or sold. Supplier must be capable of effectively recalling all Components manufactured by Supplier and must make all recall documentation available to FCC.

D.Stop Work. If an inspection or audit conducted under Articles

3.B or 23 finds Components or Services to be defective, non-conforming or that such Components or Services fail to meet the standards set forth in the Quality Assurance Agreement, FCC may verbally issue a stop work order onsite ("Stop Work Order"). Such Stop Work Order will be confirmed in writing by FCC. Following issuance of a Stop Work Order, Supplier will immediately halt all production of Components or rendering of Services and will not resume the same until Supplier has demonstrated that any and all deficiencies identified in the Stop Work Order have been remedied to FCC's satisfaction, as determined in FCC's sole discretion.

**Article 10. Warranty.**

A.  Authority. Supplier represents and warrants that it has the full power to enter into the Agreements and to perform its obligations under the Agreements.

B.  Warranty for Products and Services. Supplier warrants to FCC that all Components or Services will conform to the Specifications, will be of merchantable quality, will be fit for the particular purpose intended, will be of good material and workmanship, are free and clear of all liens, claims and encumbrances and will be free from defects in design, material and workmanship for the Warranty Period (as defined below). In addition, for all Services, Supplier warrants that Services will be performed in a professional and workmanlike manner, consistent with all standards and specifications agreed on with FCC and otherwise consistent with industry standards. All warranties of Supplier extend to future performance of the Components or Services and are not modified, waived or discharged by delivery, inspection, tests, acceptance and payment. FCC's approval of any design, drawing, material, process or specifications will not relieve Seller of these warranties. Supplier waives any right to notice of breach. The Warranty Period is the longest of: four years from the date FCC accepts the Components or Services, the warranty period provided by applicable law, or the warranty period offered by FCC to its customer or by FCC or its customer to end-users for the products into which the Components or Services are incorporated. Supplier hereby agrees that all servicing, repairs and replacements of Components or Services not

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**F.C.C. FCC (Indiana)**

**PURCHASE ORDER**
**FIN028816**

conforming to the foregoing warranty will be performed, at FCC's option, by Supplier, FCC, or a third party designated by FCC, and that Supplier will be solely responsible for all costs and expenses including costs and expenses for parts, labor, handling and other charges incurred by FCC, and any third party acting on request of FCC, in connection with this warranty. Service Parts furnished under Article 8.E will be subject to the same warranties as original Components and Services provided under the Agreements. The Warranty Period for a Service Part is the same as that for a production part.

**Article 11. Indemnification; Limitation of Liability**

A.    Indemnification. Supplier, together with Supplier's parent, guarantors, and shareholders, hereby agrees to indemnify and hold harmless FCC, its Customers, and as to each of those parties, their respective subsidiaries, shareholders, affiliates, directors, officers, principals, agents and employees, as now and hereafter constituted, from and against any and all loss, liability, damage (including any punitive or exemplary damages), cost and expense of every kind or character (including but not limited to legal fees and legal expenses) which any or all of them may incur, suffer or be required to pay by reason of any claim, suit, demand, proceeding or other action that may be brought against anyone or more of them arising from or related in any way to a breach by Supplier of this Agreement including the failure or alleged failure of a Component or Service to comply with any of the warranties, representations, covenants or agreements of Supplier contained in the Agreements, whether or not caused or occasioned by, or alleged to be caused or occasioned by, any act, omission, fault or negligence of Supplier or of anyone acting on Supplier's behalf or with its consent. In the event that any such claim, suit, demand, proceeding or other action is brought, Supplier covenants that upon notice from FCC in its own right or on behalf of its Customer, Supplier will defend such claim, suit, demand, proceeding or action (or, if applicable, Supplier will cause it to be defended by Supplier's insurer) at Supplier's sole cost and expense, and Supplier will keep FCC and its Customer, as applicable, fully advised of the continuing status of each such defense. At its option, FCC may participate in the defense of any such claim with its own counsel, at Supplier's expense. The provisions of this Article 11 will remain and continue in effect after the term of the applicable Agreement.

**Article 12. Insurance.** As of the date of the applicable Agreement, Supplier agrees that it will have obtained the following insurance coverage and that such coverage remains in effect for the duration of the Agreement and any warranty period. Upon request by FCC, Supplier will deliver a certificate or certificates of insurance evidencing such coverage.

A.    Commercial General Liability insurance, on an "occurrence" policy form, providing a minimum combined single limit of Four Million dollars ($4,000,000.) on Bodily Injury and Property Damage, including Personal Injury Liability, Blanket Contractual Liability, Contractor's Protective Liability, and Products and Completed Operations. This limit will apply per occurrence, and in the aggregate, for occurrences in or about the site and will name FCC as an additional Insured.

B.    Comprehensive Automobile Liability insurance providing a minimum limit of $1,000,000. (combined single limit) in Bodily Injury and Property Damage Liability covering owned, non-owned and hired automobiles. FCC will be listed as an additional Insured.

C.    Statutory Worker's Compensation Coverage including Employer's Liability coverage for minimum limits of $1,000,000 (if applicable).

D.    Umbrella/Excess Liability -In an amount of no less than Five Million dollars ($5,000,000).

All policies will be provided by insurance carriers having a minimum rating as published by A M. Best of A· Class XI or better. Such policies will (i) stipulate that they are providing primary coverage, (ii) with respect to the insurance covered in (A), name FCC as an additional insured, and (iii) state that coverage thereunder is not contingent upon participation or payment by or under, any other company or policy. A waiver of subrogation will be provided at FCC's request on the above policies. Supplier will pay all premiums and perform all acts necessary to maintain the policies required to be purchased in accordance with the applicable Agreement. Supplier will provide FCC with certificates of such policies upon request and each certificate must show the amount of coverage, number of policy, date of expiration and, if required above, name FCC as an additional insured.

**Article 13. Tangible and Intellectual Property.**

A. Tangible Property. FCC-Owned Tooling and all tools, dies, specifications, drawings, designs, or other property furnished or specifically paid for by FCC or its Customers in connection with the Agreements (collectively, "FCC Property") will: (a) be and remain the tangible and intellectual property of FCC; marked by Supplier as such and kept segregated by Supplier from other property; (b) be used only by Supplier and only in performance of the Agreements; (c) not be moved from Supplier's premises without FCC's prior written consent; (d) not be affixed to real property; (e) be kept free of all liens, claims, encumbrances and restrictions; (f) not be modified or altered by Supplier or any other person or entity, and (g) be maintained by Supplier in reasonably good working order, less ordinary wear and tear. Supplier will bear all risk of loss or damage to FCC Property until it is returned to FCC. Upon request, Supplier will deliver at FCC's expense all FCC Property in good condition, ordinary wear and tear excepted, to any location designated by FCC. Upon the request of FCC, Supplier will execute a bailment agreement in a format reasonably acceptable to FCC with respect to the FCC Property and hereby consents to the filing by FCC of one or more UCC Financing Statements covering the FCC Property. Supplier waives any legal or equitable rights or claims including, but not limited to, all statutory and equitable lien rights, in connection with FCC Property.

VanNote, Erica

**FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

B. Intellectual Property. All materials, discoveries, ideas, design rights and concepts developed by Supplier and that relate to the Components or Services will be owned by FCC and will be considered works made for hire by Supplier for FCC. FCC will own all United States and international copyrights, patent and other intellectual property rights in work product comprising, or relating to, such works. Provider agrees to assign, and upon creation of each such work automatically assigns, to FCC, its successors and assigns, ownership of all United States and international rights in such work, insofar as any ownership and rights in such work, by operation of law, are not automatically with FCC. From time to time upon FCC's request, Supplier and/or its personnel will confirm such assignment by execution and delivery of such assignments, confirmations or other written instruments as FCC may request. FCC, its successors and assigns, will have the right to obtain and hold in its or their own names all copyright registrations, patents, and other evidence of rights that may be available for such works.

**Article 14. Confidentiality.** Any trade secrets or other proprietary information of FCC, whether oral, visual or written, will constitute confidential information of FCC even if not marked as such ("Confidential Information"). In addition, Supplier will only use Confidential Information as needed to perform its obligations pursuant to the Agreements and will not disclose Confidential Information to a third party without prior written consent of an authorized officer of FCC, in each instance. For written deliverables provided by Supplier under the Agreements, Supplier will mark such deliverables including any interim or final status reports, updates, or presentations, exclusively as "FCC Confidential," or as otherwise requested by FCC, and will not mark, or jointly-mark, such deliverables as belonging to Supplier. Such deliverables are considered Confidential Information. Upon the termination or expiration of the Agreement, the Supplier will immediately cease use of the Confidential Information and, upon written request of FCC, will immediately return and provide to FCC the Confidential Information, including all copies. The terms and conditions of the Agreements will be deemed Confidential Information. Supplier will not use the FCC name or any FCC trademarks, trade names, service marks, or quote the opinion of any FCC employee in any marketing materials without first obtaining prior written consent of an FCC authorized officer.

**Article 15. Improvement; Review.** In order to improve matters such as unit prices, quality, function, and manufacturing methods of the Components, Supplier will actively develop new technology, propose improvements, provide information to FCC, and the like. To the extent necessary to achieve the purposes of the applicable Agreement, FCC may request Supplier to submit materials related to management of quality, manufacturing processes, and other matters, or may obtain Supplier's consent and conduct an examination of the actual condition of quality management and method of managing processes, and give instructions for improvement. If necessary in order to respond to a demand or an order from a government authority or a related organization, in order to comply with laws and regulations, or if necessary to realize the purposes of the applicable Agreement, FCC may request necessary examinations and provision of information by Supplier, and Supplier will actively cooperate with such request.

**Article 16. Competitiveness.** Supplier will, at all times, be competitive in price, quality, performance and fulfillment obligations. If, during the term of the Agreements, FCC receives from a manufacturer or supplier, other than an affiliate of FCC, an offer to supply Components or Services of comparable quality (in FCC's judgment) at a price lower than the price then-prevailing under the Agreements, FCC may notify Supplier in writing of the competitive offer and request that Supplier meet the competitive offer. Supplier will, within ten (10) days after Supplier's receipt of FCC's request, notify FCC in writing as to whether Supplier will adjust the then-prevailing price under the applicable Agreement to meet the competitive offer. If Supplier does not agree to meet the new price, or if Supplier does not respond to the written notice within the ten (10) day period, FCC may accept the competitive offer. If the competitive offer eliminates FCC's need to secure Components or Services from Supplier in any capacity, the applicable Agreements may be terminated for Cause under Section 17B.

**Article 17. Termination.**

A.   Termination for Convenience. FCC may terminate an Agreement for any reason, in whole or in part, upon thirty (30) days' written notice to Supplier. If such termination for convenience occurs, the Parties will remain obligated to fulfill their respective duties and responsibilities under the applicable Agreement that exist as of the date of termination.

B.   Termination for Cause. Either Party may immediately terminate the Agreement for cause if the other Party: becomes subject to revocation or suspension of business by a supervisory authority; dissolves, becomes insolvent, files for bankruptcy, or experiences a material degradation in its credit or financial conditions and fails to provide the other Party with adequate assurances after receiving a demand from the other party for the same; or merges with a third party or is subject to a change of control without first securing FCC's written consent at least thirty (30) days prior to the proposed date of such merger or change of control.

FCC also has the right to terminate the Agreement for cause and upon written notice to Supplier if: (a) FCC's agreement with its  Customer for which the Components or Services are purchased is terminated; or (b) if Supplier breaches the Agreement and FCC reasonably believes that such breach threatens to interrupt the production or operations of FCC or its Customer.  For all other breaches, FCC may terminate for cause if Supplier fails to cure within five (5) days after receiving notice from FCC.

Supplier may terminate the Agreement for cause if FCC: 1) has substantially breached the agreement and 2) fails to cure within forty-five (45) days after Supplier provides FCC with written notice of the alleged breach and demands that FCC cure.

**Article 18. Force Majeure.** Force majeure is any failure or delay by a Party in fulfilling or performing any term of the Agreements when and to the extent such failure or delay is caused by or results from acts or circumstances beyond the reasonable control of the Party unable to perform including, without limitation, acts of God, flood, fire, earthquake, explosion, governmental actions, war, invasion or hostilities (whether war is declared or not), terrorist threats or acts, riot, or other

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**F.C.C.** FCC (Indiana)

**PURCHASE ORDER**
**FIN028816**

civil unrest, national emergency, revolution, insurrection, epidemic, or restraints or delays affecting carriers or inability or power outage ("Force Majeure"). Neither Party will be liable for its failure or delay to perform due to a Force Majeure provided that, if Supplier is unable to perform due to a Force Majeure, FCC will have the right, without obligation or liability to Supplier, to purchase Components and Services from another source until Supplier is able to resume performance of its obligations hereunder.

**Article 19. Compliance with Laws and Regulations.**

A.   When performing the Agreements, Supplier will comply with related domestic and foreign laws and regulations. If Components or Services are subject to export or import laws or regulations, Supplier will inform FCC of the requirements thereunder and any obligations of the Parties to comply therewith.

B.   Supplier must properly mark all Components, or, as applicable, the packaging containing such Components, with the country of origin of all Components, and must provide to FCC and/or the importing customs broker, proper documentation regarding the country of origin, USMCA (or other applicable trade treaty), certificate of origin, and all other documentation required by any applicable laws or trade treaties.

**Article 20. Prohibition of Bribery; Illegal Activity; Foreign Corrupt Practices Act.**

A.   The Parties will comply with all applicable provisions prohibiting bribery in each country in which the Parties conduct business under the Agreements. The Parties may not directly or indirectly cause a third party to engage in tortious conduct, provide, promise to provide or offer to provide funds, benefits, or other advantages which are outside the normal course of business. Price discounts to FCC's customers based upon volume of goods sold will not be considered a violation of this Article. The Parties are further prohibited from improperly influencing public officials.

B.   Neither Party nor any of its officers is (i) part of or knowingly conducts business with organized crime groups or any other organizations or individuals which pursue economic benefit by using violence, force, or fraudulent means or (ii) any organization or individual which is on any sanction lists published by any international organization, government authority or any country's central bank.

C.   Supplier will comply with, and cause its agents, employees, and contractors to comply with, all applicable regulatory requirements, including but not limited to, government approvals, policies, laws, regulations and directives that apply to the work that Supplier is doing with FCC, as well as all applicable laws and directives regulating direct and indirect payments and gifts to government officials or others, such as the U.S. Foreign Corrupt Practices Act, the OECD Anti-Bribery Convention, and the UK Bribery Act 2010.

**Article 21. Records and Audit.** During the term and for at least 36 months following termination or expiration of the Agreements, Supplier will maintain complete and accurate records of the supply of its Components and Services and of the fees charged to FCC. FCC and its customers will have the right at any time, upon forty-eight (48) hours' advance written notice, to request an independent, third party audit of Supplier's compliance with the Agreements and/or inspect the premises within which Supplier manufactures or provides such Components and Services. Supplier will make all such reasonably requested records available to FCC's selected auditor during any such audit and will cooperate with FCC, its customers, its representatives and its auditors in the conduct of any audit. If it is determined that Supplier has overcharged (or undercredited) FCC, Supplier will credit FCC's account (or, at FCC's option, pay FCC directly) an amount equal to the overcharge. If an audit discloses that Supplier's overcharges (including undercredits) exceeded five percent (5%) of the charges during the period audited, Supplier will also reimburse FCC for the cost of the audit. In the event the results of the audit raise any issues, the Supplier will co-operate with FCC and rectify such issues promptly

**Article 22. Miscellaneous.**

A.   <u>Amendment</u>. The Agreements will not be amended without a written agreement duly executed by both Parties.

B.   <u>Relationship of the Parties</u>. The Parties agree and acknowledge that Supplier is an independent contractor and is not an agent or employee of FCC. Supplier is solely liable for payment of employment taxes or other similar taxes or payments in relation to its employees, and neither Supplier nor any of its employees is covered by FCC's worker's compensation or any other insurance of FCC. Supplier's parent and/or guarantors expressly agree to guaranty Supplier's performance under the Agreements.

C.   <u>Consultation</u>. With regard to matters not stipulated in the applicable Agreement or in case doubts on construction of the applicable Agreement arise, both Parties will first try to resolve through mutual consultation in good faith.

D.   <u>Assignment</u>. Supplier will not assign or subcontract any of its duties or obligations under the applicable Agreement without the prior written consent of FCC.

E.   <u>Entire Agreement</u>. This Agreement is a final expression and a complete and exclusive statement of the Agreement between the Parties respecting the subject matter hereof and supercedes all prior and contemporaneous agreements, representations and understandings of the Parties. No amendment to or modification of this Agreement will be valid or binding upon either Party unless it is made in writing and signed by a duly authorized representative of FCC.

VanNote, Erica

**FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

F.    <u>Severability</u>. The provisions of the Agreements will be deemed to be severable, and the invalidity of any provisions of the Agreements will not affect the validity of the remaining provisions of the Agreements.

G.    <u>Survival</u>. The obligations, representations, warranties, and covenants of Supplier under these terms and each Agreement that by their nature are intended or reasonably expected to survive the expiration or termination of the Agreement, includingArticles 8, 9, 10, 11, 12, 13, 14, and 22, will survive termination or expiration of the Agreements.

H.    <u>Governing Law</u>. Each Agreement will be governed by and construed in accordance with the laws of the state that the FCC entity issuing the Purchase Order is located, notwithstanding any state's conflicts of law provisions otherwise. The Parties expressly agree that any and all actions arising from or related to the Agreements or the Components or Services furnished by Supplier will be subject to the exclusive jurisdiction of the state and federal courts located in the state that the FCC entity issuing the Purchase Order is located. The Parties acknowledge that service of process may be made upon the Parties as provided by applicable law.

I.    <u>Electronic Signatures</u>. All notices, documents and communications which are communicated e1ectronically and signed by the Parties electronically will be deemed to have the same force and effect as all documents signed in hard copy.

(June 2019)

_____
VanNote, Erica

# EXHIBIT 7

**Subject:**                    RE: FCC 10R60 - Pricing Increase Required

**From:** Christopher Salo <Christopher.Salo@paceind.com>
**Sent:** Wednesday, November 10, 2021 6:42:25 PM
**To:** Jordan S. Schwartz <jschwartz@fcc-na.com>
**Cc:** Flavia Oneda <Flavia.Oneda@paceind.com>
**Subject:** FCC 10R60 - Pricing Increase Required

Hi Jordan,

As discussed during your Harrison visit, Pace is requiring a piece price increase on all of our FCC 10R60 components.

It has come to our attention when this program was originally quoted, we missed a significant amount of the burden costs associated with all of the machines required to meet the contractual PPH.

Due to this quoting error as well as the increased cost of labor, we are currently manufacturing these parts at a loss and cannot continue production without the proposed price increases effective 1/1/2022.

Attached are updated cost breakdowns for Ford CDF & E-Hub walking from the current price to our new requested pricing, this pricing will be mimicked for GM as well.

Due to the magnitude of the issue we will need FCC's initial feedback by **11/18/21** with final pricing negotiations closed by **11/30/21**.

We understand this is quite a significant increase and we are available to review and discuss as needed.

Thanks!

**Chris Salo**
Strategic Account Manager

Cell: 248.930.7882
Christopher.Salo@paceind.com

# EXHIBIT 8



# FCC Pricing Review

11/17/2021



*Casting Innovation*



**OUR VISION:**

To be the premier die casting manufacturing and engineering solutions supplier serving customers within multiple sectors worldwide.

**CUSTOMER**
Growth Through Customer Satisfaction

**CAPABILITIES**
Both People & Process

**COST**
Lowest Cost Structure







# Triple Clutch Housing: LP5P-7P182-BC





| FABRICATE / ASSEMBLY PROCESS DESCRIPTION | MACHINERY DESC. | MANPOWER QUANTITY | PIECES / HOUR | RATE COST / HOUR NEV | RATE COST / HOUR OLD | TOTAL COST NEV | TOTAL COST OLD | |
|---|---|---|---|---|---|---|---|---|
| Casting / Trim Autocell | 1800T | 1.000 | 102.000 | | | | 0.1916 | Increased Labor Rate & Updated Burden Rate |
| CNC Cell | Mach / Wash / LT | 4.000 | 93.500 | | | | 13.4152 | Increased Labor Rate & Updated Burden Rate to cover all 20 CNC machines |
| Pack | | | 93.500 | | | | 0.0000 | |
| Wash / Leak Test | | | 93.500 | | | | -0.5561 | |
| Melt | | | | | 1.000 | | 0.6030 | |
| (see page 2 for additional cost) | | | | | | | 13.6536 | |



# Hybrid E-Hub: LP5P-7A360-BB





| FABRICATE / ASSEMBLY PROCESS DESCRIPTION | MACHINERY DESC. | MANPOWER QUANTITY | PIECES / HOUR | | | | |
|---|---|---|---|---|---|---|---|
| Casting / Trim Autocell | 1800T | 1.000 | 80.000 | | | 1.8696 | Increased Labor Rate & Updated Burden Rate |
| CNC Cell | Mach / Wash / LT | 4.000 | 80.000 | | | 5.3520 | Increased Labor Rate & Updated Burden Rate to cover all 8 CNC machines |
| Wash / Leak Testing | | | 112.000 | | | -0.4643 | |
| Pack | | | 112.000 | | | -0.1875 | |
| Melt | | | 1.000 | | | 0.3900 | |
| (see page 2 for additional cost) | | | | | | 6.9599 | |

*Casting Innovation*





# EXHIBIT 9

**BWST**

LITIGATION &
SUPPLY-CHAIN
SPECIALISTS

Matthew E. Wilkins
248.971.1711
wilkins@bwst-law.com

December 3, 2021

Stephen Pridmore
SVP, Sales
28125 Cabot Dr. Suite 120
Novi, MI 48377
(by email to stephen.pridmore@paceind.com)

Steffan Sarkin
Resident Corporate Agent
28125 Cabot Dr. Suite 120
Novi, MI 48377
(by email to steffan.sarkin@paceind.com)

RE:    **Demand for Assurance of Performance per Uniform Commercial Code § 2-609; Purchase Order FIN 028816**

Messrs. Pridmore and Sarkin:

We are litigation counsel for FCC (Indiana), LLC ("FCC").

As you know, FCC purchases from Pace, Inc. ("Pace") automotive components ("the Parts") under the above-listed Purchase Orders (attached), which incorporates FCC's Standard Terms and Conditions ("the T&C") (collectively the Purchase Order and the T&C are "the Contract"). FCC incorporate the Parts into assemblies that it ships to FCC's OEM customers, Ford and GM, for production of vehicles. As you know, in a series of recent communications, most recently at a meeting today, December 3, Pace threatened to cease its continued supply of the Parts on January 1, 2022, unless FCC yields to Pace's extra-contractual demands for increased prices.

The Contract is a requirements contract that requires Pace to ship to per releases to be specified by FCC: "each Purchase Order is a requirements contract whereby FCC agrees to purchase, and Supplier agrees to supply, 100% of FCC's requirements of the Components[.]" Article 2, T&C. The Contract requires Pace to supply at the specified price: "All prices are firm." Article 7, Price; Payment. In short, the Contract could not more clearly require Pace to supply the Parts to FCC as specified in releases, at the specified prices.

---

FCC re Pace
RE: Demand for Assurance of Continued Performance
December 3, 2021

In clear breach of the Contract, Pace has threatened to cease performance unless FCC yields to its demands. The T&C also call for the application of Indiana law, and for any litigation to occur in Indiana. Section 22(H). The Uniform Commercial Code, as adopted in Indiana, allows buyers such as FCC to demand from suppliers such as Pace adequate assurances of continued performance. See UCC § 2-609. FCC demands that Pace provide FCC with assurances that it will continue performance through the duration of the vehicle programs, as required by the contracts.

The law provides for specific performance of unique goods such as the Parts. UCC § 2-716 ("Specific performance may be decreed where the goods are unique or in other proper circumstances"; see also comment 2, "Output and requirements contracts involving a particular or peculiarly available source or market present today the typical commercial specific performance situation"). Courts have long been willing to order specific performance in cases where damages would not provide an adequate remedy for the harmed party, as in the case of an imminent shutdown of production by FCC, until an alternate supplier can be found and validated. As noted by a leading treatise, "[s]pecific performance is particularly appropriate in the modern automotive industry where manufacturers commonly enter into requirements contracts." J. Trentacosta, *Michigan Contract Law* § 14.16.

Courts have repeatedly recognized the gravity of harm to a buyer in the automotive industry that may result if a supplier is permitted to refuse to continue performance. *Kelsey-Hayes Co v Galtaco Redlaw Castings Corp*, 749 F Supp 794, 798 n7 (ED Mich 1990) ("A supplier's failure to make scheduled shipments may have immediate and dramatic consequences"); *In re Autostyle Plastics, Inc*, 216 BR 784, 788 (Bankr WD Mich 1997) (court order to avoid a shutdown of General Motors plants because it recognized the distressing consequences of cutting off a "single source" supplier for parts): *see also General Motors Corp v Paramount Metal Prods Co*, 90 F Supp 2d 861, 875 (ED Mich 2000) (citing testimony that "GMC would have lost millions of dollars per day if Paramount immediately ceased production of the plaintiffs' seat frame requirement").

Pace contends that the Contract is unprofitable due to increased costs. Even if true (which FCC questions based on the data that Pace has provided), it would be perfectly understandable from a business perspective, but it does not legally excuse Pace from continuing to perform under the Contract. As noted in a leading treatise, a "gale of judicial opinions" rejects claims for claims of commercial impracticability, and concludes that "an increase in price, even a radical increase in price, is the thing that contracts are designed to protect against." White & Summers, *Uniform Commercial Code* (4th ed.), § 3-10 (noting more than a dozen cases).

The Contracts require Pace to perform through the life of the vehicle programs, and Pace's refusal to honor FCC's continuing requirements is unacceptable. If Pace continues its threat to breach, FCC will begin the re-sourcing process (under reservation of rights) but will not be able to locate and PPAP a substitute supplier for at least one year. FCC manufactures products for Ford and GM that would shut down soon after Pace stopped shipping. Therefore, unless Pace continues performance, delay in production and delivery will cause serious and immediate harm, including

FCC re Pace
RE: Demand for Assurance of Continued Performance
December 3, 2021

the threat to production of FCC's and its customers production facilities, causing irreparable harm to FCC's relationships and potentially millions of dollars in damages daily, all of which will be Pace's responsibility.

Therefore, this letter constitutes FCC's demand that Pace provide assurances that it will assure FCC that Pace will make continued to make the required shipments of the Parts, per FCC's releases. That should be directed to my attention, by e-mail to wilkins@bwst-law.com or by fax to 248-971-1801. If we do not receive the retraction by close of business Friday, December 10, FCC has instructed our firm to take all necessary legal action to ensure continued supply and to recover its damages, including filing a motion for specific performance. I encourage Pace to retain Indiana counsel experienced in automotive supply chain contracts, and to have its counsel contact me, so that I am not forced to proceed *ex parte*.

FCC remains hopeful that Pace will honor the Contract, and continue shipping the Parts, so that this dispute can be resolved amicably. FCC is willing to discuss the business issues but will not do so at the end of a proverbial gun.

I will await your reply by close of business on Friday, December 10.

Sincerely yours,

Matthew E. Wilkins
(Indiana Bar No. #2075-49)

cc [by e-mail]: Joe Rotman - Sr. Account Manager, FCC (North America), Inc.
Jordan Schwartz - Purchasing Manager, FCC (Indiana), LLC
Jeff Bailey – V.P. Administration, FCC (Indiana), LLC
Hiroyuki Saruta - President, FCC (North America), Inc.
Toshimichi Matsuda - President, FCC (Indiana), Inc.
Dan Sharkey - BWST

# EXHIBIT 10

**Subject:**                         RE:  Purchase Order FIN028816 issued by FCC(Indiana), LLC to Pace Industries dated March 12, 2021 (the "FCC Order")

**From:** Steffan Sarkin <steffan.sarkin@paceind.com>
**Sent:** Tuesday, December 14, 2021 8:00 PM
**To:** Matt Wilkins <Wilkins@bwst-law.com>
**Cc:** Dan Sharkey <Sharkey@bwst-law.com>
**Subject:** RE: Purchase Order FIN028816 issued by FCC(Indiana), LLC to Pace Industries dated March 12, 2021 (the "FCC Order")

[NOTE: EXTERNAL SENDER]
Dear Mr. Wilkins,

FCC is not entitled to adequate assurances (unless it is seeking to be relieved of its obligations under any contract with Pace).  The contracts with their language defines the scope of Pace's obligations.   Our understanding of the status of negotiations is different than yours.  At any rate, you should be aware that Pace has elected to accept (or more accurately not reject) the Purchase Order received by it on Monday from FCC.  Pace does so under full reservation of rights in the hope that the respective business representatives at FCC and Pace can reach agreement on a going forward basis and to ensure that supply is not interrupted during the holidays.

Be aware that Pace has retained Bodman PLC as legal counsel.  I have copied Joseph Shannon (JShannon@bodmanlaw.com) and Larry Deitch (lDeitch@bodmanlaw.com)  from its offices.  Please copy them on all future communications.

**Steffan Sarkin**
General Counsel

Cell: 479.263.9066
Office: 479.973.2135
Steffan.Sarkin@paceind.com

**Pace Industries, LLC**
*Casting Innovation*

28100 Cabot Drive, Suite 200
Novi, MI 48377
paceind.com

THIS EMAIL AND ALL ATTACHMENTS ARE CONFIDENTIAL AND MAY BE PRIVILEGED. IF THIS EMAIL IS RECEIVED IN ERROR, PLEASE DELETE IT IMMEDIATELY AND CONTACT THE SENDER. NEITHER THIS EMAIL NOR ANY ATTACHMENTS MAY BE USED IN ANY MANNER, SAVED, COPIED, FORWARDED OR OTHERWISE DIVULGED OR DISSEMINATED BY ANY PERSON OTHER THAN THE INTENDED RECIPIENT.

**From:** Matt Wilkins <Wilkins@bwst-law.com>
**Sent:** Tuesday, December 14, 2021 1:57 PM
**To:** Steffan Sarkin <steffan.sarkin@paceind.com>
**Cc:** Dan Sharkey <Sharkey@bwst-law.com>
**Subject:** RE: Purchase Order FIN028816 issued by FCC(Indiana), LLC to Pace Industries dated March 12, 2021 (the "FCC Order")

CAUTION: This email originated from outside Pace. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Mr. Sarkin:

1

I understand that, to put this matter behind both companies, FCC made a confidential, non-binding offer to give PACE a total price increase of $5.00. PACE did not accept this proposal and instead responded with two alternative proposals, each of which would require FCC to make significant "lump sum" payments of several million dollars, in addition to a price increase. FCC rejects those proposals.

As previously requested, please confirm by the close of business today that PACE will continue to supply FCC for the duration of the applicable OEM programs. If PACE fails to provide this confirmation, FCC will construe that as a repudiation under UCC 2-610 and has instructed us to initiate litigation.

Matt Wilkins



### Matthew E. Wilkins
**BROOKS WILKINS SHARKEY & TURCO PLLC**

T: 248-971-1711 | C: 248-882-8496
E: wilkins@bwst-law.com | W: BWST-Law.com

401 South Old Woodward, Suite 400
Birmingham, Michigan 48009

---

**From:** Steffan Sarkin <steffan.sarkin@paceind.com>
**Sent:** Tuesday, December 14, 2021 12:08 PM
**To:** Matt Wilkins <Wilkins@bwst-law.com>
**Subject:** RE: Purchase Order FIN028816 issued by FCC(Indiana), LLC to Pace Industries dated March 12, 2021 (the "FCC Order")

[NOTE: EXTERNAL SENDER]
Dear Mr. Wilkins,

The commercial representatives of FCC and Pace are engaged in discussions towards a commercial solution and in fact a proposal came from FCC after your email to me. As such I would appreciate your accommodation beyond your deadline to allow FCC and Pace to try reach a commercial solution which can work for the parties.

**Steffan Sarkin**
General Counsel

Cell: 479.263.9066
Office: 479.973.2135
Steffan.Sarkin@paceind.com

---

**Pace Industries, LLC**
*Casting Innovation*

28125 Cabot Drive, Suite 120
Novi, MI 48377

paceind.com

THIS EMAIL AND ALL ATTACHMENTS ARE CONFIDENTIAL AND MAY BE PRIVILEGED. IF THIS EMAIL IS RECEIVED IN ERROR, PLEASE DELETE IT IMMEDIATELY AND CONTACT THE SENDER. NEITHER THIS EMAIL NOR ANY ATTACHMENTS MAY BE USED IN ANY MANNER, SAVED, COPIED, FORWARDED OR OTHERWISE DIVULGED OR DISSEMINATED BY ANY PERSON OTHER THAN THE INTENDED RECIPIENT.

**From:** Matt Wilkins <Wilkins@bwst-law.com>
**Sent:** Monday, December 13, 2021 4:23 PM
**To:** Steffan Sarkin <steffan.sarkin@paceind.com>
**Subject:** Purchase Order FIN028816 issued by FCC(Indiana), LLC to Pace Industries dated March 12, 2021 (the "FCC Order")

> **CAUTION:** This email originated from outside Pace. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Mr. Sarkin: thanks for your response. As we pointed out in our letter, under the PO's Terms and Conditions, its duration is for the life of the applicable OEM programs:

D. Duration. Supplier expressly agrees to provide Components or Services under the applicable Agreement for the life of the applicable vehicle or other original equipment manufacturer program (including model refreshes as determined by the applicable FCC customer) for which the Components or Services are required, including any Service Part requirements set forth in Article 8.E below. D. Duration. Supplier expressly agrees to provide Components or Services under the applicable Agreement for the life of the applicable vehicle or other original equipment manufacturer program (including model refreshes as determined by the applicable FCC customer) for which the Components or Services are required, including any Service Part requirements set forth in Article 8.E below.

Also, see the LOI for the 10R60 project (attached), which PACE signed.

Please confirm by close of business tomorrow that PACE will honor its commitment to supply for the duration of the applicable OEM programs. If PACE fails to do so, FCC will construe that as a repudiation under UCC 2-610 and has instructed us to initiate litigation.

Matt

---

**From:** Steffan Sarkin <steffan.sarkin@paceind.com>
**Sent:** Friday, December 10, 2021 5:10 PM
**To:** Matt Wilkins <Wilkins@bwst-law.com>
**Cc:** Stephen Pridmore <Stephen.Pridmore@paceind.com>; Flavia Oneda <Flavia.Oneda@paceind.com>
**Subject:** Re: Purchase Order FIN028816 issued by FCC(Indiana), LLC to Pace Industries dated March 12, 2021 (the "FCC Order")

[NOTE: EXTERNAL SENDER]
Dear Mr. Wilkins,

We are in receipt of your letter dated December 3, 2021.

Please accept this email response as assurance that Pace Industries will perform the FCC Order referenced above, copy of which is attached hereto.

Yours Sincerely,


**Steffan Sarkin**
General Counsel

Cell: 479.263.9066
Office: 479.973.2135
Steffan.Sarkin@paceind.com

**Pace Industries, LLC**

*Casting Innovation*

28125 Cabot Drive, Suite 120
Novi, MI 48377
paceind.com

**THIS EMAIL AND ALL ATTACHMENTS ARE CONFIDENTIAL AND MAY BE PRIVILEGED. IF THIS EMAIL IS RECEIVED IN ERROR, PLEASE DELETE IT IMMEDIATELY AND CONTACT THE SENDER. NEITHER THIS EMAIL NOR ANY ATTACHMENTS MAY BE USED IN ANY MANNER, SAVED, COPIED, FORWARDED OR OTHERWISE DIVULGED OR DISSEMINATED BY ANY PERSON OTHER THAN THE INTENDED RECIPIENT.**

**From:** Consquela Marbury <Marbury@bwst-law.com> **On Behalf Of** Matt Wilkins
**Sent:** Friday, December 3, 2021 3:26 PM
**To:** Stephen Pridmore <Stephen.Pridmore@paceind.com>; Steffan Sarkin <steffan.sarkin@paceind.com>
**Cc:** Jeff.Bailey@e-fcci.com; saruta_7020@worldfcc.com; ymatsude@e-fcci.com; jrotman@fcc-na.com
**Subject:** FCC re Pace

**CAUTION:** This email originated from outside Pace. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Please see the attached.



**Consquela Marbury**

Assistant to Matthew Wilkins, Paula Hall, Maureen Taylor & Jason Killips

**BROOKS WILKINS SHARKEY & TURCO PLLC**

T: (248) 971-1806 | F: 248-971-1801
E: marbury@bwst-law.com | www.bwst-law.com

401 S. Old Woodward Avenue, Suite 400
Birmingham, MI 48009

This email and all attachments are confidential. If this email is received in error, please delete it immediately and contact the sender. Neither this email nor any attachments may be used in any manner, saved, copied, forwarded or otherwise divulged or disseminated by any person other than the intended recipient/s. Our environment, our planet; please don't print this email unless necessary.
This email and all attachments are confidential. If this email is received in error, please delete it immediately and contact the sender. Neither this email nor any attachments may be used in any manner, saved, copied, forwarded or otherwise divulged or disseminated by any person other than the intended recipient/s. Our environment, our planet; please don't print this email unless necessary.
This email and all attachments are confidential. If this email is received in error, please delete it immediately and contact the sender. Neither this email nor any attachments may be used in any manner, saved, copied, forwarded or otherwise divulged or disseminated by any person other than the intended recipient/s. Our environment, our planet; please don't print this email unless necessary.

# EXHIBIT 11

**JOSEPH J. SHANNON**
JSHANNON@BODMANLAW.COM
313-393-7549

BODMAN PLC
6TH FLOOR AT FORD FIELD
1901 ST. ANTOINE STREET
DETROIT, MICHIGAN 48226
313-393-7579 FAX
313-259-7777



December 28, 2021

**VIA EMAIL – wilkins@bwst-law.com**

Matthew E. Wilkins, Esq.
Brooks Wilkins Sharkey & Turco PLLC
401 S. Old Woodward Avenue, Suite 400
Birmingham, Michigan 48009

Re:     FCC Indiana LLC

Dear Mr. Wilkins:

Steffan Sarkin previously informed you that Bodman has been retained to represent Pace Industries with respect to its dispute with  FCC. This letter is sent to formalize that information and ensure that I am copied timely with all communications. Pace has also retained Richard Blaiklock of Lewis Wagner in Indianapolis. Mr. Blaiklock is copied on this letter.

In previous communications, you informed Pace that FCC intends to seek judicial intervention in our dispute. While I strongly believe such an action would be inappropriate, I want to ensure that copies of all pleadings are sent to me and Mr. Blaiklock via email at jshannon@bodmanlaw.com and rblaiklock@lewiswagner.com as soon as those documents are finalized. In other words, I will accept, and expect, unfiled versions the moment they are transmitted for filing.  Further, at no time should FCC proceed ex parte.  Mr. Blaiklock and I will make ourselves immediately available to the appropriate court.

As you know with Pace's recent acceptance of purchase orders supply to FCC will continue through January 27th. There should not be a last minute crisis to run to court. Pace remains optimistic that the business people will be able to reach a resolution satisfactory to both companies. Pace reserves all rights with respect to any purchase orders for delivery after January 27, 2022.

Please plan accordingly.

Sincerely,

Joseph J. Shannon

JJS/ttv/dsb

c:     Mr. Steffan Sarkin
        A. Richard M. Blaiklock, Esq.

DETROIT    |    TROY    |    ANN ARBOR    |    CHEBOYGAN    |    GRAND RAPIDS

# EXHIBIT 12

**Subject:**                    RE: Response to Pace's latest proposal

---

**From:** Stephen Pridmore <Stephen.Pridmore@paceind.com>
**Sent:** Friday, January 7, 2022 3:13 PM
**To:** Jordan S. Schwartz <jschwartz@fcc-na.com>
**Cc:** Hiroyuki Saruta <saruta_7020@worldfcc.com>; Kazuhiko Nishimura <nishimura_2015@worldfcc.com>; Jeff Bailey <Jeff.Bailey@e-fcci.com>; Masato Yamamoto <yamamoto_2133@worldfcc.com>; Yuji Matsude <matsude_1163@worldfcc.com>; Aya Kuramoto <akuramoto@fcc-na.com>; Jason Phillips <Jason.Phillips@e-fcci.com>
**Subject:** Re: Response to Pace's latest proposal

Jordan & all,

Thank you for the response.  If FCC's previous offer of $5.00 is the final offer then we are at an impasse and I will consider this my last attempt at a commercial solution.

Again, thank you for the response and clarity of your position.

Regards,

Stephen


On Jan 7, 2022, at 1:23 PM, Jordan S. Schwartz <jschwartz@fcc-na.com> wrote:

> **CAUTION:** This email originated from outside Pace. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Stephen,

Thanks for your call earlier this week.  Per our conversation, I relayed to the FCC team (copied on this email) your latest proposal that Pace was still willing to work with FCC on new pricing somewhere between the $5.00 previously offered by FCC and the $10.21 proposed by Pace.  Also that a lump sum payment was not an option for FCC.

As a result of our internal discussions, we have decided to stick with our previous proposal of a $5.00 total increase for the two components.  We would like to receive your feedback by Tuesday, January 11th on this final offer.

Thanks,
Jordan
FCC (North America), Inc.
Mobile- (248) 470-3525


This email and all attachments are confidential. If this email is received in error, please delete it immediately and contact the sender. Neither this email nor any attachments may be used in any manner, saved, copied, forwarded or otherwise divulged or disseminated by any person other than the intended recipient/s. Our environment, our planet; please don't print this email unless necessary.

# EXHIBIT 13

**F.C.C. FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

# PURCHASE ORDER
# FIN028816

| Supplier | Pace Industries<br>Pace Division<br>Harrison Division<br>513 Hwy 62/65 Bypass N<br>Harrison, AR 72601 | | PO No | FIN028816 |
|---|---|---|---|---|
| | | | PO Date | 3/12/2021 |
| | | | Due Date | |
| Attention | Geanetta Moore<br>870-741-8255 Ext 1300 | | Purchase Order Revision | |
| | | | PO Revision Date | |
| Ship To | FCC (Indiana), LLC<br>555 Industrial Park Rd<br>Portland, IN 47371<br>Phone: (260) 726-8023 | | Issued By | VanNote, Erica<br>260-726-8023  Ext: 1046<br>Fax: 260-726-7782<br>evannote@e-fcci.com |
| Bill To | FCC (Indiana), LLC<br>555 Industrial Park Rd<br>Portland, IN 47371 | | Carrier | TJ EXPRESS SERVICE, LLC |
| | | | Via | Ground |
| | | | Payment Terms | Net 30 |
| | | | FOB | Origin |
| | | | Freight Terms | Collect |
| | | | Note | |

## Items

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 :25 | 24044264 | 002 | | | | E CYLINDER | Partial | 1/13/2022 | 700 pc | | |
| 1 :26 | | | | | | | Firm | 1/18/2022 | 1,050 pc | | |
| 1 :27 | | | | | | | Firm | 1/20/2022 | 1,050 pc | | |
| 1 :28 | | | | | | | Firm | 1/25/2022 | 1,400 pc | | |
| 1 :29 | | | | | | | Firm | 1/27/2022 | 1,400 pc | | |
| 1 :30 | | | | | | | Firm | 2/1/2022 | 1,400 pc | | |
| 1 :31 | | | | | | | Firm | 2/3/2022 | 1,400 pc | | |
| 1 :32 | | | | | | | Firm | 2/7/2022 | 1,050 pc | | |
| 1 :33 | | | | | | | Firm | 2/8/2022 | 1,400 pc | | |
| 1 :34 | | | | | | | Firm | 2/10/2022 | 1,400 pc | | |
| 1 :35 | | | | | | | Firm | 2/15/2022 | 1,400 pc | | |
| 1 :36 | | | | | | | Firm | 2/17/2022 | 1,400 pc | | |
| 1 :37 | | | | | | | Firm | 2/21/2022 | 1,050 pc | | |
| 1 :38 | | | | | | | Firm | 2/22/2022 | 1,400 pc | | |
| 1 :39 | | | | | | | Firm | 2/24/2022 | 1,400 pc | | |
| | | | | | | | | Sub Total | 18,900 pc | | |
| 2 :49 | 24044267 | 002 | | | | CDF HOUSING | Partial | 1/11/2022 | 810 pc | | |
| 2 :50 | | | | | | | Firm | 1/13/2022 | 1,215 pc | | |
| 2 :51 | | | | | | | Firm | 1/18/2022 | 1,215 pc | | |

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 :52 | | | | | | | Firm | 1/20/2022 | 1,215  pc | | |
| 2 :53 | | | | | | | Firm | 1/25/2022 | 1,215  pc | | |
| 2 :54 | | | | | | | Firm | 1/27/2022 | 1,215  pc | | |
| 2 :55 | | | | | | | Firm | 2/1/2022 | 1,350  pc | | |
| 2 :56 | | | | | | | Firm | 2/3/2022 | 1,485  pc | | |
| 2 :57 | | | | | | | Firm | 2/7/2022 | 1,080  pc | | |
| 2 :58 | | | | | | | Firm | 2/8/2022 | 1,350  pc | | |
| 2 :59 | | | | | | | Firm | 2/10/2022 | 1,485  pc | | |
| 2 :60 | | | | | | | Firm | 2/15/2022 | 1,350  pc | | |
| 2 :61 | | | | | | | Firm | 2/17/2022 | 1,485  pc | | |
| 2 :62 | | | | | | | Firm | 2/21/2022 | 1,080  pc | | |
| 2 :63 | | | | | | | Firm | 2/22/2022 | 1,350  pc | | |
| 2 :64 | | | | | | | Firm | 2/24/2022 | 1,485  pc | | |
| | | | | | | | | **Sub Total** | **20,385  pc** | | |
| 3 :74 | L1MP-7P182-AC | 20210729 | | | | HT CDF HOUSING | Partial | 1/11/2022 | 1,620  pc | | |
| 3 :75 | | | | | | | Firm | 1/13/2022 | 1,890  pc | | |
| 3 :76 | | | | | | | Firm | 1/18/2022 | 1,890  pc | | |
| 3 :77 | | | | | | | Firm | 1/20/2022 | 1,890  pc | | |
| 3 :78 | | | | | | | Firm | 1/25/2022 | 1,890  pc | | |
| 3 :79 | | | | | | | Firm | 1/27/2022 | 1,755  pc | | |
| 3 :81 | | | | | | | Firm | 2/1/2022 | 2,025  pc | | |
| 3 :82 | | | | | | | Firm | 2/3/2022 | 2,025  pc | | |
| 3 :83 | | | | | | | Firm | 2/7/2022 | 1,080  pc | | |

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**FCC (Indiana)**

# PURCHASE ORDER
# FIN028816

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 3 :84 | | | | | | | Firm | 2/8/2022 | 2,025 pc | | |
| 3 :85 | | | | | | | Firm | 2/10/2022 | 2,025 pc | | |
| 3 :86 | | | | | | | Firm | 2/15/2022 | 2,025 pc | | |
| 3 :87 | | | | | | | Firm | 2/17/2022 | 2,025 pc | | |
| 3 :88 | | | | | | | Firm | 2/21/2022 | 1,080 pc | | |
| 3 :89 | | | | | | | Firm | 2/22/2022 | 2,025 pc | | |
| 3 :90 | | | | | | | Firm | 2/24/2022 | 2,025 pc | | |
| | | | | | | | | **Sub Total** | **29,295 pc** | | |
| 4 :76 | LP5P-7A360-BB | 20200302 | | | | E CYLINDER | Partial | 1/11/2022 | 3,100 pc | | |
| 4 :77 | | | | | | | Firm | 1/13/2022 | 4,550 pc | | |
| 4 :78 | | | | | | | Firm | 1/18/2022 | 4,550 pc | | |
| 4 :79 | | | | | | | Firm | 1/20/2022 | 4,550 pc | | |
| 4 :80 | | | | | | | Firm | 1/25/2022 | 4,550 pc | | |
| 4 :81 | | | | | | | Firm | 1/27/2022 | 4,550 pc | | |
| 4 :82 | | | | | | | Firm | 2/1/2022 | 4,550 pc | | |
| 4 :83 | | | | | | | Firm | 2/3/2022 | 4,550 pc | | |
| 4 :84 | | | | | | | Firm | 2/7/2022 | 4,900 pc | | |
| 4 :85 | | | | | | | Firm | 2/8/2022 | 4,550 pc | | |
| 4 :86 | | | | | | | Firm | 2/10/2022 | 4,550 pc | | |
| 4 :87 | | | | | | | Firm | 2/15/2022 | 4,550 pc | | |
| 4 :88 | | | | | | | Firm | 2/17/2022 | 4,550 pc | | |
| 4 :89 | | | | | | | Firm | 2/21/2022 | 4,900 pc | | |
| 4 :90 | | | | | | | Firm | 2/22/2022 | 4,550 pc | | |
| 4 :91 | | | | | | | Firm | 2/24/2022 | 4,550 pc | | |
| | | | | | | | | **Sub Total** | **72,050 pc** | | |
| 5 :73 | LP5P-7P182-BC | 20210729 | | | | CDF Housing | Partial | 1/6/2022 | 2,160 pc | | |
| 5 :74 | | | | | | | Firm | 1/11/2022 | 2,295 pc | | |
| 5 :75 | | | | | | | Firm | 1/13/2022 | 2,295 pc | | |
| 5 :76 | | | | | | | Firm | 1/18/2022 | 2,295 pc | | |

VanNote, Erica



**FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

# PURCHASE ORDER
# FIN028816

| Line Item No | Part | Part Revision | Grade | Supplier Part No | Supply Item Drawing | Description | Status | Due Date | Order Quantity | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 5 :77 | | | | | | | Firm | 1/20/2022 | 2,295  pc | | |
| 5 :78 | | | | | | | Firm | 1/25/2022 | 2,160  pc | | |
| 5 :79 | | | | | | | Firm | 1/27/2022 | 2,295  pc | | |
| 5 :80 | | | | | | | Firm | 2/1/2022 | 2,565  pc | | |
| 5 :81 | | | | | | | Firm | 2/3/2022 | 2,430  pc | | |
| 5 :82 | | | | | | | Firm | 2/7/2022 | 3,780  pc | | |
| 5 :83 | | | | | | | Firm | 2/8/2022 | 2,565  pc | | |
| 5 :84 | | | | | | | Firm | 2/10/2022 | 2,430  pc | | |
| 5 :85 | | | | | | | Firm | 2/15/2022 | 2,565  pc | | |
| 5 :86 | | | | | | | Firm | 2/17/2022 | 2,430  pc | | |
| 5 :87 | | | | | | | Firm | 2/21/2022 | 3,780  pc | | |
| 5 :88 | | | | | | | Firm | 2/22/2022 | 2,565  pc | | |
| 5 :89 | | | | | | | Firm | 2/24/2022 | 2,430  pc | | |
| | | | | | | | | **Sub Total** | **43,335  pc** | | |

**Grand Total** $

## Notes

VanNote, Erica

**F.C.C.** FCC (Indiana)

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

FCC STANDARD TERMS AND CONDITIONS

**Article 1. Application.** The terms and conditions set forth herein will govern (the "Terms") and supplement any long term agreements between FCC and Supplier (each a "**Long Term Agreement**") concerning FCC's purchase of goods ( "Components") or services ("Services") from Supplier and will apply to all individual purchase orders issued by FCC to Supplier for Components or Services (each, a "**Purchase Order**"). The Terms, Long Term Agreement(s) and Purchase Order(s) are collectively referred to as the "**Agreement(s)**"). If there is conflict between these Terms, the Long Term Agreement, or any applicable Purchase Order, the following order of precedence applies: (i) the Purchase Order; (ii) the Long Term Agreement; and (iii) these Terms. These Terms will be deemed accepted by Supplier upon either its written acceptance or upon commencement of any required work or service under the Agreement. Further, if Supplier does not refuse a Purchase Order in writing within three (3) days following Supplier's receipt of the Purchase Order, Supplier will be deemed to have accepted such Purchase Order. Supplier's acceptance will be limited to the express written terms of the Agreement. Any terms not defined in these Terms will have the meaning set forth in the applicable Long Term Agreement. Additional or different terms contained in any documentation provided by Supplier beyond those terms contained in these Terms or the Agreements are expressly rejected and will not be binding on FCC, nor will they become part of the Agreements absent an amendment agreed to and executed in writing by the parties.

**Article 2. Content, Formation and Amendment of Purchase Orders.** Unless otherwise stated on the Purchase Order, each Purchase Order is a requirements contract whereby FCC agrees to purchase, and Supplier agrees to supply, 100% of FCC's requirements of the Components or Services for the duration stated in Article 8(D). Each Purchase Order will specify, with respect to each Component and/or Services ordered, an order date, a description of the Component or Services, delivery date, delivery location, completion date, price, and other transaction terms; provided, however, that matters common to the Purchase Orders may be specified in advance upon consultation by FCC and Supplier. If requested by Supplier, FCC will provide a non-binding forecast of Components or Services expected to be ordered for the following ninety (90) days. If Supplier reasonably expects that it cannot meet the forecasted demand for Components or Services needed by FCC, Supplier will promptly inform FCC of that fact, and provide a timeline within which Supplier believes it can fulfill FCC's needs.

**Article 3. Delivery; Inspection; Remedies.**

A.  Delivery. Supplier will arrange all transportation for Components and will deliver Components to FCC DDP (Incoterms 2010) to the FCC facility designated on the applicable Purchase Order, unless FCC directs Supplier in writing to send them to a different destination prior to shipment of the Components. Time is of the essence. If Supplier fails to make timely delivery or fails to make progress so as to endanger timely and proper completion of Services or delivery of Components (including, but not limited to, Supplier fails, or is endanger of failing, to timely meet all PPAP, validation and run-at-rate requirements), Supplier will be in breach and FCC may terminate for cause. Supplier will notify FCC electronically at the time of shipment, in a format approved by FCC, of the Purchase Order number, the Components contained therein, the quantity and description of such Components, and the method of transportation used. If Supplier is unable to meet the delivery requirements set forth in the applicable Purchase Order, Supplier will immediately notify FCC, and deliver the Components as soon as possible. FCC reserves the right to reduce payment for Components or Services received after the scheduled delivery date, or, alternatively, to seek replacement Components or Services from a third party at Supplier's expense. Supplier is liable for all direct, incidental and consequential damages, losses, costs and expenses incurred by FCC and resulting from Supplier's failure to deliver conforming and non-defective Components or Services or to comply with the shipping and delivery or other requirements of FCC and this Agreement.

B.  Inspection. Supplier is responsible for appropriately packaging all Components to make sure that no damage to such Components occurs during the shipping process, and for performing all Services in accordance with the requirements set forth in the applicable Purchase Order and this Agreement. FCC will reject any Components damaged during the course of shipment, or Services that are not adequately performed. FCC and its customers will have the right to enter Supplier's facilities during normal business hours to inspect any and all Components, Supplier's facilities, and/or the machinery used to manufacture such Components upon forty-eight (48) hours' advance notice to Supplier. FCC also reserves the right to inspect Components upon receipt, and Services rendered, even if payment for such Components has already been received by Supplier. Payment for Components or Services does not constitute acceptance. Upon FCC's request, Supplier will promptly furnish any inspection documentation regarding the Components prepared by Supplier in the ordinary course of business prior to shipping, so that FCC can verify conformance of the Components with the Specifications (as defined in Article 4), as set forth in the applicable Agreements. FCC's failure to inspect Components or Services performed will not be deemed acceptance of defective Components or inadequate Services, nor a waiver of any of FCC's other rights or remedies under the Agreements arising from any defects, non-conformance or other breach by Supplier.

VanNote, Erica

**F.C.C.** FCC (Indiana)

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

# PURCHASE ORDER
# FIN028816

C.   Rejection. If FCC rejects Components or tender of delivery due to an excess quantity, Supplier will, at FCC's request and within such reasonable period of time as FCC specifies, remove such excess from FCC's facility at Supplier's expense and risk. If there is a shortage of delivered Components to FCC, Supplier will, within a reasonable period of time specified by FCC, deliver conforming Components to fill such shortage. If FCC rejects the Components delivered for any other reason, Supplier will, at FCC's request and within a reasonable period of time specified by FCC, remove such rejected Components from FCC's facility at Supplier's sole expense, and reimburse FCC for any payments FCC made for the rejected Components. If Services are not properly performed, the Services will be promptly re-performed to FCC's satisfaction, as determined in FCC's sole discretion. If Components or Services fail FCC's initial inspection but are useable, as determined in FCC's sole discretion, FCC may choose to accept the Components or Services at a reduced price to be determined in consultation with Supplier.

D.   Remedies. If Supplier breaches the Agreement in any way, FCC may take any or all of the following actions, without prejudiced to any other rights or remedies available to FCC by law:

i.   require Supplier to repair or replace such -or remedy the inadequate Service provided, and upon Supplier's failure or refusal to do so, repair, replace or remedy the same at Supplier's expense;
ii.   reject any shipment or delivery containing defective or nonconforming Components and return for credit or replacement at FCC's option (at Supplier's cost and risk); reject inadequate Services and withhold payment therefor; and/or;
iii.   cancel any outstanding Purchase Orders or shipments of Components or Services not yet delivered or performed hereunder with no further liability to FCC whatsoever.

E.   FCC Rights. If any Components furnished under any Purchase Order are, in whole or in part, defective or otherwise nonconforming with the applicable Specifications, FCC will, in addition to all other rights and remedies provided for by law or these Terms, have the right to recover any and all damages, losses or expenses which result or in any way arise from Supplier's breach. Supplier will reimburse FCC for all actual attorney's fees (including the cost of in-house counsel) in any action arising out of this Purchase Order, unless Supplier is the prevailing party. FCC will also have the right to require and direct Supplier to remove all nonconforming or defective Components from FCC's facility at Supplier's sole risk and expense. All rights and remedies of FCC, whether provided by these Terms or by law, will be nonexclusive and cumulative. Claims brought under the Agreements (or otherwise), may be brought by FCC at any time within the applicable statutes of limitations.

F.   Supplier's Rights. If FCC materially breaches any term of the Agreements, Supplier's exclusive remedy, and FCC's maximum liability, will not exceed the total of all required payments under this Agreement minus those actually made. In no event will FCC be liable to Supplier for lost profits, unabsorbed overhead, interest, product development or engineering costs, facilities and equipment costs or rental, unrecovered depreciation costs, general and administrative burden charges, business interruption, or incidental, consequential or punitive damages. Any action by Supplier arising out of or relating to this Agreement must be commenced by Supplier within one (1) year after the cause of action has accrued, or such cause of action will be deemed to have been waived.

**Article 4. Specifications.** All Components or Services will comply with specifications designated by FCC including any specifications of FCC's end customer (together, the "Specifications"). On the basis of its technology and experience, Supplier will examine specifications of the Components and Services or matters presented by FCC as requirementsand notify FCC of any matters that should be improved. If Supplier has questions or objections regarding any Component or Service Specifications, it will promptly notify FCC to consult regarding any such questions or concerns and resolve them.

**Article 5. Transfer of Ownership and Risk.** Notwithstanding any provision hereof to the contrary, title to, and risk of loss of the Components or Direct Delivery Components will remain with Supplier until the Components are delivered to, and unloaded at, FCC's facility. Supplier will indemnify and hold FCC harmless from and against any and all claims asserted against FCC on account of any personal injuries and or property damages caused by the Components, or by the transportation thereof, prior to the completion of unloading at FCC's facility.

**Article 6. Special Provision regarding Direct Delivery Components.**

A.   If any event occurs that causes Supplier to be unable to promptly deliver any of the ordered quantities of the Components that are to be directly delivered to a third party designated by FCC ("Direct Receiver") pursuant to FCC's instruction ("Direct Delivery Components") or if there is a likelihood of such an event, Supplier will immediately notify FCC and Direct Receiver of the reasons therefor and the planned delivery dates.

B.   If the results of the receiving inspection by the Direct Receiver show any shortfall or excess in quantity or non-conforming or defective Components, upon consultations between the Parties, Supplier will take necessary measures in accordance with Article 3.

**Article 7. Price; Payment.**

VanNote, Erica

**F.C.C.** FCC (Indiana)

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

A. <u>Price</u>. Components or Services purchased under this Agreement will be priced as specified in the applicable Purchase Order. Unless otherwise provided herein, prices shown on a Purchase Order are deemed to include all taxes not expressly imposed by law on FCC, as the buyer of the Components or Services. All prices are firm. FCC will not be obligated to pay any additional charges whatsoever, including but not limited to charges for packing, rating, boxing, bracing, containers, insurance freight, shipping, transportation, delivery cartage fees, licenses, permits, tariffs, duties, inspections or any related or similar item or service. Supplier will promptly furnish an invoice for the Components or Services supplied, and FCC will not be liable for invoices issued by any party other than Supplier.

B. <u>Payment</u>. Payment for such Components or Services will be due not less than forty-five (45) days following the later of FCC's receipt of the invoice or receipt of the Components or Services provided. Payment will be made by wire in accordance with Supplier's wire instructions.

C. <u>Setoff</u>. FCC will have the right to set off any payment or other obligation owed by FCC to Supplier, in whole or in part, against any payment or other obligation owed by Supplier to FCC.

**Article 8. Tooling; Supplies.**

A. <u>FCC-Owned Tooling</u>. Supplier acknowledges that all tooling and equipment furnished or paid for by (or on behalf of) FCC for Supplier's use under the Agreements constitutes critical elements of the production and supply of the Components. To the extent that any tooling and/or equipment that has been, is, or will be furnished to Supplier by FCC, or paid for by or on behalf of FCC (FCC-Owned Tooling), Supplier agrees to adhere to the following guidelines:

i.   *Completion Date:* Commitment dates will be established for first off-tool samples after final drawings or tool designs are approved by FCC and Supplier. Dates will be based upon a mutually agreed lead time from mutually agreed upon final tooling Specifications.

ii.   *Breach of Commitment Date:* If no design changes have been initiated by FCC after final drawing and design approvals, and the Supplier misses the date committed to by Supplier for first off-tool samples, Supplier will be considered in breach.

iii. *Ownership, and Return:* Ownership of FCC-Owned Tooling remains with FCC at all times. Supplier is responsible for all repairs to FCC-Owned Tooling and agrees to maintain and keep FCC-Owned Tooling in reasonably good working order, less ordinary wear and tear. Supplier will also (i) prominently mark FCC-Owned Tooling as property of FCC; (ii) adequately insure FCC-Owned Tooling against loss and damage; (iii) use FCC-Owned Tooling only to produce Components and Services for FCC; (iv) refrain from commingling FCC-Owned Tooling with property of Supplier or with that of a third party and (v) determine and pay all property taxes relating to such FCC-Owned Tooling. Upon completion of work or demand by FCC for any reason, whichever happens first, Supplier will deliver the FCC-Owned Tooling to FCC or other location, as instructed by FCC.

B. <u>Supplier-Owned Tooling</u>. For tooling paid for by Supplier, Supplier agrees as follows:

i.   The initial tooling and equipment and all subsequent rebuilds will be the sole property of Supplier;

ii.   Supplier will assume all costs associated with equipment and tooling including modifications, maintenance, repair, storage and insurance;

iii. If any tooling or equipment is damaged, Supplier will pay all costs to repair or acquire new equipment and tooling and produce Components according to the original schedule;

iv.   Upon termination or expiration of the Agreements, FCC may request that Supplier either destroy the equipment or tooling or transfer ownership to FCC. As soon as practicable after receipt of such written request, Supplier will destroy the equipment and tooling or provide appropriate documentation evidencing transfer of ownership to FCC;

v.   Prior to the destruction of any equipment or tooling, Supplier will provide FCC with at least twenty (20) days' advance written notice of such destruction so that a representative of FCC may witness the destruction;

vi.   Supplier will submit photographs or other evidence of destruction of the equipment and tooling; and

vii. Supplier will not use such equipment or tooling for a third party without FCC's prior written consent.

C. <u>Supplies</u>. When necessary, upon consultation with Supplier, FCC may provide Supplier with materials, semi-finished goods, and components necessary for the manufacturing of the Components or providing Services ("Supplies"). FCC may have Supplies directly delivered to Supplier from a third party designated by FCC ("Designated Third Party"). Supplier may coordinate with the Designated Third Party on matters such as delivery dates and delivery places for such Supplies ("Direct Delivery Supplies"). Supplier will be responsible for performing an inspection upon receipt of Supplies and Direct Delivery Supplies to insure that the same are undamaged. FCC may provide guidance or instructions on inspection items, inspection methods, and other matters upon consultation with Supplier. Supplier will manage Supplies and Direct Delivery Supplies and will not use them for any purpose other than the use for which they were supplied, nor will Supplier assign or lease to a third party, provide as collateral, or otherwise dispose of, the Supplies. Supplier will, at its sole expense, provide a semi-annual inventory report to FCC of all such Supplies and Direct Delivery Supplies in Supplier's possession.

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**F.C.C.** FCC (Indiana)

**PURCHASE ORDER**
**FIN028816**

i. *Defective Supplies.* If Supplier finds that Supplies or Direct Delivery Supplies are defective, Supplier will immediately notify FCC of such defect, and FCC will coordinate the removal and replacement of the defective Supplies or Direct Delivery Supplies. FCC or the Designated Third Party, as applicable, will cover the cost of removal and replacement. This will be Supplier's sole remedy for defective Supplies or Direct Delivery Supplies.

D.  Duration. Supplier expressly agrees to provide Components or Services under the applicable Agreement for the life of the applicable vehicle or other original equipment manufacturer program (including model refreshes as determined by the applicable FCC customer) for which the Components or Services are required, including any Service Part requirements set forth in Article 8.E below. Both Buyer and Seller acknowledge the risk of the program production life being cancelled or extended by FCC's customer.

E.  Service (Aftermarket) Parts. For current and past models, along with all future models which use Components or Services, service (aftermarket) parts (each a "Service Part") will be ordered directly by FCC. Supplier must continue to provide Service Parts, at the last production price, for a minimum period often (10) years after the obsolescence of the model containing such Components or Services. From time to time during this ten-year period, FCC will issue an order for Service Parts. All orders for past models should be responded to with a lead time estimate not to exceed the timeframes contained in this provision. Service Parts for current models must be supplied within thirty (30) days of the order date. Service Parts for past models must be supplied within seventy-five (75) days of the order date. A copy of the order will be attached to each service part shipment.


**Article 9. Quality Guarantee.**

A.  The receiving FCC facility's Supplier Quality Manual is incorporated into the Agreement by reference and is an integral part of the Agreement. If Supplier does not have a copy of this Supplier Quality Manual, it is Supplier's responsibility to request a copy of it. Supplier will comply with the provisions of the Supplier Quality Manual in all respects. If there is any inconsistency between the applicable Agreement and the Supplier Quality Manual, the terms of the applicable Agreement will prevail with respect to any inconsistency in the commercial terms (e.g. pricing, costs and expenses, delivery terms) and the Supplier Quality Manual will prevail with respect to any inconsistency in the quality terms, other than terms set forth in Article 4.

B.  Maintenance of Quality Records. Supplier will retain all production, maintenance and service records relating to all tooling (including FCC-Owned Tooling and Supplier-Owned Tooling), manufacturing processes and any and all testing of Components for a period of at least thirty-six (36) months following the termination of this Agreement for any reason.

C. Traceability. Supplier must: (a) be able to trace all products, ingredients, and packaging components with respect to the Components and Services to the original source ("Trace-back"); and, (b) document destination, quantity, and product identifying characteristics (e.g., lot code, manufacture date, production run, etc.) for all outgoing shipments of Components ("Traceforward"). Source, shipment, methods, programs, policies, other traceability, and product accounting information must be readily available to FCC upon request. Supplier will provide details of its traceability program to FCC prior to first shipment under each Purchase Order. Supplier must be able to account for all finished Components, raw materials, packaging materials, and other items relevant to its processes that it received, stored, handled, processed, shipped, or sold. Supplier must be capable of effectively recalling all Components manufactured by Supplier and must make all recall documentation available to FCC.

D.Stop Work. If an inspection or audit conducted under Articles

3.B or 23 finds Components or Services to be defective, non-conforming or that such Components or Services fail to meet the standards set forth in the Quality Assurance Agreement, FCC may verbally issue a stop work order onsite ("Stop Work Order"). Such Stop Work Order will be confirmed in writing by FCC. Following issuance of a Stop Work Order, Supplier will immediately halt all production of Components or rendering of Services and will not resume the same until Supplier has demonstrated that any and all deficiencies identified in the Stop Work Order have been remedied to FCC's satisfaction, as determined in FCC's sole discretion.

**Article 10. Warranty.**

A. Authority. Supplier represents and warrants that it has the full power to enter into the Agreements and to perform its obligations under the Agreements.

B. Warranty for Products and Services. Supplier warrants to FCC that all Components or Services will conform to the Specifications, will be of merchantable quality, will be fit for the particular purpose intended, will be of good material and workmanship, are free and clear of all liens, claims and encumbrances and will be free from defects in design, material and workmanship for the Warranty Period (as defined below). In addition, for all Services, Supplier warrants that Services will be performed in a professional and workmanlike manner, consistent with all standards and specifications agreed on with FCC and otherwise consistent with industry standards. All warranties of Supplier extend to future performance of the Components or Services and are not modified, waived or discharged by delivery, inspection, tests, acceptance and payment. FCC's approval of any design, drawing, material, process or specifications will not relieve Seller of these warranties. Supplier waives any right to notice of breach. The Warranty Period is the longest of: four years from the date FCC accepts the Components or Services, the warranty period provided by applicable law, or the warranty period offered by FCC to its customer or by FCC or its customer to end-users for the products into which the Components or Services are incorporated. Supplier hereby agrees that all servicing, repairs and replacements of Components or Services not

VanNote, Erica

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**F.C.C. FCC (Indiana)**

**PURCHASE ORDER
FIN028816**

conforming to the foregoing warranty will be performed, at FCC's option, by Supplier, FCC, or a third party designated by FCC, and that Supplier will be solely responsible for all costs and expenses including costs and expenses for parts, labor, handling and other charges incurred by FCC, and any third party acting on request of FCC, in connection with this warranty. Service Parts furnished under Article 8.E will be subject to the same warranties as original Components and Services provided under the Agreements. The Warranty Period for a Service Part is the same as that for a production part.

**Article 11. Indemnification; Limitation of Liability**

A.    Indemnification. Supplier, together with Supplier's parent, guarantors, and shareholders, hereby agrees to indemnify and hold harmless FCC, its Customers, and as to each of those parties, their respective subsidiaries, shareholders, affiliates, directors, officers, principals, agents and employees, as now and hereafter constituted, from and against any and all loss, liability, damage (including any punitive or exemplary damages), cost and expense of every kind or character (including but not limited to legal fees and legal expenses) which any or all of them may incur, suffer or be required to pay by reason of any claim, suit, demand, proceeding or other action that may be brought against anyone or more of them arising from or related in any way to a breach by Supplier of this Agreement including the failure or alleged failure of a Component or Service to comply with any of the warranties, representations, covenants or agreements of Supplier contained in the Agreements, whether or not caused or occasioned by, or alleged to be caused or occasioned by, any act, omission, fault or negligence of Supplier or of anyone acting on Supplier's behalf or with its consent. In the event that any such claim, suit, demand, proceeding or other action is brought, Supplier covenants that upon notice from FCC in its own right or on behalf of its Customer, Supplier will defend such claim, suit, demand, proceeding or action (or, if applicable, Supplier will cause it to be defended by Supplier's insurer) at Supplier's sole cost and expense, and Supplier will keep FCC and its Customer, as applicable, fully advised of the continuing status of each such defense. At its option, FCC may participate in the defense of any such claim with its own counsel, at Supplier's expense. The provisions of this Article 11 will remain and continue in effect after the term of the applicable Agreement.

**Article 12. Insurance.** As of the date of the applicable Agreement, Supplier agrees that it will have obtained the following insurance coverage and that such coverage remains in effect for the duration of the Agreement and any warranty period. Upon request by FCC, Supplier will deliver a certificate or certificates of insurance evidencing such coverage.

A.    Commercial General Liability insurance, on an "occurrence" policy form, providing a minimum combined single limit of Four Million dollars ($4,000,000.) on Bodily Injury and Property Damage, including Personal Injury Liability, Blanket Contractual Liability, Contractor's Protective Liability, and Products and Completed Operations. This limit will apply per occurrence, and in the aggregate, for occurrences in or about the site and will name FCC as an additional Insured.

B.    Comprehensive Automobile Liability insurance providing a minimum limit of $1,000,000. (combined single limit) in Bodily Injury and Property Damage Liability covering owned, non-owned and hired automobiles. FCC will be listed as an additional Insured.

C.    Statutory Worker's Compensation Coverage including Employer's Liability coverage for minimum limits of $1,000,000 (if applicable).

D.    Umbrella/Excess Liability -In an amount of no less than Five Million dollars ($5,000,000).

All policies will be provided by insurance carriers having a minimum rating as published by A M. Best of A· Class XI or better. Such policies will (i) stipulate that they are providing primary coverage, (ii) with respect to the insurance covered in (A), name FCC as an additional insured, and (iii) state that coverage thereunder is not contingent upon participation or payment by or under, any other company or policy. A waiver of subrogation will be provided at FCC's request on the above policies. Supplier will pay all premiums and perform all acts necessary to maintain the policies required to be purchased in accordance with the applicable Agreement. Supplier will provide FCC with certificates of such policies upon request and each certificate must show the amount of coverage, number of policy, date of expiration and, if required above, name FCC as an additional insured.

**Article 13. Tangible and Intellectual Property.**

A. Tangible Property. FCC-Owned Tooling and all tools, dies, specifications, drawings, designs, or other property furnished or specifically paid for by FCC or its Customers in connection with the Agreements (collectively, "FCC Property") will: (a) be and remain the tangible and intellectual property of FCC; marked by Supplier as such and kept segregated by Supplier from other property; (b) be used only by Supplier and only in performance of the Agreements; (c) not be moved from Supplier's premises without FCC's prior written consent; (d) not be affixed to real property; (e) be kept free of all liens, claims, encumbrances and restrictions; (f) not be modified or altered by Supplier or any other person or entity, and (g) be maintained by Supplier in reasonably good working order, less ordinary wear and tear. Supplier will bear all risk of loss or damage to FCC Property until it is returned to FCC. Upon request, Supplier will deliver at FCC's expense all FCC Property in good condition, ordinary wear and tear excepted, to any location designated by FCC. Upon the request of FCC, Supplier will execute a bailment agreement in a format reasonably acceptable to FCC with respect to the FCC Property and hereby consents to the filing by FCC of one or more UCC Financing Statements covering the FCC Property. Supplier waives any legal or equitable rights or claims including, but not limited to, all statutory and equitable lien rights, in connection with FCC Property.

VanNote, Erica

**F.C.C. FCC (Indiana)**

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

B. Intellectual Property. All materials, discoveries, ideas, design rights and concepts developed by Supplier and that relate to the Components or Services will be owned by FCC and will be considered works made for hire by Supplier for FCC. FCC will own all United States and international copyrights, patent and other intellectual property rights in work product comprising, or relating to, such works. Provider agrees to assign, and upon creation of each such work automatically assigns, to FCC, its successors and assigns, ownership of all United States and international rights in such work, insofar as any ownership and rights in such work, by operation of law, are not automatically with FCC. From time to time upon FCC's request, Supplier and/or its personnel will confirm such assignment by execution and delivery of such assignments, confirmations or other written instruments as FCC may request. FCC, its successors and assigns, will have the right to obtain and hold in its or their own names all copyright registrations, patents, and other evidence of rights that may be available for such works.

**Article 14. Confidentiality.** Any trade secrets or other proprietary information of FCC, whether oral, visual or written, will constitute confidential information of FCC even if not marked as such ("Confidential Information"). In addition, Supplier will only use Confidential Information as needed to perform its obligations pursuant to the Agreements and will not disclose Confidential Information to a third party without prior written consent of an authorized officer of FCC, in each instance. For written deliverables provided by Supplier under the Agreements, Supplier will mark such deliverables including any interim or final status reports, updates, or presentations, exclusively as "FCC Confidential," or as otherwise requested by FCC, and will not mark, or jointly-mark, such deliverables as belonging to Supplier. Such deliverables are considered Confidential Information. Upon the termination or expiration of the Agreement, the Supplier will immediately cease use of the Confidential Information and, upon written request of FCC, will immediately return and provide to FCC the Confidential Information, including all copies. The terms and conditions of the Agreements will be deemed Confidential Information. Supplier will not use the FCC name or any FCC trademarks, trade names, service marks, or quote the opinion of any FCC employee in any marketing materials without first obtaining prior written consent of an FCC authorized officer.

**Article 15. Improvement; Review.** In order to improve matters such as unit prices, quality, function, and manufacturing methods of the Components, Supplier will actively develop new technology, propose improvements, provide information to FCC, and the like. To the extent necessary to achieve the purposes of the applicable Agreement, FCC may request Supplier to submit materials related to management of quality, manufacturing processes, and other matters, or may obtain Supplier's consent and conduct an examination of the actual condition of quality management and method of managing processes, and give instructions for improvement. If necessary in order to respond to a demand or an order from a government authority or a related organization, in order to comply with laws and regulations, or if necessary to realize the purposes of the applicable Agreement, FCC may request necessary examinations and provision of information by Supplier, and Supplier will actively cooperate with such request.

**Article 16. Competitiveness.** Supplier will, at all times, be competitive in price, quality, performance and fulfillment obligations.  If, during the term of the Agreements, FCC receives from a manufacturer or supplier, other than an affiliate of FCC, an offer to supply Components or Services of comparable quality (in FCC's judgment) at a price lower than the price then-prevailing under the Agreements, FCC may notify Supplier in writing of the competitive offer and request that Supplier meet the competitive offer. Supplier will, within ten (10) days after Supplier's receipt of FCC's request, notify FCC in writing as to whether Supplier will adjust the then-prevailing price under the applicable Agreement to meet the competitive offer. If Supplier does not agree to meet the new price, or if Supplier does not respond to the written notice within the ten (10) day period, FCC may accept the competitive offer. If the competitive offer eliminates FCC's need to secure Components or Services from Supplier in any capacity, the applicable Agreements may be terminated for Cause under Section 17B.

**Article 17. Termination.**

A.    Termination for Convenience. FCC may terminate an Agreement for any reason, in whole or in part, upon thirty (30) days' written notice to Supplier. If such termination for convenience occurs, the Parties will remain obligated to fulfill their respective duties and responsibilities under the applicable Agreement that exist as of the date of termination.

B.    Termination for Cause. Either Party may immediately terminate the Agreement for cause if the other Party: becomes subject to revocation or suspension of business by a supervisory authority; dissolves, becomes insolvent, files for bankruptcy, or experiences a material degradation in its credit or financial conditions and fails to provide the other Party with adequate assurances after receiving a demand from the other party for the same; or merges with a third party or is subject to a change of control without first securing FCC's written consent at least thirty (30) days prior to the proposed date of such merger or change of control.

FCC also has the right to terminate the Agreement for cause and upon written notice to Supplier if: (a) FCC's agreement with its  Customer for which the Components or Services are purchased is terminated; or (b) if Supplier breaches the Agreement and FCC reasonably believes that such breach threatens to interrupt the production or operations of FCC or its Customer.  For all other breaches, FCC may terminate for cause if Supplier fails to cure within five (5) days after receiving notice from FCC.

Supplier may terminate the Agreement for cause if FCC: 1) has substantially breached the agreement and 2) fails to cure within forty-five (45) days after Supplier provides FCC with written notice of the alleged breach and demands that FCC cure.

**Article 18. Force Majeure.** Force majeure is any failure or delay by a Party in fulfilling or performing any term of the Agreements when and to the extent such failure or delay is caused by or results from acts or circumstances beyond the reasonable control of the Party unable to perform including, without limitation, acts of God, flood, fire, earthquake, explosion, governmental actions, war, invasion or hostilities (whether war is declared or not), terrorist threats or acts, riot, or other

VanNote, Erica



FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER**
**FIN028816**

civil unrest, national emergency, revolution, insurrection, epidemic, or restraints or delays affecting carriers or inability or power outage ("Force Majeure"). Neither Party will be liable for its failure or delay to perform due to a Force Majeure provided that, if Supplier is unable to perform due to a Force Majeure, FCC will have the right, without obligation or liability to Supplier, to purchase Components and Services from another source until Supplier is able to resume performance of its obligations hereunder.

**Article 19. Compliance with Laws and Regulations.**

A.   When performing the Agreements, Supplier will comply with related domestic and foreign laws and regulations. If Components or Services are subject to export or import laws or regulations, Supplier will inform FCC of the requirements thereunder and any obligations of the Parties to comply therewith.

B.   Supplier must properly mark all Components, or, as applicable, the packaging containing such Components, with the country of origin of all Components, and must provide to FCC and/or the importing customs broker, proper documentation regarding the country of origin, USMCA (or other applicable trade treaty), certificate of origin, and all other documentation required by any applicable laws or trade treaties.

**Article 20. Prohibition of Bribery; Illegal Activity; Foreign Corrupt Practices Act.**

A.   The Parties will comply with all applicable provisions prohibiting bribery in each country in which the Parties conduct business under the Agreements. The Parties may not directly or indirectly cause a third party to engage in tortious conduct, provide, promise to provide or offer to provide funds, benefits, or other advantages which are outside the normal course of business. Price discounts to FCC's customers based upon volume of goods sold will not be considered a violation of this Article. The Parties are further prohibited from improperly influencing public officials.

B.   Neither Party nor any of its officers is (i) part of or knowingly conducts business with organized crime groups or any other organizations or individuals which pursue economic benefit by using violence, force, or fraudulent means or (ii) any organization or individual which is on any sanction lists published by any international organization, government authority or any country's central bank.

C.   Supplier will comply with, and cause its agents, employees, and contractors to comply with, all applicable regulatory requirements, including but not limited to, government approvals, policies, laws, regulations and directives that apply to the work that Supplier is doing with FCC, as well as all applicable laws and directives regulating direct and indirect payments and gifts to government officials or others, such as the U.S. Foreign Corrupt Practices Act, the OECD Anti-Bribery Convention, and the UK Bribery Act 2010.

**Article 21. Records and Audit.** During the term and for at least 36 months following termination or expiration of the Agreements, Supplier will maintain complete and accurate records of the supply of its Components and Services and of the fees charged to FCC. FCC and its customers will have the right at any time, upon forty-eight (48) hours' advance written notice, to request an independent, third party audit of Supplier's compliance with the Agreements and/or inspect the premises within which Supplier manufactures or provides such Components and Services. Supplier will make all such reasonably requested records available to FCC's selected auditor during any such audit and will cooperate with FCC, its customers, its representatives and its auditors in the conduct of any audit. If it is determined that Supplier has overcharged (or undercredited) FCC, Supplier will credit FCC's account (or, at FCC's option, pay FCC directly) an amount equal to the overcharge. If an audit discloses that Supplier's overcharges (including undercredits) exceeded five percent (5%) of the charges during the period audited, Supplier will also reimburse FCC for the cost of the audit. In the event the results of the audit raise any issues, the Supplier will co-operate with FCC and rectify such issues promptly

**Article 22. Miscellaneous.**

A.   <u>Amendment</u>. The Agreements will not be amended without a written agreement duly executed by both Parties.

B.   <u>Relationship of the Parties</u>. The Parties agree and acknowledge that Supplier is an independent contractor and is not an agent or employee of FCC. Supplier is solely liable for payment of employment taxes or other similar taxes or payments in relation to its employees, and neither Supplier nor any of its employees is covered by FCC's worker's compensation or any other insurance of FCC. Supplier's parent and/or guarantors expressly agree to guaranty Supplier's performance under the Agreements.

C.   <u>Consultation</u>. With regard to matters not stipulated in the applicable Agreement or in case doubts on construction of the applicable Agreement arise, both Parties will first try to resolve through mutual consultation in good faith.

D.   <u>Assignment</u>. Supplier will not assign or subcontract any of its duties or obligations under the applicable Agreement without the prior written consent of FCC.

E.   <u>Entire Agreement</u>. This Agreement is a final expression and a complete and exclusive statement of the Agreement between the Parties respecting the subject matter hereof and supercedes all prior and contemporaneous agreements, representations and understandings of the Parties. No amendment to or modification of this Agreement will be valid or binding upon either Party unless it is made in writing and signed by a duly authorized representative of FCC.

VanNote, Erica

**F.C.C.** FCC (Indiana)

FCC (Indiana), LLC
555 Industrial Park Road
Portland, IN 47371
Tel (260) 726-8023
Fax (260) 726-4002

**PURCHASE ORDER
FIN028816**

F.    Severability. The provisions of the Agreements will be deemed to be severable, and the invalidity of any provisions of the Agreements will not affect the validity of the remaining provisions of the Agreements.

G.    Survival. The obligations, representations, warranties, and covenants of Supplier under these terms and each Agreement that by their nature are intended or reasonably expected to survive the expiration or termination of the Agreement, includingArticles 8, 9, 10, 11, 12, 13, 14, and 22, will survive termination or expiration of the Agreements.

H.    Governing Law. Each Agreement will be governed by and construed in accordance with the laws of the state that the FCC entity issuing the Purchase Order is located, notwithstanding any state's conflicts of law provisions otherwise. The Parties expressly agree that any and all actions arising from or related to the Agreements or the Components or Services furnished by Supplier will be subject to the exclusive jurisdiction of the state and federal courts located in the state that the FCC entity issuing the Purchase Order is located. The Parties acknowledge that service of process may be made upon the Parties as provided by applicable law.

I.    Electronic Signatures. All notices, documents and communications which are communicated e1ectronically and signed by the Parties electronically will be deemed to have the same force and effect as all documents signed in hard copy.

(June 2019)

_____
VanNote, Erica

# EXHIBIT 14

**Subject:**                          RE: Rejection of PO

---

**From:** Stephen Pridmore <Stephen.Pridmore@paceind.com>
**Sent:** Monday, January 10, 2022 3:21 PM
**To:** Jordan S. Schwartz <jschwartz@fcc-na.com>
**Cc:** Hiroyuki Saruta <saruta_7020@worldfcc.com>; Kazuhiko Nishimura <nishimura_2015@worldfcc.com>; Jeff Bailey <Jeff.Bailey@e-fcci.com>; Masato Yamamoto <yamamoto_2133@worldfcc.com>; Yuji Matsude <matsude_1163@worldfcc.com>; Aya Kuramoto <akuramoto@fcc-na.com>; Jason Phillips <Jason.Phillips@e-fcci.com>
**Subject:** Rejection of PO

Dear Jordan & FCC team,

Pace Industries, Pace Division and Harrison Division along with all other divisions (collectively "Pace") hereby rejects all obligations of the Purchase Order received on January 7, 2022, copy attached.  Pace notes that the January 7, 2022 Purchase Order repeats certain accepted deliveries (the "Repeated Deliveries") from FCC's Purchase Order received December 13, 2021.  Pace will honor the Repeated Deliveries, but only the Repeated Deliveries, as they were accepted pursuant to FCC's previous Purchase Order.  Therefore, Pace's last date for carrier pickup of parts will be on January 27, 2022.   Please plan accordingly.

Nothing herein or otherwise, is intended to, or does, serve as an amendment of any prior purchase orders/agreements between Pace and FCC. Pace reserves all rights.


Regards,


**Stephen Pridmore**
Senior Vice President, Sales

Cell: 479.387.7229
Stephen.pridmore@paceind.com

---

**Pace Industries, LLC**
*Casting Innovation*
paceind.com

This email and all attachments are confidential. If this email is received in error, please delete it immediately and contact the sender. Neither this email nor any attachments may be used in any manner, saved, copied, forwarded or otherwise divulged or disseminated by any person other than the intended recipient/s. Our environment, our planet; please don't print this email unless necessary.